**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:19-cv-60487-RKA/PMH**

SOLU-MED, INC.,

Plaintiff,

vs.

YOUNGBLOOD SKIN CARE PRODUCTS LLC,

Defendant.
______________________________/

**PLAINTIFF SOLU-MED, INC.'s MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff Solu-Med, Inc., pursuant to Federal Rule of Civil Procedure 56 and S.D. Fla. Local Rule 56.1, respectfully submits this Motion for Partial Summary Judgment and Incorporated Memorandum of Law dismissing all of Defendant Youngblood Skin Care Products' ("Defendant" or "Youngblood") Affirmative Defenses, except its Second Affirmative Defense, *see* Amended Answer [ECF No. 79-1], and in support thereof says:

**INTRODUCTION**

At issue in this case is the patently-unfair course of conduct by this Defendant that triggered the immediate shutdown of Plaintiff's Amazon store. In the blink of an eye, Plaintiff went from running an Amazon store that was averaging $450,000/month in gross revenue to being virtually out of business – all due to Defendant falsely accusing Plaintiff of selling counterfeit product. Though Plaintiff's store was eventually re-instated, substantial damage had already been incurred and the resulting damage hindered and ultimately prohibited

Plaintiff from being able to restore its goodwill with Amazon. Plaintiff is currently in the process of liquidating its business.

With the lone exception of Affirmative Defense 2, all of Defendant's affirmative defenses in the matter fail for various reasons. Accordingly, for the reasons stated fully below, Plaintiff's summary judgment should be granted and Defendant's affirmative defenses should be dismissed.

## ARGUMENT

### A. Legal Standards for Summary Judgment on Affirmative Defenses

#### 1. Nature of Affirmative Defenses

An affirmative defense admits the facts of a complaint but seeks to avoid liability by new allegations of excuse, justification, or other negating matters. *Boigris v. EWC P&T, LLC*, 2019 WL 5457072 at *2 (S.D. Fla. 2019); *Biscayne Cove Condominium Assoc., Inc. v. QBE Ins. Corp.*, 951 F. Supp. 2d 1292, 1305 (SD Fla. 2013); *Centre Hill Courts Condo. Assoc., Inc. v. Rockhill Ins. Co.*, 2020 WL 442467 at *7 (S.D. Fla. 2020).

#### 2. Summary Judgment

Partial summary judgment may be granted on affirmative defenses. *Centre Hill,* 2020 WL 442467 at *7; *Tingley Sys. Inc. v. Healthlink, Inc.*, 509 F. Supp. 2d 1209, 1218 (M.D. Fla. 2007). Plaintiff has the initial burden of showing that defendant cannot maintain these defenses by a preponderance of the evidence. *Centre Hill,* 2020 WL 442467 at *7; *Lebron v. Royal Caribbean Cruises*, 2018 WL 5098972 at *2 (SD Fla. 2018). The preponderance of the evidence burden requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence. *Concrete Pipe & Products of Cal., Inc. v. Constr. Laborers Pension Trust For So. Cal.*, 508 U.S. 602, 622 (1993); *U.S. v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012).

Once the moving party demonstrates that defendant cannot meet its burden, the defendant bears the burden of establishing that a disputed issue of material fact exists. *Centre Hill,* 2020 WL 442467 at *7; *Hunters Run Property Owners Assoc., Inc. v. Centerline Real Estate, LLC*, 2019 WL 4694139 at *12 (S.D. Fla. 2019).

**B. <u>Allegations of the Complaint</u>**

At the time of the events giving rise to this suit, Plaintiff had been operating an Amazon online store for about five years, and it carried literally *thousands* of products for sale. (Complaint ¶¶ 11-12, 14.) Of those thousands of products, only 43 of them were Youngblood-branded items. (*Id.* at ¶ 14.) Although Plaintiff had been carrying Youngblood-branded products for nearly two years, it had never had a single complaint from Defendant about it. (*Id.* at ¶ 13.)

Then in November 2018, Defendant sent a complaint to Amazon falsely accusing Plaintiff of selling counterfeit Youngblood-branded products. (*Id.* at ¶ 16(a).) Two days later, Defendant sent a *second* complaint to Amazon with similar accusations as to other Youngblood-branded products. that (*Id.*)As a result, Amazon shut down Plaintiffs' entire store. (*Id.* at ¶ 16(a).)

