UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 0:19-cv-60487-RKA/PMH

SOLU-MED, INC.,

      Plaintiffs,

v.

YOUNGBLOOD SKIN CARE PRODUCTS LLC,

      Defendant.

_____/

## DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT

Defendant, Youngblood Skin Care Products, LLC ("Youngblood"), pursuant to Fed. R. Civ. Pro. 56(b) and Local Rule 56.1, moves this Court for entry of an Order granting summary judgment in favor of Youngblood on Plaintiff's, Solu-Med, Inc. ("Plaintiff"), Complaint [D.E. 1], and in support thereof, states as follows:

## INTRODUCTION

Plaintiff sold counterfeit, inauthentic, and unauthorized products, including products purporting to be Youngblood products, in violation of Amazon.com's ("Amazon") guidelines on Plaintiff's Amazon store, Life & Health Source ("Amazon Storefront"). *See* Statement of Undisputed Material Facts [DE-107] ("SOF") ¶¶ 6, 12-16, 22-30, 33-39. On numerous occasions, other companies unaffiliated with Youngblood, complained to Amazon regarding the inauthentic or otherwise counterfeit products being sold on the Amazon Storefront. SOF ¶¶ 22-30.With each of these complaints, Amazon restricted Plaintiff's ability to sell those specific products on its Amazon Storefront. *Id.* Amazon explicitly warned Plaintiff that if Amazon continued to receive complaints, it may terminate Plaintiff's right to continue to sell products on Amazon. *Id.*

Despite the multiple notices from Amazon regarding customer complaints, Plaintiff failed to heed Amazon's warnings. Instead, Plaintiff continued to sell counterfeit, inauthentic and/or unauthorized products, including products purporting to be Youngblood, on its Amazon Storefront. Between November 11, 2018 and November 13, 2018, Youngblood submitted several

complaints to Amazon regarding Plaintiff's sale of inauthentic and counterfeit products purporting to be Youngblood products on Plaintiff's Amazon Storefront. SOF ¶¶ 32-33, 35, 37, 39.

On November 13, 2018, after ignoring Amazon's warnings and request for supporting information that the products were not counterfeit, Amazon temporarily deactivated the Amazon Storefront. SOF ¶¶ 40-41. Amazon contemporaneously notified Plaintiff that the Amazon Storefront would remain inactive until Plaintiff responded to Amazon's inquiries and concerns regarding Plaintiff's sale of inauthentic and/or counterfeit products. *Id.* Once again, Plaintiff disregarded Amazon's warnings and entirely failed to properly respond to Amazon regarding its concerns. *Id.* After Plaintiff continued to fail to provide Amazon with the requested source and authenticity documents for the purported Youngblood products and other company's products, on December 20, 2018, Amazon deactivated the Plaintiff's Amazon Storefront. SOF ¶¶ 42-57. Less than a month later, on January 14, 2019, Amazon reactivated Plaintiff's Amazon Storefront. SOF ¶ 59.

In this action, Plaintiff asserts that Youngblood is responsible for the deactivation of the Amazon Storefront from November 13, 2018 through January 14, 2019 ("Deactivation Period") merely because Youngblood reported its complaints to Amazon. *See generally*, Complaint [D.E. 1]. As against Youngblood, Plaintiff has asserted the following four claims: (1) tortious interference, (2) violation of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), (3) defamation, and (4) trade libel. *Id.* As discussed herein, Plaintiff's claims against Youngblood fail as a matter of law because:

(1) there is no record evidence that Youngblood interfered with any identifiable business relationship and Plaintiff is precluded from asserting Youngblood interfered with its contract with Amazon;

(2) Youngblood was justified in submitting its complaints to Amazon because Plaintiff violated Amazon's guidelines by selling inauthentic, counterfeit, and/or unauthorized products

(3) there is no record evidence that Youngblood's complaints caused the deactivation of the Amazon Storefront;

(4) there is no record evidence that Youngblood engaged in an unfair or deceptive trade practice;

(5) there is no record evidence that Youngblood's complaints to Amazon regarding Plaintiff's Amazon Storefront were false in fact;

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

(6) the allegation that Youngblood caused the destruction of Plaintiff's business is based entirely on speculation and conjecture; and

(7) the *Noerr-Pennington* doctrine bars Plaintiff's claims of tortious interference, Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), defamation, and trade libel.

Each of the foregoing reasons, in and of themselves, are sufficient for this Court to enter summary judgment in Youngblood's favor. Accordingly, and for the reasons set forth herein, Youngblood is entitled to summary judgment as a matter of law on each of these issues.

## MEMORANDUM OF LAW

### I.    Legal Standard

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56). One of the principal purposes of a motion for summary judgment is "to isolate and dispose of factually unsupported claims. *Celotex Corp*, 477 U.S. at 323-324. "For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted). Speculation cannot create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

Where the nonmoving party has the burden of proof at trial, the moving party may meet its initial burden by pointing out "that there is an absence of evidence to support the nonmoving party's case." *U.S. v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in State of Ala.,* 941 F.2d 1428, 1438 (11th Cir. 1991). Once movant has done so, "a plaintiff cannot rely on its allegations; it must provide evidence to support those allegations." *Inlet Condo. Ass'n, Inc. v. Childress Duffy, Ltd,* 2015 WL 3798474, at *10 (11th Cir. June 19, 2015) (*citing Doe v. Drummond Co.,* 782 F.3d 576, 604 (11th Cir. 2015)). If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### II.    The Tortious Interference Claim Fails as a Matter of Law

To prove a claim for tortious interference with a business relationship, a plaintiff must show: "(1) the existence of a business relationship, not necessarily evidenced by an enforceable

3

contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985).

### A. Youngblood Did Not Interfere with Any Business Relationship

In the Complaint, Plaintiff asserts that it "had and continues to have a business relationship with identifiable customers who shop in their online store on Amazon." *See* Compl. ¶ 21 [D.E. 1]. However, a desire or hope to continue to do business with past customers is insufficient to establish the first element of a tortious interference claim. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994). Indeed, "[a]s a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Id.*

### i. *Plaintiff's Past Customers Cannot Serve as Identifiable Customers*

Here, Plaintiff has not identified a single customer who attempted to place an order, cancelled a purchase order, or otherwise submitted a purchase order during the Deactivation Period. Similarly, Plaintiff has not produced any invoices, contracts or agreements to support the interference claim. To be sure, Plaintiff has failed to identify any customers who stopped shopping at the Amazon Storefront during the Deactivation Period, or otherwise as of January 14, 2019, since the Amazon Storefront was reinstated. To be clear, Plaintiff's relationship with its past customers <u>cannot</u> serve as a basis for its purported tortious inference claim as Plaintiff did not have any identifiable agreement with any past customer that the customer would return to Plaintiff to purchase products in the future from the Amazon Storefront. *Ethan Allen, Inc*, 647 So. 2d 812, 815 (Fla. 1994) (holding furniture store's past relationship with customers could not serve as a basis of its tortious interference claim because there was not identifiable agreement that its past customers would return to purchase furniture).

