UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 0:19-cv-60487-RKA/PMH

SOLU-MED, INC.,

 Plaintiffs,

v.

YOUNGBLOOD SKIN CARE PRODUCTS LLC,

 Defendant.
_____/

## DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF
## PAUL DESTEFANIS AND C.J. ROSENBAUM

 Defendant, YOUNGBLOOD SKIN CARE PRODUCTS LLC ("Youngblood"), moves the Court for entry of an order excluding the testimony of Plaintiffs, Solu-Med's ("Plaintiff") proffered damages expert Paul DeStefanis, and in support thereof, states as follows:

## INTRODUCTION

 Both of Plaintiff's proffered experts, their reports, opinions, and testimony should be excluded in this matter. Specifically, Plaintiff's proffered liability expert, Cory J. Rosenbaum's ("Rosenbaum") testimony should be for the following reasons:

- He never spoke with anyone at Amazon about this case;
- He never spoke with anyone at Amazon about Youngblood's complaints;
- He has no personal knowledge of why Amazon deactivated Plaintiff's Amazon store, Life & Health Source ("Amazon Store");
- He has no personal knowledge why Amazon requested information from Plaintiff regarding other complaints after the deactivation of the Amazon Store;
- He has no knowledge of the prior complaints asserted against Plaintiff;
- He has never inspected Youngblood products;
- He did not review the prior complaints against Plaintiff; and
- He is not qualified to testify as to Plaintiff's lost sales or business valuation.

*See* Rosenbaum Report, ¶ 16, attached as Exhibit "A"; Rosenbaum Dep. 82:19-21, attached as Exhibit "B.; Exhibit "A" ¶ 19.

Additionally, Paul DeStefanis ("DeStefanis"), should be excluded for the following reasons:

- He applied the wrong methodology to his analysis as Plaintiff's business was not completely destroyed and has continued for the last fourteen (14) months;
- The assumption that Plaintiff's business is in liquidation is nothing more than conjecture and conclusory statements made by Plaintiff;
- He ignored the economic realities of Plaintiff's actual business expenses and supplemented them with his own estimates; and
- He did not review critical financial data from Plaintiff's parent/sister corporation, Q-Med, LLC.

*See generally*, DeStefanis Report, attached hereto as Exhibit "C".

Accordingly, as set forth below, Rosenbaum and DeStefanis' testimony is unreliable, and thus irrelevant and will not assist the trier of fact requiring its exclusion pursuant to Rule 702 and *Daubert*. In the alternative, this testimony should be excluded pursuant to Rule 403, because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.

## MEMORANDUM OF LAW

### I.     Legal Standard Motion in Limine

"The real purpose of a motion in limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial." *Holderbaum v. Carnival Corp.,* 2015 U.S. Dist. LEXIS 180974, *2 (S.D. Fla. 2015) (quoting *Stewart v. Hooters of America, Inc.*, 2007 WL 1752843, *1 (M.D. Fla. 2007)). "A court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds." *Mowbray v. Carnival Corp.*, 2009 U.S. Dist. LEXIS 139933, *5 (S.D. Fla. 2009). Critically, the "admissibility of evidence is committed to the broad discretion of the district

court, and the decision to exclude certain evidence will be reversed only upon a clear showing of abuse of discretion." *Walker v. NationsBank N.A.*, 53 F.3d 1548, 1554 (11th Cir. 1995).

## II. Framework for Assessing the Admissibility of Expert Testimony

Opinion testimony is generally disfavored at trial. *See,* Hon. Charles R. Richey, Proposals to Eliminate the Prejudicial Effect of the Use of the Word "Expert" Under the Federal Rules of Evidence, 154 F. R. D. 537 (1994) (stating, "[h]istorically, both lay and 'expert' opinion evidence were viewed with skepticism by the courts... Mere opinions were considered unreliable bases for testimony"). Given this general aversion, expert testimony must meet strict requirements before it is deemed admissible at trial and is given the court's imprimatur of being the testimony of an "expert."

The Supreme Court has mandated that trial courts exercise vigilance in assessing the admissibility of expert testimony because of its potentially misleading and powerful influence on untrained jurors. *Daubert v. Merrel Dow Pharm.,* 509 U.S. 579, 595 (1993)[1]. Indeed, District judges must act as "gatekeepers" to ensure that evidence is both scientifically relevant and reliable. *Allison v. McGhan Med. Corp.,* 184 F.3d 1300 (11th Cir. 1999); *Kuhmo Tire Co. v. Carmichael,* 526 U.S. 137 (1999). As the Eleventh Circuit has recognized, the great weight which juries often give scientific or technical testimony explains "why the trial judge plays an important role as the gate-keeper in monitoring the evidentiary reliability of such testimony." *Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 920 (11th Cir. 1998).

