UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 0:19-cv-60487-RKA/PMH

SOLU-MED, INC.,

    Plaintiffs,

v.

YOUNGBLOOD SKIN CARE
PRODUCTS LLC,

    Defendant.
_____/

## DEFENDANT'S RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant, YOUNGBLOOD SKIN CARE PRODUCTS LLC ("Youngblood"), by and through undersigned counsel, pursuant to Rule 56.1 of the Local Rules of the Southern District of Florida and Federal Rule of Civil Procedure 56(c)(2), submits its Response in Opposition to Plaintiff, Solu-Med, Inc.'s ("Solu-Med") Statement of Undisputed Material Facts [D.E. 104] in Support of Solu-Med's Motion for Partial Summary Judgment [D.E. 105], and states as follows:

    1.    Disputed in part. Youngblood submitted one complaint on November 11, 2018 and three on November 12, 2018. [D.E. 113-13].

    2.    Disputed. Plaintiff's "fact" is nothing more than a legal conclusion, not a statement of fact. Accordingly, it is not appropriately included in Plaintiff's Statement of Undisputed Material Facts and does not require a response. Notwithstanding, Youngblood's complaints to Amazon, Inc. ("Amazon") did not cause the shutdown. Rather, as set forth more fully below, Solu-Med's repeated behavior of selling inauthentic and counterfeit products, unaffiliated with Youngblood, and ignoring Amazon's repeated request for proof of Authencitiy and source information caused the shutdown. [D.E. 113-6], Ex. 6-16.

    3.    Undisputed.

    4.    Disputed. Youngblood emailed Amazon withdrawing the complaint after Plaintiff agreed not to sell Youngblood products on its Amazon Storefront. [D.E. 104-4]; [D.E. 113-1], 51-25-52:1-25. However, Youngblood never agreed nor admitted that the products sold by Sol-Med were authentic and genuine Youngblood products and therefore, not counterfeit. [D.E. 104-6], pgs. 7-9.

    5.    Disputed in part. Youngblood emailed Amazon withdrawing the complaint after Plaintiff agreed not to sell Youngblood products on its Amazon Storefront. [D.E. 104-4]; [D.E. 113-

Case 0:19-cv-60487-RKA   Document 118   Entered on FLSD Docket 03/19/2020   Page 2 of 12

Case No.: 0:19-cv-60487-RKA/PMH

1], 51-25-52:1-25. However, Youngblood never agreed nor admitted that the products sold by Sol-Med were authentic and genuine Youngblood products and therefore, not counterfeit. [D.E. 104-6], pgs. 7-9.

6. Undisputed.

7. Disputed. Youngblood emailed Amazon withdrawing the complaint after Plaintiff agreed not to sell Youngblood products on its Amazon Storefront. [D.E. 104-4]; [D.E. 113-1], 51-25-52:1-25. However, Youngblood never agreed nor admitted that the products sold by Sol-Med were authentic and genuine Youngblood products and therefore, not counterfeit. [D.E. 104-6], pgs. 7-9.

8. Disputed in part. It is undisputed that Solu-Med obtained counsel who wrote a letter to Jeff Bezos and Solu-Med's Amazon store was reinstated on January 14, 2019. However, there is no evidence in the record to suggest that letter ultimately led to the reinstatement of Solu-Med's Amazon Storefront on January 14, 2019.

9. Disputed in part. It is undisputed that Solu-Med and its counsel took the position that Youngblood's email correspondence to Amazon stating "Please withdraw complaint ID: 331832151 as we have resolved our complaint with Life and Health Source . . . " was not a retraction. [D.E. 104-4]. However, there is no record evidence that Amazon took that position.

10. Disputed in part. Youngblood emailed Amazon withdrawing the complaint after Plaintiff agreed not to sell Youngblood products on its Amazon Storefront. [D.E. 104-4]; [D.E. 113-1], 51-25-52:1-25. However, Youngblood never agreed nor admitted that the products sold by Sol-Med were authentic and genuine Youngblood products and therefore, not counterfeit. [D.E. 104-6], pgs. 7-9.

11. Undisputed.

12. Undisputed.

13. Disputed. Solu-Med did not provide Amazon with proof of authenticity information as requested by Amazon several times since it did not have the source information. [D.E. 113-7], 17:16-21, 24:25-25:1-6; [D.E. 113-5], 39:23-25 – 40:1-3; 126:19-25 – 127:1; 137:15-18. Additionally, Solu-Med never asked Innopex if it had authority to sell Youngblood products. [D.E. 113-5], 114:9; 116:18-23. Solu-Med did not submit any authenticity documentation to Amazon. [D.E. 113-7], 20:15-21.

