UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 0:19-cv-60487-RKA/PMH

SOLU-MED, INC.,

      Plaintiff,

v.

YOUNGBLOOD SKIN CARE
PRODUCTS LLC,

      Defendant.

_____/

### DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
### MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant, Youngblood Skin Care Products LLC ("Youngblood"), hereby files its Response in Opposition to Plaintiff, Solu-Med, Inc.'s ("Solu-Med"), Motion for Partial Summary Judgment [D.E. 105], and in support thereof, states as follows:

### SUMMARY OF ARGUMENT

In this action, Plaintiff has painstakingly attempted to paint Youngblood as a bad actor who destroyed Plaintiff's Amazon.com, Inc. ("Amazon") storefront, Life & Health Source ("Amazon Storefront"). In reality, Plaintiff intentionally sold counterfeit, inauthentic, and unauthorized products, including products purporting to be Youngblood products, in violation Amazon's guidelines. *See* Responsive Statement of Undisputed Facts ("RSOF") ¶¶ 42-48. Plaintiff knew it was violating Amazon's polices, as its own employees have admitted, yet continued to do so anyways. RSOF ¶ 34. Indeed, Plaintiff failed to maintain any internal operating procedures, wholly failed to provide any training to its employees on Amazon's guidelines, any training on how to comply with any of Amazon's guidelines, nor any training how to avoid selling counterfeit items. RSOF ¶¶ 31-41, 71.

Despite seven prior complaints about inauthentic and counterfeit products, as well as warnings from Amazon that it would prohibit Plaintiff from selling on Amazon if Amazon continued to receive complaints that Plaintiff was selling counterfeit, inauthentic, and unauthorized products. RSOF ¶¶ 42-48. Rather, Plaintiff disregarded the same, and consistent with its pattern and practice, remove the listing from its Amazon Storefront and continue to sell counterfeit, inauthentic, and unauthorized products, including purported Youngblood products. RSOF ¶¶ 49-

50.

Pursuant to Amazon's guidelines, between November 10, 2018 and November 13, 2018, Youngblood submitted complaints to Amazon regarding Plaintiff's sale of inauthentic and counterfeit products purporting to be Youngblood products on Plaintiff's Amazon Storefront. RSOF ¶¶ 52, 54, 56, 58. On November 13, 2018, Amazon temporarily deactivated Plaintiff's Amazon Storefront after Plaintiff ignored Amazon's warnings and requests for supporting information that the products being sold on Plaintiff's Amazon Storefront were not counterfeit. RSOF at ¶ 60.

Put simply, Amazon provided Plaintiff multiple opportunities to rebut the complaints regarding the sales of counterfeit and inauthentic products, and Plaintiff elected to ignore Amazon's warnings. RSOF ¶¶ 53, 55, 57, 59, 60. Amazon notified Plaintiff that the Amazon Storefront would remain inactive until Plaintiff responded to Amazon's inquiries for additional information regarding Plaintiff's sale of inauthentic and/or counterfeit products. RSOF ¶¶ 64, 67, 73. Plaintiff continued to disregard Amazon's warnings and failed to properly respond to Amazon regarding its concerns. RSOF ¶¶ 61-63,  65-66, 68-71. On December 20, 2018, when Amazon received no supporting information from Plaintiff, Amazon deactivated the Amazon Storefront. RSOF ¶ 76.

In its Motion, Plaintiff moves for partial summary judgment ("Motion") on a number of Youngblood's affirmative defenses. Plaintiff claims that the affirmative defenses are insufficient as a matter of law. However, Plaintiff's misguided Motion should be denied for the following reasons:

1)  Youngblood has met its burden to support each of it justification defenses;
2)  Youngblood has met its burden to support its truth and qualified privilege justification defenses; and
3)  There is a genuine issue of material fact whether Plaintiff mitigated its damages.

Accordingly, for these reasons and the reasons set forth below, Plaintiff's Motion must be denied.

## ARGUMENT

## I.    Standard of Review

Summary judgment is appropriately granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986). "A court must view the evidence" and all reasonable inferences drawn from the evidence in the light most favorable to the movant, *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006), such that "when conflicts arise between the facts evidenced by the parties, [the court] credit[s] the nonmoving party's version," *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005).

## II.   There are Sufficient Facts to Establish Youngblood was Justified in its Actions (Affirmative Defense Three, Four, Five, Ten, Thirteen, and Fourteen)

Plaintiff's Motion asserts that it is entitled to summary judgment as to each of Youngblood's Third, Fourth, Fifth, Tenth, Thirteenth, and Fourteenth Affirmative Defenses relating to justification. *See generally*, Motion. This argument has no merit and is entirely inconsistent with the undisputed facts of this case. *See* Statement of Undisputed Facts [D.E. 113].[1] To be clear, justification is an affirmative defense to a tortious interference claim. *Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334, 1339 (S.D. Fla. May 17, 2007) ("Under Florida law, a company's actions are justified when undertaken to protect its own business interests, such as to reduce the risk of loss. So long as the company does not engage in improper conduct, it may take steps to protect its business interests without liability for tortious interference."). As set forth below, the undisputed evidence produced in discovery supports each of Youngblood's justification affirmative defenses and warrants a denial of Plaintiff's request for summary judgment, and as set forth in its Motion for Summary Judgment [D.E. 108], therefore entitled to judgment as a matter of law.

### i.   *Affirmative Defenses Three and Five*

Youngblood's Third Affirmative Defense provides that any alleged actions taken by Youngblood were justified because Plaintiff was not authorized to sell Youngblood products, and thus, Plaintiff was not selling genuine Youngblood products. *See* [D.E. 85]. Additionally, Youngblood's Fifth Affirmative Defense states that Plaintiff was selling inauthentic and therefore, counterfeit Youngblood products. *Id.*

#### a.   *Plaintiff was not authorized to sell Youngblood products and under Amazon's guidelines, Plaintiff sold inauthentic and counterfeit goods*

Plaintiff's Motion asserts that "the fact that Defendant did not authorize their sale does not render these goods infringing or not 'genuine,' by reasons of the first sale doctrine." *See* Motion

---

[1] Youngblood incorporates by reference its Statement of Undisputed Material Facts and evidence. [D.E. 113].

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

[D.E. 105], pg. 12. In making such assertion, Plaintiff relies on *Wellnext LLC v. OVM LLC* for the proposition that under the "first sale" doctrine, "even though a subsequent sale is without a trademark owner's consent, the resale of a genuine good generally does not violate the Lanham Act." 2018 WL 704819, *3 (S.D. Fla. Feb. 16, 2018).

