UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 0:19-cv-60487-RKA/PMH

SOLU-MED, INC.,

    Plaintiff,

v.

YOUNGBLOOD SKIN CARE
PRODUCTS LLC,

    Defendant.
_____/

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF EXPERTS MICHAEL PAZAK AND RICHARD GRAY**

Defendant, Youngblood Skin Care Products, LLC ("Youngblood"), hereby responds in opposition to Plaintiff, Solu-Med, Inc.'s ("Plaintiff") Motion in Limine to Exclude Testimony of Defense Expert Michael Pazak and Defense Expert Richard Gray ("Motion") [D.E. 106], and states as follows:

**SUMMARY OF THE ARGUMENT**

Plaintiff's Motion seeks to partially prohibit Youngblood from presenting the causation testimony from its liability expert, Michael Pazak ("Mr. Pazak"). Plaintiff's Motion does not seek to prohibit all of Mr. Pazak's qualifications or reliability of his testimony to opine as to Plaintiff's prior violations, Amazon's guidelines, or the authenticity issues in this case.

Rather, Plaintiff argues Mr. Pazak is not qualified to testify as to causation, that his testimony is based on speculative assumptions, and that Mr. Pazak's testimony will not assist the trier of fact. *See* Motion, [D.E. 106] pg. 11-12. Plaintiff's Motion as to Mr. Pazak should be denied because:

- Mr. Pazak has over twenty (20) years of experience in the eCommerce industry;
- Mr. Pazak worked at Amazon.com, Inc. ("Amazon") from 2008 to 2012;

- Mr. Pazak's testimony will assist the trier of fact in understanding Amazon's complex and comprehensive guidelines regulating sellers;
- Mr. Pazak's opinion is based on the exact same assumptions Plaintiff's Expert, C. J. Rosenbaum, has relied on to form his opinion in this matter; and

- Mr. Pazak's testimony does not amount to "prejudicial" merely because it is not aligned with Plaintiff's selection of inaccurate statement of facts in this action.

Interestingly, Plaintiff also seeks to partially prohibit Youngblood from presenting the testimony of its damages expert, Richard Gray ("Mr. Gray"). Plaintiff's Motion does not challenge Mr. Gray's qualifications to testify as to Plaintiff's lost profits, his rebuttal opinions as to Plaintiff's liquidation nor his rebuttal opinions as to flaws in DeStefanis' methodology as to his business valuation analysis.

Rather, in this instance, Plaintiff argues that Mr. Gray's testimony as to lost profits is unreliable, not based on sufficient data, and that Mr. Gray is not qualified to testify as to valuations of Amazon Stores. *Id.* at pgs. 14-15. Plaintiff's Motion as to Mr. Grey should likewise be denied for the following reasons:

- Mr. Gray's opinions on Plaintiff's purported lost profits are based on reliable facts and data;
- Mr. Gray is qualified to render an opinion on Plaintiff's business valuation as there is nothing special or unique to about valuing an internet retail reseller's business; and
- Mr. Gray's opinion as to the risk premium is based on his experience and his review of the evidence of record in this matter.

Accordingly, and for the reasons set forth herein, Plaintiffs' Motion should be summarily denied.

## ARGUMENT

### I. Legal Standards

The proponent of expert testimony bears the burden of establishing its admissibility, though the standard is a liberal one. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993) (explaining that Rule 702 is part of the "liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony"). An expert is permitted to testify at trial if his "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact at issue." Fed. R. Evid. 702.

Courts in the Eleventh Circuit consider whether (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact,

2

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

## II. Michael Pazak – Amazon Expert

### a. *Mr. Pazak is qualified to render his opinions*

Initially, Plaintiff argues for the exclusion of Mr. Pazak's opinions on the basis that he is not qualified to render opinions in this action. *See* Motion, [D.E. 106], pgs. 11. Put simply, Plaintiff's position is that the fact that Mr. Pazak is a former employee of Amazon.com, Inc. ("Amazon") does not mean Mr. Pazak can provide a reliable opinion. *Id.* Plaintiff merely argues Mr. Pazak is not qualified to render an opinion in this action because Mr. Pazak "has no specific experience to support his opinion as to the cause of Amazon shutdown." *Id.*

Initially, to be clear, Plaintiff is not asserting that Mr. Pazak is unqualified to testify on Plaintiff's prior violations, Amazon's guidelines, or the authenticity issues in this case. *See generally*, Motion, [D.E. 106], pgs. 11-12; *see generally*, Report, attached hereto as **Exhibit "1"**; Rebuttal Report, attached hereto as **Exhibit "2"**. Rather, Plaintiff merely asserts that Mr. Pazak is unqualified to testify as to causation—*i.e.*, the reasons Amazon deactivated Plaintiff's Amazon Storefront. *See* Motion, [D.E. 106], pg. 12.