When the shutdown first occurred, Plaintiff promptly contacted Defendant and demanded that Defendant contact Amazon in accordance with Amazon's requirement for reinstatement and retract its false statement that Plaintiff was selling counterfeit merchandise, as Amazon had delisted Plaintiff's entire store. (*Id.* at ¶¶ 16(c).) Three days later Defendant initially agreed to file a retraction with Amazon -- but ultimately never did. (*Id.* at ¶¶ 16(d)-(g) & 18.) Instead, Defendant sent a notification to Amazon simply saying that its complaint against Plaintiff had been "resolved." (*Id.* at ¶ 16(e).)

By deliberately sending that ambiguous statement to Amazon (rather than submitting the promised full retraction of its false accusations) and by ignoring all subsequent demands by Plaintiff to send the retraction as promised, resulted in Plaintiff's online store to continue to be shut down. (*See id.* at ¶¶ 16(c)-(g).) (*See id.*) Thus Plaintiff was relegated to communicating directly with Amazon. (*See id.* at ¶¶ 16(h)-(i).) As a result, Plaintiffs were eventually successful in getting its store reinstated – though the damage was already done, having lost hundreds of thousands of dollars. (*See id.* at ¶¶ 16(i), 17.)

**C. <u>Plaintiff is Entitled to Summary Judgment on Defendant's Affirmative Defenses.</u>**

This action seeks to recover damages caused by Defendant's wrongful actions. Plaintiff asserted four causes of action in this case: Count I for tortious interference; Count II for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); Count III for defamation; and Count IV for common law trade disparagement/trade libel. For the purpose of this Motion and Defendant's Affirmative Defenses, Plaintiff's analysis focuses for the most part on the first cause of action, tortious interference.

Under Florida law, there are four elements required for tortious interference with business relationship: (1) the existence of a business relationship between plaintiff and a third party, here Amazon; (2) defendant's knowledge of the relationship, which Defendant here cannot deny; (3) unjustified interference with that relationship; and (4) damage to the plaintiff as a result of that interference. *See Wellnext LLC v. OVM LLC*, 2018 WL 7048129 at *6 (S.D. Fla. 2018); *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812,814 (Fla. 1994). Defendant's Affirmative Defenses, most of which are stated in conclusory fashion, are directed against the third and fourth elements, which this Motion will now examine.

### 1. Affirmative Defenses Pertaining to Damages

Defendant's First Affirmative Defense states:

> For their First Affirmative Defense, Youngblood states that Plaintiff failed to mitigate their alleged damages, and therefore, any damage should be reduced accordingly.

Defendant has no evidence to support this conclusory claim and therefore cannot meet its burden. *Regions Bank v. Old Jupiter, LLC*, 2010 WL 5148467 at *5 (S.D. Fla. 2010). On the other hand, Manuel Aguero ("Aguero") testified concerning the prodigious efforts Plaintiff made to mitigate damages once Amazon shut down its store.[1]

The facts demonstrating Plaintiff's attempts to mitigate its damages are undisputed. According to Aguero, Plaintiff immediately submitted a Plan of Action to Amazon, which was to remove all Youngblood items from Plaintiff's Amazon store; reduce its staff to cut expenses; and try to sell the merchandise that Amazon returned on other ecommerce platforms.[2] And of course there were Plaintiff's counsel's letters to Defendant demanding that it issue a retraction to Amazon so that Amazon would reinstate Plaintiff and ultimately counsel's letter to Jeff Bezos of Amazon, requesting reinstatement.[3]

Clearly the preponderance of the evidence establishes that Plaintiff made a reasonable effort to mitigate its damages. Therefore, Plaintiff is entitled to summary judgment dismissing Defendant's First Affirmative Defense.

---

[1] *See* Statement of Material Facts in Support of Plaintiff Solu-med, Inc.'s Motion for Partial Summary Judgment ("Statement of Material Facts"), ¶13.

[2] *Id.*

[3] *Id.*, ¶¶8-9.