Moreover, "[t]he mere hope that some of its past customers may choose to buy again cannot be the basis for a tortious interference claim." *Id.* Accordingly, Plaintiff has failed to support it had any identifiable customers that Youngblood interfered with and as a result, Youngblood is entitled to summary judgment.

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

> ### ii.    *Plaintiff's Complaint Does Not Allege Any Interference with its Amazon Contract*

Additionally, Plaintiff's Complaint is devoid of any allegation that Youngblood interfered with Plaintiff's contract with Amazon. *See generally*, Compl. [D.E. 1]. As a result, Plaintiff is precluded from alleging now, at the summary judgment stage, that Youngblood interfered with its contract with Amazon. *Ward v. Ortho Biotech Prods., L.P.*, 2007 WL 3379850, *3 fn. 10 (M.D. Fla. Nov. 14, 2007) (refusing to consider the plaintiff's ADEA retaliation claim because it was not included in her complaint).[1]

To be sure, Plaintiff was aware of the facts of this case prior to filing its Complaint. Rule 8(a) requires the Plaintiff to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiff's Complaint did not allege that Youngblood interfered with its Complaint with Amazon. *See generally*, Compl. [D.E. 1]. Additionally, Plaintiff never sought leave to amend its Complaint by the amended pleading deadline nor moved to amend by interlineation. *See* Order Setting Trial and Pre-Trial Schedule ("Order") [D.E. 28]. Thus, the only allegations before this Court are those contained in the Complaint, and accordingly, any allegation that Youngblood interfered with Plaintiff's contract with Amazon is not before this Court and cannot be considered at this stage. *See generally*, Compl. [D.E. 1].

Notwithstanding, to the extent Plaintiff makes the novel allegation that Youngblood interfered with Plaintiff's contract with Amazon, Plaintiff does not constitute a consumer. Indeed, Plaintiff does not purchase the goods or services listed for sale on its Amazon Storefront from Amazon. SOF ¶ 6. Rather, Plaintiff purchases the goods or services from third parties and then lists the same for sale on its Amazon Storefront or to Amazon. *Id.*

Moreover, there are two ways a seller can sell goods on Amazon: (1) a merchant account (such as the Amazon Storefront run by the Plaintiff); or (2) a Fulfillment by Amazon ("FBA") account, meaning a seller will ship products directly to Amazon and then Amazon sells the products to customers. SOF ¶ 6. When Amazon deactivated Plaintiff's Amazon Storefront, Plaintiff was unable to sell directly to customers. SOF ¶¶ 6, 41. However, at no time during the

---

[1] *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137 (5th Cir. 1993) (affirming summary judgment on allegations not contained in complaint finding plaintiff was aware of fact prior to filing of the compliant but failed to assert claim or seek amendment until after summary judgment motion was filed); *see e.g. See Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.1990) (claim raised not in amended complaint but, rather, in plaintiff's response to defendant's motion for summary judgment was not proper before the district court).

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

Deactivation Period was Plaintiff prohibited from selling through the FBA program. SOF ¶ 58. Here, Plaintiff did not even attempt to sell its goods through the FBA program. *Id.*

Certainly, Plaintiff should not be permitted to argue to the jury at trial that Youngblood has interfered with Plaintiff's contracts or business relationships, without identifying the particular basis of its claims. *See Astro Tel, Inc. v. Verizon Florida, LLC*, 979 F.Supp.2d 1284, 1298 (M.D. Fla. 2013) ("Astro Tel's tortious interference with a contract claim fails for the simple reason that it has not proffered or otherwise presented a contract with an identifiable customer"). Accordingly, Plaintiff has not and cannot prove its claim that Youngblood interfered with a contract with identifiable customers. Consequently, Youngblood is entitled to summary judgment in its favor.

### B. <u>Youngblood was Justified in Submitting its Complaints to Amazon</u>

Even assuming Plaintiff demonstrated interference with a business relationship, Youngblood was justified in submitting its complaints regarding Plaintiff's unauthorized sale of inauthentic and/or counterfeit products to Amazon.

"Under Florida law, a company's actions are justified when undertaken to protect its own business interests, such as to reduce the risk of loss. So long as the company does not engage in improper conduct, it may take steps to protect its business interests without liability for tortious interference." *Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334, 1339 (S.D. Fla. May 17, 2007) (citing *Networkip, LLC v. Spread Enters., Inc.*, 922 So.2d 355, 358 (Fla. 3d DCA 2006); *Ethyl Corp. v. Balter*, 386 So.2d 1220, 1225 (Fla. 3d DCA 1980); *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1321 (11th Cir.1998) (holding "Florida law recognizes the principle that actions taken to safeguard or protect one's financial interest, so long as improper means are not employed, are privileged.").

#### i. *Plaintiff Violated Amazon's Guidelines by Selling Inauthentic and Counterfeit Products*

In September of 2018, Youngblood hired Amazzia, Inc. ("Amazzia") to curb the sale of inauthentic and counterfeit products on the secondary market that were diluting the Youngblood brand and its products. SOF ¶ 5. Amazzia submitted the complaints against Plaintiff's sale of Youngblood products because Plaintiff was violating Amazon's guidelines. SOF ¶¶ 32-33. Amazzia determined that Plaintiff was selling counterfeit products because the products did not have the Warranty and the quality controls that normally go with Youngblood products. SOF ¶ 32.