In performing this gatekeeping function, courts must look to Federal Rule of Evidence 702, which governs the admissibility of expert testimony. Rule 702 provides:

---

[1] "At this point, Rule 702 has superseded *Daubert*, but the standard of review that was established for *Daubert* challenges is still appropriate." *United States v. Garcia Parra*, 402 F.3d 752, 758 (7th Cir 2005).

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

District courts must fulfill their gatekeeping function by requiring that scientific and technical expert testimony meets the standards of Rule 702. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). As this Circuit has often noted, trial courts should conduct a "rigorous three-part inquiry" to determine the admissibility of expert testimony, and consider: (1) whether the expert is qualified to testify competently regarding the matters he intends to address; (2) whether the methodology by which the expert reaches his conclusions is sufficiently reliable; and, (3) whether the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Id.* The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

### III.   Rosenbaum's Testimony Must Be Excluded Because They Are Unreliable

#### A. *Rosenbaum's Methodology Regarding His Opinions on Causation and Why Amazon Deactivated the Amazon Storefront Go to the Ultimate Issue is Unreliable*

Rosenbaum's Report and testimony is full of improper legal conclusions as to why Amazon deactivated Plaintiff's Amazon Storefront. For example, the following are examples of the legal conclusions reached by Rosenbaum:

- "[t]he suspension of the [Amazon Storefront] was caused solely by your clients going nuclear and marking an entirely baseless counterfeit complaint." Rosenbaum Dep. 82:19-21; Report ¶ 19.

- "This seller was only selling 100 percent genuine products." Rosenbaum Dep. 44:21-23.

- "there was absolutely no basis for defendants' assertion on Amazon that the products sold by plaintiff were counterfeit nor any basis for defendants to claim that the email sent to Amazon qualifies as a "retraction" on Amazon.com." Rosenbaum Report ¶ 24.

These are quintessential examples of opinions that are nothing more than legal conclusions and improper expert testimony. The Eleventh Circuit has explicitly stated that "testifying experts may not offer legal conclusions." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1112 n. 8 (11th Cir. 2005); *Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014) ("[a]n expert may testify as to his opinions on an ultimate issue of fact . . . he 'may not testify as to his opinion regarding ultimate legal conclusions.' "); *United States v. Delatorre*, 308 Fed. Appx. 380, 383 (11th Cir. 2009) (stating "an expert witness may not testify as to his opinion regarding ultimate legal conclusions"). To be sure, legal conclusions are not helpful and courts commit reversible error by admitting such legal conclusions. *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990); *Durkin v. Platz*, 2013 WL 388430, at *11 (N.D. Ga. Jan. 30, 2013) (noting that expert testimony regarding a pure legal issue is not relevant to the fact-finder because the court must instruct the jury on the applicable law). A witness also may not testify to the legal implications of conduct, for the court is the jury's only source of law. *Rosen v. Protective Life Ins. Co.*, 817 F. Supp. 2d 1357, 1385 (N.D. Ga. 2011). *Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1326 (M.D. Fla. 2015) (noting that expert opinions about state of mind or motivation is outside the bounds of appropriate expert testimony).

Here, Rosenbaum testified that "[t]he suspension of the [Amazon Storefront] was caused solely by your clients going nuclear and marking an entirely baseless counterfeit complaint." Rosenbaum Dep. 82:19-21; Report ¶ 19. cannot testify as why he thinks Amazon deactivated

Plaintiff's Amazon Storefront, what he thinks Amazon considered or did not consider in deciding deny Plaintiff's appeals, or why he thinks Amazon wanted to reinstate Plaintiff's Amazon Storefront.