14. Disputed. Youngblood does not use the words "manufacturer's warranty" but has always backed its products that might be defective when purchasing from www.ybskin.com and offers full satisfaction guaranteed for any reason that the consumer feels that the product has not met their expectations. [D.E. 104-9], Nos. 2, 4; Exhibit 1.

2
**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

15. Disputed. Amazon's Anti-Counterfeiting Policy states "Products offered for sale on Amazon must be authentic. . . It is each seller's and supplier's responsibility to source, sell, and fulfill only authentic products. Prohibited products include bootlegs, fakes, or pirated copies of products or content; products that have been illegally replicated, reproduced, or manufactured; and products that infringe another party's intellectual property rights." [D.E. 113-6]. Under the Condition Guidelines, a "new" item means "[a] brand-new, unused, unopened item in its original packaging, with all original packing materials included. [D.E. 113-6]. Further, for a new item, "[o]riginal manufacturer's warranty, if any, still applies, with warranty details included in the listing comments." *Id.* Under Amazon Product Authenticity and Quality guidelines, Amazon categorizes two types of violations related to product authenticity. *Id.* First, "[v]iolations related to product authenticity are categorized as intellectual property violations." *Id.* Second, Amazon policy prohibits selling partners from listing or shipping "'materially different' products." *Id.* A product is inauthentic and counterfeit if the product is being sold as new without a warranty. [D.E. 113-6], Ex. 2, 3, 5; [D.E. 113-5], 68:3-8, 10-25 – 69:1.

16. Disputed. Under Amazon's guidelines, a product is inauthentic and counterfeit if the product is being sold as "new" without a warranty. [D.E. 113-6], at Ex. 2, 3, 5; [D.E. 113-5], 68:3-8, 10-25 – 69:1; [D.E. 113-3], 41:16-20; 44:13-24; 126:24-25 – 128:1-2; 128:21-16; 148:22-25 – 149:1-4, 12-20.

17. Undisputed. However, Paragraph 17 has no relevance to the Court's determination of Plaintiff's Motion for Partial Summary Judgment.

18. Disputed. Youngblood became concerned regarding the sale of counterfeit products and diversion of its products on the secondary market and took steps to eliminate such conduct as well as the unauthorized sales of its products, including hiring Amazzia, Inc. ("Amazzia") to assist with brand protection.. [D.E. 113-1], 12:20-22; 13:25, 22:3-7; 29:3-8; 43:7-12. Amazzia determined that Solu-Med was selling counterfeit products because Youngblood products that were (1) not authorized, (2) Solu-Med was selling them as "new," and (3) they were inauthentic and counterfeit. [D.E. 113-3], 41:16-20; 44:13-24; 126:24-25 – 128:1-2; 128:21-16; 148:22-25 – 149:1-4, 12-20.

**STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS**

19. Products purchased directly from Youngblood's website, www.ybskin.com, or through an authorized retailer come with a 100% satisfaction guaranty that the product can be returned or replaced for any reason ("Warranty"). Affidavit of Pauline Toth, attached hereto as **Exhibit 1**. Youngblood products purchased from an unauthorized reseller or online third-party resellers do not come with the Warranty. *Id.* Unauthorized resellers or third-party resellers cannot and are not authorized to sell Youngblood products and not authorized to offer the Warranty. *Id.*

Case No.: 0:19-cv-60487-RKA/PMH

20. In 2018, Youngblood became concerned regarding the sale of counterfeit products and diversion of its products on the secondary market and took steps to eliminate such conduct as well as the unauthorized sales of its products. [D.E. 113-1], at 13:25 22:3-7; 43:7-12.

21. On September 15, 2018, Youngblood hired Amazzia, Inc. ("Amazzia") to assist with Youngblood's brand protection. [D.E. 113-1], 12:20-22; 29:3-8. Brand protection includes, among other things, helping a company control who sells its products on Amazon by assisting the company to eliminate the sale of inauthentic products and counterfeit products. [D.E. 113-3], 13:9-18, 14:2-13;19:17-21; 25:20-25.