Initially, the *Wellnext LLC* decision is based on a Lanham Act claim, which we do not have here. Therefore, *Wellnext, LLC* is simply not applicable. Notwithstanding the same, even assuming the "first sale" doctrine applied, the first sale doctrine does not apply when "an alleged infringer sells trademarked goods that are materially different from those sold by the trademark owner." *Id.* (citing *Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301 (11th Cir. 2001)). Here, it is undisputed that Plaintiff was selling goods purporting to be Youngblood products that were materially different than those sold by the products' trademark owner, Youngblood. RSOF ¶¶ 19, 28-31. In selling inauthentic and unauthorized goods, Plaintiff was in direct violation of Amazon's policies. RSOF ¶¶ 23-27. Contrary to Plaintiff's assertion, the case of *Otter Products, LLC v. Wang*, 2019 WL 1403022, *1 (D. Co. Mar. 28, 2019) is particularly instructive here.

Specifically, the plaintiff, *Otter*, developed, manufactured, marketed, and sold premium mobile device, smartphone, and tablet cases and accessories under the OTTERBOX® and LIFEPROOF® brands through authorized resellers. *Id.* at *1. Otter provided a limited warranty for products purchased from Otter or resellers that are authorized by Otter, which covered the repair or replacement of Otter's products for defects for a period of time. However, the limited warranty was not available for products sold by unauthorized sellers who are not subject to Otter's quality controls. *Id.* at *2.

Like Plaintiff in this case, Solu-Med, the defendant in the *Otter* case, Wang, operated and sold <u>unauthorized</u> Otter products on Amazon. *Id.* Wang was not an authorized reseller and the court held that the products Wang was selling bearing Otter's trademarks were "not genuine Otter Products," were "materially different from genuine Otter Products" because they did not come with the limited warranty, and that the products did not abide by, and instead, interfered with Otter's quality controls. *Id.* at *2. Ultimately, the court concluded that by selling materially different, non-genuine products bearing Otter's trademarks, Wang was creating consumer confusion because consumers who purchase products from Wang believed they were getting genuine Otter products, but instead were getting unauthorized products that did not come with the limited warranty. *Id.*

Like *Otter*, Youngblood offers its Warranty for products purchased from its website or through an authorized retailer. RSOF ¶ 19. It is undisputed that Youngblood products purchased from an unauthorized reseller or online third-party resellers do <u>not</u> come with the Warranty. RSOF ¶ 19. In fact, unauthorized resellers are <u>not</u> authorized to offer the Warranty. RSOF ¶ 19. It is uncontested that Plaintiff was not authorized to sell Youngblood products and sold purported Youngblood products without the Warranty. RSOF ¶¶ 28-31. Amazon's Product Authenticity guidelines provide it is a violation of its policy to list a materially different product than the product sold—*i.e.*, listing a product in "new" condition when it does not, in fact, come with a warranty. RSOF ¶ 27. Plaintiff knew that it is a violation of Amazon's guidelines to list a materially different product than the products sold yet did it anyways. RSOF ¶ 35.

Accordingly, similar to *Otter*, Plaintiff was selling products that were materially different from genuine Youngblood products because they did not come with the Warranty. 2019 WL 1403022, at *2; *see also TracFone Wireless, Inc. v. Pak China Group Co. Ltd.*, 843 F. Supp. 2d 1284, 1296-97 (S.D. Fla. Feb. 6, 2012) (finding defendant sold TracFone phones that were materially different than those sold by TracFone because the warranty information was removed, which invalidates the warranty in its entirety); *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1071-73 (10th Cir. 2009) (trademark infringement where defendant sold products without plaintiff's warranty); *Adolph Coors Co. v. A. Genderson & Sons, Inc.*, 486 F. Supp. 131, 136 (D. Colo. 1980) (trademark infringement where defendant sold products outside Coors' quality controls); *Matrix Essentials v. Emporium Drug Mart, Inc. of Lafayette*, 988 F.2d 587, 590–91 (5th Cir.1993) (differences exist in quality control or the products themselves may result in infringement); *Shell Oil Co. v. Commercial Petroleum Inc.*, 928 F.2d 104, 107 (4th Cir. 1991) (differences exist in quality control or the products themselves may result in infringement).

### b. Plaintiff Ignores Amazon's Multiple Guidelines and Relies on Inadmissible Evidence

With regard to Youngblood's Third and Fifth Affirmative Defenses, Plaintiff argues that Amazon only considers a product to be "counterfeit" if that product or packaging has an unlawful reproduction of a trademark. *See* Motion [D.E. 105], pg. 14. However, Plaintiff's reliance on a single paragraph in a declaration of Amazon ("Declaration") is taken out of context and unsubstantiated. *Id.*

Initially, the Declaration upon which Plaintiff relies is inadmissible hearsay, as the parties

did not agree the Declaration would be otherwise admissible.[2] Moreover, Plaintiff has disingenuously taken the Declaration out of context, and, in doing so, intentionally omits disclosure to the Court of several of Amazon's policies. To be clear, there is no evidence of record that establishes that Amazon will only deem a product counterfeit if the product or packaging has an unlawful reproduction of a registered trademark.

Indeed, Amazon's Anti-Counterfeiting policy explicitly states: "**[p]roducts offered for sale on Amazon must be authentic. The sale of counterfeit products is strictly prohibited**." RSOF ¶ 24. (bolding in original). The Anti-Counterfeiting policy further states, "it is each seller's and supplier's responsibility to source, sell, and fulfill only authentic products." RSOF ¶ 24. Likewise, Amazon's Cosmetics and Skin Care Policy requires that all cosmetics sold on Amazon must be, among other things, sealed in the original manufacturer's packaging, and a "new" and unused product. RSOF ¶ 25. Similarly, Amazon's Condition Guidelines requires products offered for sale on Amazon be "new." Amazon defines a "new" product as one that is a "brand-new, unused, unopened item in its original packaging . . . [with the] Original manufacturer's warranty, if any, still applies . . . ." RSOF ¶ 26. Consequently, it is a violation to sell a product on Amazon as "new" without the original manufacturer's warranty, and any product that is advertised as such is deemed inauthentic and counterfeit under Amazon's guidelines. RSOF ¶¶ 24-26.

Additionally, Amazon's Product Authenticity guidelines state that violations of authenticity are intellectual property violations. RSOF ¶ 27. Amazon's Product Authenticity guidelines provide it is a violation of its policy to list a materially different product than the product sold—*i.e.*, listing a product in "new" condition when it does not, in fact, come with a warranty. RSOF ¶ 27.