However, "[t]he qualification standard for expert testimony is 'not stringent,' and 'so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility.'" *Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *3 (S.D. Fla. June 25, 2009). Rule 702 requires that a testifying expert be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. A witness who possesses general knowledge of the subject may qualify as an expert despite lacking specialized training or experience, so long as his testimony would assist the trier of fact. *See Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d 1357, 1362 (S.D. Fla. 2009) (collecting cases). Indeed, expert testimony is admissible when it connects conditions existing later to earlier existing conditions provided the connection is concluded logically. Whether this logical basis has been established is within the discretion of the trial judge and the weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility. *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662-63 (11th Cir. 1988).

Put simply, Mr. Pazak has far more than "general" knowledge on the subject at issue. As a former Amazon employee, Mr. Pazak has the requisite qualifications and experience to testify as to Amazon's guidelines and its considerations for its actions taken against Plaintiff. As articulated above, Mr. Pazak has worked in the eCommerce industry for the last 21 years and has worked specifically for Amazon between 2008 and 2012 in various roles, including Amazon's Director of Enterprise Business. Michael Pazak Dep. [D.E. 106-1], 32:2-3, 33:1-2. During his tenure at Amazon, Mr. Pazak's responsibilities included, but were not limited to:

(i) overseeing Amazon's outsourced eCommerce operations for Target.com, Sears.ca, Marks & Spencer, Timex, BB Lacoste, and Benefit Cosmetics;
(ii) managing the U.S. marketplace for large brands and sellers;
(iii) managing the small and medium sellers in the U.S. Market and Canadian marketplace;
(iv) launching new categories of products for sale on the Amazon marketplace (such as sports collectibles, wine, etc.);
(v) managing Amazon's product ads, payment processing for other e-commerce provides;
(vi) expansion of the Amazon Prime program;
(vii) responding to policy warning violations and providing the requested information; and
(viii) Amazon's seller policies and expectation of sellers on Amazon.

[D.E. 106-1], 32:15-25, 33:3-25 – 34:1-2, 102:20-25  103:1-2, 10-14; 107:17-21; *See also* Exhibit "1" at pg. 1.

Since leaving Amazon in 2012, Mr. Pazak has continued to work as a consultant, offering assistant to resellers seeking to break into the Amazon marketplace and how to handle issues with Amazon. *See* [D.E. 106-1], 61:18-25 -62:1-20. Additionally, while at Amazon, Mr. Pazak worked directly with small and medium resellers, including those similar to Plaintiff, to expand this class of resellers on Amazon. *See* [D.E. 106-1], 34:14-25 – 35:1-9.

Significantly, Mr. Pazak was also involved in addressing complaints by consumers and other business to Amazon regarding the sale of products that were claimed to be counterfeit, including products that do not come with a manufacturer's warranty. *See* [D.E. 106-1], 57:22-2; 58:1-17. At his deposition, Mr. Pazak testified as follows:

> Q. **Did you have experience addressing sellers who had customer complaints?**
> A. Yes.
> Q. Okay. **Did you have experience with issue that are addressed in this case?**

>       A.     Yes, authenticity, yes.
>       Q.     And counterfeit?
>       A.     Counterfeit, yes. Warranty, yes.

See [D.E. 106-1], 111:16-24.

Plaintiff argues that Mr. Pazak should be precluded from testifying simply because he has never testified as an expert. However, the fact that Mr. Pazak has not been qualified as an expert previously in general or on the topics at issue in this case does not, in and of itself, render him unqualified to offer his opinions. *Wreal, LLC v. Amazon.com, Inc.*, 2016 WL 8793317, *6 (S.D. Fla. Jan. 7, 2016) (rejecting argument that proffered expert was unqualified because he has not previously testified as an expert on a specific topic and had not previously worked on a trademark infringement case.) Here, Mr. Pazak's opinions are based on his significant experience, a thorough review of the documents produced in discovery, from both Plaintiff and Amazon, Amazon's guidelines, as well as deposition testimony forming the record of Plaintiff's continued failure to respond to Amazon's request for source information applied to his relevant experience in the e-commerce world and as an executive in Amazon. *See* [D.E. 106-1], 43:4-25 – 44:1. This connects his earlier opinions to the opinions he has formulated based on a review of this matter, demonstrating how his industry experience leads to the opinions formulated in this case. Indeed, Mr. Pazak is certainly qualified to render opinions in this action.

   b. *Mr. Pazak's Testimony is Reliable*

       i. **Mr. Pazak's assumptions are the exact same assumptions relied upon by as Plaintiff's Expert**

Second, Plaintiff moves to exclude Mr. Pazak's opinions asserting that Mr. Pazak "simply cannot opine with reasonable certainty why Amazon shut down Solu-Med's store. . . he simply does not know the actual reasons for the [Amazon] shut down [of Plaintiff's Amazon Storefront] and Pazak must not be permitted to tell the jury otherwise." *See* Motion, [D.E. 106], pg. 12.