**2. Affirmative Defenses Pertaining to Excuse**

The next two affirmative defenses pertain to excuse:

> For their Seventh Affirmative Defense, Youngblood asserts that Plaintiff's lawsuit fails because Amazon is the party who suspended Plaintiff's Amazon store and Youngblood does not control Amazon.
>
> For their Eighth Affirmative Defense, Youngblood states that Plaintiff's lawsuit fails because any complaint made to Amazon was solely for unauthorized Youngblood products and Youngblood did not request any other items be removed from Amazon or Plaintiff's account be suspended by Amazon.

Defendant, by these two affirmative defenses, is attempting to shift the blame to Amazon for the shutdown of Plaintiff's store. Since the facts of the complaint control, right after Amazon received Defendant's second counterfeit complaint, it temporarily delisted Plaintiff's entire Amazon store. While there is no reason to believe that was Defendant's initial intended objective, the causal connection between its two complaints and Amazon's immediate shutdown of Plaintiff's store cannot be gainsaid.

Thus if Defendant's interference with Plaintiff's business relationship with Amazon via a false complaint cannot be deemed justifiable, Defendant would still be responsible for the consequences of its tortious act. Having proffered other affirmative defenses which strongly suggest knowledge of Amazon's anti-counterfeiting policies, then Plaintiff surely knew that Amazon takes counterfeiting complaints by manufacturers very seriously and that total suspension is a foreseeable action by Amazon, when a complaint of this nature is registered.

But there is an additional reason why Defendant cannot shift the blame. As the Complaint relates, on November 26, 2018, Plaintiff's counsel sent a letter to Defendant advising that as a result of its two counterfeit complaints, Amazon delisted Plaintiff's entire

store.[4] The letter maintained that the complaints were false as these were not counterfeit Youngblood products.[5] Plaintiff's counsel demanded that Defendant send a retraction of its counterfeit complaints to Amazon, so that Amazon would reinstate Plaintiff.[6]

Only three days later, November 29, 2018, via email, Defendant notified Plaintiff's counsel that it would send a retraction.[7] However the notification that Defendant sent to Amazon merely stated that it had resolved its dispute with Plaintiff.[8] Since that did not constitute a retraction, understandably Amazon did not reinstate Plaintiff.[9]

Plaintiff's counsel made several more attempts to get Defendant to issue a retraction, but his entreaties were ignored.[10] Youngblood agreed and wrote Solu-med noting "we have agreed to file a retraction with Amazon."[11] On December 20, 2018, Alisa Garrett in Defendant's Brand Protection Unit sent an email to Dr. Jason Toth M.D., Defendant's Vice-President explaining:

> "We filed a retraction BUT (*sic*) they want us to say we were wrong and they are not selling counterfeit products. We didn't admit to that. We just said we resolved the complaint with the seller….Even though we submitted a retraction their store is still not opened."[12]

---

[4] *Id.* at ¶9.

[5] *Id.*

[6] *Id.*

[7] Statement of Material Facts*,* at ¶4.

[8] *Id*. at ¶5.

[9] *Id*. at ¶6.

[10] *Id.* at ¶9.

[11] Statement of Material Facts at ¶4.

[12] *Id.* at ¶10.

Seriously? Resolving a complaint constitutes a retraction? A retraction would require an admission that Plaintiff was not selling counterfeit Youngblood goods. Since "We [Youngblood] didn't admit to that," the reasonable inference is that this "retraction" did not satisfy Amazon and Plaintiff's store remained closed.

Stuck with Ms. Garrett's non-retraction missive, Dr. Toth at his deposition attempted the impossible maneuver of trying to fit a square peg (the promise to retract) into a round hole (the non-retraction notice to Amazon). Here are a few exchanges:

"Q. BY MR. GOODMAN: So there's no question that Youngblood did agree to file a retraction?
Mr. VINE: Objection. Objection

Q. BY MR. GOODMAN: Go ahead.
A. Well, we agreed to file a *response* (emphasis ours) with Amazon that we had resolved our differences and that by filing that, that was in no way an admission by us that the products weren't somehow authentic. And part of the condition of the retraction was that Solu-Med would no longer sell Youngblood products.
Q. But that was not contained in the November 29, 2018, email, was it?
A. Well, show me the email, please, and I'll refresh my memory.
Q. I will. I will.[13]

Thus to suppress Defendant's deliberate failure to comply with its November 29, 2018 email, Toth replaced "retraction" with "response", and adds the unstated and nonexistent condition that Plaintiff stop selling Youngblood products. Toth made a further attempt to blink reality:

"Q. BY MR. GOODMAN: Do you understand what the word "retraction" means?
A. Yes. Common sense. It means that we will—we will file a – some communication with Amazon that we've resolved the differences between us and that Solu-Med has agreed to no longer sell—that's how I understood it.
Q. That's how you understood it?