Plaintiff's resale of purported Youngblood products on its Amazon Storefront was in direct violation of Amazon's guidelines and Youngblood was entirely justified in reporting Plaintiff's sale of inauthentic and counterfeit products purporting to be Youngblood products. SOF ¶¶ 7-16; *Swiss Watch Intern., Inc. v. Movado Group, Inc.*, 2001 WL 36270980, *4 (S.D. Fla. Jun. 21, 2001) (finding SWI acknowledges the existence of the grey market and that it knew of Movado's intent to curb the unauthorized importation of Movado brand watches from outside the United States. Thus, the Court held that Movado's actions in furtherance of its own interests are nonactionable). Specifically, Amazon promulgates detailed and strict policies governing the sale of products on Amazon. SOF ¶¶ 7-11. To be sure, Amazon is acutely aware of the inauthentic and counterfeit market and its policies reflect Amazon's commitment to "stand behind the products sold on [its] site." SOF ¶ 8. Amazon's Anti-Counterfeiting policy explicitly states: "[p]roducts offered for sale on Amazon must be authentic. The sale of counterfeit products is strictly prohibited." *Id.* In this regard, "it is each seller's and supplier's responsibility to source, sell, and fulfill only authentic products." *Id.*

Significantly, under Amazon's Cosmetics and Skin Care Policy, all cosmetics sold on Amazon must be, among other things, sealed in the original manufacturer's packaging, a "new," and unused product. SOF ¶ 9. Likewise, Amazon's Condition Guidelines requires products offered for sale on Amazon be "new." SOF ¶ 10. Amazon's Condition Guidelines define a "new" product as "[a] brand-new, unused, unopened item in its original packaging . . . [with the] Original manufacturer's warranty, if any, still applies . . . ." *Id.* Consequently, under Amazon's Condition Guidelines, it is a violation to sell a product on Amazon as "new" without the original manufacturer's warranty. *Id.*. Additionally, Amazon's Product Authenticity guidelines state that violations of authenticity are intellectual property violations. SOF ¶ 11. Amazon's Product Authenticity guidelines provide it is a violation of its policy to list a materially different product than the product sold—*i.e.*, listing a product in "new" condition when it is not. SOF ¶ 11. Therefore, pursuant to Amazon's guidelines, a product is inauthentic and counterfeit if the product is being sold as "new" but does not come with a warranty. SOF ¶¶ 8-11.

Plaintiff violated each of Amazon's foregoing guidelines in the following aspects:

- Plaintiff was selling purported Youngblood products as "new" on its Amazon Storefront (SOF ¶ 14);
- Plaintiff was not authorized to sell Youngblood products (SOF ¶ 13);

- Plaintiff did not ask Youngblood for permission to sell Youngblood products (SOF ¶ 13);
- Plaintiff's purported Youngblood products sold did not come with a Youngblood 100% satisfaction guarantee ("Warranty") (SOF ¶ 14; Affidavit of Pauline Toth, attached hereto as Exhibit "A.");
- Plaintiff does not offer any warranty or even allow returns of any of its cosmetics sold on its Amazon Storefront, including Youngblood products (SOF ¶ 15);
- Plaintiff violated Amazon's Authenticity Guidelines by listing the purported Youngblood products on its Amazon Storefront as "new" when those products did not come with a Warranty (SOF ¶ 16.);
- Plaintiff's purported Youngblood products were inauthentic and counterfeit (SOF ¶¶ 8-16).

To be sure, Plaintiff's resale of purported Youngblood products on its Amazon Storefront was in direct violation of Amazon's guidelines and Youngblood was entirely justified in reporting the inauthenticity and counterfeit sale of purported Youngblood products by Plaintiff.

### ii. *Authorized Products and Legitimate Concern Regarding Secondary Market*

Youngblood had a legitimate concern that the sale of inauthentic and counterfeit products was diluting Youngblood's brand and the quality of its products. SOF ¶ 1-5. Sales by "unauthorized sellers through the online marketplaces also threaten a manufacturer's ability to maintain its goodwill, reputation, and brand integrity." *Otter Products, LLC v. Wang*, 2019 WL 1403022, *1 (D. Co. Mar. 28, 2019). Certainly, Youngblood was concerned that sale on the secondary market was degrading and diminishing, on a daily basis, the Youngblood brand as customers were purchasing purported Youngblood products that were unauthorized and potentially expired or fake. SOF ¶¶ 3-5.

Youngblood acting to protect its products from legitimate concerns regarding dilution of its brand. In that regard, the health and safety of the products customers purchase is a legitimate business concern. Accordingly, Youngblood was justified in submitting its complaints to Amazon to stop the sale of inauthentic and counterfeit products by Plaintiff. *Barco Holdings, LLC v. Terminal Inv. Corp.*, 967 So. 2d 281, 293 (Fla. 3d DCA 2007) (affirming summary judgment finding prospective individual buyer had valid business interest in preserving island and was thus, justified.); *Swiss Watch Intern., Inc. v. Movado Group, Inc.*, 2001 WL 36270980, *4 (S.D. Fla. Jun. 21, 2001) (finding SWI acknowledges the existence of the grey market and that it knew of Movado's intent to curb the unauthorized importation of Movado brand watches from outside the

United States. Thus, the Court held that Movado's actions in furtherance of its own interests are nonactionable). Accordingly, "[t]here can be no claim [for tortious interference with a business relationship] where the action complained of is undertaken to safeguard or promote one's financial or economic interest." *Genet Co. v. Annheuser–Busch, Inc.*, 498 So.2d 683, 684 (Fla. 3d DCA 1986). Moreover, Plaintiff has proffered no evidence to support its claim that Youngblood submitted its complaints to Amazon in bad faith or with malicious intent to harm Plaintiff's business. *Ice Portal, Inc. v. VFM Leonardo, Inc.*, 2010 WL 2351463, at *7 (S.D. Fla. Jun. 11, 2010) ("[A]ctions taken to safeguard or protect one's financial interest" are privileged "so long as improper means ... include[ing] physical violence, misrepresentations, intimidation, conspiratorial conduct, illegal conduct, and threats of illegal conduct ... are not employed.").

For the reasons set forth above, Youngblood was justified in submitting its complaints to Amazon, and thus, did not tortuously interfere with any alleged business relationship.

## C. **Plaintiff Failed to Present Evidence that Youngblood Caused Amazon to Shut Down the Amazon Storefront**

Plaintiff cannot demonstrate that Youngblood caused any of Plaintiff's customers to discontinue making purchases on the Amazon Storefront, or that Youngblood's complaints caused Amazon to temporarily deactivate Plaintiff's Amazon Storefront. Indeed, "[a]s with most other torts, embedded within the essential elements of the tort of intentional interference with a business relationship is the legal requirement that the plaintiff prove causation." *St. Johns River Water Management Dist. v. Fernberg Geological Services, Inc.*, 784 So. 2d 500, 504 (Fla. 5th DCA 2001); *Networkip*, 922 So.2d at 358 ("A cause of action for tortious interference requires a showing of both an intent to damage the business relationship and a lack of justification to take the action which caused the damage.").