As stated above, during his deposition, Rosenbaum testified that Rosenbaum "[t]he suspension of the [Amazon Storefront] was caused solely by your clients going nuclear and marking an entirely baseless counterfeit complaint." Rosenbaum Dep. 82:19-21; Report ¶ 19. Additionally, Rosenbaum testified that Amazon would not have required retractions from other complaints, unaffiliated with Youngblood, even though Amazon requested this information after Plaintiff's Amazon Storefront was deactivated. Specifically, the following exchange took place during Mr. Rosenbaum's deposition:

> Q. Does [Amazon] require those valid retractions so they can process Solu-Med's appeal?
> A. Amazon would not have required TangleTeezer or Suzi Hixon's complaint or the Evian complaint to be retracted to reinstate Solu-Med account.
> Q. Even though they said that?
> A. Correct. It doesn't say it's required to reinstate. It talks about a process. **But with 100 percent certainty they would not have required Tangle Teezer, Suzi Hixon Law, Evian's complaints to be retracted.**

Rosenbaum Dep. 85:21-25 – 86:1-9 (emphasis added).

However, Rosenbaum conceded he never spoke with anyone at Amazon about this case, the Youngblood complaints against Plaintiff, or his conclusion that "with 100 percent certainty they would not have required Tangle Teezer, Suzi Hixon Law, Evian's complaints to be retracted." Rosenbaum Dep. 86:14-23. Specifically, during Rosenbaum's deposition, the following exchange took place:

> Q. Did you speak to Amazon about this correspondence.
> A. Amazon has hundreds of thousands of people. What does that mean; did I speak to a company?
> Q. Did you speak to anyone?
> A. **No; I did not speak to an entity about these complaints, no.**

> Q. **Did you speak to Amazon or any employee from Amazon about PL2421?**
> A. **No.**
> Q. **Did you speak to anyone from Amazon about any portion of this case?**
> A. **You asked me that earlier and my answer is the same. No, I did not.**

Rosenbaum Dep. 30:2-4 (emphasis added).

Similarly, Rosenbaum merely concluded that Amazon was requiring a retraction from Youngblood in order to reinstate the Amazon Storefront.

> Q. Do you believe that they have stated that [Amazon] can't accept [Plaintiff's] appeal because it did not provide all the information that [Amazon] had asked for?
> A. From everything that I have read and **seen what Amazon was looking for was a valid and complete retraction from Youngblood until it go to the Bezos level**.

Rosenbaum Dep.87:17-23 (emphasis added).

To be sure, without having spoken with, seen any documents, or otherwise confirmed with Amazon why it deactivated Plaintiff's Amazon Store, why Amazon asked for retractions related to other complaints against Plaintiff's Amazon Store, or what specific information Amazon was requesting to reinstate Plaintiff's Amazon Store, Rosenbaum's testimony is nothing more than unsubstantiated *ipse dixit* speculation. *Eberli v. Cirrus Design Corporation*, 615 F. Supp. 2d 1357, 1367 (S.D. Fla. 2009) (noting an expert "cannot merely float unsubstantiated additional potential causes of the accident" and where the expert's testimony is pure speculation, it is inadmissible); *Lord v. Fairway Elec. Corp.*, 223 F. Supp. 2d 1270, 1281 (M.D. Fla. 2002) ("improper extrapolations from data" and "stacked and tenuous inferences do not weigh in favor of reliability"). Moreover, having an expert offer a state of mind opinion is improper and courts in the Eleventh Circuit have routinely excluded this type of opinion testimony. *See Tillman*, 96 F. Supp. 3d at 1334 (stating expert may not offer opinions on intent, motive, or what a party should

have done with that information); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (rejecting conclusory expert opinion regarding what the police knew).

Further, there is no testimony or documents from Amazon in case which demonstrates why Amazon deactivated Plaintiff's Amazon Store, why Amazon asked for retractions related to other complaints against Plaintiff's Amazon Store, or what specific information Amazon was requesting to reinstate Plaintiff's Amazon Store. To be sure, Mr. Rosenbaum's rampant surmise about what he thinks did Amazon or why Amazon took certain actions or required certain information is not supported by a single piece of evidence. Indeed, his conclusions are based on nothing more than his own "say so" and guesses about Amazon's decision-making.

Rule 702 precludes speculative testimony, and as such, this Court should not "cast a blind eye to such rank speculation being presented to our jury under the guise of reliable expert testimony." *King v. Cessna Aircraft Co.*, 2010 U.S. Dist. LEXIS 50728, 29-30; 2010 WL 1980861 (S.D. Fla. May 18, 2010); *see, e.g., Hathaway v. Bazany*, 507 F.3d 312, 318-19 (5th Cir. 2007) (proffered expert testimony was properly excluded where it had insufficient factual support and "a host of unsupported conjectures that falls short of a methodology"). Accordingly, for the reasons set forth above, Rosenbaum's testimony on the same, is inadmissible and cannot be submitted to a jury.