22. Youngblood's quality controls include (1) restrictions on the location where its distributors can sell; (2) what changes can be made to Youngblood's packaging; (3) who its distributors can subcontract with a sub-distributor; (4) if the distributor can offer display packages for sale; (5) how the distributor processes a sale, including all sales must be evidence by a written purchase order, identifying the products sold, the sizes and quantities to be procedures, destination, and any other information Youngblood request; (6) modifications or copying Youngblood's products; (7) development or manufacturing of Youngblood's products; (8) notification of infringement or claimed infringement; (9) where the distributor maintains an office and sales force to provide sales and technical assistance to purchasers; (10) controls on testers and displays; (11) how much its distributors can charge for Youngblood products; (11) prohibiting other advertisement in packaging other than those advertisements supplied by Youngblood; (12) how returns and Warranty claims are handed by its distributors. Distribution Agreement, attached hereto as **Exhibit 2**; [D.E. 113-3], at 153:2-7.

### Amazon's Guidelines

23. Amazon's Selling Policies and Seller Code of Conduct requires, in pertinent part, states sellers should never engage in misleading conduct, including its communications with Amazon. [D.E. 113-6], at Ex. 1.

24. Amazon's Anti-Counterfeiting Policy states, in pertinent part, as follows: "**Products offered for sale on Amazon must be authentic. The sale of counterfeit products is strictly prohibited. Failure to abide by this policy may result in loss of selling privileges, funds being withheld, and destruction of inventory in our possession.** It is each seller's and supplier's responsibility to source, sell, and fulfill only authentic products . . . We stand behind the products sold on our site with our A-to-z Guarantee, and we encourage rights owners who have product authenticity concerns to notify us. We will promptly investigate and take all appropriate actions to protect customers, sellers, and rights holders." [D.E. 113-6], at Ex. 2 (bolding in original; underlying supplied).

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

25. Amazon's Cosmetics and Skin Care Policy states, in pertinent part: (1) Cosmetics must be sealed in the original manufacturer's packaging; and (2) Cosmetics must be new and unused. [D.E. 113-6], at Ex. 4.

26. Amazon's Condition Guidelines requires products offered for sale on Amazon be "new". The Condition Guidelines state, in pertinent part: New: Just like it sounds. A brand-new, unused, unopened item in its original packaging, with all original packaging materials included. Original protective wrapping, if any, is intact. **Original manufacturer's warranty, if any, still applies, with warranty details included in the listing comments.** [D.E. 113-6], at Ex. 5 (emphasis added).

27. Amazon's Product Authenticity and Quality policy states, in pertinent part: "**Violations related to product authenticity are categorized as intellectual property violations.** Issues with the overall product quality, including products that do not match their descriptions, can be categorized as "materially different" violations. . . **Materially different product condition violation.** The product you list and ship must exactly match the description, pictures, and all other information on the product detail page. Amazon policy prohibits you from listing or shipping "materially different" products. For example: **Listing your product in New condition when it is not in brand-new or unused condition, or in un-opened original packaging.** [D.E. 113-6], at Ex. 3 (emphasis added).

28. Solu-Med was not an authorized seller of Youngblood products nor did it ask for permission to sell Youngblood products. *See id.*, 36:7-9; 76:10-12; [D.E. 113-5], 40:4-10.

29. Solu-Med listed the Youngblood products on its Amazon Storefront for sale as "new." [D.E. 113-7], 9:21-23; [D.E. 113-5] 43:24-25 – 44:1; [D.E. 113-4], 70:4-7, 75:16-18.

30. Solu-Med listed purported Youngblood products for sale that did not contain the manufacturer's warranty. [D.E. 113-4], 36:7-12.

31. Solu-Med represents on its Amazon Storefront that all cosmetics (including Youngblood products) are in a "new" condition, regardless of whether the products actually have a warranty. [D.E. 113-4], 70:4-8.

32. Solu-Med does not offer any warranty or even allow returns of any of its cosmetics sold on its Amazon Storefront, including Youngblood products. [D.E. 113-4], 58:15-18. Solu-Med's website explicitly states it will not accept returns of cosmetics. [D.E. 113-9].

33. Solu-Med was required to list products in the proper condition category when selling on Amazon. [D.E. 113-4], 70:1-8.

34. Listing a product for sale as "new" when it does not come with a warranty is a violation of Amazon's Condition Guidelines. [D.E. 113-5], at 62:18-25; [D.E. 113-3], at 51:9-12; [D.E. 113-7], at 14:3-6.