Consequently, there is no dispute that Plaintiff violated each of Amazon's foregoing guidelines for the following reasons:

- Plaintiff was selling purported Youngblood products as "new" on its Amazon Storefront (RSOF ¶ 29);

- Plaintiff's purported Youngblood products sold did not come with a Youngblood 100% satisfaction guarantee ("Warranty") (RSOF ¶ 30);

- Plaintiff does not offer any warranty or even allow returns of any of its cosmetics sold on its Amazon Storefront, including Youngblood products (RSOF ¶ 32);

---

[2] Amazon also submitted records affidavits, which the parties have agreed are admissible. *See* [D.E. 113-6], [D.E. 113-13].

- Plaintiff violated Amazon's Authenticity Guidelines by listing the purported Youngblood products on its Amazon Storefront as "new" when those products did not come with a Warranty (RSOF ¶¶ 33-35);

- Plaintiff was not authorized to sell Youngblood products (RSOF ¶ 28);

- Plaintiff did not ask Youngblood for permission to sell Youngblood products (RSOF ¶ 28);

- Plaintiff's purported Youngblood products were inauthentic and counterfeit (RSOF ¶¶ 35-36).

Certainly, Youngblood had a legitimate concern that the sale of inauthentic and counterfeit products advertised as its own was diluting Youngblood's brand and the quality of its products. RSOF ¶ 20. Indeed, sales by "unauthorized sellers through the online marketplaces also threaten a manufacturer's ability to maintain its goodwill, reputation, and brand integrity." *Otter Products, LLC*, 2019 WL 1403022, *2.

Undoubtedly, Youngblood was concerned that sales on the secondary market was degrading and diminishing the Youngblood brand on a daily basis, as customers were purchasing purported Youngblood products that were unauthorized and expired or fake. RSOF ¶ 20. Indeed, as set forth above, Plaintiff was selling purported Youngblood products that were materially different than the product sold by Youngblood – *i.e.*, without a warranty. RSOF ¶ 47. **To be clear, under Amazon's guidelines, a product is inauthentic and counterfeit if the product is being sold as new without a warranty.** RSOF ¶¶ 24-27, 34-36.

Therefore, when Youngblood complained to Amazon, it acted to protect its products from legitimate concerns regarding dilution of its brand. In that regard, the health and safety of the products customers purchase is a legitimate business concern. Youngblood has satisfied its burden to support that it was justified in submitting its complaints to Amazon to stop the sale of inauthentic and counterfeit products by Plaintiff. *Swiss Watch Intern., Inc. v. Movado Group, Inc.*, 2001 WL 36270980, *4 (S.D. Fla. Jun. 21, 2001) (finding SWI acknowledges the existence of the grey market and that it knew of Movado's intent to curb the unauthorized importation of Movado brand watches from outside the United States. Thus, the Court held that Movado's actions in furtherance of its own interests are nonactionable.). Accordingly, as set forth herein, Youngblood has produced evidence that Plaintiff sold products purporting to be Youngblood's products in a materially different condition than those sold by Youngblood in violation of Amazon's guidelines.

ii. ***Thirteenth and Fourteenth Affirmative Defenses***

Youngblood's Thirteenth Affirmative Defense state that Youngblood's actions were

justified because Plaintiff was selling counterfeit products in violation of Amazon's policies. [D.E. 85]. Youngblood's Fourteenth Affirmative Defense states Youngblood relied on Amazon's counterfeiting policies in reporting Plaintiff for selling counterfeit Youngblood products. [D.E. 85]. Plaintiff's Motion asserts that Youngblood's Thirteenth and Fourteenth Affirmative Defenses fail because Amazon only "considers a product to be counterfeit if the product or packaging has an unlawful reproduction of a registered trademark." *See* Motion [D.E 105], pg. 14.

### a. *Plaintiff Ignores Amazon's Guidelines*

Plaintiff's conclusion ignores every controlling Amazon's guideline. RSOF ¶¶ 23-27. Specifically, Amazon's sellers, including Plaintiff, are expected to adhere to the Seller Code of Conduct, including "[n]ever engag[ing] in any misleading, inappropriate or offensive behavior." RSOF ¶ 23. The Seller Code of Conduct applies to <u>all</u> of selling partners' activities, including "[i]nformation provided in listings, content or images." RSOF ¶ 23.

Among the selling policies, Amazon's Condition Guidelines provide guidance on assigning the correct condition to each item listed for sale the Amazon Storefront. Under the Condition Guidelines, a "new" item means "[a] brand-new, unused, unopened item in its original packaging, with all original packing materials included." RSOF ¶ 26. Further, for an item to be "new," the "[o]riginal manufacturer's warranty, if any, still applies, with warranty details included in the listing comments." RSOF ¶ 26.

Similarly, under Amazon Product Authenticity and Quality guidelines, Amazon categorizes two types of violations related to product authenticity. RSOF ¶ 27. First, "[v]iolations related to product authenticity are categorized as intellectual property violations," and "Sellers are responsible for ensuring that the products [they] offer are legal, authorized for sale or re-sale, and that they do not violate intellectual property rights such as copyrights, patents, trademarks, and rights of publicity." RSOF ¶ 27. Second, Amazon policy prohibits selling partners from listing or shipping "'materially different' products." RSOF ¶ 27. A product listed and shipped by a selling partner "must exactly match the description, pictures, and all other information on the product detail page." RSOF ¶ 27. Thus, listing a product in "new" condition when it is not "brand-new or unused condition, or in un-opened original packaging" is a "[m]aterially different product condition violation." RSOF ¶ 27. Consequently, under Amazon's guidelines, which Plaintiff admits, a product is inauthentic and counterfeit if the product is being sold as "new" without a manufacturer's warranty. RSOF ¶¶ 33-36.

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

As articulated above, the record contains no evidence that Amazon only considers products to be counterfeit if the product or packaging has an unlawful reproduction of a registered trademark. While Amazon does consider products to be counterfeit if the product or packaging has an unlawful reproduction of a registered trademark, Plaintiffs argument wholly ignore the undisputed facts of what Amazon's guidelines actually say and the polices sellers, including Plaintiff are required to follow. Simply put, Amazon's certified records explicitly state that Plaintiff's sale of purported Youngblood products was inauthentic because a product is inauthentic and counterfeit if the product is being sold as "new" without a manufacturer's warranty and therefore, counterfeit because Plaintiff sold purported Youngblood products as "new" without a warranty. RSOF ¶¶ 23-27, 28-32, 33-36.