An expert opinion based on experience requires a showing that the experience "[leads] to the conclusion he reached, why that experience was a sufficient basis for the opinion, and just how that experience was reliably applied to the facts of the case." *Frazier*, 387 F.3d at 1265. Disagreement over an expert's conclusions is best tested on cross-examination or through the presentation of other contrary admissible evidence. *See e.g, Allison v. McGhan Medical Corp.*,

184 F.3d 1300, 1312 (11th Cir. 1999); *Gonzalez v. Cooperativa de Seguros Multiples de Puerto Rico, Inc.*, No. 8:08-CV- 1910-T-30TGW, 2009 WL 3781492, at *3 (M.D. Fla. Nov. 10, 2009).

Here, Plaintiff does not assert Mr. Pazak's methodology as to Plaintiff's prior violations, Amazon's guidelines, or the authenticity issues in this case are unreliable. *See generally*, Motion, [D.E. 106], pgs. 11-12; *see generally*, Exhibit "1".  Rather, Plaintiff mere asserts that Mr. Pazak's opinions as to causation—*i.e.*, the reasons Amazon deactivated Plaintiff's Amazon Storefront—are unreliable. *See* Motion, [D.E. 106], pg. 12.

Mr. Pazak testified based on his experience that Amazon suspended Plaintiff's Amazon Storefront because of its history of prior complaints, including those that were identical to the Youngblood complaints, Plaintiff's performance, and Plaintiff's lack of response to prior complaints and the Youngblood complaint. *See* [D.E. 106-1], 43:4-25 – 44:1-4. Moreover, Plaintiff's notion that Mr. Pazak's testimony is unreliable is based on a flawed methodology. Plaintiff's position is further perplexing because Plaintiff's own liability expert, C. J. Rosenbaum's ("Rosenbaum"), formulated his opinions on the *same* assumptions. Specifically, Rosenbaum testified that he:

- never spoke with anyone at Amazon about this case;
- never spoke with anyone at Amazon about Youngblood's complaints; and
- has no personal knowledge of why Amazon deactivated Plaintiff's Amazon store, Life & Health Source ("Amazon Store").

*See* Rosenbaum Report, [D.E. 110-1], ¶¶ 16, 19; Rosenbaum Dep. [D.E. 110-2], 30:2-4, 82:9-12; 19-21 [D.E. 110-2].

To be clear, without having spoken with anyone at Amazon, reviewing any documents, or otherwise confirming with Amazon why it deactivated Plaintiff's Amazon Store, Rosenbaum's testimony is likewise nothing more than unsubstantiated *ipse dixit* speculation. Certainly, what is good for the goose is good for the gander. *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 2012 WL 913248, *1 n.1 (S.D. Fla. Mar. 16, 2012) ("The saying is commonly understood to mean, 'if a particular type of behavior is acceptable for one person, it should also be acceptable for another person.'"). Accordingly, under Plaintiff's own logic, should this Court determine Mr. Pazak's testimony should be precluded on the causation ground, this Court should likewise exclude Rosenbaum's opinions as to why Amazon deactivated Plaintiff's Amazon Storefront. Indeed, allowing one and not the other would cause confusion among the jurors and prevent the finder of fact from considering the entire picture.

### c. *Mr. Pazak's Testimony will assist the trier of fact*.

#### i. Mr. Pazak's expert testimony fits the facts of this case

Additionally, Plaintiff asserts that Mr. Pazak's opinion that Plaintiff violated Amazon's policies by selling products without a manufacturer's warranty should be excluded because "there is no evidence in the record that such an alleged violation played any role whatsoever in Amazon's decision" to deactivate Plaintiff's Amazon Storefront or that "such a violation is the same as selling "counterfeit" goods." *See* Motion, [D.E. 106], pg. 12. Plaintiff boldly proclaims that Plaintiff's prior misconduct played no role in Amazon's decision to deactivate Plaintiff's Amazon Storefront. *Id.* Plaintiff further asserts Mr. Pazak's testimony does not fit the facts of this case.

To be admissible, expert testimony must evince an application of "principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Expert testimony must "fit" the case-that is, be sufficiently tied to the facts of the case to help the trier of fact understand the evidence or resolve a factual dispute. *Daubert*, 509 U.S. at 591.

Here, contrary to Plaintiff's contention, there is evidence in the record to support Mr. Pazak's opinions that the prior complaints played a role in Amazon's decision to deactivate Plaintiff's Amazon Storefront. Specifically, between January 2018 and July 2018, other companies unaffiliated with Youngblood complained to Amazon regarding the inauthentic or otherwise counterfeit products being sold by Plaintiff on its Amazon Storefront. *See* Declaration of Amazon [D.E. 113-6], Ex. 7-13. With each complaint, Amazon sent correspondence to Plaintiff indicating that it was violating Amazon's policies and barred Plaintiff from selling those specific products. *Id.* With each correspondence, Amazon explicitly warned Plaintiff "[i]f [Amazon] receive[d] more complaints about your listings, we may not allow you to sell on Amazon.com." *Id.*; [D.E. 113-6], Ex. 7-13. Plaintiff was aware of these policy warning violations from Amazon and intentionally ignored them. [D.E. 113-5], 38:15-20.