---

[13] Statement of Material Facts, at ¶11.

A. Right."[14]

A party's testimony can be discounted at the summary judgment stage if it is blatantly contradicted by the record, blatantly inconsistent or inherently incredible as a matter of law. *Perez v. Suszczynski*, 809 F.3d 1213, 1221 (11th Cir. 2016); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013); *Boston v. Alonso*, 2013 WL 6564217 at *7 (S.D. Fla. 2013); *Martelus v. Hathaway*, 2019 WL 1245865 at *6 (N.D. Fla. 2019).

Defendant's alternate version of the facts changing "retraction" to "response" and its blatantly false claim that its email to Amazon qualified as a retraction according to its understanding of the word, is incredible as a matter of law and must be discounted. The fact is that early on, Defendant was in a unique position to extricate Plaintiff from the disastrous consequences of its false counterfeit complaint, by simply informing Amazon that it was retracting or withdrawing this complaint. This Defendant failed to do. Rather, Defendant sent a vague response that it resolved its complaint with Plaintiff, which was not a statement that anyone would consider to be a retraction. By failing to act when it had a duty to act, Defendant must bear responsibility for the prolonged shutdown of Plaintiff's Amazon store and therefore its Seventh and Eighth Affirmative Defenses should be dismissed.

**3. Unclean Hands and *In Pari Delicto***

> For their Fifteenth Affirmative Defense, Youngblood states that Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands and/or *in pari delicto* as a result of selling unauthorized and/or counterfeit Youngblood products.

Unclean Hands and *In Pari Delicto* are equitable defenses. This is not an action in equity but in law. Whereas here, Plaintiff seeks to recover only damages, the unclean hands doctrine is not applicable, *Regions Bank,* 2010 WL 5148467 at **6*, since it applies only to claims for

[14] *Id.* at ¶12.

equitable relief. *Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852, 8856 n. 26 (5th Cir. 1979). Since the doctrine of unclean hands is inapplicable to Plaintiff's legal claims, Plaintiff is entitled to summary judgment dismissing the Fifteenth Affirmative Defense on the basis of legal insufficiency. *Regions Bank Id.; General Electric v. BASF Corp.*, 2008 WL 4185870 at * (S.D.N.Y. 2008); *DiGiulio v. Robin*, 2003 WL 21018828 at * (S.D.N.Y. 2003).

With regard to *in pari delicto*, this Court in *Gastaldi v. Sunvest Resort Communities*, 2010 WL 457243 at *12-13 (S.D. Fla. 2010) held that the defense is inapplicable when the plaintiff did not participate in the same wrongdoing as the defendant, here, the filing of a false counterfeit complaint with Amazon. *Accord Memorex Corp v. IBM*, 555 F.2d 1379, 1281 (9th Cir. 1977); *Campbell v. Moon Palace*, 2011 WL 3648562 at *3 (S.D. Fla. 2011); *Stanley v. Trinchard*, 2010 WL 3168113 at *7 (E.D. La. 2010). Therefore, Plaintiff is entitled to summary judgment dismissing Defendant's *in pari delicto* defense.

**4. Justification Defendants Pertaining to Lanham Act**

Defendant has interposed several affirmative defenses alleging Lanham Act violations by Plaintiff, to justify its counterfeit complaint to Amazon. They are:

> For their Third Affirmative Defense, Youngblood states that Plaintiff's tortious interference claim fails because any alleged actions taken by Youngblood were justified because Defendant's Youngblood products were not authorized for sale by Youngblood and therefore not genuine Youngblood products. *Otter Prods., LLC v. Wang*, 2019 WL 1403022, *2 (D. Colo. Mar. 28, 2019).
>
> For their Fourth Affirmative Defense, Youngblood states that Plaintiff's tortious interference claim fails because any alleged actions taken by Youngblood were justified because Defendant's Youngblood products for sale did not come with a warranty and were not genuine Youngblood products. *Otter Prods., LLC v. Wang*, 2019 U.S. Dist. WL 103022 at *2.
>
> For its Tenth Affirmative Defense, Youngblood states that Plaintiff's tortious interference claim fails because any alleged actions taken by Youngblood were justified because Defendant's Youngblood products did not abide by and interfere

with Youngblood's quality controls. *Otter Prods., LLC v. Wang*, 2019 U.S. Dist. WL 103022 at *2.