Specifically, in this action, Plaintiff claims that its Amazon Storefront would not have been shut down but for Youngblood's complaints to Amazon. *See* Compl. [D.E. 1] ¶¶ 16(a), 23. Plaintiff also makes the bold accusation that its entire business has been destroyed as a result of Youngblood's complaints to Amazon. SOF ¶ 60. As detailed below, Plaintiff cannot demonstrate Youngblood was the cause of the deactivation because (1) there is no record evidence that any complaint by Youngblood caused Amazon to deactivate the Amazon Storefront; (2) Plaintiff made misrepresentations in violation of Amazon's guidelines which caused Amazon to not reinstate

Plaintiff; and (3) there is no evidence the products sold by Plaintiff that purported to be Youngblood products were, in fact, genuine Youngblood products.

### i. There is record evidence that any complaint made by Youngblood caused Amazon to deactivate the Amazon Storefront

Initially, other than Plaintiff's self-serving speculative testimony and conclusory allegations, there is absolutely no record evidence that any complaint made by Youngblood caused Amazon to deactivate the Amazon Storefront. Although Amazon provided declarations and produced documents, there is no testimony nor any documents that demonstrate Youngblood's complaints were the cause of the deactivation. "The requisite showing of causation cannot be supported by mere supposition that defendant's interference caused the cessation of the business relationship." *Realauction.com, Inc. v. Grant Street Group, Inc.*, 82 So. 2d 1056, 1059 (Fla. 4th DCA 2011) (affirming entry of directed verdict finding that defendant failed to present any document or witness testimony other than speculative testimony of its own president as to the cause of the cessation of the business relationship).

To be sure, at the summary judgment stage, speculative testimony from Plaintiff and conclusory allegations are insufficient to overcome summary judgment; Plaintiff must come forth with evidence that Youngblood caused the deactivation of the Amazon Storefront. *Stephen v. H. Lee Moffitt Cancer Ctr. & Research Institute Lifetime Cancer Screening Ctr., Inc.*, 259 F. Supp. 3d 1323, 1344 (M.D. Fla. 2017) (granting summary judgment to defendant where plaintiff failed to provide admissible evidence to prove elements of case, and plaintiff could not rely solely on allegations contained in the complaint and plaintiff's deposition testimony); *Mendoza v. Sec'y, Dep't of Homeland Sec.*, 2015 WL 13310428, at *2 (M.D. Fla. Dec. 29, 2015) ("[U]nsupported speculation [] does not meet a party's burden of producing some defense to a summary judgment motion [because] [s]peculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (quoting *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005)) (emphasis in original). Indeed, "it is one thing to allege such a claim and another to prove it . . . ." *Brousseau v. Clermont Cty. Cmm'rs*, 786 F.2d 1163 (6th Cir. 1986). Here, Plaintiff has not done so. As detailed below, the cause of the deactivation was Plaintiff's failure to respond to Amazon regarding the prior complaints made by consumers and companies unaffiliated with Youngblood, Plaintiff's misrepresentations to Amazon regarding Youngblood's complaints, and failure to provide the source documentation requested by

Amazon to show that the purported Youngblood products sold on Plaintiff's Amazon Storefront were genuine and authentic Youngblood products.

> ii.    ***Plaintiff's Prior Complaints demonstrated a Pattern and Practice of Plaintiff violating Amazon's Guidelines which caused Amazon to deactivate Plaintiff's Storefront.***

Between January and July 2018, Amazon received several prior complaints against Plaintiff's Amazon Store related to Plaintiff's sale of inauthentic and counterfeit products. SOF ¶ 22-27. Crucially, these prior complaints are substantially similar to the Youngblood complaints against Plaintiff—*i.e.*, the products Plaintiff was listing for sale were inauthentic and counterfeit products SOF ¶¶ 22-27. For example, Giovanni Cosmetics submitted two complaints to Amazon that Plaintiff was selling counterfeit products because they were materially different from the authentic Giovanni Cosmetics' product that come with a 60-day guarantee. SOF ¶¶ 22-23. Similar to Plaintiff's misrepresentation that the Youngblood products were "new," when they in fact did not come with a warranty, Plaintiff purported to sell Giovanni Cosmetics' products as "new;" however, the products did not have the guarantee. *Id.* With each complaint, Amazon prohibited Plaintiff from selling the specific products. SOF ¶¶ 22-27. With each complaint, Amazon informed Plaintiff that if it believed that the reported product was not counterfeit, Plaintiff could provide supporting documentation to Amazon. SOF ¶¶ 22-27.

Plaintiff did not provide any supporting documentation to Amazon. SOF ¶ 29. Instead, Plaintiff had a specific policy not to respond to these complaints. *Id.* Subsequently, in July of 2018, Amazon actually suspended Plaintiff's Amazon Storefront for performance concerning its late shipment rate. SOF ¶ 31. Specifically, Plaintiff was missing their objectives on shipping time to customers. *Id.*

> iii.    ***Plaintiff's Misrepresentations to Amazon Violated Amazon's Guidelines and caused Amazon to Terminate Plaintiff's Right to Sell on the Amazon Storefront***

Plaintiff made false statements to Amazon in responding to the Youngblood complaints. Specifically, after the temporary deactivation, in its First Plan of Action submitted to Amazon, Plaintiff represented to Amazon that it "review [its] product offerings, to ensure compliance with Amazon's terms of service related to intellectual property." SOF ¶ 43. Testimony from former manager of Plaintiff's Amazon Storefront demonstrates that was a false statement. Indeed, Solu-

Med did not review Youngblood's Warranty nor provide Amazon with proof of authenticity information. SOF ¶ 44.

Similarly, in its Second Plan of Action submitted to Amazon, Plaintiff represented that "[w]e were listing Youngblood Cosmetics product that we sourced from a distributor, and the brand may not have been aware that we were selling their product on Amazon that was purchased through that distributor." SOF ¶ 46. Again, this is a false representation to Amazon. Plaintiff never contacted Youngblood nor asked permission to sell Youngblood. SOF ¶ 47. Nor did Plaintiff ask its distributor, Imperial Trading Limited ("Innopex"), if it had authority to sell Youngblood products. *Id.* To be clear, Plaintiff's false statements to Amazon are a violation of Amazon's Seller Code of Conduct, which requires Plaintiff not misrepresent information or mislead Amazon. SOF ¶ 7.

Lastly, in Plaintiff's Third Plan of Action submitted to Amazon, Plaintiff represented to Amazon that "[w]e have been selling on Amazon for five years, and Youngblood for two years, without complaint. The items that we sourced are authentic, genuine products and we follow the Amazon Catalog Listing protocol to create all of our listings (more detail in bullet II below)." SOF ¶ 49. Furthermore, Plaintiff represented that it "launched an immediate investigation of our supply chain to confirm chain of custody. We evaluated all items in our catalog in order to determine if there were any issues that may have led to this type of allegation being directed toward our products. . . [and] [w]e reviewed our internal operational procedures for listing items with Amazon . . ." SOF ¶ 51. However, Plaintiff did not review any procedures because it maintained no internal operating procedures. SOF ¶ 52. Plaintiff also submitted a document that did not show the source information. *Id.* After Plaintiff's Third Plan of Action, on December 20, 2018, Amazon deactivated Plaintiff's Amazon Storefront. SOF ¶ 57.