### a. *Rosenbaum Failed to Review Sufficient Data to Support His Opinions*

Additionally, Rosenbaum failed to verify and assess documents upon which he based his opinions, and that alone is enough to deem an expert's opinions speculative and unreliable. *Mamani v. BerzaÍn*, 2018 U.S. Dist. LEXIS 32375, *22-26 (S.D. Fla. 2018) ("'[A]n expert may not blindly rely on the conclusions of another and still meet the reliability requirements of Rule 702 and Daubert.'"). Specifically, Rosenbaum opines that Youngblood's "complaint was 100

percent baseless" because Plaintiff "sourced products from what appears to be a reliable source. And they had genuine products, there was no counterfeit." Rosenbaum Dep. 71:15-17.

However, Rosenbaum did not inspect any Youngblood products nor did he ever speak with anyone from Plaintiff regarding this case. *Id.* at 10:3-5; 138:21-25. Rather, the sole basis of his opinion that the products were genuine is his review of the deposition transcripts and his review "of some other documents" in this case. *Id.* at 120:22-25 – 121:1-11; 138:25 – 139:2-10. However, when asked about "some other documents" that support his opinions, Rosenbaum could only point to an email that stated Youngblood would file to a retraction, which is patently not a source document demonstrating that the purported products sold by Plaintiff were genuine Youngblood products. Rosenbaum Dep. 17:7-11, 16-25 – 18:1-2.

Additionally, when discussing Plaintiff's purported distributor, Imperial Trading Limited ("Innopex"), Rosenbaum again opined that Plaintiff's products were genuine based on his review of deposition testimony in this case:

> A. My understanding is that they were. They were getting volumes of the products and, as a distributor, reselling them to retailers like the plaintiffs.· So I consider them to be a distributor. It sounds like you are talking whether they were an authorized distributor or unauthorized one. But from everything I read, they were distributor; they sold genuine products to the plaintiff. Plaintiff was offering 100 percent genuine products, from what I read.

Rosenbaum Dep. 16:13-22.

Despite his assertion that he reviewed "other documents," Rosenbaum could not have reviewed any data to support his conclusion that the products were genuine in this case. To be sure, Plaintiff did not have that information and <u>none</u> has been produced in this case. *See* Adam Weinstein Dep. 17:16-21, 24:25-25:1-6, [D.E. 107-2] at pgs. 286-287; Kellon Goodson Dep., at 39:23-25 – 40:1-3; 126:19-25 – 127:1; 137:15-18, [D.E. 107-2] at pgs. 40-41, 127-128, 138. To be clear, there has been no documents produced in this case to show invoice or receipt from

9

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

Youngblood to a distributor, from that distributor to Plaintiff's purported distributor, Innopex, from Innopex to Q-Med, LLC[2] ("Q-Med"), and from Q-Med to Plaintiff. Multiple former employees of Plaintiff, who have personal knowledge, confirmed this in their depositions. *See* Adam Weinstein Dep. 17:16-21, 24:25-25:1-6, [D.E. 107-2] at pgs. 286-287; Kellon Goodson Dep., at 39:23-25 – 40:1-3; 126:19-25 – 127:1; 137:15-18, [D.E. 107-2] at pgs. 40-41, 127-128, 138. Thus, Rosenbaum failed to verify and assess documents because he did not have them to review as a part of his analysis of this case. Additionally, Rosenbaum conceded he did not inspect the Youngblood products maintained by Innopex. Rosenbaum Dep. 132:3-6. Thus, under Rule 702, Rosenbaum's failure to make any effort to base his opinions on reliable data renders his testimony inadmissible.