35. Solu-Med knew that it is a violation of Amazon's Guidelines to list a materially different product than the product sold. [D.E. 113-5], at 57:1-7.

36. A product is inauthentic and counterfeit if the product is being sold as new without a warranty. [D.E. 113-6], at Ex. 2, 3, 5; [D.E. 113-5], at 68:3-8, 10-25 – 69:1.

37. Solu-Med claims that Q-Med, LLC ("Q-Med")[1] acquired Youngblood products from a non-authorized distributor, Innopex. [D.E. 113-4], at 32:1-5; Ex. 5, at 36:11-13. Innopex produced no documents in discovery. Solu-Med claims that Innopex acquired the Youngblood products from MasMed Limitada ("MasMed"). Solu-Med did not produce documents from Mas-Med. Solu-Med produced no documents in discovery showing where Innopex got the Youngblood products.

38. Neither Q-Med nor Solu-Med examined, did research into, or asked for the sourcing information into Innpoex when it purportedly acquired the purported Youngblood products. [D.E. 113-7], 11-13, 22-24; [D.E. 113-5], 37: 16-25 – 38:1-5; 39:23-25 - 40:1-3; 51:15-24.

39. Kellon Goodson ("Goodson") was Solu-Med's eCommerce Manager. Goodson was in charge of creating, operating, and managing Solu-Med's Amazon Storefront. [D.E. 113-4], 24:19-22. Goodson only read Amazon's Guidelines once in 2015. [D.E. 113-5], 26:8-22. Goodson received no training on how to sell on the Amazon marketplace, nor did he attend any courses, and he did not attend Amazon's Seller's University. *Id.* at 16:5-7, 15-17; 35:18-25.

40. Adam Weinstein ("Weinstein") was an employee of Solu-Med, who was in charge of placing Youngblood products on Solu-Med's Amazon Storefront. [D.E. 113-5], 28:6-10. Weinstein was not trained on Amazon's guidelines prior to listing Youngblood products on the Amazon Storefront nor directed to read Amazon's guidelines. [D.E. 113-7], 11:6-20.

41. Weinstein did not review the Amazon guidelines prior to listing products on the Amazon Storefront and did not review Amazon's guidelines to ensure Solu-Med was complying with Amazon's guidelines while listing products for sale. [D.E. 113-7], 11:21-25; 13:3-5. Weinstein did not attend Amazon's Seller's University. [D.E. 113-5], 36:1-7.

---

[1] Solu-Med purportedly acquires products to sell from Q-Med; Q-Med also stores products and distributes them for Solu-Med. *See* [D.E. 113-4], 30:18-19.

**Prior Complaints to Amazon about Solu-Med's Sale of Products**

42. On January 27, 2018, Amazon sent a policy warning violation to Solu-Med regarding a complaint Amazon had received a complaint that Solu-Med was selling counterfeit Giovanni Cosmetics' products on its Amazon Storefront. [D.E. 113-6], at Ex. 7. Amazon barred Solu-Med from selling this product. *Id.*

43. On January 28, 2018, Amazon sent a policy warning violation to Solu-Med regarding a complaint that Amazon had received a complaint that Solu-Med was selling counterfeit Giovanni Cosmetic's product on its Amazon Storefront. *See id.* at Ex. 8. Amazon barred Solu-Med from selling this product. *Id.*

44. On March 5, 2018, Amazon sent a policy warning violation to Solu-Med regarding a complaint that Amazon had received a complaint that Solu-Med was selling fifteen inauthentic Medela products on its Amazon Storefront. *See id.* at Ex. 9. Amazon barred Solu-Med from selling this product. *Id.*

45. On April 4, 2018, Amazon sent a policy warning violation to Solu-Med regarding a complaint that Amazon had received a complaint that Solu-Med was selling five counterfeit Brumisateur products on its Amazon Storefront. *See id.* at Ex. 10. Amazon barred Solu-Med from selling this product. *Id.*

46. On May 12, 2018, Amazon sent another policy warning violation to Solu-Med regarding a complaint that Amazon had received a complaint that Solu-Med was selling inauthentic Evian Spray products its Amazon Storefront. *See id.* at Ex. 11. Amazon barred Solu-Med from selling this product. *Id.*

47. On July 23, 2018, Amazon sent a policy warning violation to Solu-Med regarding a complaint that Amazon had received a complaint that Solu-Med was selling inauthentic products its Amazon Storefront. *See id.* at Ex. 12. Amazon barred Solu-Med from selling this product. *Id.*