### b. *Amazzia submitted the complaints to Amazon because Plaintiff was violating Amazon's guidelines by selling products purporting to be Youngblood products without a warranty*

In the Motion, Plaintiff also claims that Youngblood's Thirteenth and Fourteenth Affirmative Defenses fail because Youngblood was not relying on Amazon's policies when it filed its counterfeit complaint. *See* Motion [D.E 105], pg. 14.

However, Plaintiff cannot ignore the undisputed evidence in this matter as to the reason why Youngblood sought to stop the sale of inauthentic and counterfeit goods. Likewise, Plaintiff cannot ignore the reasons behind Amazzia's complaints to Amazon regarding Plaintiff's sale of inauthentic and counterfeit Youngblood products. Specifically, Youngblood hired Amazzia to curb the sale of inauthentic Youngblood products on the secondary market because Plaintiff was diluting the Youngblood brand and its products. RSOF ¶¶ 20-21. Amazzia submitted the complaints regarding Plaintiff's unauthorized sale of Youngblood products because Plaintiff was violating Amazon's Anti-Counterfeiting guidelines. RSOF ¶ 51. Indeed, prior to making any complaint to Amazon regarding Plaintiff, Amazzia conducted an investigation and determined that Plaintiff was selling inauthentic and counterfeit Youngblood products. RSOF ¶ 51. Amazzia concluded that the products listed for sale on Plaintiff's Amazon Storefront were (1) not authorized, (2) Solu-Med was selling them as "new" under Amazon's guidelines without a warranty, and (3) they were inauthentic and counterfeit under Amazon's guidelines because they were sold without the Youngblood Warranty and quality controls. RSOF ¶ 51. Moreover, Plaintiff wholly failed to provide any training to its employees on Amazon's guidelines and how to comply with any of Amazon's guidelines. RSOF ¶¶ 31-41.

Lastly, Plaintiff cannot ignore the evidence in this case regarding Youngblood's justification in submitting the complaints to Amazon against Plaintiffs for a one-line argument of counsel in Youngblood's motion to dismiss. *Rowell v. Bellsouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) (concluding that statements are not admissions by a party opponent where the testimony does not support such a conclusion - "It is in reality nothing but inadmissible opinion"). Moreover, even if the statement were true, that does not negate the undisputed evidence of what actually happened here, *i.e.*, why Amazzia determined Plaintiff was selling inauthentic and counterfeit Youngblood products. RSOF ¶ 51. Thus, there is no dispute that Youngblood's complaints to Amazon were made because Plaintiff violated Amazon's guidelines, and Youngblood was therefore justified.

### iii. Fourth Affirmative Defense

Youngblood's Fourth Affirmative defense states that all actions taken by Youngblood were justified because Plaintiff sold purported Youngblood products without a warranty and thus, were not genuine Youngblood products. *See* Answer [D.E. 85]. Despite the same, Plaintiff's Motion asserts that Youngblood's Fourth Affirmative Defense fails because "no explanation is given why Youngblood products sold by Plaintiff do not come with a warranty" and under *Otter* there is no way to gauge whether the absence of a warranty would be considered a material difference. *See* Motion [D.E. 105], pgs. 12-13.

### a. Plaintiff was not authorized to sell Youngblood products and was selling purported Youngblood products that were materially different

Plaintiff asserts that *Otter* is inapplicable because it is a Lanham Act claim. *Otter Prods., LLC*, 2019 WL 1403022, *2. However, the *Otter* case is a trademark infringement case and the facts in *Otter* are substantially similar to the facts in this matter. As stated above, the court in *Otter* found that the defendant, by selling materially different, non-genuine products bearing Otter's trademark on Amazon, the defendant was creating consumer confusion because consumers who purchased products from the defendant were doing so based on the false belief that they were getting genuine Otter products that came with the limited warranty, in accordance with the plaintiffs' quality controls, when, in fact, those consumers were not. *Id.*

Similar to *Otter*, Youngblood offers its Warranty for products purchased from Youngblood's website or through an <u>authorized</u> retailer. RSOF ¶ 19. Youngblood products purchased from an unauthorized reseller or online third-party reseller do <u>not</u> come with the

10

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

Warranty. RSOF ¶ 19. Unauthorized resellers or online third-party resellers are <u>not</u> authorized by Youngblood to offer the Warranty. RSOF ¶ 19. Plaintiff, as it concedes, was not authorized to sell Youngblood products, and instead sold purported Youngblood products without the Warranty. RSOF ¶¶ 28-32. Similar to *Otter*, as detailed above, Plaintiff was selling materially different, non-genuine products bearing the Youngblood name in violation of Amazon's guidelines because it was selling products purporting to be "new" and genuine Youngblood products without the Warranty. RSOF ¶¶ 23-27, 28-32, 34-36. By doing so, Plaintiff not only violated Amazon's Seller Code of Conduct, Anti-Counterfeiting, Condition Guidelines, and Authenticity and Quality Guidelines, but also created consumer confusion because consumers who purchase products from Plaintiff believed they were getting genuine Youngblood products that came with the Warranty and abided by Youngblood's quality controls, when, in reality, they were getting unauthorized, counterfeit products without any warranty.

### b. *Plaintiff failed to produce competent evidence to support its assertion that Youngblood's Warranty is inconspicuous*

In its Motion, Plaintiff also asserts that Youngblood's Fourth Affirmative Defense should be dismissed because Youngblood's Warranty is not conspicuous because it is on its website. In an effort to bolster its otherwise unfounded position, Plaintiff merely speculates, "it is doubtful that Defendant could legally refuse to honor its alleged express warranty, because the goods were purchased from an unauthorized seller." *See* Motion [D.E. 105], pg. 12-13.

However, Plaintiff has provided no authority for the proposition that Youngblood's Warranty as it appears on its website is inconspicuous. *Dye v. Tamko Building Products, Inc.*, 908 F. 3d 675, 683 (11th Cir. 2018) (stating that a diligent consumer could easily have discovered and reviewed warranty terms on a website before or after purchase). To be sure, "modern consumers are on notice that products come with warranties and other terms and conditions of purchase. And they are free to research (or not), request (or not), and read (or not) those terms before unwrapping their purchases." *Dye*, 908 F. 3d at 683. As explained above, in violation of Amazon's policies, Plaintiff sold unauthorized products purporting to be Youngblood products as "new," when in fact the products were not genuine Youngblood products. As detailed above, the products sold by Plaintiff were materially different from those sold by Youngblood because they did not come with the Warranty.