Despite multiple written warnings by Amazon, and the direct threat of deactivation, Plaintiff elected to continue in its sale of counterfeit, inauthentic and/or unauthorized products, including products purporting to be Youngblood, on its Amazon Storefront. Indeed, it was Plaintiff's pattern and practice to disregard and/or <u>not</u> respond to Amazon's policy warnings violations. [D.E. 113-5], at 93:10-19; 95:5-7, 97:17-19. Rather, Plaintiff simply removed the product listing from its Amazon Storefront or simply took no action because Amazon would

automatically take the listing down. [D.E. 113-5], 92:1-23 – 93:1-9. Further, consistent with its practice, Plaintiff ignored Amazon's four policy warning violations regarding Plaintiff's sale of inauthentic and counterfeit Youngblood products. [D.E. 113-5], 107:1-3, 109:3-8, 112:16-20.

To be sure, there is sufficient reliable facts and data to support Mr. Pazak's opinion that Plaintiff's failure to respond to Amazon's prior policy warning violations contributed to Amazon decision to deactivate Plaintiff's Amazon Storefront.

### ii. Testimony will assist trier of fact to understand Amazon's guidelines

"[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person" and offers something "more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262-63 (citations omitted). Relevant here, "Amazon has established comprehensive guidelines and policies to try to prevent sellers from damaging the trusted relationship it enjoys with its customers." Exhibit "1" at pg. 5. Amazon offers training programs, and reports to assist seller's in complying with its comprehensive guidelines. *Id.* While an average juror likely understands how to purchase items on Amazon, the average juror is unfamiliar with Amazon's seller guidelines or Amazon's practices and procedures pertaining to Amazon's regulation of its sellers.

Accordingly, Mr. Pazak's testimony will certainly assist the jury in understanding Amazon's multiple guidelines regulating sellers, how these guidelines have evolved over time, and what policies resellers are supposed adhere to in listing products on Amazon as well as responding to Amazon's inquiries. *See* Exhibit "1" at pg. 6; [D.E. 106-1], 45:5-25 – 46:1-2. These explanations require a specialized knowledge that would go beyond the realm of the average juror's knowledge and experience.

In similar instances, courts have admitted expert testimony bearing on the meaning of and a party's compliance with the applicable laws and regulations. *See e.g.*, *In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1070 (D. Minn. 2007) (admitting expert opinion testimony on whether certain analyses needed to be reported to the FDA as part of the drug approval process); *In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F. Supp. 2d 20, 32 (D. Mass. 2007) (permitted expert testimony regarding the health care market); *State Nat. Ins. Co. v. Access General Agency, Inc.*, 2007 WL 4563860, *2 (N.D. Ga. Aug. 22, 2007) (Camp, J.) (admitting expert testimony regarding insurance company's response to time-limited demand for settlement even though the

issues "are not necessarily complicated or complex matters beyond the understanding of the average juror, [as expert] testimony will assist the jury in understanding such matters as what documents an insurance adjustor might need to adjust a claim and how long an adjuster might take to assess and respond to a claim or demand for payment").

Indeed, of the issues for the jury to determine is whether Youngblood's complaints to Amazon were false. In order to make this decision, the jury will have to first determine whether Plaintiff violated Amazon's guidelines by selling inauthentic and counterfeit on Plaintiff's Amazon Storefront. Accordingly, Mr. Pazak's explanation of Amazon's guidelines and what information would have likely been considered by Amazon when deciding whether to deactivate Plaintiff's Amazon Storefront will assist the jury in understanding the facts and issues in this case.

### iii. **Mr. Pazak's testimony is not prejudicial**

Lastly, Plaintiff argues that Mr. Pazak's testimony should be excluded because it is inflammatory, could confuse the jury, and will prejudice Plaintiff. *See* Motion, [D.E. 106], pg. 12.

Outside of its mere conclusory assertion, Plaintiff has provided no basis to support the claim. To be clear, it is undisputed Plaintiff was not authorized to sell Youngblood products. It is also uncontested Plaintiff was selling purported Youngblood products as "new" without a warranty. Consequently, it is undisputed Plaintiff knowingly violated Amazon's guidelines. *See* [D.E. 113-4], 36:7-12, 70:4-7, 75:16-18; [D.E. 113-5], 57:1-7, 68:3-8, 10-25 -69:1; [D.E. 113-6], Ex. 2, 3, 5. Moreover, it is the evidence of record confirms that companies unaffiliated with Youngblood complained to Amazon that Plaintiff was selling inauthentic or otherwise counterfeit products on its Amazon Storefront. Each time Amazon received a complaint against Plaintiff, Amazon advised Plaintiff that it "consider[d] allegations of counterfeit a serious matter and your account is under review. If [Amazon] receive[d] more complaints about your listings, we may not allow you to sell on Amazon.com." *See* [D.E. 113-6], Ex. 7-13. All of these facts form the bases of Mr. Pazak's testimony, and Plaintiff cannot conveniently ignore facts and evidence in this case in order to fit its false narrative.