The case cited in these affirmative defenses, *Otter Products*, was decided after Defendant filed its two counterfeiting complaints and therefore that Defendant was relying on the holding of *Otto* when it filed its two complaints, is absurd. This is another example of Defendant patently tailoring its defenses to meet the exigencies of the case, but which have no basis in reality. These defenses are unavailing in any event.

To begin this is not a Lanham Act case. *Otter* involved trademark infringement claims, where the defendant defaulted. The claims did not embrace counterfeiting, because it was a gray goods case. Courts have repeatedly held within the context of the Lanham Act, that gray goods, even if infringing, are not counterfeit goods. *See Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1306 (5th Cir. 1997); *Novartis Animal Health US, Inc. v. Abbeyvet Export Ltd.*, 409 F.Supp.2d 264, 266 (S.D.N.Y 2005); *Mitchell Group USA LLC v. Udeh*, 2017 WL 9487193 at *5 (E.D.N.Y. 2017). They use the actual marks and the marks are lawfully affixed to them. *Accord: Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 952 F.2d 44, 48-50 (3d Cir. 1991); *Abbott Labs v. Adelphia Supply USA*, 2015 WL 10906060 at *11 (E.D.N.Y. 2015); *Abbott Labs v. Adelphia Supply USA*, 2019 WL 569148 at *22 (E.D.N.Y. 2019). Therefore, that gray goods may be infringing under the Lanham Act does not render them counterfeit.

Defendant's complaint was that the goods being sold by Plaintiff were counterfeit, without any explanation to support the claim.[15] The complaint stated in pertinent part:

[15] Statement of Material Facts, at ¶1.

"Counterfeit products are being sold on the following listings."[16] And, "Please, immediate action and remove these sellers [including Plaintiff] currently listing counterfeit products."[17] Cleary *Otter* is inapposite, given the nature of Defendant's complaint. But there is more.

Examining these conclusory defenses, the fact that Defendant did not authorize their sale does not render these goods infringing or not "genuine", by reason of the first sale doctrine. *See Wellnext,* 2018 WL 7048129 at **3* (citing *Allison v. Vintage Sport Plaques*, 136 F.3d 1443, 1447-48 (11th Cir. 1998). Thus Defendant's Third Affirmative Defense is unavailing.

Regarding Defendant's Fourth Affirmative Defense, no explanation is given why Youngblood products sold by Plaintiff do not come with a warranty, since the implied warranties under Article 2 of the Uniform Commercial Code ("UCC"), have been adopted by all States. If Defendant is referring to an express warranty, that warranty is not articulated, so there is no way to gauge whether the absence of it would be considered a material difference as per *Otter*.

But there is another problem facing Defendant. Youngblood admitted that the labeling of the Youngblood products do not contain the word warranty or guarantee.[18] Ostensibly the products would not carry a disclaimer of the alleged warranty or guarantee as well. We surmise like *Otter* that Defendant's express warranty is limited to retail sales by authorized dealers. However, the UCC requires that disclaimers of all warranties, express or implied, be conspicuous. *Stevenson v. TRW INC.*, 987 F.2d 288, 295 (5th Cir. 1993); *Earman Oil Co., Inc. v. Burroughs Corp.,* 625 F.2d 1291, 1298 (5th Cir. 1980). A disclaimer appearing at a web site

---

[16] *Id.*

[17] *Id.*

[18] *Id* at ¶14.

would hardly satisfy that requirement, since it provides notice only to those who visit it. Therefore, it is doubtful that Defendant could legally refuse to honor its alleged express warranty, because the goods were purchased from an unauthorized seller.