The record is replete with false representations made by Plaintiff to Amazon. As detailed above, Plaintiff had seven prior complaints asserted against it lodged by other companies for violating trademarks and selling inauthentic and counterfeit products prior to the shutdown on November 13, 2018. SOF ¶¶ 22-27, 50. Additionally, Plaintiff did not contact Youngblood, the manufacturer, to determine whether the products Plaintiff was selling were authentic and it did not contact Innopex to determine the source of the products. SOF ¶¶ 50, 52. Rather, Plaintiff merely looked at the product to determine whether the listing number ("ASIN") matched to Amazon's ASIN for the product; however, as acknowledged by Plaintiff's former eCommerce Manager, this

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

method is not a way to determine authenticity of the product. SOF ¶ 49. Similarly, Plaintiff did not have the source information for the Youngblood products and did no investigation as it did not contact Innopex to determine the source of the Youngblood products. SOF ¶ 52. Instead, Plaintiff submitted an invoice from Plaintiff's "distributor" that does not reflect the source of the purported Youngblood products. *Id.* Lastly, it is undisputed that Plaintiff did not have any internal operating procedures in place with respect to listing products on Amazon. SOF ¶ 52.

Accordingly, it was not Youngblood who caused the deactivation or the delay in reinstatement of Plaintiff's Amazon Storefront, but instead, Plaintiff's failure to provide Amazon with the requested information to verify the source of the purported Youngblood products that caused the deactivation or the delay in reinstatement of Plaintiff's Amazon Storefront.

### iv. *There is No Record Evidence of Source Documents of the Purported Youngblood Products*

Plaintiff's lack of source documentation caused Plaintiff's Amazon Storefront to remain deactivated. Despite multiple requests, Plaintiff did not provide Amazon with sufficient information regarding the source of the purported Youngblood products sold on Amazon. SOF ¶¶ 45, 48, 54, 56, 57.

To date, Plaintiff has been unable to produce evidence of the same. There is no evidence of record establishing the products sold by Plaintiff were in fact genuine and not counterfeit Youngblood products. Indeed, there is no evidence of an invoice or receipt from Youngblood to a distributor to Plaintiff's purported distributor, Innopex to Q-Med, LLC ("Q-Med"), and then to Plaintiff. Indeed, Plaintiff did not ask for or research where its purported distributors, Q-Med or Innopex obtained the purported Youngblood products it resold on the Amazon Storefront. SOF ¶¶ 18-19. Thus, there is zero record evidence establishing the products sold by Plaintiff were in fact genuine Youngblood products. To be sure, if there is no evidence that Plaintiff actually sold authentic and genuine Youngblood products, Youngblood was entirely justified in complaining to Amazon regarding the sale of inauthentic and counterfeit Youngblood products. Accordingly, for the reasons set forth above, Youngblood is entitled to summary judgment in its favor.

### III. Plaintiff Has Failed to Put Forth Any Evidence That Youngblood Committed a Deceptive Act or Engaged in an Unfair Practice

Plaintiff's FDUPTA claim fails as a matter of law because Plaintiff has failed to put forth any evidence that Youngblood committed any "deceptive act or unfair practice" by submit its complaints to Amazon.

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING · 222 LAKEVIEW AVENUE, SUITE 120 · WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 · (561) 683-8977 FAX

A FDUPTA claim has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach County, Inc.*, 169 So. 3d 164, 167 (Fla. 4th DCA 2015). The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).[2]

### A. <u>Youngblood Did Not Commit a Deceptive Act or Engage in an Unfair Practice</u>

Here, Plaintiff alleges that Youngblood committed a "deceptive act and/or unfair practice by falsely reported to Amazon that Plaintiffs were selling counterfeit merchandise in their online store." *See Compl.* ¶ 28 [D.E. 1]. However, Youngblood's submission of its complaints do not in any way, shape or form, amount to a "deceptive act or unfair practice."

Youngblood did not commit an allegedly deceptive act or unfair practice. Indeed, Plaintiff does not point to a single misleading statement, omission, or device that was "likely to mislead consumers acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v. Beacon Prop. Mgmt. Inc.*, 842 So.2d 773, 777 (Fla. 2003) (internal quotations and citations omitted). Rather, Plaintiff offers nothing more than its conclusory assertions that Youngblood's complaints to Amazon were false and "deceptive and/or unfair practice." Indeed, that is insufficient to establish a deceptive act or unfair trade practice.

Courts have found a deceptive act where a party was "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *State Farm Mut. Auto. Ins. Co. v. Medical Services Center of Florida, Inc.*, 103 F. Supp. 3d 1343, 1354 (S.D. Fla May 8, 2015) ("Fraudulent conduct in the context of billing for PIP benefits qualifies as a deceptive act for purposes of FDUTPA.") *Alhassid v. Bank of Am., N.A.*, 2015 WL 11110557 (S.D. Fla. Nov. 4, 2015) (finding sending of inaccurate and false correspondence to [Plaintiff] citing the improper default status of the loan was a deceptive act); *Cox v. Porsche Financial Services, Inc.*, 342 F. Supp. 3d 1271,1288 (S.D. Fla. Oct. 19, 2018) (finding the failure to reduce the capitalized cost by the net trade-in value was deceptive.)

---

[2] "Trade or commerce" is defined as "advertising, soliciting, providing, offering or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 502.204(8).

Similarly, courts have found an unfair practice where the practice "offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So.2d 489, 499 (Fla. 4th DCA 2001) (internal citations omitted); *Cabrera v. Haims Motors, Inc.*, 288 F. Supp. 3d 1315, 1325 (S.D. Fla. 2017) (finding that deception or unfair practice under FDUTPA occurred "where Plaintiff was charged [fees] that a reasonable consumer in the same circumstances would likely think were mandated by and forwarded to the state."); *Webber v. Bactes Imaging Sols., Inc.*, No. 2D18-2964, 2020 WL 215819, at *2 (Fla. 2d DCA Jan. 15, 2020) (holding overcharging patients for medical records in violation of Florida Administrative Code Rule 64B8 was an unfair practice because such conduct "frustrates patient access to medical records").