    **B.** *Rosenbaum is Unqualified to Offer Expert Opinions as to Lost Sales and Business Valuations*

Finally, in his Report, Rosenbaum states that Youngblood's complaint "was the cause of the plaintiff's account suspension, lost sales during the suspension and the long-term degradation of its ability to sell on Amazon and the value of plaintiff's business." Rosenbaum Report ¶ 19. Further, Rosenbaum opines that "[t]he degradation of the plaintiff's ability to sell and the value of the business remains because Amazon withheld and will likely continuously and erratically prevent plaintiff from obtaining and/or maintaining the Amazon "Buy Box" which drives the vast majority of sales on Amazon.com." *Id.*

However, regardless of the conclusions reached, Rosenbaum does not come close to meeting the expert qualification requirements under the Federal Rules. *See* Fed. R. Evid. 702 (requiring "knowledge, skill, experience, training, or education" with respect to the opinions

---

[2] Q-Med, LLC is distributor and also Plaintiff's parent/sister company. Plaintiff purportedly acquires products to sell from Q-Med. *See* Manuel Aguero Dep. 30:18-19, [D.E. 107-1], at pg. 78.

offered). To be sure, expertise in one discipline, however, does not give an expert license to testify in other distinct disciplines. *U.S. v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (noting "experience standing alone [is not] a sufficient foundation rendering reliable any conceivable opinion the witness may express"). For example, in *U.S. v. Paul*, 175 F.3d 906 (11th Cir. 1999), an attorney's testimony on handwriting analysis was excluded, even though he had done some research on the issue because "[h]is skill, experience, training and education as a lawyer did not make him any more qualified to testify as an expert on handwriting analysis than a lay person who read the same articles." *Id* at 912. Thus, there must be a connection between the qualification and the opinion expressed.

Here, Rosenbaum is not qualified to testify as to Plaintiff's purported lost sales during the deactivation of the Amazon Storefront or the value of Plaintiff's business. Rosenbaum is a practicing lawyer licensed in New York and the Northern District of Illinois. Rosenbaum Dep. 3:18-23. By his own admission, he is not a valuation expert. Rosenbaum Dep. 12-13. Nonetheless, he purports to give opinions that Plaintiff "lost sales" and "the value of this business" after the deactivation. Rosenbaum Dep. 114:5-10; 116:16-22.

Rosenbaum does not possess an accounting degree, he does not have any expertise as an economist, he has no accreditation or certification to in business valuations, and he has ever been qualified by a Court to opine as an accountant or in business valuations. Rosenbaum Dep. 114:24 - 115: 1-7, 11-25; 116:1-2. Rather, Rosenbaum's only "training" in business valuation is listening to other people deliver presentations on business valuations and his own purported experience with seller accounts. Rosenbaum Dep. 116:4-12. Moreover, his testimony is utterly baseless as he admits he did not review any documents reflecting Plaintiff's sales. Rosenbaum Dep. 114:11-13, 18-23. "An expert opinion is inadmissible when the only connection between the conclusion and

the existing data is the expert's own assertions ...." *McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004). Accordingly, Rosenbaum's lost sales and business valuation opinions should be excluded because he does not have the requisite background, work experience, or training to render an expert opinion on Plaintiff's lost profits or business valuations.

## IV. The Damages Opinions of DeStefanis Are Unreliable and Not Helpful to the Jury

At the outset, this Court must make "a preliminary assessment of whether the reasoning or methodology underlying [proffered expert] testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. None of Rule 702 requirements are satisfied here.

### A. *DeStefanis' Methodology is Unreliable as Any Alleged Damages Suffered by Plaintiff Must be Measured By Lost Profits, Not its Market Value of the Business Rendering His Opinion Unhelpful to the Jury*

DeStefanis's Report and testimony is unreliable under Daubert and Rule 702 because it is premised on assumption that Plaintiff's business was completely destroyed by Youngblood and it is in liquidation. As described below, this is based a baseless assumption provided to him by Plaintiff as Plaintiff's business has not been completely destroyed. *See generally*, DeStefanis' Report; DeStefanis Dep. 19:15-16, attached hereto as Exhibit "D".

Florida law could not be clearer: where plaintiff's business is not completely destroyed plaintiff's business, then the proper measure of damages is the lost profits of the business, not the market value of the business on the date of the loss. *KMS Resturant Corp. V. Wendy's Intern., Inc.*, 194 Fed A'ppx. 591, 601 (11th Cir. 2006)(citing *Montage Group, Ltd v. Athle-Tech Computer Systems, Inc.*, 889 So. 2d 180, 193 (Fla. 2nd DCA 2004)); *Envtl. Biotech, Inc. v. Sibbett Enter., Inc.*, 2008 WL 5070251, at *5 (M.D. Fla. Nov. 24, 2008) (disregarding expert's testimony as unreliable under Daubert where expert analyzed plaintiff's damages using the complete destruction

of business theory, when he should have used lost profits theory because plaintiff's business was not completely destroyed). To be clear, continuing businesses are entitled to seek lost profits. *Sostchin v. Doll Enters., Inc.*, 847 So. 2d 1123, 1128 (Fla. 3d DCA 2003).