48. On July 25, 2018, Amazon sent a policy warning violation to Solu-Med regarding a complaint that Amazon had received a complaint that Solu-Med was selling inauthentic products its Amazon Storefront. *See id.* at Ex. 13. Amazon barred Solu-Med from selling this product. *Id.*

49. Solu-Med was aware of these policy warning violations. [D.E. 113-5], 38:15-20. Solu-Med's pattern and practice was <u>not</u> to respond to Amazon's policy warnings violations regarding Solu-Med's sale counterfeit, inauthentic products, or intellectual property violations. [D.E. 113-5], at 93:10-19; 97:17-19. Solu-Med would just take the product listing down from the Amazon Storefront or do nothing as Amazon would automatically take the listing down. *See* [D.E. 113-5], at 92:1-23 – 93:1-9.

50. Solu-Med was aware that its Amazon Storefront maybe be shut down if Amazon continued to receive complaints about its listings. [D.E. 113-7], at 20:22-25 – 21: 1-17. Other than the Youngblood complaint, in November 2018, Solu-Med did not take any action to respond to complaints it received from Amazon. [D.E. 113-5], at 95:5-7; [D.E. 113-7], at 19:14-16.

**Amazon Deactivates Solu-Med's Store**

51. Amazzia determined that Solu-Med was selling counterfeit products because Youngblood products that were (1) not authorized, (2) Solu-Med was selling them as "new," and (3) they were inauthentic and counterfeit. [D.E. 113-3], at 41:16-20; 44:13-24; 101:5-16; 126:24-25 – 128:1-2; 128:21-16; 131:8-16; 148:22-25 – 149:1-4, 12-20.

52. On or about November 10, 2018, Youngblood submitted a complaint to Amazon regarding Solu-Med's counterfeit sale of Youngblood products on Amazon. [D.E. 113-1], at 17:7-9; [D.E. 113-12]; [D.E. 113-6], at Ex. 2.

53. On or about November 10, 2018, Amazon sent a policy warning violation to Solu-Med regarding Youngblood's product. [D.E. 113-13], at ¶ 5. Amazon notified Solu-Med that a report had been made that Solu-Med was listing a counterfeit product and notified Solu-Med that it removed the product. *Id.* Amazon warned Solu-Med that if Amazon received more complaints, it may not allow Solu-Med to sell on Amazon.com." *Id.* Solu-Med ignored Amazon's policy warning violation. [D.E. 113-5], at 109:3-8.

54. On or about November 12, 2018, Youngblood submitted another complaint to Amazon regarding Solu-Med's counterfeit sale of Youngblood products on Amazon. [D.E. 113-14]; [D.E. 113-6], at Ex. 3.

55. On or about November 12, 2018, Amazon sent a notice of policy warning to Solu-Med regarding Youngblood's product. [D.E. 113-13], at ¶ 6. Amazon notified Solu-Med that a report had been made that Solu-Med was listing a counterfeit product and notified Solu-Med that it removed the product. Amazon warned Solu-Med that if Amazon received more complaints, it may not allow Solu-Med to sell on Amazon.com." *Id.* Solu-Med ignored to Amazon's policy warning violation. [D.E. 113-5], at 109:3-8; 112:16-20.

56. On or about November 12, 2018, Youngblood submitted another complaint to Amazon regarding Solu-Med's counterfeit sale of Youngblood products on Amazon. [D.E. 113-15]; [D.E. 113-6], at Ex. 4.

57. On or about November 12, 2018, Amazon sent a notice of policy warning to Solu-Med regarding Youngblood's product. [D.E. 113-13], ¶ 7. Therein, Amazon notified Solu-Med that it removed the listing. Amazon warned Solu-Med that if Amazon received more complaint, it may not

allow Solu-Med to sell on Amazon.com." *Id.* Solu-Med ignored to Amazon's policy warning violation. [D.E. 113-5], at 107:1-3, 109:3-8; 112: 16-20.

58. On or about November 12, 2018, Youngblood submitted another complaint to Amazon regarding Solu-Med's counterfeit sale of Youngblood products on Amazon. [D.E. 113-16]; [D.E. 113-6], at Ex. 5.

59. On November 13, 2018, Amazon attempted to contact Solu-Med to discuss the Youngblood Complaint. [D.E. 113-17]. No one at Solu-Med responded to Amazon's call. [D.E. 113-7], at 24:5-10.