### iv. *Tenth Affirmative Defense*

Lastly, Plaintiff asserts that Youngblood's Tenth Affirmative Defense fails because

Youngblood has "not produced evidence that Plaintiff's Youngblood products do not abide by and interfere with quality controls." *See* Motion [D.E. 105], pg. 13. Plaintiff asserts that "[p]atently Plaintiff can still abide by them (whatever they are), without Defendant's oversight, especially where Defendant has failed to articulate in this conclusory affirmative defense, what quality control standards, if any, apply to retail internet sales and how Plaintiff has failed to abide by them." *Id.*

However, Youngblood's quality controls are extensive and designed to protect the integrity of Youngblood's products purchased by the ultimate consumers. For example, Youngblood's restricts the location where its distributors can sell, what changes can be made to Youngblood's packaging, who its distributors are permitted to subcontract with, where the distributor maintains an office, what type of staff its distributors keep, what controls the distributor puts on testers and displays, and how much its distributors can charge for Youngblood products. RSOF ¶ 22. Similarly, Youngblood requires that when processing a sale, each distributor must provide a written purchase order, identifying the products sold, the sizes and quantities to be procedures, destination, and any other information Youngblood requests so it can monitor to whom Youngblood products are being sold and to where they are being distributed. RSOF ¶ 22.

Youngblood also restricts its advertising to only those advertisements supplied by Youngblood. RSOF ¶ 22. Youngblood prohibits its distributors from modifying or copying Youngblood's products or developing or manufacturing products similar to Youngblood products. RSOF ¶ 22. Furthermore, Youngblood requires its distributors to notify Youngblood of any claims of infringement. RSOF ¶ 22. Lastly, Youngblood oversees how its distributors handle returns and how they process Youngblood's Warranty. RSOF ¶ 22.

None of the foregoing quality controls were followed or implemented by Plaintiff. Indeed, Plaintiff neither requested, nor was given authorization by Youngblood to sell Youngblood products. RSOF ¶ 28. Contrary to Plaintiff's contention, it is clear Plaintiff could not and likely would not abide by Youngblood's quality controls, as Plaintiff provided no training to its employees on how to sell products on Amazon, had no internal operating procedures, listed products falsely identifying them as "new" and genuine Youngblood products for sale that did not actually contain the Warranty. [3] RSOF ¶¶ 28-36, 39-41, 71.

---

[3] To date, Plaintiff has not even produced a complete chain of custody for the products coming directly from Youngblood, to any middle distributors, to Plaintiff.

Indeed, Plaintiff, admittedly, does not offer any warranty or even allow returns of any of its cosmetics sold on its Amazon Storefront, including Youngblood products. RSOF ¶¶ 28-36, 39-41, 71. In fact, Plaintiff's Amazon Storefront explicitly states, "Due to Federal regulations, We are unable to except returns or exchanges on Personal Hygiene items, Hair Care, Cosmetics, Fragrance, Skin Care, or Toys." RSOF ¶ 32. Crucially, Plaintiff failed to support their burden as to show that Youngblood cannot maintain its justification affirmative defense by a preponderance of the evidence. *Blalock v. Dale County Bd. of Educ.*, 84 F. Supp. 2d 1291, 1312–13 (M.D. Ala. 1999) (denying summary judgment where movant stated the applicable standard and cursorily stated that non-movant could not meet that standard).

## III.   Defamation Affirmative Defenses

### i.   *Sixth Affirmative Defense – Truth*

Youngblood's Sixth Affirmative Defense states that Plaintiff's defamation claim fails because Youngblood's alleged statements to Amazon were true. *See* [D.E. 85]. "[U]nder Florida law, truth is only a defense to defamation when the truth has been coupled with good motive." *Lipsig v. Ramlawi*, 760 So. 2d 170, 183 (Fla. 3d DCA 2000). Here, the record evidence confirms that Youngblood did not act with malice, and instead acted to protect its business and its brand.

### a.   *Under Amazon's guidelines, Youngblood's complaints were true*

Plaintiff asserts that Youngblood has not supported its Sixth Affirmative Defense because it does not have evidence that Plaintiff was selling counterfeit Youngblood products since Amazon only considers unlawful reproductions of Defendant's registered trademarks as counterfeit. *See* Motion [D.E. 105], pg. 16-17.

According to Amazon's guidelines Youngblood's complaints to Amazon were true. As detailed above, under **Amazon's Anti-Counterfeiting policy** "[p]roducts offered for sale on Amazon must be authentic" and it is the "seller's and supplier's responsibility to source, sell, and fulfill only authentic products." RSOF ¶ 24. Additionally, pursuant to Amazon's Cosmetics and Skin Care Policy, all cosmetics sold on Amazon must be, among other things,  "new" and unused. Amazon's guidelines require that product offered for sale on Amazon be "new." RSOF ¶ 25. A "new" product, under Amazon's guidelines, is a "[a] brand-new, unused, unopened item in its original packaging . . . [with the] Original manufacturer's warranty, if any, still applies . . . ." RSOF ¶ 26.  Similarly, under Amazon's Condition Guidelines, it is a violation to sell a product on Amazon as "new" without the original manufacturer's warranty. RSOF ¶ 26. Similarly, Amazon's

Product Authenticity guidelines state that violations of authenticity are **intellectual property violations**. Likewise, it is a violation of Amazon's policy to list a materially different product than the product sold—*i.e.*, listing a product in "new" condition when it, in fact, does not come with a warranty. RSOF ¶ 27.  Accordingly, pursuant to Amazon's guidelines, a product is unequivocally inauthentic and counterfeit if the product is being sold as "new," but does not come with a warranty. RSOF ¶¶ 24-27.

In the instant matter, under Amazon's guidelines, Plaintiff was selling inauthentic and counterfeit Youngblood products in violation of Amazon's guidelines because: (1) Plaintiff was selling purported Youngblood products as "new" on its Amazon Storefront (RSOF ¶ 29); (2) Plaintiff's purported Youngblood products sold did not come with a Youngblood 100% satisfaction guarantee ("Warranty") (RSOF ¶ 30); (3) Plaintiff does not offer any warranty or even allow returns of any of its cosmetics sold on its Amazon Storefront, including Youngblood products (RSOF ¶ 32); (4) Plaintiff violated Amazon's Authenticity Guidelines by listing the purported Youngblood products on its Amazon Storefront as "new" when those products did not come with a  Warranty (RSOF ¶¶ 27, 32-36); and (5) Plaintiff's purported Youngblood products were inauthentic and counterfeit under Amazon's guidelines (RSOF ¶¶ 34-36). Similar to *Otter*, Plaintiff was selling products that are materially different from genuine Youngblood products because they do not come with the Warranty in violation of Amazon's guidelines. *Otter Products, LLC*, 2019 WL 1403022 at *2. Therefore, Youngblood's complaints to Amazon were undoubtedly true.