Plaintiff speculates that Mr. Pazak's opinions could damage its case and distract the jury from Plaintiff's claims. Nevertheless, if such "prejudice" were grounds for excluding expert testimony no defendant would ever be allowed to present an expert or indeed any evidence in its defense. Daubert motions are not means for preventing defendants from presenting their case or keeping defendant's interpretations of the facts from a jury, and to do so would be categorically

unjust and gravely prejudicial to defendants. However, that is precisely what the Plaintiff is attempting to do with its Daubert motion – provide the jury with only one side of the story. Therefore, Plaintiff's motion is without merit and should be denied in full.

### III. Richard Gray – Damages Expert

Youngblood retained Mr. Gray to opine as to (1) Plaintiff's purported lost profits and (2) provide a rebuttal report as to Plaintiff's expert's business valuation. *See* Gray Report, attached hereto as **Exhibit "3"**; Rebuttal Report, attached hereto as **Exhibit "4"**. To be clear, Plaintiff's Motion does not challenge Mr. Gray's opinions and testimony regarding the following:

- qualifications to testify as to lost profits;
- rebuttal opinions as to Plaintiff's liquidation; and
- rebuttal opinions as to flaws in DeStefanis' methodology as to his business valuation analysis.

*See generally*, Motion [D.E. 106], pgs. 12-15.

### a. *Lost Profits Analysis*

#### i. Mr. Gray's Opinions are based on reliable facts and data

##### 1. *Plaintiff's buy-box ranking and re-stocking of Plaintiff's Amazon Storefront*

Plaintiff asserts that Mr. Gray's lost profit analysis is unreliable because he did not review any information regarding Plaintiff's buy-box ranking and did not inquire into how long it took to re-stock the store's inventory with Amazon. *See* Motion, [D.E. 106], pgs. 5, 13. Thus, Plaintiff argues that Mr. Gray "conducted no independent investigation as to the financial reality" of Plaintiff's Amazon Storefront. *Id.*

By way of background, Amazon's selling platform enables multiple sellers offer the same product on a single detailed page.[1] On each detail page, purchasers have three options for finding the product offer they would like to buy: (1) the Buy Box, (2) the Other Sellers on Amazon box, or (3) the Used and New link. *Id.; see e.g., See* Affidavit of Richard Gray, attached hereto as **Exhibit "5"**. The Buy Box refers to the box on the right side of the Amazon product detail page,

---

[1] https://sellercentral.amazon.com/learn/courses?ref_=su_course_accordion&moduleId=29&courseId=127&modLanguage=English&videoPlayer=youtube, (last visited March 21, 2020).

where customers can add items for purchase to their cart by clicking on the "Add to Cart" or "Buy Now" buttons. *Id.* Sellers compete for placement in the Buy Box. *Id.*

Notwithstanding, conspicuously absent from Plaintiff's Motion is any attachment, documentation, or citation to any evidence related to Plaintiff's purported buy-box ranking or the amount of time it took to re-stock Plaintiff's Amazon Storefront. Indeed, this is intentional, as Plaintiff is fully aware, there is zero evidence in the record to support Plaintiff's buy-box ranking or how long it purportedly took to restock its Amazon Storefront.[2] *See* **Exhibit "5"**. To be sure, Mr. Gray's opinion is based "on facts or data that the expert has been made aware of." Fed. R. Evid. 703. Despite its current argument, Plaintiff has not produced any evidence relating to its Buy Box ranking (nor did Amazon). *See* **Exhibit "5"**. Moreover, Plaintiff's purported Buy Box ranting is irrelevant to a lost profits analysis conducted by Mr. Gray.

Moreover, Plaintiff's argument is even further puzzling as the testimony of its own damages expert reveals that DeStafanis did no independent verification into Plaintiff's buy-box ranking or did he even do a lost profit analysis Indeed, DeStefanis testified that the only information he received relating to the buy-box rating was the self-serving assumptions provide to him by Plaintiff's CEO, Manuel Aguero. *See* Paul DeStefanis Dep., [D.E. 110-4], 22:9-19; 24:19-20. When asked whether he verified Mr. Aguero's representations, DeStefanis testified that he did no independent investigation related to the Buy Box ranking. *See* [D.E. 110-4], 24:10-12. An expert's failure to verify and assess the assertions or conclusions of Plaintiff, alone, is enough to deem an expert's opinions speculative and unreliable. *Mamani v. BerzaÍn*, 2018 U.S. Dist. LEXIS 32375, \*22-26 (S.D. Fla. 2018); *First Premium Servs., Inc. v. Best W. Int'l, Inc.*, No. 95-1466-CIV, 2004 U.S. Dist. LEXIS 32474, at \*3 (S.D. Fla. Jan. 8, 2004) (rejecting an expert's opinion as unreliable when expert did nothing to determine the accuracy of numbers provided in a plaintiffs' tax return and merely plugged them into a lost profits calculation).