As to the Tenth Affirmative Defense, what evidence does Defendant have to establish by the preponderance of the evidence that Plaintiff's Youngblood products do not abide by and interfere with its quality controls? Patently Plaintiff can still abide by them (whatever they are), without Defendant's oversight, especially where Defendant has failed to articulate in this conclusory affirmative defense, what quality control standards, if any, apply to retail internet sales and how Plaintiff has failed to abide by them. *Wellnext,* 2018 WL 7048129 at **3.* This defense is based upon assumptions, not facts. Thus on the merits, these *post hoc* affirmative defenses cannot negate Defendant's liability for filing a false counterfeit complaint and Plaintiff is entitled to summary judgment dismissing these defenses.

**5. Justification Defendants Pertaining to Amazon's Anti-Counterfeiting Policies**

Defendant has interposed two *post hoc* affirmative defenses based on Amazon's undisclosed anti-counterfeiting policies, to justify its counterfeit complaint to Amazon. They are:

> For their Thirteenth Affirmative Defense, Youngblood states that Plaintiff's tortious interference claim fails because any alleged actions taken by Youngblood were justified because Plaintiff was selling counterfeit Youngblood products according to Amazon's policies.
>
> For their Fourteenth Affirmative Defense, Youngblood relies on Amazon's counterfeit and reporting policies to support Youngblood's alleged actions of reporting Plaintiff for selling counterfeit Youngblood products.

Clarice Cohn, a Litigation Paralegal in the Litigation and Regulatory group at Amazon, submitted a Declaration in response to a Rule 45 Subpoena Duces Tecum that

Defendant served upon Amazon.[19] In paragraph 12 of her Declaration, Ms. Cohn states that Amazon considers a product to be counterfeit if the product or packaging has an unlawful reproduction of a registered trademark.[20]

Defendant's complaint twice states that Plaintiff was selling and listing *counterfeit* Youngblood products and demanded their removal. Consistent with Defendant's Thirteenth and Fourteenth Affirmative Defenses and evidentiary burden, what evidence does Defendant have that Plaintiff was selling and listing Youngblood products bearing unauthorized reproductions of Defendant's registered trademarks? The answer is none, because these goods originated with Defendant.

In short, Plaintiffs were not selling counterfeit Youngblood products according to Amazon's policies. Moreover, the preponderance of the evidence establishes that Defendant was not relying on Amazon's policies when it filed its counterfeit complaint. Prior to discovery, which was how Defendant first became aware of Amazon's written anti-counterfeiting policies, Defendant moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On page 10 of its Memorandum of Law (ECF No. 18), Defendant stated:

> In the instant matter, Youngblood's inquiry to Amazon in regards to the authenticity of Youngblood's products was justified. Notably, Plaintiffs admit that they did not purchase their Youngblood products directly from Youngblood, and were not authorized by Youngblood to sell their products. *Compl*. ¶ 15. Specifically, Plaintiffs admit that they purchased the Youngblood products on the "secondary market". *Id*. Thus, anytime Youngblood identifies its products being sold by an unauthorized reseller, the first assumption Youngblood must make is that the products are counterfeit. Given the amount of counterfeit products sold on Amazon and other e-commerce marketplaces, it is perfectly reasonable to surmise that Youngblood branded products being sold without Youngblood's

[19] Statement of Facts, at ¶15.

[20] *Id.*

> permission are not in fact, Youngblood products. Instead, they are counterfeit. When Youngblood identifies said products on Amazon, Youngblood's first level of recourse is to submit a counterfeit petition to Amazon.

A statement made in a brief filed by a party may be considered an admission of fact. *Tucker v. Housing Auth. of the Birmingham District*, 229 F. App'x 820, *5 (11th Cir. 2007); *Young & Vann Supply Co. v. Gulf. Fla. & Ala. Railway Co.,* 5 F.2d 421, 423 (5th Cir. 1925); *Hanson v. Waller,* 888F.2d 806, 814 (11th Cir. 1989) (statements made by an attorney in representational capacity admissible as exception to the hearsay rule); *Nationwide Mutual Fire Ins. Co. v. Waddell*, 2006 WL 8446055 at *3-4 (M.D. Ga. 2006). The foregoing constitutes an admission that Defendant's counterfeit complaint was based not upon Amazon's promulgations, but upon an assumption that the goods were counterfeit because Plaintiff was not an authorized reseller of Youngblood products. Therefore, if Defendant was wrong, it should be held accountable for its reckless acts.