Unlike *State Farm, Alhassid, Cox, Cabrera and Webber*, Youngblood's complaints to Amazon were not deceptive.[3] Here, there is no record evidence that Youngblood's complaints to Amazon were in fact misleading to a consumer acting reasonably in the circumstances, or otherwise immoral, unethical, oppressive, unscrupulous or false.[4] Crucially, the evidence in this action demonstrates that (1) Plaintiff sold Youngblood products on Amazon as "new" without Youngblood's Warranty in violation of Amazon's Guidelines;; (2) Youngblood did not authorize Plaintiff to sell its products (3) Plaintiff neither vetted nor researched where its distributor obtained the Youngblood products from; and (4) Plaintiff did not seek permission from Youngblood to sell Youngblood products on the Amazon Store prior to listing the products. SOF ¶¶ 13-15, 18-19, 47, 50, 52. *Hodges v. Harrison*, 372 F. Supp. 3d 1342, 1351 (S.D. Fla. Feb. 8, 2019) (granting summary judgment where Plaintiffs failed to cite any evidence in the record to support allegations of specific deceptive acts or unfair practices). To be sure, there is no evidence in the record that the Youngblood products sold by Plaintiff on its Amazon Storefront were actually authentic and not counterfeit.

Moreover, there is no evidence that Amazon relied on Youngblood's complaints, which Plaintiff asserts were false, in deactivating Plaintiff's Amazon Storefront. "This itself is fatal to

---

[3] Additionally, Youngblood incorporates by reference its arguments regarding Youngblood's legitimate business concerns regarding inauthentic and counterfeit products as set forth above in Section II(B)(ii).

[4] In order to meet the elements of a FDTPA, Plaintiff must demonstrate that Amazon was misled or deceived to not purchasing goods and services from Plaintiff. There is no evidence that Amazon was a consumer of Plaintiff's Amazon Storefront let alone misled or deceived in not purchasing goods and services from Plaintiff.

plaintiff's claim because an FDUTPA claim must allege that the deceptive act or unfair practice actually caused plaintiff's claimed damages." *Dolphin, LLC v. WCI Communities, Inc.*, 2008 WL 6894512, *5 (S.D. Fla. 2008) (finding there was no evidence that plaintiff relied on any misleading statements in signing a contract). To be sure, as set forth above, Youngblood was not the cause of the deactivation of Plaintiff's Amazon Store. *See* Section II, (C), *supra*. Simply put, the record is devoid of any evidence to support Plaintiff's conclusion that Youngblood committed a deceptive act or engaged in an unfair practice in violation of FDUPTA. Accordingly, for the reasons set forth herein, Youngblood is entitled to summary judgment as to Count II of Plaintiff's Complaint.

## IV.    There is No Evidence That Youngblood Made a False Statement of Fact under Either its Defamation or Trade Libel Claims[5]

Under Florida law, a plaintiff alleging defamation must prove the following five elements: (1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory. *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). To establish a claim of trade libel, a plaintiff must prove: (1) a falsehood, (2) has been published, or communicated to a third person, (3) when the defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff; (4) in fact, the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff, and (5) special damages are proximately caused as a result of the published falsehood. *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1348 (M.D. Fla. 2006) (citing  *Stewart Title Guar. Co. v. Title Dynamics, Inc.*, 2005 WL 2548419 (M.D.Fla.2005)).

Here, Plaintiff claims that Youngblood published false "statements in the form of written complaints to Amazon, in which they wrongfully accused Plaintiffs of selling counterfeit merchandise in their online store." *See Compl. ¶¶* 34-35 [D.E. 1].  Plaintiff similarly claims that

---

[5] Florida adheres to the rule that a single publication may give rise to only a single cause of action. *Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002) (emphasis added). Specifically, Solu-Med "may not proceed on multiple claims for the same challenged defamatory actions." *Kamau v. Slate*, 2012 U.S. Dist. LEXIS 158213, 2012 WL 5390001, at *7 (N.D. Fla. Oct. 1, 2012). This rule has been applied in a similar context to tortious interference claims based on allegedly defamatory statements. *Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So. 2d 607, 609 (Fla. 4th DCA 1975) (holding trade libel and tortious interference were not separate causes of action where the counts were based upon the same publications). Thus, should this Court grant summary judgment in favor of the tortious interference and defamation counts, it should likewise grant Youngblood's summary judgment as to Solu-Med's trade libel.

Youngblood published "false statements about Plaintiffs selling counterfeit merchandise in their online store." *Id.* at ¶¶ 40-41.

To be sure, a false statement is the *sina qua non* for recovery in a defamation action." *Hallmark Builders, Inc. v. Gaylord Broad Co.*, 733 F.2d 1461, 1464 (11th Cir. 1984). The element of "falsity" is an essential part of the plaintiff's prima facie case of defamation. *Colodny v. Iverson, Yoakum, Papiano & Hatch,* 936 F. Supp. 917, 923 (M.D. Fla. 1996) (citing *Axelrod v. Califano*, 357 So.2d 1048, 1050 (1st DCA 1978)). Similarly, a trade libel plaintiff, whether a corporate entity or private individual, has the burden of proving that the communication at issue was false. *Bothmann v. Harrington*, 458 So. 2d 1163, 1169 (Fla. 3d DCA 1984) ("In this type of action, there is no presumption that a disparaging statement is false, as is the case in a personal slander action, and the plaintiff has the burden of establishing falsity") (emphasis added).

Youngblood's complaints to Amazon were neither false nor defamatory according to Amazon's guidelines. As detailed above, under **Amazon's Anti-Counterfeiting policy** "[p]roducts offered for sale on Amazon must be authentic" and it is the "seller's and supplier's responsibility to **source, sell, and fulfill only authentic products**." SOF ¶ 8.   Additionally, pursuant to Amazon's Cosmetics and Skin Care Policy, all cosmetics sold on Amazon must be, among other things, a "new" and unused product. SOF ¶ 9. Amazon's guidelines require that products offered for sale on Amazon be "new." SOF ¶ 10. A "new" product, under Amazon's guidelines, is a "[a] brand-new, unused, unopened item in its original packaging . . . [with the] Original manufacturer's warranty, if any, still applies . . . ." *Id.*

Under Amazon's Condition Guidelines, it is a violation to sell a product on Amazon as "new" without the original manufacturer's warranty. *Id.* Similarly, Amazon's Product Authenticity guidelines state that violations of authenticity are **intellectual property violations**. SOF ¶ 11. Likewise, it is a violation of its policy to list a materially different product than the product sold— *i.e.*, listing a product in "new" condition when it, in fact, does not come with a warranty. *Id.* Therefore, pursuant to Amazon's guidelines, a product is inauthentic and counterfeit if the product is being sold as "new" without a warranty. SOF ¶¶ 8-11.