On January 14, 2019, Amazon reinstated Plaintiff's Amazon Storefront and Plaintiff resumed operations. Since that time, Plaintiff has for the last fourteen (14) months (and counting) continued to operate and sell products on Amazon, as DeStefanis acknowledged. DeStefanis Depo. 36:12-18 (Q. So the store became -- was reinstated in January of 2019. A. Correct. Q. An it operated from January 2019 through today; is that right? A. **It is still operating, yes**.) (emphasis added).

Despite his admission that Plaintiff has continued its business, DeStefanis analyzes Plaintiff's damages solely in terms of the valuation and liquidation, and completely fails to offer an opinion on Plaintiff's lost profits. *See* DeStefanis' Report. Under Florida law, DeStefanis applied the wrong methodology since Plaintiff's has continued its business and is still operating. *Katz Deli of Aventura, Inc. v. Waterways Plaza, LLC*, 2013 WL 6212040, at *4 (Fla. 3d DCA 2013) (finding that proper measure of damages was lost profits under the "unique set of facts" where plaintiff's business was merely crippled from defendant's conduct, but still remained in active operation for considerably more than a year before dwindling away [and even attempted to reopen]; distinguishing itself from Duck Tours). To be sure, where the expert uses the wrong methodology, its opinion is flawed, unhelpful to the jury, and must be excluded. *See generally Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1250 (11th Cir. 2007) (finding that district court properly excluded expert reports under Daubert and Fed. R. Evid. 702 because the reports were based upon improper methodology).

### B. *DeStefanis' Valuation Analysis is Based on Unsubstantiated Assumptions*

Additionally, DeStefanis' opinions are based on the flawed assumption that Plaintiff is in liquidation. *See* DeStefanis' Report. DeStefanis calculated the value of Plaintiff's business based on his assumption that Plaintiff is in liquidation based on a conversation he had with management of Plaintiff. DeStefanis Depo. 36:12-18. This assumption is utterly baseless and not supported by admissible evidence and concrete facts. *See DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140, 1159 (N.D. Cal. 2003) ("Juries are told they cannot decide damages by speculation and they certainly cannot consider the issue when the only evidence presented to them is itself speculative**.**").

Specifically, DeStefanis testified that he had a conversation with Plaintiff's CEO, Aguero, in "fall of '19" that Plaintiff was no longer buying products to sell and as a result, is in liquidation. DeStefanis Dep. 20:19-19. However, there is no admissible evidence to support Plaintiff is actually in liquidation. Indeed, other than self-serving testimony of Lorie, there is no documentation to support plaintiff is in liquidation.[3] *See* Joaquin Lorie Deposition, [D.E. 107-4], pg. 13, 132:9-10. To be sure, no such information was produced by Plaintiff during discovery. Similarly, Aguero was deposed as the corporate representative in this case on November 20, 2019. Nowhere in Aguero's testimony, as the corporate representative of Plaintiff, does he testify that Plaintiff is in liquidation. *See* Manuel Aguero Dep., [D.E. 107-1], at pgs. 71-110. In fact, from January 2019 – December 2019, Plaintiff made sales and continued operation. *See* DeStefanis Report.

As stated above, "[a] store that is recording sales is indicative of a store that is operating." Richard Gray Dep. 95:13-15. Despite Plaintiff's claim that it is only selling its inventory,

---

[3] To be clear, Lorie could not even identify the date that Plaintiff allegedly stopped purchasing products to sell. Lorie Dep. 132:23-24, [D.E. 107-4], pg. 13.

Plaintiff's general ledger in 2019 reflects purchases of inventory in July 2019 from its distributor, Imperial Trading Limited ("Innopex"). *See* Affidavit of Richard Gray, attached as Exhibit "E". Indeed, this indicates that Plaintiff is continuing its business and is not in liquidation. *Id.*

Accordingly, other than self-serving testimony of Lorie, there is no basis for support that Plaintiff is actually in liquidation. Experts have a duty to validate the assumptions that they use, and their opinions must be excluded if they fail to do so. *See Lippe v. Bairnco Corp.*, 99 Fed. Appx. 274, 279 (2d Cir. 2004); *Washington v. Vogel*, 880 F. Supp. 1545, 1547 (M.D. Fla. 1995). DeStefanis' failed to do so and as such, his entire opinion is based solely on the unsubstantiated assumption that Plaintiff is in liquidation. Accordingly, this threshold flaw renders the entire DeStefanis' Report, and any damages testimony of DeStefanis, completely inadmissible.