60. On November 13, 2018, Amazon <u>temporarily</u> deactivated Solu-Med's Amazon Storefront. [D.E. 113-17]; [D.E. 113-5], at 109:12-14. Therein, Amazon stated to reactivate Solu-Med's account, it needed to submit a valid plan of action. *Id.* Amazon stated that "[i]f you believe that the reported content is not counterfeit, you may email noticedispute@amazon.com. with supporting information." *Id.*

### i.  *Solu-Med's First Plan of Action*

61. On November 13, 2018, Solu-Med, for the first time, responded to Amazon and submitted its plan of action ("First Plan of Action") in its attempt to get the store reinstated. [D.E. 113-18]. Solu-Med only responded to the Youngblood complaints because Amazon deactivated Solu-Med's Amazon Storefront. [D.E. 113-5], at 97:20-25 – 98:1-4.

62. In the First Plan of Action, Solu-Med stated that the root cause of the issue was that "[w]e have offerings . . . which [Youngblood] felt infringed on their intellectual property rights." [D.E. 113-18]; [D.E. 113-5], at 111:7-16. In response, Solu-Med stated that it had removed all Youngblood products from the Amazon Storefront. [D.E. 113-18]. To prevent this issue from happening again, Solu-Med stated it would "review [its] product offerings, to ensure compliance with Amazon's terms of service related to intellectual property." [D.E. 113-18].

63. Solu-Med did not review Youngblood's Warranty nor provide Amazon with proof of authenticity information. [D.E. 113-5], at 114:9; [D.E. 113-7], at 20:15-21.

64. On or about November 15, 2019, Amazon rejected Solu-Med's First Plan of Action. [D.E. 113-19]. Amazon stated: "We reviewed your account and the information you provided, and we have decided that you may not sell on Amazon.com." *See id.* Amazon requested Solu-Med to provide additional information, including a valid retraction and proof of product authenticity (e.g., invoice, Order ID or letter of authorization). *Id.* Amazon stated that Solu-Med's proof of product authenticity must "clearly prove that your products do not infringe on the intellectual property of the rights owner. Please send this information, any other documentation. . . ."

### ii. *Solu-Med's Second Plan of Action*

65. On or about November 14, 2018, Solu-Med submitted its second plan of action ("Second Plan of Action") to Amazon. [D.E. 113-20]. Therein, Solu-Med stated "[w]e were listing Youngblood Cosmetics products that we sourced from a distributor, and the brand may not have been aware that we were selling their product on Amazon that was purchased through that distributor." *See id.* Again, Solu-Med stated that it removed all Youngblood's listing. *Id.*

66. Solu-Med never contacted Youngblood regarding Solu-Med's sale of Youngblood products and did not ask permission to sell Youngblood products. [D.E. 113-5], 116:12-17:158:14-20. Solu-Med never asked Innopex if it had authority to sell Youngblood products. *Id.* 116:18-23. Solu-Med did not submit any authenticity documentation to Amazon. [D.E. 113-7], 20:15-21.

67. On November 15, 2018, Amazon rejected the Second Plan of Action and stated that it "reviewed [Solu-Med's] account and the information provided, and we have decided that you may not sell on Amazon.com." [D.E. 113-21]. Amazon again requested Solu-Med provide additional information and proof of product authenticity of the Youngblood products. *Id.*

### iii. *Solu-Med's Third Plan of Action*

68. In response, on November 16, 2019, Solu-Med submitted a revised plan of action ("Third Plan of Action") to Amazon and attached its purported invoices from its distributor. [D.E. 113-22]. As to the root cause of the issue, the Third Plan of Action stated, in pertinent part, "[w]e have been selling on Amazon for five years, and Youngblood for two years, without complaint. The items that we sourced are authentic, genuine products and we follow the Amazon Catalog Listing protocol for create all of our listings (more detail in bullet II below)." *See id.*

69. However, Solu-Med had seven prior complaints asserted against it lodged by other companies for violating trademarks and selling inauthentic and counterfeit products prior to the shutdown on November 13, 2018. [D.E. 113-5], at 38:15-20; 124:5-10. Additionally, Solu-Med did not contact Youngblood, the manufacturer, to determine whether the products Solu-Med was selling were authentic and it did not contact Innopex to determine the source of the products. [D.E. 113-5], at 125:16-23. Rather, all Solu-Med did was look at the product to determine whether the ASIN number matched to Amazon's ASIN for the product, which is not a way to determine authenticity of the product. [D.E. 113-5], at 125:24-5 – 126:1; 126:7-14.