### b. *Plaintiff failed to meet its burden to show Youngblood's complaints were false*

Plaintiff also claims that Youngblood failed to conduct any scientific test or review of the packaging to determine whether the Youngblood products Plaintiff was selling was counterfeit. [D.E. 105], at pg. 17. Plaintiff asserts that Youngblood has not met its evidentiary burden and asks this Court for a negative inference. *Id.*

To establish a claim of defamation or trade libel, Plaintiff must first overcome the burden of establishing that the statement was false before the burden would shift to Youngblood to prove its truth. *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008); *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1348 (M.D. Fla. 2006). Indeed, element of "falsity" is an essential part of the plaintiff's prima facie case of defamation. *Colodny v. Iverson, Yoakum, Papiano & Hatch,* 936 F. Supp. 917, 923 (M.D. Fla. 1996) (citing *Axelrod v. Califano*, 357 So.2d

1048, 1050 (1st DCA 1978)). Similarly, a trade libel plaintiff, whether a corporate entity or private individual, has the burden of proving that the communication at issue was false. *Bothmann v. Harrington*, 458 So. 2d 1163, 1169 (Fla. 3d DCA 1984) ("In this type of action, there is no presumption that a disparaging statement is false, as is the case in a personal slander action, and the plaintiff has the burden of establishing falsity") (emphasis added).

In this action, Plaintiff has failed to produce any evidence to meet its burden in showing that Youngblood's complaints to Amazon, *i.e.*, that Plaintiff was selling inauthentic and counterfeit Youngblood products, were false. To be clear, Plaintiff has not produced any expert report in support of its claim that the sale of purported Youngblood products it listed for sale on its Amazon Storefront were genuine and authentic products. What the record does reflect is that Plaintiff's liability expert confirmed that he has not inspected the products Plaintiff listed for sale as purported Youngblood products. [D.E. 110-4], 82:19-21, 132:3-6.

To be clear, throughout the course of this lawsuit, Youngblood sought documentation from Plaintiff and third parties to support its claim that the products sold by Plaintiff were genuine and authentic Youngblood products. Plaintiff never produced <u>any</u> documents demonstrating the products it sold were genuine and authentic Youngblood products. Indeed, as acknowledged by Plaintiff's former employees, after Amazon deactivated its Storefront, Plaintiff did not have the source information for the Youngblood products and did no investigation, including contacting its distributor, Imperial Trading ("Innopex") to determine the source of the Youngblood products and to confirm the products were genuine. RSOF ¶¶ 37-38, 66, 69, 71. Instead, Plaintiff merely responded to Amazon by submitting an invoice, which did not reflect any information regarding the source of the purported Youngblood products. RSOF ¶¶ 71; [D.E. 113-23]. To date, the record is devoid of any evidence reflecting that the products Plaintiff purported to sell as authentic Youngblood products originated from Youngblood.

### c. *Plaintiff lacks any chain of custody documents to support the authenticity of the purported Youngblood products*

Significantly, when Youngblood requested documents reflecting the products' complete chain of custody to determine how Plaintiff received the purported Youngblood products, Plaintiff could not produce the complete chain of custody. The purpose of chain of custody evidence is to provide assurances that the item, at the time it is offered, is in substantially the same condition as it was in when it was seized or made. *United States v. Turpin*, 65 F.3d 1207, 1213 (4th Cir. 1995).

Without a proper chain of custody, there is no way for Plaintiff to provide any assurances that the purported Youngblood products sold on its Amazon Storefront were in fact, authentic and genuine Youngblood products. To be clear, it is Plaintiff's burden to show falsity of the complaint to Amazon and Plaintiff has produced zero evidence of the same.

As stated above, Plaintiff never produced <u>any</u> documents demonstrating the products it sold were genuine and authentic Youngblood products. Rather, Plaintiff attempted to outline a chain of custody for the purported Youngblood products by providing invoices from Youngblood to a Colombian company called MasMed Limitda ("MasMed"). Plaintiff also provided invoices from Innopex to Q-Med, LLC ("Q-Med")[4] purportedly demonstrating that Q-Med purchased the purported Youngblood products from Innopex.

Crucially, Plaintiff has never produced any invoices or receipt reflecting how Innopex received the purported Youngblood products. Indeed, there is no evidence in the record to support that Innopex procured the purported Youngblood products from MasMed. Youngblood subpoenaed Innopex's records related to Q-Med and Plaintiff's purported purchase of Youngblood products from Innopex. Innopex stated that it had provided all such documents to Plaintiff. To date, none have been produced.

Additionally, in an effort to deflect from the real issue, Plaintiff sought to schedule an inspection to allow Youngblood to inspect Plaintiffs' purported Youngblood products, other than the actual ones Youngblood complained about, to determine whether Plaintiff sold authentic and genuine Youngblood products. However, the only products at issue in this matter are the ones Youngblood submitted complaints to Amazon. Thus, any result from an inspection of these other purported Youngblood products is entirely irrelevant to whether the products at issue were genuine Youngblood products. As such, without any evidence that Plaintiff actually sold authentic and genuine Youngblood products, Youngblood's complaints to Amazon were undeniably true. Accordingly, Plaintiff's Motion should be denied.

### ii. Sixteenth Affirmative Defense – Qualified Privilege

Additionally, Plaintiff moves for summary judgment on Youngblood's Sixteenth Affirmative Defense of qualified privilege based on its assertion that Youngblood lacked good faith in submitting its complaints to Amazon. *See* Motion [D.E. 105], pgs. 18-19.

---

[4] Q-Med is Plaintiff's distributor who allegedly purchased Plaintiff allegedly purchased the Youngblood products from Innopex. RSOF ¶ 37.

Under Florida law, "in order for a communication to be qualifiedly privileged, it must be made by one who has a duty or interest in the subject matter and to one who has a corresponding duty or interest." *Teare v. Local Union No. 295 of the United Ass'n of Journeymen & Apprentices of Plumbers & Pipe Fitters Indus. of U.S. & Canada*, 98 So. 2d 79, 83 (Fla. 1957). The statement must be made without malice, and "there must be a mutuality of interest or duty or both existing between the person who makes the statement and the person to whom the statement is made." *Id.*[5]

Here, Plaintiff concedes that "there is no reason to believe that [the shutdown] was [Youngblood's] initial intended objective." *See* Motion [D.E. 105], pg. 6. Indeed, the record evidence confirms that Youngblood had a legitimate interest in maintaining the integrity of its products by ensuring that its products are sold only by authorized resellers. RSOF ¶¶ 20-21. Youngblood had reason to believe counterfeit Youngblood products were being sold on the secondary market. RSOF ¶¶ 20-21.  To combat the same, Youngblood took steps to eliminate such conduct, including hiring Amazzia, to act on its behalf and assist in maintaining its brand and preventing the secondary market and unauthorized resellers from selling its products when they were not authorized to do so. RSOF ¶ 21.