Moreover, DeStefanis admitted that he did not even rely on Mr. Aguero's assumptions related to the buy-box rating. *See* [D.E. 110-4], 25:2-5 (Q. **So you didn't rely on Manny's statements to you as relates to** the communications with customers **and the buy box as a basis for your opinion in this matter? A. No**.) Likewise, DeStefanis did not rely on any documents related to how long it purportedly took Plaintiff to restock its Amazon Storefront. *See* DeStefanis

---

[2] Moreover, even if Plaintiff now, at the eleventh hour, provided some document or print out of their purported Buy-Box ranking, no documents have been authenticated by Amazon.

Report, [D.E. 110-3], ¶ 14. Accordingly, under Plaintiff's own logic, should this Court determine Mr. Gray's testimony should be precluded as it relates to buy-box ratings, this Court should likewise exclude DeStefanis' testimony regarding the Buy Box rating and purported re-stocking of goods on Amazon.

Even assuming Plaintiff could produce some evidence to the Buy Box ranking, given the frequency at which this data fluctuates and varies, any attempt to quantify a value or an amount of income associated with a Buy Box rating would be unreliable and thus not appropriate to use in a lost profits calculation. *See* Exhibit "5" at ¶ 9. Moreover, Mr. Gray's purported failure to analyze the Buy Box ranking is an issue that goes to credibility, not admissibility. *See Rosenfeld v. Oceania Cruises*, 654 F.3d at 1194. To be sure, Plaintiff can cross-examine Mr. Gray on his lost profit analysis and its purported lack of analysis concerning the Buy Box.

### i. Mr. Gray's assumptions are entirely reasonable

Plaintiff argues Mr. Gray's lost profit analysis is based on a flawed assumption that Plaintiff's Amazon Storefront was back to normal as of February 2019. *See* Motion, [D.E. 106], pg. 13.[3]

To be clear, experts are "entitled to state reasonable assumptions." *Maiz v. Virani*, 253 F.3d 641, 667 (11th Cir. 2001). Here, Plaintiff's Amazon Storefront was reinstated on January 14, 2019. *See* [D.E. 113-30]. There is no record evidence, nonetheless any reason to believe, that once Plaintiff's Amazon Storefront was reinstated on January 14, 2019, Plaintiff was prevented from selling its products on Amazon. In fact, during the deactivation period, Plaintiff was not prevented from shipping its products to Amazon for sale and fulfillment through Amazon's Fulfillment by Amazon ("FBA") program. *See* [D.E. 113-5], 14:3-15. The truth is Plaintiff **chose** not to utilize Amazon's FBA program. *Id.*

Moreover, as stated above, there is no evidence Plaintiff's buy-box rating or re-stocking the Amazon store had any impact on Plaintiff's ability to sell products on Amazon. Thus, the presumption that Plaintiff's Amazon Storefront was back to normal as of February 2019 is entirely reasonable given the facts and evidence in this case. To the extent Plaintiff disagrees, cross-examination is the proper method to challenge the presumption, not a Daubert Motion. Moreover, it is clear that Plaintiff's argument with regard to Mr. Gray's testimony goes to weight rather than

---

[3] Plaintiff does not challenge Mr. Gray's qualification to testify as to Plaintiff's purported lost profits. *See generally*, Motion [D.E. 16], pg. 13.

admissibility under Rule 702 and *Daubert*. *See Rosenfeld v. Oceania Cruises*, 654 F.3d 1190, 1194 (11th Cir. 2011) (arguments that expert methods and conclusions were imprecise and based on incorrect assumptions went to the weight of evidence). *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1299 (8th Cir. 1997); *In re Voluntary Purchasing Groups Inc. Litigation*, 2000 WL 1842779 (N.D. Tex. Dec. 14, 2000) (allegations of faulty assumptions and calculation errors go to weight not admissibility); *Anello v. Shaw Indus., Inc.*, No. 95-30234-FHF, 2000 WL 1609831 (D. Mass., Mar. 31, 2000) (allegations of faulty methodology go to weight, not admissibility).

**1.**   *Four Months of Financial Information*

Plaintiff asserts that Mr. Gray's lost profit analysis is unreliable because he utilized only four months of financial information prior to the deactivation. *See* Motion, [D.E. 106], pg. 13. Plaintiff further claims that Mr. Gray's Report and testimony ignores Plaintiff's operational revenues for a five-year period prior to the shutdown.

Under Florida law, "a business can recover lost profits [if] ... there is some standard by which the amount of the damages may be adequately determined." *W.W. Gay Mech. Contractor, Inc. v. Wharfside Two, Ltd.*, 545 So. 2d 1348, 1351 (Fla. 1989) (emphasis added); *Pleasant Valley Biofuels, LLC v. Sanchez-Medina*, No. 13-23046-CIV, 2014 WL 2855062, at *7 (S.D. Fla. June 23, 2014) ("Though the before-and-after and yardstick methods are frequently used to establish the amount of lost profits, these methods are not an absolute prerequisite, and lost profits can be had as long as there is some reasonable standard of calculation.") (emphasis added).