That Defendant's counterfeit complaint was based upon its policy rather than Amazon's is also confirmed by the deposition testimony of Dr. Toth. At his deposition, Dr. Toth testified that if the Youngblood product is not being offered by an authorized seller, then it is counterfeit and it was Defendant's strategy to protect the equity of the brand and their investment by eliminating gray market sellers such as Plaintiff and to file a counterfeit complaint with Amazon.[21] But the gray market consists of genuine branded goods (*i.e.*, not counterfeit) sold by unauthorized dealers, usually at prices lower than that charged by authorized dealers. *See www.businessdictionary.com/definition/gray-market.html*. Thus Defendant used the counterfeit complaint to eliminate these free market

[21] Statement of Material Facts, ¶¶16-18.

competitors. Finally, that Defendant was not relying on Amazon's policies as opposed to its unauthorized seller the goods are counterfeit policy, was conclusively established when Toth testified that Amazon too was selling counterfeit Youngblood because Amazon was not an authorized seller.[22] Could Amazon be violating its own anti-counterfeiting policy? We believe not.

In view of the foregoing the preponderance of the evidence supports the conclusion that the motive underlying Defendant's false counterfeit complaint was to eliminate Plaintiff, an unwanted gray market competitor, although Amazon would not consider these goods counterfeit. As this Court is well aware, gray market sales are not illegal. Nor is diversion. *See United States v. Weinstein,* 762 F.2d 1522, 1527 (11th Cir. 1985), *opinion modified on denial of reh'g,* 778 F.2d 673 (11th Cir. 1985). If Defendant wanted to eliminate diversion, it should do a better job of policing its distribution network. In sum, Defendant's Thirteenth and Fourteenth Affirmative Defenses should be dismissed since they cannot be established by the preponderance of the evidence.

**6. Affirmative Defenses Pertaining to Truth**

> For their Fifth Affirmative Defense, Youngblood states that Plaintiff's tortious interference claim fails because any alleged actions taken by Youngblood was justified because Defendant's Youngblood products were not authentic Youngblood products and therefore counterfeit.

> For their Sixth Affirmative Defense, Defendant's defamation claim fails because the alleged statements were true.

Plaintiff addresses these two affirmative defenses together because if these goods were not counterfeit, these affirmative defenses must be dismissed. Again, what evidence does Defendant have that the Youngblood products Plaintiff was selling were counterfeits, *i.e.*,

[22] *Id.* at ¶17.

Youngblood products bearing unlawful *reproductions* of Defendant's registered trademarks? While that is Amazon's definition, no one would quibble that this definition is any different than how counterfeit is defined in the Lanham Act, 15 U.S.C. § 1127 (a "spurious" mark) or the public's understanding that counterfeit means fake.

As indicated *supra,* gray market goods may infringe for reasons having nothing to do with the authenticity of the trademark affixed to the product. That is, the material differences and quality control tests expressed in *Otter*, all court-created, control whether gray market products are infringing under the Lanham Act, regardless of whether the products originally emanated from the plaintiff trademark holder. Thus Defendant's use of "authentic" in its Fifth Affirmative Defense is a red herring, since authentic or genuine in the case of gray goods pertain to Lanham Act actions for trademark infringement, where the goods are not counterfeit. This defense should be dismissed.

As for the Sixth Affirmative Defense, it is undisputed that Defendant failed to conduct any scientific tests or review of the packaging to determine whether the Youngblood products Plaintiff was selling was counterfeit. This it was required to do to satisfy its evidentiary burden with respect to the Sixth Affirmative Defense. *See e.g., Model Imperial Supply Co. v. Westwind Cosmetics, Inc.,* 829 F. Supp. 35, 39 (E.D.N.Y. 1993). As indicated, per Dr. Toth's deposition, Defendant was relying on the assumption that the goods were counterfeit, because Plaintiff was not an authorized seller when Defendant filed its two counterfeit complaints.[23]

Further the fact that Defendant failed to make any attempt during the course of this lawsuit to determine whether Plaintiff was selling fake Youngblood goods, permits the negative inference that had such endeavor been made, the goods would be found to be

[23] Statement of Material Facts at ¶16.

authentic and not counterfeit. Defendant's having no evidence to establish that its counterfeit complaint was true, Plaintiff is entitled to summary judgment, dismissing the Sixth Affirmative Defense.