In the instant matter, under Amazon's guidelines, Plaintiff was selling inauthentic and counterfeit Youngblood products in violation of Amazon's guidelines because: (1) Plaintiff was selling purported Youngblood products as "new" on its Amazon Storefront (SOF ¶ 14); (2) Plaintiff's purported Youngblood products sold did not come with a Youngblood 100%

satisfaction guarantee ("Warranty") (SOF ¶ 14; Affidavit of Pauline Toth, attached hereto as Exhibit "A."); (3) Plaintiff does not offer any warranty or even allow returns of any of its cosmetics sold on its Amazon Storefront, including Youngblood products (SOF ¶ 15); (4) Plaintiff violated Amazon's Authenticity Guidelines by listing the purported Youngblood products on its Amazon Storefront as "new" when those products did not come with a Warranty (SOF ¶¶ 11, 16); and (5) Plaintiff's purported Youngblood products were inauthentic and counterfeit under Amazon's guidelines (SOF ¶ 16). Accordingly, Youngblood's complaints to Amazon were indeed true, based on legitimate business concerns, and not false.

Further, there is no evidence of record establishing the products sold by Plaintiff were in fact genuine and not counterfeit Youngblood products. As stated above, there is no evidence of an invoice or receipt from Youngblood to a distributor to Plaintiff's purported distributor, Innopex to Q-Med and then to Plaintiff. Indeed, Plaintiff did not ask for or research where its purported distributors, Q-Med or Innopex obtained the purported Youngblood products it resold on the Amazon Storefront. SOF ¶¶ 18-19. Thus, there is zero record evidence establishing the products sold by Plaintiff were in fact genuine Youngblood products. Absent evidence to support Plaintiff's conclusory claim that Youngblood's statements that Plaintiff was selling inauthentic and counterfeit Youngblood product was false, Plaintiff's defamation claim fails.

### A.  Statements to Amazon are Protected under Qualified Privilege

Even assuming Youngblood could demonstrate that Youngblood's statement was false, which it has not and cannot do, the statements made by Youngblood to Amazon are privileged. "A communication made in good faith on any subject matter by one having an interest therein, or in reference to which he had a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable, and though the duty is not a legal one but only a moral or social obligation." *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007) (citing *Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984).

Certainly, Youngblood has an interest in maintaining the integrity of its products by ensuring that its products are sold only by authorized resellers. SOF ¶¶ 1-5. Youngblood had reason to believe another company was selling counterfeit Youngblood products on the secondary market. SOF ¶ 3. To combat the same, Youngblood took steps to eliminate such conduct, including hiring Amazzia to combat the secondary market and unauthorized resellers. SOF ¶ 5. Similarly, Amazon has an interest in ensuring products sold on its website are authentic and Amazon promulgates its

18

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

extensive guidelines to do so. SOF ¶¶ 7-11. Accordingly, Youngblood's statements to Amazon that Plaintiff was selling counterfeit Youngblood products, even if false, which they are not, were therefore, privileged.

## V. Plaintiff Continues To Do Business on Amazon and thus, its Business Has Not Been Destroyed

Under Florida law, where a plaintiff claims that the actions of the defendant completely destroyed plaintiff's business, then the proper measure of damages is the market value of the business on the date of the loss. *Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 921 So. 2d 43, 46 (Fla. 3d DCA 2006) ("If a business is completely destroyed, the proper total measure of damages is the market value of the business on the date of the loss"). However, like all damages, damages for the complete destruction of a business "may not be determined by mere speculation or guess," rather the evidence must show "the extent of the damages as a matter of just and reasonable inference." *G.M. Brod and Co. v. U.S. Home Corp.*, 759 F.2d 1526, 1540 (11th Cir. 1985).

In this action, Plaintiff claims that its Amazon Storefront would not have been shut down but for Youngblood's complaints to Amazon. SOF ¶ 60. Plaintiff further boldly asserts that its entire business has been destroyed as a result of Youngblood's complaints. *Id.*

However, it is undisputed that since being reinstated on January 14, 2019, Plaintiff has remained "open" and has continued to sell products on Amazon. SOF ¶¶ 59-60. In fact, Plaintiff's accounting expert, Paul DeStefanis ("DeStefanis"), confirmed that Plaintiff's operations have not been interrupted since January 14, 2019. SOF ¶ 60. As a result, the record simply does not support Plaintiff's outlandish claim that its business was "completely destroyed," let alone destroyed at all. *Environmental Biotech, Inc. v. Sibbit Enterprises, Inc.*, 2008 WL 5070251, *4-5 (M.D. Fla. Nov. 24, 2008) (finding Sibbit failed to demonstrate the destruction of its business as of date of loss or any other date since it continued to provide services beyond the date of trial).[6]

---

[6] Solu-Med has projected that it will close its business as of June 30, 2020. However, Solu-Med's projection is based on nothing more than speculation and conjecture. In reality, it has no idea when it will actually close its doors. To be sure, "speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Feinman v. Target Corp.*, 2012 WL 6061745, at *6 n.4 (S.D. Fla. Dec. 6, 2012).

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING · 222 LAKEVIEW AVENUE, SUITE 120 · WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 · (561) 683-8977 FAX

Case No.: 0:19-cv-60487-RKA/PMH

Consequently, Plaintiff's assertion that its business was destroyed is, at best, a speculative conclusion. It simply has not closed its doors and continues to operate. *See e.g.*, *KMS Restaurant Corporation v. Wendy's International, Inc.*, 194 Fed. App'x 591, 601-602 (11th Cir. 2006) (finding that the value-of-the-business measure of damages was inapplicable because the businesses at issue were not destroyed: even though the plaintiffs could not operate their businesses as a Wendy's franchisee, the business nevertheless continued in operation as restaurants. Thus, "the 'business' was not completely destroyed."). Accordingly, Youngblood is entitled to summary judgment on Plaintiff's damages claim.

## VI.    The *Noerr-Pennington* Doctrine Bars Plaintiff's Claims Against Youngblood

Lastly, the *Noerr-Pennington* Doctrine derives from the First Amendment's guarantee of "the right of the people... to petition the Government for a redress of grievances." U.S. Const. amend. I. Although originally arising in the anti-trust context, "the distinction between antitrust and non-antitrust cases is not relevant to the *Noerr-Penningon* analysis, given the Supreme Court's focus on the First Amendment right to petition, rather than a statutory construction of the Sherman Act." *Select Comfort Corp. v. Sleep Better Store, LLC*, 838 F. Supp. 2d 838, 898 (D. Minn. 2012) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S. Ct. 609, 30 L.Ed. 2d 140 (1980).