### C. DeStefanis's Report Must be Excluded Because it is Based on Assumptions Rather than the Actual Data Thus, His Report is Unreliable

Even assuming that DeStefanis used the proper method of calculating damages, DeStefanis' Report and testimony is based on faulty assumptions and flawed methodology.

It is axiomatic that under Daubert and Rule 702 an expert's opinion evidence should not be based on assumptions when actual data was available. *Finestone v. Florida Power & Light Co.*, No. 03-14040-CIV, 2006 WL 267330, *12-13 (S.D. Fla. Jan. 6, 2006) (excluding expert testimony that was based on false assumption rendering their methodology unreliable); *Tyger Construction Co. v. Pensacola Construction Co.*, 29 F.3d 137, 143 (4th Cir. 1994) ("Expert opinion evidence based on assumptions not supported by the record should be excluded"); *Nebraska Plastics. Inc. v. Holland Colors Americas. Inc.*, 408 F.3d 410, 416 (8th Cir. 2005) ("Even a theory that might meet certain Daubert factors ... should not be admitted if it does not apply to the specific facts of the case.").

In the instant matter, DeStefanis relied almost exclusively on assumptions based on his own personal company's expenses and ignored pertinent documents, facts, and testimony regarding Sol-Med's revenue and expenses, which form the foundation of his measure of damages in this case. DeStefanis Dep. 27:3-4 ("For my purposes I didn't use their operating expenses to project I used them as a basis to look at how they were doing it, and then I put in the expenses **I deemed would be necessary if I was running the company**.") (emphasis added).

By way of background, Plaintiff started as a department within Q-Med, LLC ("Q-Med). From approximately 2015 through December 31, 2017, Solu-Med operated as a department within Q-Med. *See* Deposition of Solu-Med's Corporate Representative, [D.E. 107-2], at pg. 330, 130:13-16. On January 1, 2018, Solu-Med became operating as a separate and independent company as well as keeping separate financial information. *See Id.* at pg. 330, 130:16-20. Nonetheless, Q-Med and Plaintiff's file consolidated tax returns. *Id.* at pg. 328, 126:6-9.

Despite the alleged separation, Q-Med and Plaintiff remained significantly intermingled. For example, (1) Plaintiff's operation is located inside Q-Med's warehouse; (2) the two companies share the same CFO (Lorie) and CEO (Aguero); (3) Plaintiff uses Q-Med's purchasing and distribution software; (4) there were a number of Q-Med employees who worked for Plaintiff, but were paid by Q-Med; (5) Q-Med continues to pay significant expenses for Plaintiff, including rent, insurance, and certain personnel; (6) and in fact, all financial reporting that is done at Solu-Med is actually done by Q-Med employees. *See* Lorie Dep. 24:20-23; 34:6-6-13; 43:19-24 – 44:6, [D.E. 107-4], at pgs. 9-17; *see* Deposition of Solu-Med's Corporate Representative, [D.E. 107-2], at pg. 328, 125:22-23.

Despite the same, DeStefanis testified he chose not to review any financial documents relating to Q-Med. Indeed, when asked whether he review Q-Med's financials, the following exchange took place:

> Q. . . . you did not review any of Q-Med's financial statements in preparing your opinions in this matter; is that right?
> A. **No.**
> Q. **Not for 2014, 2015?**
> A. **No.**
> Q. Sorry. You're shaking - -
> A. **No. They're all no. I didn't review anything from Q-Med**
> Q. Okay. 2016?
> A. **I didn't review anything from Q-Med.**
> Q. Okay. And you did not review the documents produced by Kaufman Rossin recently; is that right?
> A. **I have not seen that.**

DeStefanis Dep. 48:9-21.

To be sure, these documents were available as Q-Med and Plaintiff are significantly intermingled and were actually produced in this case. *See* Lorie Dep. 24:20-23; 34:6-6-13; 43:19-24 – 44:6, [D.E. 107-4], at pgs. 9-17; *see* Deposition of Solu-Med's Corporate Representative, [D.E. 107-2], at pg. 328, 125:22-23. DeStefanis decided to ignore critical data that would have allowed him to more accurately project Plaintiff's purported business expense and instead, relied on documents which do not include any of Plaintiff's actual expenses.[4] Indeed, DeStefanis admitted he had no idea (1) how much Plaintiff paid in rent, (2) how much Plaintiff paid for insurance, or (3) who pays for payroll for the accounting department. DeStefanis Dep. 28:13-16.

---

[4] DeStefanis solely relied on Key Performance Indicators ("KPI") which solely reflect Plaintiff's historical revenues, fees, and costs of goods for items sold on Amazon. DeStefanis Dep. 49:11-25 -50:1-6. Indeed, as conceded by DeStefanis, KPI metrics do not reflect the rent expense, insurance payroll expenses, utilities expenses for Plaintiff's business. Kellon Goodson Dep. 159:7-17; DeStefanis Dep. 50:24-25 – 51:1, 4-6. To be sure, even DeStefanis even "caution[ed]" himself to even call the financials. DeStefanis Dep. 49:17-18.

Rather, instead of relying on data regarding the actual expenses incurred by Plaintiff in the course of its history with Q-Med, all of DeStefanis' Report is based his Report of his own online company's expenses and not what Plaintiff was incurring in the operation of its business. DeStefanis Dep. 80:1-5. (Q. . . . so all of the number in here, as relates to the rent and expenses and utilities, are based on your own company's only and your experience not based on what actually Solu-Med was incurring; is that right? A. Yeah.); DeStefanis Dep. 28:17-20 (A. . . .And for my purposes they weren't there before. In doing the DCF model I put in expenses that I thought were reasonable). DeStefanis' online sales company sells ink cartridges, which he acknowledged is a completely different market than cosmetics. DeStefanis Dep. 27:2-25 – 28:1-5.

DeStefanis cannot simply ignore Plaintiff's actual business and supplement its expenses for what he thinks its expenses should be. Indeed, courts routinely exclude testimony from purported experts for failure to look at documents to validate their opinions. *See, e.g., KW Plastics v. United States Can Co.*, 131 F. Supp. 2d 1289 (M.D. Ala. 2001) (excluding lost profits expert opinion where proffered expert failed to look at documents to corroborate assumption of building costs); *U.S. v. Rushing*, 388 F.3d 1153, 1156 (8th Cir. 2004) (expert's testimony held inadmissible where expert failed to consider pertinent facts, the court noting that expert testimony should not be admitted when speculative or not supported by sufficient facts). By failing to review pertinent documents, DeStefanis' Report, opinions, and testimony are inadmissible. Accordingly, for the reasons set forth herein, DeStefanis' expert report, opinions, and testimony should be excluded.

## CONCLUSION

For the reasons set forth herein, Youngblood respectfully requests this Court enter an Order granting excluding the reports, opinions, and testimony of Rosenbaum and DeStefanis and for any further relief this Court deems just and proper.

Case No.: 0:19-cv-60487-RKA/PMH

| | |
|---|---|
| Dated: March 6, 2020 | Respectfully submitted, |

COLE, SCOTT & KISSANE, P.A.
Attorneys for Defendant
222 Lakeview Ave, Suite 120
West Palm Beach, FL 33401
Telephone: (561) 383-9203
Facsimile: (561) 683-8977
E-mail: jonathan.vine@csklegal.com
E-mail: sheena.smith@csklegal.com

By:   */s/ Sheena D. Smith*
      JONATHAN VINE
      FBN: 10966
      SHEENA D. SMITH
      FBN: 118919

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of March 2020, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system. I

*/s/ Sheena D. Smith*
JONATHAN VINE
FBN: 010966
SHEENA D. SMITH
FBN: 118919

## SERVICE LIST

| | |
|---|---|
| **Kelsey K. Black, Esq.** | **Stanley R. Goodman, Esq** |
| Black Law, P.A. | Goodman & Saperstein |
| *Attorneys for Plaintiff* | Pro hac vice admission pending |
| 1401 E Broward Blvd. Suite 204 | 666 Old Country Road, Suite 200 |
| Fort Lauderdale, FL 33301 | Garden City, NY 11530 |
| Telephone: (954) 320-6220 | Telephone: (516) 227-2100 |
| Facsimile: (954) 320-6005 | Facsimile: (516) 227-2108 |
| kelsey@kkbpa.com | Gsesq600@aol.com |