70. As to Solu-Med's actions taken to resolve the issue, the Third Plan of Action represented to Amazon that it "**launched an immediate investigation of our supply chain to confirm chain of custody.** We evaluated all items in our catalog in order to determine if there were any issues that may have led to this type of allegation being directed toward our products. . . [and] **[w]e reviewed**

**our internal operational procedures for listing items with Amazon** . . ." [D.E. 113-22] (emphasis added).

71.     However, Solu-Med did not have the source information for the Youngblood products and did no investigation, as it did not contact Innopex to determine the source of the Youngblood products. [D.E. 113-7], at 17:16-21, 24:25-25:1-6; Ex. 5, at 39:23-25 – 40:1-3; 126:19-25 – 127:1; 137:15-18. Instead, Solu-Med submitted an invoice, which did not reflect where Solu-Med obtained the Youngblood products. [D.E. 113-23]. Solu-Med maintained no internal operating procedures for listing products on Amazon. [D.E. 113-5], 99:23-25 – 100:1-3; 129:16-19.

72.     On or about November 16, 2018, Amazon rejected Solu-Med's Third Plan of Action. [D.E. 113-24]. Amazon again requested that Solu-Med provide proof of product authenticity of the Youngblood products. *Id.* Solu-Med did not provide any authenticity documentation to Amazon. [D.E. 113-7], at 20:15-21.

73.     On November 29, 2018, Amazon sent correspondence to Solu-Med, which stated: "we cannot accept your appeal because it does not address the report we received from the rights owner." [D.E. 113-25].  Amazon again requested that Solu-Med provide a valid retraction and proof of product authenticity of the Youngblood products; Solu-Med did not provide any authenticity documentation to Amazon. *Id.*

74.     After Solu-Med agreed not to sell any more Youngblood products, on or about December 4, 2018, Youngblood submitted correspondence to Amazon that the complaints were resolved of its complaints. [D.E. 113-27]. Youngblood did not admit that it reported Solu-Med improperly to Amazon. [D.E. 113-3], at 36:10-13.

75.     On December 13, 2018, Amazon sent two correspondences to Solu-Med rejecting its appeal because "cannot accept your appeal because it does not address the report we received from the rights owner." [D.E. 113-28]. Amazon again requested that Solu-Med provide a valid retraction and proof of product authenticity of the Youngblood products; Solu-Med did not provide any authenticity documentation to Amazon. *Id.*

76.     On December 20, 2018, Amazon deactivated Solu-Med's Amazon Storefront because Amazon was "unable to verify information related to your seller account, or did not receive any new information regarding your listings or selling history." [D.E. 113-29].

77.     During the deactivation, Solu-Med was not prevented of shipping its products to Amazon for sale and fulfillment through the FBA program. [D.E. 113-5], 14:3-15.

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

Case No.: 0:19-cv-60487-RKA/PMH

Dated: March 19, 2020                      Respectfully submitted,

COLE, SCOTT & KISSANE, P.A.
Attorneys for Defendant
222 Lakeview Ave, Suite 120
West Palm Beach, FL 33401
Telephone: (561) 383-9203
E-mail: jonathan.vine@csklegal.com
E-mail: sheena.smith@csklegal.com

By:     */s/ Sheena D. Smith*
JONATHAN VINE
FBN: 10966
SHEENA D. SMITH
FBN: 118919

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of March 2020, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system.

*/s/ Sheena D. Smith*
JONATHAN VINE
FBN: 010966
SHEENA D. SMITH
FBN: 118919

## SERVICE LIST

| | |
|---|---|
| **Kelsey K. Black, Esq.** | **Stanley R. Goodman, Esq** |
| Black Law, P.A. | Goodman & Saperstein |
| *Attorneys for Plaintiff* | Pro hac vice admission pending |
| 1401 E Broward Blvd. Suite 204 | 666 Old Country Road, Suite 200 |
| Fort Lauderdale, FL 33301 | Garden City, NY 11530 |
| Telephone: (954) 320-6220 | Telephone: (516) 227-2100 |
| Facsimile: (954) 320-6005 | Facsimile: (516) 227-2108 |
| kelsey@kkbpa.com | Gsesq600@aol.com |