The record is devoid of a single piece of evidence to support Plaintiff's assertion that Youngblood submitted its complaints to Amazon in bad faith or with malicious intent to harm Plaintiff's business. *Ice Portal, Inc. v. VFM Leonardo, Inc.*, 2010 WL 2351463, at *7 (S.D. Fla. Jun. 11, 2010) ("[A]ctions taken to safeguard or protect one's financial interest" are privileged "so long as improper means ... include[ing] physical violence, misrepresentations, intimidation, conspiratorial conduct, illegal conduct, and threats of illegal conduct ... are not employed."). Accordingly, summary judgment on Youngblood's Sixteenth Affirmative Defense is improper.

## IV.   Seventh and Eight Affirmative Defenses

Plaintiff also seeks summary judgment on Youngblood's Seventh and Eighth Affirmative Defenses based on its argument that Youngblood failed to file a retraction the way that Plaintiff wanted it and as a result, Plaintiff asserts Amazon shut Plaintiff's Amazon Storefront down . [D.E. 105], pgs. 6-9. Plaintiff asserts "[a] retraction would require an admission that Plaintiff was not

---

[5] Additionally, "[a] communication made in good faith on any subject matter by one having an interest therein, or in reference to which he had a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable, and though the duty is not a legal one but only a moral or social obligation." *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007) (citing *Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984)).

selling counterfeit Youngblood goods." *See* Motion [D.E. 105], pg. 8. On the other hand, Plaintiff argues that Youngblood "was in a unique position to extricate Plaintiff … by simply informing Amazon that it was . . . withdrawing the complaint." *Id.* at pg. 8. And as a result, Plaintiff asserts that "Youngblood must bear the responsibility of the shutdown." *Id.* at pg. 9.

Youngblood's Seventh and Eighth Affirmative Defenses are based on (1) Youngblood's lack of control over Amazon and (2) the fact that Youngblood only requested that Amazon remove Plaintiff's inauthentic and counterfeit Youngblood products from its Amazon Store. *See* Amended Answer and Affirmative Defenses [D.E. 85]. To establish its tortious interference claim, Plaintiff must establish intent to damage the business relationship and a lack of justification to take the action which caused the damage. *Networkip, LLC v. Spread Enterprises, Inc.*, 922 So. 2d 355, 357 (Fla. 3d DCA 2006); *Special Purpose Accounts Receivable Co-op Corp. v. Prime One Capital Co.*, 125 F. Supp.2d 1093, 1104 (S.D. Fla. 2000) (noting that justification or privilege to interfere with a contract is an affirmative defense to a tortious interference action). Youngblood's Seventh and Eighth Affirmative Defenses go to these elements. *See* [D.E. 85].

However, Plaintiff's position as to Youngblood's Seventh and Eighth Affirmative Defenses is nonsensical. It is undisputed that after Plaintiff agreed to stop selling Youngblood products entirely, Youngblood promptly sent an e-mail to Amazon advising, "[p]lease withdraw complaint ID: 331832151 as we have resolved our complaint with Life and Health Source . . . ." RSOF ¶ 74; [D.E. 104-4]; [D.E. 113-27]. Notwithstanding the same, it is undisputed that Youngblood did not agree nor concede that the products sold by Sol-Med were authentic and genuine Youngblood products. RSOF ¶ 4. Additionally, as detailed in Youngblood's Motion for Summary Judgment [D.E. 108], there is no record evidence which establishes the products sold by Plaintiff were in fact genuine and not counterfeit Youngblood products. Rather, and as stated above, there is zero evidence of an invoice or receipt from Youngblood to a distributor to Plaintiff's purported distributor, Innopex to Q-Med, and then to Plaintiff. RSOF ¶¶ 37-38. To be clear, Plaintiff has not conducted any investigation into where its purported distributors, Q-Med or Innopex, obtained the purported Youngblood products it listed for resale on its Amazon Storefront. RSOF ¶¶ 37-38, 66, 69, 71. As such, there is zero record evidence establishing the products sold by Plaintiff were in fact genuine Youngblood products. If there is no evidence that Plaintiff actually sold authentic and genuine Youngblood products, any retraction (as defined by Plaintiff of

Youngblood's complaint to Amazon would have been false. *See* Motion [D.E. 105], pg. 8. Accordingly, for the reasons set forth herein, Plaintiff's Motion fails as a matter of law.

## V.     Unclean Hands / In Pari Delicto – Fifteenth Affirmative Defense

Plaintiff further asserts that Youngblood's Fifteenth Affirmative Defense fails because "this is not a court of equity and Plaintiff only seeks to recover damages." *See* Motion [D.E. 105], pg. 9.

However, Plaintiff's Complaint asserts an equitable claim, *i.e.*, "Plaintiffs demand judgment against Defendant for declaratory relief pursuant to § 501.211(1), Florida Statutes." *See* Compl. [D.E. 1], pg. 9. Declaratory relief is an equitable claim, not a legal one. Unclean hands may certainly be asserted as an affirmative defense to an equitable claim of declaratory judgment. *See, e.g.*, *Lloyds of London v. Kelly*, 760 F.2d 240, 243 (11th Cir. 1985). Under Florida law, "[u]nclean hands may be asserted by a defendant who claims that the plaintiff acted toward a third party with unclean hands with respect to the matter in litigation." *Quality Roof Services, Inc. v. Intervest Nat. Bank*, 21 So. 3d 883, 885 (Fla. 4th DCA 2009). Similarly, under *in pari delicto*, "a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152 (11th Cir. 2006).

Here, Plaintiff made blatant misrepresentations to Amazon on multiple occasions when it responded regarding Youngblood's complaints about its sale of counterfeit and inauthentic products. For example, Plaintiff represented to Amazon that it would "review [its] product offerings, to ensure compliance with Amazon's terms of service related to intellectual property." RSOF ¶ 62. However, the record reflects that Plaintiff did not actually review Youngblood's Warranty nor provide Amazon with proof of authenticity information in its First Plan of Action submitted to Amazon. RSOF ¶ 63. To be sure, Amazon rejected Plaintiff's First Plan of Action. RSOF ¶ 64. Similarly, in its Second Plan of Action, Plaintiff misrepresented to Amazon that it was "listing Youngblood Cosmetics products that [Plaintiff] sourced from a distributor, and the brand may not have been aware that we were selling their product on Amazon that was purchased through that distributor." RSOF ¶ 65. Nevertheless, Plaintiff never contacted Youngblood regarding Plaintiff's sale of Youngblood products and certainly did not ask Youngblood's permission to sell Youngblood products. RSOF ¶ 66. In fact, Plaintiff never even asked its distributor, Innopex, if it had authority to sell Youngblood products. RSOF ¶ 66. Lastly, Plaintiff did not submit any

documentation in support of its assertion the products were authentic to Amazon. RSOF ¶ 66. Again, Amazon rejected Plaintiff's Second Plan of Action. RSOF ¶ 67.

Finally, in its Third Plan of Action, Plaintiff again made misrepresentations to Amazon. Specifically, in its Third Plan of Action, Plaintiff asserted, in pertinent part, "[w]e have been selling on Amazon for five years, and Youngblood for two years, without complaint. The items that we sourced are authentic, genuine products and we follow the Amazon Catalog Listing protocol for create all of our listings (more detail in bullet II below)." RSOF ¶ 68. However, before Amazon deactivated Plaintiff's Amazon Storefront on November 13, 2018, Amazon had received seven complaints from other, unaffiliated companies, against Plaintiff for violating trademarks and selling inauthentic and counterfeit products. RSOF ¶¶ 42-50, 69. Additionally, Solu-Med did not contact Youngblood, the manufacturer, to determine whether the products Solu-Med was selling were authentic and it did not contact Innopex to determine the source of the products. RSOF ¶ 69. Rather, Solu-Med merely looked at the product to determine whether the ASIN number matched Amazon's ASIN for the product; however, this is not a proper method to determine authenticity of the product. RSOF ¶ 69.

Additionally, Plaintiff misrepresented to Amazon that it "launched an immediate investigation of our supply chain to confirm chain of custody. We evaluated all items in our catalog in order to determine if there were any issues that may have led to this type of allegation being directed toward our products. . . [and] [w]e reviewed our internal operational procedures for listing items with Amazon . . ."  RSOF ¶ 70. However, that was also false. Plaintiff did not have the source information for the Youngblood products, and as stated above, did no investigation into the source of the Youngblood products. RSOF ¶ 71. Additionally, despite its representation that it reviewed its operating procedures, the record confirms that Plaintiff did not maintain any internal operating procedures for listing products on Amazon. RSOF ¶ 71. To be sure, a reasonable juror could find that Plaintiff has "unclean hands" and otherwise, participated in wrongdoing. As a result, Plaintiff's Motion fails.

**VI.    Damages Affirmative Defense**

  *i.  First Affirmative Defense – Mitigation of Damages*

Lastly, Plaintiff's Motion asserts that there is "no evidence to support" Youngblood's First Affirmative Defense that Plaintiff failed to mitigate its damages. *See* [D.E. 105], pg. 5. However, under Florida law, failure to mitigate damages is an affirmative defense. *Messer v. E.F. Hutton &*

*Co.*, 833 F.2d 909, 921 (11th Cir.1987); *Graphic Assoc., Inc. v. Riviana Restaurant Corp.*, 461 So.2d 1011, 1014 (Fla. 4th DCA 1984).

Here, there is substantial evidence in the record, which supports that Plaintiff failed to mitigate its damages. Therefore, there are genuine issues of material fact regarding whether Plaintiff mitigated its damages. *Deman Data Systems, LLC v. Schessel*, 2014 WL 6751195, *27 (M.D. Fla. Dec. 1, 2014) (denying plaintiffs' motion for partial summary judgment on failure to mitigate affirmative defense where plaintiffs argued defendant did not identify any actions plaintiffs could have taken to avoid the damages they suffered and defendant identified actions plaintiffs could have taken).

Specifically, in all three plans of action submitted to Amazon, Plaintiff failed to provide the information requested by Amazon, *i.e.*, proof of source and/or authenticity documents of the Youngblood products. RSOF ¶¶ 68-69, 71. Indeed, Amazon asked Plaintiff for the source information and/or proof of authenticity of the Youngblood products on at least five (5) occasions. RSOF ¶¶ 64, 67, 72-73, 75. Despite Amazon's repeated requests, Plaintiff failed to provide the information. RSOF ¶¶ 68-69, 71. Rather, Plaintiff ignored Amazon's request since it does not have any source documents and/or authenticity proof to prove the products sold by Plaintiff were in fact, Youngblood products. RSOF ¶¶ 68-69, 71. To be sure, a reasonable juror could find that Plaintiff failed to act to mitigate its damages by failing to provide Amazon with the specific information it requested.

Additionally, during the time Plaintiff's Storefront was deactivated, Solu-Med was not prevented from shipping its products to Amazon for sale and fulfillment through the Fulfillments By Amazon ("FBA") program. RSOF ¶ 77. However, Plaintiff elected not to do so. RSOF ¶ 77. Thus, Plaintiff chose not to sell its inventory to Amazon in an effort to mitigate its damages. RSOF ¶ 77. There are genuine issues of material fact that a reasonable juror could concluded that Plaintiff failed to mitigate its damages. Thus, summary judgment on Youngblood's First Affirmative Defense is not warranted and should be denied. *Deman Data Systems, LLC*, 2014 WL 6751195 at *27.

## **CONCLUSION**

For the reasons set forth herein, Plaintiff's Motion for Partial Summary Judgment should be denied in its entirety.

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

Case No.: 0:19-cv-60487-RKA/PMH

Dated:  March 19, 2020              Respectfully submitted,

COLE, SCOTT & KISSANE, P.A.
Attorneys for Defendant
222 Lakeview Ave, Suite 120
West Palm Beach, FL 33401
Telephone: (561) 383-9203
E-mail: jonathan.vine@csklegal.com
E-mail: sheena.smith@csklegal.com

By:     */s/ Sheena D. Smith*
          JONATHAN VINE
          FBN: 10966
          SHEENA D. SMITH
          FBN: 118919

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of March 2020, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system.

*/s/ Sheena D. Smith*
Sheena D. Smith

## SERVICE LIST

**Kelsey K. Black, Esq.**
Black Law, P.A.
*Attorneys for Plaintiff*
1401 E Broward Blvd. Suite 204
Fort Lauderdale, FL 33301
Telephone: (954) 320-6220
Facsimile: (954) 320-6005
kelsey@kkbpa.com

**Stanley R. Goodman, Esq**
Goodman & Saperstein
Pro hac vice admission pending
666 Old Country Road, Suite 200
Garden City, NY 11530
Telephone: (516) 227-2100
Facsimile: (516) 227-2108
Gsesq600@aol.com