Here, Mr. Gray's testimony is based on the "before-and-after" method to calculate lost profits, which is a recognized method for calculating lost profits in Florida. *See* Report, pg. 5. Mr. Gray utilized Plaintiff's operational performance between June 2018 and October 2018 prior to the deactivation of Plaintiff's Amazon Storefront. *See* Report, pg. 5. As Plaintiff made a strategic shift in its business and decided to stop selling certain items on its Storefront, Mr. Gray based his opinions on this time period (*i.e.*, June 2018 – October 2018). Specifically, in June 2018, Plaintiff's management team decided to decrease the selling of low gross profit products and most heavy products because of the potential loss from shipping costs and storage fees from Amazon. *See* DeStefanis Report [D.E. 110-3], ¶ 19(b). Thus, Mr. Gray's analysis is dependent upon the averages from June 2018 through October 2018 in order to capture the risk of the change in business strategy, as well as the risk associated with the same. *See* Report, pg. 5. Moreover, looking at Plaintiff's purported financials from prior to January 1, 2018 would not only be illogical given the

facts, but improper. Between 2014 and 2017, Plaintiff operated strictly as a department with Q-Med, LLC ("Q-Med"), and was not maintained as a separate entity; Nor did Plaintiff maintain its own financial information. *See* [D.E. 113-4], 130:13-20.

While Plaintiff may disagree with Mr. Gray's opinions, whether Mr. Gray is a credible witness must be left to a jury to weigh. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003) ("in most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility"); *See also Jones*, 861 F.2d at 663 ("We find as long as a logical basis exists for an expert's opinion and the inadequacies are fully disclosed to the jury, the weaknesses in the underpinnings of the opinion, go to the weight and not the admissibility of the testimony").

### ii. Mr. Gray can rely on his personal experience

Lastly, Plaintiff takes issue with Mr. Gray relying on his own personal buying experience on Amazon. *See* Motion, [D.E. 106], pg. 13. Specifically, Plaintiff asserts that Mr. Gray's testimony purportedly "faltered" when discussing he would search for a product on the second, third, or fourth page of an Amazon search for a product, and that Mr. Gray is not an expert on consumer search tendencies on Amazon. *Id.*

Initially, Mr. Gray has never purported to provide expert testimony on consumer search tendencies. Notwithstanding the same, Mr. Gray can rely on his own personal experience in purchasing products off Amazon in rendering his opinion. Certainly, it is well-established that an expert can rely on his personal experience in rendering an expert opinion. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) ("[T]here is no question that an expert may ... base his testimony 'on professional study or personal experience.' "); *City of Mountain Park, Georgia v. Lakeside at Ansley, LLC*, No. 1:05-cv-2775-CAP-LTW, 2009 WL 10665770, * 15 (N.D. Ga. Jan. 6, 2009) (in concluding that an expert could opine on historical sediment in lakes without personally studying a particular lake because the expert was by experience "familiar with the common characteristics of lakes" of a similar size, confirming that "[u]nder Daubert and Rule 702, an expert may rely upon his personal observations and professional experience when forming an expert opinion"); *Mathis v. Exxon Corp.*, 302 F.3d 448, 460-61 (5th Cir. 2002) (affirming admissibility where expert's testimony "drew on general business and economic principles that satisfy the Daubert factors," even though expert's methodology may have been "rough-and-ready,"

"marginally under- or over-inclusive," "not especially sophisticated," and may have "ignore[d] local traffic patterns").

### b. *Business Valuation*

#### i. Mr. Gray is qualified to render an opinion on business valuation

Plaintiff argues Mr. Gray is not qualified to render a valuation on Amazon stores or distributors because he has never done a business valuation on an Amazon store or a distribution company. *See* Motion, [D.E. 105], pg. 5.

However, Plaintiff is not a distributor, but instead an online reseller of goods. *See* Complaint [D.E. 1], ¶ 1; [D.E. 110-4], 31:12-19. Secondly, Plaintiff has pointed to no documents, evidence, or authority to suggest that an online retail reseller's business is somehow how unique or requires some specialized knowledge in business valuation. Mr. Gray is a licensed Certified Public Account in both Florida and Maryland. He is accredited in Business Valuation by the American Institute of Certified Public Accountants since 2003, certified in Valuation Analyst by the National Association of Certified Valuation Analysis since 1998, and an accredited senior appraiser by the American Society of Appraisers since 2007. *See generally*, Exhibit "3"; [D.E. 106-2], 14:3-21. Additionally, Mr. Gray is an ad on business valuation for forensic accountants at Florida Atlantic University. *See* [D.E. 106-2], 25:15-24. In the year 2019 alone, Mr. Gray has completed approximately fifty to sixty business valuation. *See* [D.E. 106-2], 24:3-9.

Moreover, contrary to Plaintiff's argument, Mr. Gray has conducted valuations in the precise business in which Plaintiff operates – *i.e.*, the secondary market. *See* [D.E. 106-2], 36:23-25 – 37:1-4. Similarly, it is unclear why Plaintiff argues Mr. Gray is unqualified to render a business valuation on distribution companies. However, in reviewing Mr. Gray's deposition testimony, he testified he has conducted business evaluations on distribution companies. *See* [D.E. 106-2], 36:19-22. In short, Mr. Gray is clearly qualified to render an opinion on business valuation in this action.

#### i. Mr. Gray's opinions are reliable

Lastly, Plaintiff argues that Mr. Gray's use of a 15% risk premium is based on speculation and conjecture and that he cannot use his own judgment in determining the same. *See* Motion, [D.E. 106], pg. 14.

Again, Plaintiff's position is baffling as its own expert testified his use of a substantially less risk premium of 5% was nothing more than his "best estimate of the specific company's risk." *See* [D.E. 110-4], 113:20-24. Indeed, DeStefanis admitted Plaintiff has no documents to support his risk premium. *Id.* Mr. Gray used a 15% risk premium, which accounts for the unsystematic risk associated with Plaintiff's business, in development of his capitalization rate. *See* [D.E. 106-2], 41:6-12; 42:15-19.

To be clear, Mr. Gray's opinions and testimony identify the glaring weaknesses in DeStefanis' Report and the flawed assumptions upon which DeStefanis' testimony as to Plaintiff's business valuation is based on his factual to actual take account the realities of Plaintiff's business. *Id.* This is classic rebuttal testimony and opinions. It is well established that "[a] rebuttal expert can testify as to the flaws that she believed are inherent in another expert's report that implicitly assumes or ignores certain facts." *See Pandora Jewelers 1995, Inc.*, 2011 WL 2295269, *5 (citing *KW Plastics v. U.S. Can Co.*, 199 F.R.D. 687, 692 (M.D. Ala. 2000)); *Harbor Communities, LLC v. Landmark American Ins. Co.*, 2008 WL 5516518, at *2 (S.D. Fla. Aug. 26, 2008) (denying motion to strike an expert report that "attack[ed] the assumptions relied upon by [the opposing expert] in reaching his conclusions and attack[ed] the reliability of the methodologies used by [the opposing expert] in reaching his conclusions.").

Contrary to Plaintiff's contention, simply because Mr. Gray and DeStefanis reach opposite conclusions and disagree on the manner in which the data should be evaluated does not mean that under *Daubert* or Rule 702, Mr. Gray's opinion should be deemed unreliable. Certainly, a challenge to expert testimony based on the fact that the expert's opinion differs from the theory of the case presented by the opposing party is insufficient to exclude the expert's testimony from trial. *Maiz*, 253 F.3d at 667. To the extent that Plaintiff disagrees with Mr. Gray's opinions or methodology, Plaintiff will have the opportunity at trial to not only present its own expert's position, but also cross-examine Mr. Gray. *See e.g.*, *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (citing *Ambrosini v. Labarraque,* 101 F.3d 129, 141 (D.C. Cir. 1996) ("The district court[ ] err[ed] … [by] misconce[iving] of the limited 'gatekeeper' role envisioned in *Daubert.* By attempting to evaluate the credibility of opposing experts and the persuasiveness of competing [expert reports], the district court conflated the questions of the admissibility of expert testimony and the weight appropriately to be accorded such testimony by a

fact finder.")). Accordingly, Plaintiff's request to limit Mr. Gray's testimony should be denied in its entirety.

## IV. Conclusion

As stated above, Plaintiff's Motion does not challenge Mr. Pazak's qualification or reliability as to opine as to Plaintiff's prior violations, Amazon's guidelines, or the authenticity issues in this case. Similarly, Plaintiff's Motion does not challenge Mr. Gray's qualifications to testify as to Plaintiff's lost profits, his rebuttal opinions as to Plaintiff's liquidation nor his rebuttal opinions as to flaws in DeStefanis' methodology as to his business valuation analysis. Accordingly, for the reasons set forth herein, Plaintiff's Motion which seeks the wholesale exclusion of Mr. Pazak and Mr. Gray's testimony should be denied in its entirety.

Dated:  March 23, 2020

Respectfully submitted,

COLE, SCOTT & KISSANE, P.A.
Attorneys for Defendant
222 Lakeview Ave, Suite 120
West Palm Beach, FL 33401
Telephone: (561) 383-9203
E-mail: jonathan.vine@csklegal.com
E-mail: sheena.smith@csklegal.com

By:   */s/ Sheena D. Smith*
JONATHAN VINE
FBN: 10966
SHEENA D. SMITH
FBN: 118919

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of March 2020, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system.

## SERVICE LIST

**Kelsey K. Black, Esq.**
Black Law, P.A.
1401 E Broward Blvd. Suite 204
Fort Lauderdale, FL 33301
Telephone: (954) 320-6220
Facsimile: (954) 320-6005
kelsey@kkbpa.com

**Stanley R. Goodman, Esq (Pro Hac Vice)**
Goodman & Saperstein
666 Old Country Road, Suite 200
Garden City, NY 11530
Telephone: (516) 227-2100
Facsimile: (516) 227-2108
Gsesq600@aol.com