**7. Defense of Qualified Privilege to Publication**

> For their Sixteenth Affirmative Defense, Youngblood affirmatively asserts that Plaintiff's claim for defamation and/or trade libel fails as a matter of law and fact – in whole or in part – by virtue of any or all of the alleged acts of defamation and/or trade libel qualifying as privileged publications.

Plaintiff has interposed claims of libel and trade defamation. Defamation is based on damage to one's reputation, while trade libel is based on damage to one's economic relations. *Perry v. Naples HMA, LLC,* 2014 WL 6610125, *10 (M.D. Fla. 2014); *Salit v. McClosky, Smith, Shuster & Russell, P.A.,* 742 So. 2d 381, 386, 389 (Fla. Dist. Ct. App. 1999). Both torts have as their common element a false statement published to a third party. *Perry,* 2014 WL 6610125*;* *Lefrock, M.D. v. Walgreens Co.*, 77 F. Supp. 3d 1199, 1201 (M.D. Fla. 2015); *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1247 (S.D. Fla. 2014). Here the common element is Defendant's two false counterfeit complaints, which is libel *per se*, since they accuse Plaintiff of committing a crime. *Perryman Id.*; *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953).

With regard to these torts, Florida recognizes qualified privilege as an affirmative defense. Two of the elements which a party asserting the defense must establish, here by the preponderance of the evidence is that (1) the statement was made in good faith and (2) with an interest to be upheld. *Lefrock*, 77 F. Supp. 3d at 1201*; Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 391 F. Supp. 2d 1148, 1166 (S.D. Fla. 2005); *Axelrod v. Califano*, 357 So. 2d 1048, 1051 (Fla. Dist. Ct. App. 1978). Further, a party's privilege to interfere with a business relationship is not privileged where the party purposefully interferes or acts egregiously

against another party. *Alphamed*, 391 F. Supp. 2d at 1166 (citing *Ernie Haire Ford, Inc. v. Ford Motor Co.,* 260 F.3d 1285, 1294 n. 9 (11th Cir. 2001).

Defendant cannot establish either of these elements by the preponderance of the evidence. Defendant did not make the statements in the complaints to Amazon in good faith. As set forth above, the false counterfeit complaints were based on nothing more than an assumption that Plaintiff's Youngblood goods were counterfeit, because Plaintiff was not an authorized seller. Further Defendant had not even made any purchases from Plaintiff, nor subjected Plaintiff's goods to rigorous scientific testing to determine authenticity. Finally, Defendant admitted that one of Defendant's strategies to eliminate gray market vendors on Amazon was to simply file a counterfeit complaint with Amazon.[24] Not only is this bad faith, but it is also purposeful, egregious interference against another party.

As to the second element, an interest to be upheld, as Toth had testified, this strategy of filing a counterfeit complaint was to eliminate gray market vendors because their sales negatively affect Defendant's brand equity and investment. The short answer is that tortious, predatory conduct cannot be justified as the means to an anti-competitive end. The goal of elimination through anti-competitive and monopolistic practices in reality is an attempt to control the free flow of goods in the open marketplace. Clearly this odious self-interest is not one that should be entitled to any protection via qualified privilege, namely eradicating competition by false complaints at the public's expense. In sum, Defendant cannot establish qualified privilege as a matter of law and therefore Plaintiff is entitled to summary judgment dismissing Defendant's Sixteenth Affirmative Defense.

[24] Statement of Material Facts, ¶18.

**CONCLUSION**

WHEREFORE, Plaintiff requests that the Court grant Plaintiff's motion for summary judgment in all respects.

Respectfully submitted,

/s/ *Kelsey K. Black*
Kelsey K. Black, Fla. Bar. No. 078925
Black Law P.A.
1401 E. Broward Blvd., Ste. 204
Fort Lauderdale, FL 33301
Ph-954.320.6220//fx-954-320-6005
kelsey@kkbpa.com

and

Stanley R. Goodman, Esq. (admitted *pro hac vice*)
Goodman & Saperstein
666 Old Country Road, Suite 200
Garden City, NY 11530
Telephone: (516) 227-2100
Facsimile: (516) 227-2108
*gsesq600@aol.com*