District courts in the Eleventh Circuit have applied *Noerr-Pennington* in non-antitrust cases. *See Rolex Watch U.S.A, Inc. v. Rainbow Jewelry, Inc.*, No. 12-21437-CIV, 2012 WL 4138028, at *3 (S.D. Fla. Sept. 19, 2012) (applying Noerr-Pennington to unfair trade practices claim); *Atico Intern USA, Inc. v. LUV N' Care, Ltd.*, No. 09-60397-CIV, 2009 WL 2589148, at *2 (S.D. Fla. Aug. 19, 2009) (applying Noerr-Pennington to tortious interference claim); *Lynn v. Amoco Oil Co.*, 459 F. Supp. 2d 1175, 1189-90 (M.D. Ala. 2006) ("Although the Noerr-Pennington doctrine applies to antitrust conspiracies, the principles of law on which it is based are not restricted to the field of antitrust."); *Live Face on Web, LLC v. Tweople, Inc.*, 2014 WL 12611359, *4 (M.D. Fla. Sept. 29, 2014) (relying on Noerr-Pennington to deny a motion to amend that sought to add a tortious interference claim based on the intellectual property rights holder's cease and desist letters).

This "petitioning immunity" extends to "those acts reasonably and normally attendant [to] effective litigation," such as pre-suit communications, including demands and cease-and-desist letters that threaten litigation as well as "<u>publicity campaigns aimed at protecting intellectual</u>

property." *Silverhorse Racing, LLC v. Ford Motor Company*, 232 F. Supp. 3d 1206, 1211 (M.D. Fla. Jan. 30, 2017)(emphasis added). However, to receive immunity, the conduct at issue cannot fall within the "sham exception" to the *Noerr-Pennington* doctrine. In other words, the litigation activity must be genuine. *BE & K Constr. Co.*, 536 U.S. 516, 525-526, 122 S.Ct. 2390.

Here, Amazon requests and explicitly encourages intellectual property right owners to petition Amazon regarding inauthentic and counterfeit products. SOF ¶ 8. Indeed, Amazon's Anti-Counterfeiting Policy explicitly states, "[w]e stand[s] behind the products sold on our site with our A-to-z Guarantee, and we encourage rights owners who have product authenticity concerns to notify us. We will promptly investigate and take all appropriate actions to protect customers, sellers, and rights holders." *Id.* Amazon also "work[s] with rights holders and law enforcement worldwide to take and support legal action and support legal action against sellers and suppliers that knowingly violate this policy and harm our customers." *Id.*

Plaintiff asserts that Youngblood submitted false complaints to Amazon accusing Plaintiff of selling counterfeit products on its Amazon Storefront, and as a result, Amazon shut Plaintiff's store down. *See* Compl. [D.E. 1] ¶¶ 23, 28, 34-35, 40-41. Here, the conduct Plaintiff relies on to support its claims against Youngblood is privileged under the First Amendment.

Indeed, at its core, Youngblood's complaints were a petition to Amazon to stop Plaintiff from selling purported Youngblood products that were inauthentic and counterfeit on the Amazon Storefront. *Hard2Find Accessories, Inc. v. Amazon.com, Inc.,* 691 Fed.Appx.406, 407 (9th Cir. 2017) ("The district court appropriately applied the *Noerr-Pennington* doctrine, which foreclosed H2F's claims against Apple. The infringement notice that Apple sent to Amazon is sufficiently related to petitioning conduct protected by the Petitions Clause."). To be sure, this action was a clear example of a publicity campaign aimed at protecting Youngblood's intellectual property rights. *Silverhorse v. Ford Motor Company*, 2016 WL 7137273 (M.D. Fla. Apr. 27, 2017).

As detailed above, at the time Youngblood submitted its complaints to Amazon, Plaintiff was not authorized to sell Youngblood products, however, was selling Youngblood products on Amazon as "new" without the Warranty in violation of Amazon's guidelines. *Marco Island Cable, Inc. v. Comcast Cablevision of S., Inc.*, No. 2:04-cv-26-FTM-29DNF, 2006 WL 1814333, at *1 (M.D. Fla. July 3, 2006) (holding the defendant's act of sending cease and desist letters to distributors, demanding that they stop selling unlicensed and infringing products, was immunized from civil liability pursuant to the Noerr-Pennington doctrine). To be sure, Youngblood's first

step to elicit the outcome Youngblood sought—*i.e.*, the cessation of Plaintiff selling inauthentic and unauthorized Youngblood products on Amazon—was to petition Amazon, as it requested Youngblood do, to investigate the authenticity of the products sold by Plaintiff that were masquerading as genuine and authentic Youngblood products. *Silverhorse Racing, LLC,* 232 F. Supp. 3d at 1211 (holding the defendant's act of sending letters threatening to sue to enforce its exclusivity contracts fell within the scope of Noerr immunity.). Moreover, Plaintiff never alleged that Youngblood's petitioning activity was a sham. As such, the *Noerr-Pennington* doctrine immunes Youngblood's petition to Amazon.

## CONCLUSION

For the reasons set forth herein, Youngblood respectfully requests this Court enter an Order granting summary judgment in favor of Youngblood and against Plaintiff, and for any further relief this Court deems just and proper.

Dated: March 6, 2020

Respectfully submitted,

COLE, SCOTT & KISSANE, P.A.
Attorneys for Defendant
222 Lakeview Ave, Suite 120
West Palm Beach, FL 33401
Telephone: (561) 383-9203
E-mail: jonathan.vine@csklegal.com
E-mail: sheena.smith@csklegal.com

By:     */s/ Jonathan Vine*
        JONATHAN VINE
        FBN: 10966
        SHEENA D. SMITH
        FBN: 118919

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of March 2020, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF or through other approved means.

*/s/ Jonathan Vine*
JONATHAN VINE
FBN: 010966
SHEENA D. SMITH
FBN: 118919

Case No.: 0:19-cv-60487-RKA/PMH

## <u>SERVICE LIST</u>

**Kelsey K. Black, Esq.**
Black Law, P.A.
*Attorneys for Plaintiff*
1401 E Broward Blvd. Suite 204
Fort Lauderdale, FL 33301
Telephone: (954) 320-6220
Facsimile: (954) 320-6005
kelsey@kkbpa.com

**Stanley R. Goodman, Esq**
Goodman & Saperstein
Pro hac vice admission pending
666 Old Country Road, Suite 200
Garden City, NY 11530
Telephone: (516) 227-2100
Facsimile: (516) 227-2108
Gsesq600@aol.com

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX