UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:19-cv-60487-RKA/PMH

_____/
SOLU-MED, INC.,

    Plaintiffs,

vs.

YOUNGBLOOD SKIN CARE
PRODUCTS LLC,

    Defendant.
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

PLAINTIFF SOLU-MED, INC. ("Solu-Med"), respectfully submits the following *Response to Defendant's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment* pursuant to Rule 56 of the Federal Rule of Civil Procedure and Local Rule 56.1(a) of the United States District Court for the Southern District of Florida.

**General Background of Youngblood and Solu-Med**

1. Undisputed. The statement is not disputed, however, the deposition reference does not reflect that testimony.

2. Disputed in part. The language of the warranty is not disputed, however, the language as to "Products purchased . . . through an <u>authorized retailer</u> come with a 100% satisfaction guaranty" [emphasis added] is not contained in ECF No. 113-2.

3. Disputed. The deposition references to Exhibit 1 do not support the statements. (ECF No. 113-1).

4. Undisputed.

5. Disputed in part. Amazzia was engaged by Youngblood on September 10, 2018, not September 15, 2018.

6. Undisputed.

1

### Amazon's Guidelines

7. Disputed. Document speaks to itself. Editorial comments are to be disregarded.

8. Disputed. Document speaks to itself. Editorial comments are to be disregarded.

9. Disputed. Document speaks to itself. Editorial comments are to be disregarded.

10. Disputed. Document speaks to itself. Editorial comments are to be disregarded.

11. Disputed. The statement does not express the full text of the document referenced and should be disregarded.

12. Undisputed.

13. Undisputed.

14. Disputed. Distorts the record reference as to "purported Youngblood products".

15. Disputed. The statement is not supported by the record references and Youngblood products are not sold through Solu-Med's store front, instead they are sold through Amazon's FBA program with Solu-Med. ECF No. 113-5, 48:6-25, 49:1-2, 18-22.

16. Disputed. ECF No. 113-5 at 57:1-7; 68:3-8, 10-25 does not reflect the statements contained in paragraph 16. Further, the statement "product is inauthentic and counterfeit if the product is being sold as new without a warranty" is not stated in any of the exhibits they referenced, and is an improper citation (notice there is no pinpoint to any of voluminous exhibits referenced in Defendant's statement of facts).

### Solu-Med's Storefront, Purchase and Sale of Youngblood Products

17. Disputed. Distorts the record references as to "purportedly acquires products to sell from Q-Med"

18. Disputed. Distorts the record reference as to the source of Youngblood products.

19. Undisputed.

20. Disputed. The complete statement in Exhibit 9 reads "Due to Federal regulations, We are unable to except [sic] returns or exchanges on Personal Hygiene items, Hair Care, Cosmetics, Fragrance, Skin Care, or Toys."

21. Disputed. The statement, ". . . that it would not accept returns because it wanted to misled customers and discourage returns" is a distortion of the testimony and totally unsupported by the deposition reference.

**Prior Complaints to Amazon about Solu-Med's Sale of Products**

22. Disputed. Inadmissible; lacks trustworthiness as to the source and the content. Federal Rules of Evidence (FRE 803(6)(E))

23. Disputed. Inadmissible; lacks trustworthiness as to the source and the content. (FRE 803(6)(E))

24. Disputed. Inadmissible; lacks trustworthiness as to the source and the content. (FRE 803(6)(E))

25. Disputed. Inadmissible; lacks trustworthiness as to the source and the content. (FRE 803(6)(E))

26. Disputed. Inadmissible; lacks trustworthiness as to the source and the content. (FRE 803(6)(E))

27. Disputed. Inadmissible; lacks trustworthiness as to the source and the content. (FRE 803(6)(E))

28. Disputed. (Inadmissible; lacks trustworthiness as to the source and the content. FRE 803(6)(E))

29. Disputed in part. The deposition testimony of Goodson does not support the statement "Solu-Med's pattern and practice was not to respond to Amazon's policy warnings violations . . ."

30. Disputed. Solu-Med did respond to Amazon by filing three Plans of Action, as well as communicating with Youngblood requesting a retraction. (ECF No. 113-18, 113-20, 113-22, and 113-27).

31. Undisputed.

**Amazon Deactivates Solu-Med's Store**

32. Disputed. The statement omits material predicate questions and answers. (ECF No 113-3 at 37:9-25; 38:1-2, 10-14). Plaintiff further disputes Amazzia's determination

that the products were inauthentic and counterfeit in that the deposition extracts referred to were Amazzia's self-serving conclusions based on Amazzia's interpretations of Amazon's policies.

33. Disputed.  The correct date is November 11, 2018, and Youngblood had no evidentiary basis for stating that the Youngblood product at issue was counterfeit.

34. Disputed.  The correct date is November 11, 2018, and Youngblood had no evidentiary basis for stating that the Youngblood product at issue was counterfeit.

35. Disputed. Youngblood's complaints of November 11, 2018 and November 13, 2018 were the same regarding the Youngblood products with different ASIN's.

36. Disputed. Youngblood's complaints of November 11, 2018 and November 13, 2018 were the same regarding the Youngblood products with different ASIN's.

37. Disputed.  The date is November 13, 2018 not November 12, 2018. Youngblood's complaints of November 11, 2018 and November 13, 2018 were the same regarding the Youngblood products with different ASIN's.  Youngblood had no evidentiary basis for stating that the Youngblood product at issue was counterfeit.

38. Disputed. Youngblood's complaints of November 11, 2018 and November 13, 2018 were the same regarding the Youngblood products with different ASIN's. Youngblood had no evidentiary basis for stating that the Youngblood product at issue was counterfeit.

39. Disputed. Youngblood's complaints of November 11, 2018 and November 13, 2018 were the same regarding the Youngblood products with different ASIN's.

40. Undisputed.

41. Disputed.  The statement is a distortion of the record.  The notice stated to reactivate Solu-Med's account, the primary/first option was to have the rights owner send a valid retraction to Amazon.

> *i.     Solu-Med's First Plan of Action*

42. Undisputed.

43. Undisputed.

44. Disputed in part.  Solu-Med did not review Youngblood's limited warranty because it was not listed on any of the product, product packaging, or the home page of Youngblood's website www.ybskin.com.

45. Disputed. The statement misstates the language in Exhibit 19 as to Amazon's request for the rights owner's retraction and proof of authenticity as being in the conjunctive. The clear understanding as to the options of the Seller for responding is that the requests are mutually exclusive. Primarily, a retraction by the rights owner being the operative choice for Amazon to relist.

      *ii.     Solu-Med's Second Plan of Action*

46. Undisputed.

47. Disputed in part. Youngblood fails to mention Solu-Med's Amazon store representative visiting Youngblood's headquarters in November 2018 to discuss the sale of Youngblood products and the immediate reactivation of the Solu-Med's Amazon store.

48. Disputed in part. Misstates Amazon's request for additional information by omitting the wording of Exhibit 21, Paragraph 2, the request for "A valid retraction sent to Amazon directly from the original rights owner." For further information, please see the response to Paragraph 45 *supra*.

      *iii.    Solu-Med's Third Plan of Action*

49. Disputed. The statement omits that portion of Exhibit 22, Paragraph 2(III) reflecting early attempts by Solu-Med to obtain a retraction from rights owner. Youngblood has no evidentiary basis to claim that the invoices sent to Amazon were not genuine.

50. Disputed. Statements misstate the record by offering unsupported testimony of counsel as follows, "Rather, all Solu-Med did was look at the product to determine whether the ASIN number matched to Amazon's ASIN for the product, which is not a way to determine authenticity of the product."

51. Undisputed.

52. Disputed. Footnote 2 is improper as the statements contained therein are excerpts from a number of documents and are required by the Rules to be separately stated.

53. Disputed in part. Misstates Amazon's request by **omitting** the wording of ECF No. 113-24, Paragraph 2, the request for "A valid retraction sent to Amazon directly from the original rights owner". For further information, see response to Paragraph 45.

54. Disputed. Misstates Amazon's request by using conjunctive that Solu-Med was required to provide both a valid retraction and proof of authenticity. For further information, see response to Paragraph 45.

55. Disputed. ECF No. 113-27 does not support the statement. Rather, it is unsupported testimony by counsel. Paragraphs 13, 47, and 50 of Defendant's Statement of Undisputed Fact (ECF No. 113) where they allege that Solu-Med never contacted them directly refutes this statement.

56. Disputed in part. Misstates Amazon's request for additional information by omitting the wording of ECF No. 113-21, Paragraph 2, the request for "A valid retraction sent to Amazon directly from the original rights owner".

57. Undisputed.

58. Disputed. The statement is not supported by the record reference as the testimony of Goodson does not refer to the Amazon FBA program. Rather, it is unsupported testimony of counsel. Solu-Med's storefront was totally shut down for selling counterfeit Youngblood products and was not able to participate in any Amazon program. (ECF No. 113-5 at 45:10-12; 48:17-25; 49:1-2).

59. Undisputed.

### Solu-Med Continues to do Business on Amazon

60. Undisputed.

### PLAINTIFF'S ADDITIONAL FACTS IN RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

61. On November 11, 2018 and November 13, 2018, Youngblood sent a complaint to Amazon stating, in substance, that Solu-Med was selling counterfeit Youngblood products on Amazon. (Plaintiff's Exhibit 1 attached hereto, AMAZON 00003; ECF No. 113-3 at 40:7-8). Youngblood's notice specifically stated:

> "Hello,
>
> We have researched Youngblood's listings and found the following ASINs are in violation of our trademark, 3812755.
>
> • Counterfeit products are being sold on the following listings
>
> • Please immediate action and remove these sellers currently listing counterfeit product.
>
> According to Amazon's robust and aggressive anti-counterfeit policy, sellers must list items that match the detail pages exactly. The indicated sellers are not selling the authentic products as shown in the ASIN(s) referenced.
>
> We know that Amazon takes product authenticity very seriously and Amazon requires sellers to list items that exactly match the detail pages. Therefore, we respectfully request that Amazon immediately and proactively remove these sellers from the mentioned ASIN(s) and prohibit these sellers from listing against these ASIN(s) in the future.
>
> Thank You,
>
> Youngblood

62. Youngblood only became aware of Solu-Med as a result of this lawsuit and the requested retraction to be made by their brand partner, Amazzia. (ECF No. 113-1, Exh.1 at 11:13-25; 16:2-9). Amazon, in response to Youngblood's action, deactivated Plaintiff's entire store. (Plaintiff's Exhibit 2 attached hereto, PL02413).

Sent from: notice-dispute@amazon.com



Hello,

We attempted to reach you by phone today to discuss recent issues related to intellectual property infringement. As a result of these issues, ==your Amazon selling account has been temporarily deactivated.== At this time, funds will not be transferred to you but will stay in your account while we work with you to address this issue.

Amazon previously alerted you of these issues by emailing the warnings listed below:

-- ASIN:

Title:Youngblood Natural Mineral Loose Foundation, Sunglow
ASIN:B00025G1K6

Title:Youngblood Pressed Mineral Foundation, Honey, 8 Gram
ASIN:B00025G1ME

Title:Youngblood Pressed Mineral Blush, Sugar Plum, 3 Gram
ASIN:B00025G1TC

-- ==Infringement Type: COUNTERFEIT==

Amazon does not allow listings that violate the intellectual property rights of brands or rights owners. To learn more, please review Amazon's Intellectual Property Policy (https://sellercentral.amazon.com/gp/help/external/201361070).

To reactivate your selling account, please submit a plan of action. A valid plan of

63. Amazzia in November 2018 advised Youngblood that products on Amazon were counterfeit since Solu-Med was not an authorized seller by Youngblood on Amazon. (ECF No. 113-1 at 16:21-25; 17:1-3, 7-14)

64. Youngblood's only basis for the complaints was that Solu-Med was not an authorized seller. (ECF No. 113-1 at 17:7-14)

65. Youngblood on-boarded Amazzia around mid-September, 2018 and Amazzia reported many resellers to Amazon by filing complaints on Youngblood's behalf. (ECF No. 113-1 at 18:13-23). William Fikhman was a co-owner of Amazzia. (ECF No. 113-3 at 9:13-19).

66. Geovanna Waters, overseer of the day-to-day operations at Youngblood, contacted Amazzia to protect the brand from **diversion and discounting** by resellers. (ECF No. 113-1 at 21:13-25; 22:1-25)

67. Amazzia was engaged by Youngblood on or about September 17, 2018 and entered into a Distributor Agreement to become an authorized distributor and to remove resellers from the Amazon Marketplace. (ECF No. 113-3 at 27:13-25, 28:4-25, 39:1-15, 150:8-17, 160:6-24; 161:2-3). Youngblood believed that if the Youngblood product is not being offered by an authorized seller, then it is counterfeit, and Youngblood's strategy to protect the equity of the brand was to eliminate grey market sellers, such as Plaintiff. (ECF No. 113-3 at 69:4-25, 70:1-10, 71:4-25; 72:1-22)

68. Youngblood learned that Amazzia had reported to Amazon a number of stores as selling inauthentic and not new products. Life and Health Source was one of those stores and their storefront was shut down because of the statement that it was offering counterfeit products. Life and Health Source requested a retraction in late November/early December, 2018. (ECF No. 113-1 at 37:7-25, 38:1-2)

69. Amazzia filed the initial complaint with Amazon against Life and Health Source. They were **engaged purposefully** to remove Life and Health Source as a seller. (Exh. 113-1 at 39:1-15, 150:8-17, 160:6-24, 161:2-3)

70. At no time did Youngblood purchase any Youngblood products from Amazon offered by Life and Health Source nor did they make any comparison of the Life and Health Source Youngblood products with its own retained samples of those products. (ECF No. 113-1 at 45:14-25). Amazzia similarly testified that they also failed to engage in any

8

investigation as to the whether or not the products were actually counterfeit. (ECF No. 113-3 at 136, 20-25; 137:1-2).

71.   Youngblood became aware of the November 11, 2018 complaint to Amazon on or about the last week of November. (ECF No. 113-1 at 45:4-25; 46:11-19; 49:20-25; 50:1) Toth did not know who at Amazzia actually **pulled the trigger** and filed the complaint. (ECF No. 113- at 49:3-5)

72.   Amazzia's team was responsible for initiating and verifying the accuracy of the complaint submitted to Amazon's Brand Registry Support.  They would file a complaint under the trademark drop-down box alleging counterfeit product. (ECF No. 113-1 at 55:21-25; 56:1-16)

73.   On or about November 28, 2018, Youngblood agreed to file a retraction of the counterfeit complaint against Life and Health Source. (ECF No. 113-1 at 50:2-12; 51:13-18, 20-25; 52:1-3)

74.   On November 29, 2018 Youngblood by email from Roxanna Covenian, Brand Regulation, agreed to file a retraction. (ECF No. 113-1 at 63:1-25)

75.   Diversion was a concern of Youngblood in November 2018 as it was destructive. (ECF No. 113-1 at 71:20-25)  Diversion exists because downstream customers of Youngblood were not fulfilling their obligations. (ECF No. 113-1 at 73:1-10)

76.   In November, 2018, it was Youngblood's agenda, together with Amazzia, to **eliminate diversion** of Youngblood products by providing a notice to Amazon that Life and Health Source was offering Youngblood products that were counterfeit. (ECF No. 113-1 at 74:24-25; 75:18-24)

77.   From 2018-2019, Amazzia on behalf of Youngblood, eliminated at least 50% of resellers, including Life and Health Source, by filing complaints with Amazon for trademark, counterfeit and copyright infringement. (ECF No. 113-1 at 78:3-23)

78.   At his deposition, Toth reviewed three Youngblood products from Life and Health Source's inventory (Deposition Exhibit 7 to Exhibit 9) and stated that they appeared to be Youngblood products.  Other than then how the products were acquired, **there is no difference**. (ECF No. 113-1 at 83:10-18; 85:15-25; 86:1-4, 6; 87:1-5, 13-15, 17-18)

79.   The labeling of the products produced at Toth's deposition from Life and Health source's inventory and the products purchased directly from Amazon (Deposition

Exhibits 7, 8 and 9 to ECF No.113-1) did not contain a warranty or guarantee. (ECF No. 113-1 at 87:1-5, 13-15, 17-18)

80. Amazon was not an authorized seller of Youngblood products in 2018-2019, but sold as an unauthorized seller. According to Youngblood, Amazon competed with Youngblood by discounting and diminishing the integrity of the brand and those products are counterfeit. (ECF No. 113-1 at 92:7-10, 93:3-11, 18-21)

81. Amazzia's Amazon Management Agreement with Youngblood casts itself as an Amazon vigilante by the services it agreed to provide: "Report unauthorized sellers, until Amazon removes them: 50% of resellers removed in the first 60 days, 75% in 90 days, and 90% in 120 days (once Enforcement & Seller Elimination begins)". Coincidently, Amazzia was rewarded by becoming Youngblood's exclusive distributor: "Exclusive Amazon distribution of your brand by 2 of our verified and qualified FBA-Compliant resellers". Youngblood did not provide to Solu-Med a 14-day reseller warning letter. (See Exhibits 2 and 3 Fikhman Deposition, attached as composite Exhibit 3 hereto).

82. Amazzia's services resulted in a massive elimination of thousands of unauthorized resellers of Youngblood products significantly reducing competition while maintaining higher prices (Manufacturers Advertised Prices "MAP"). (ECF No. 113-3 at 40:20-25; 41:1-4). Amazzia maintained it was familiar with Amazon's policies. (ECF No. 85:8-20).

83. Youngblood's November 11, 2018 and November 13, 2018 complaints to Amazon that Solu-Med was offering counterfeit products did not contain any reference to Amazon's guidelines as being violated. (ECF No. 113-3 at 53:10-15; see Exhibit "1").

84. Youngblood directed Amazzia to remove any sellers that are not authorized. (ECF No. 113-3 at 54:12-15, 20-24)

85. Amazon's suspension of a seller is fearful because it is very hard to get back. (ECF No. 113-3 at 60:19-23)

86. Amazon's Anti-Counterfeiting Policy strictly prohibits the sale of counterfeit products and describes products that are not legal for sale, such as those illegally replicated, reproduced or manufactured. (ECF No. 113-6, Ex. 2; see ECF No. 104-10 at ¶ 11-12). Amazon submitted a Declaration through its Litigation Paralegal Claurice Cohn that further explained Amazon's policy on reporting counterfeit items. (ECF No. 104-10, at ¶6-12). Ms.

Cohn states that if "trademark" concerns are selected, the specific options are that a . . . "product is counterfeit (the product or packaging has an unlawful reproduction of a registered trademark)." *Id.*

87. Only Amazon knows why Solu-Med was suspended. (ECF No. 113-3 at 73:14-25; 74:1-2)

88. Contrary to statements by Youngblood that it reported that Solu-Med was selling inauthentic and counterfeit products, Youngblood's complaint to Amazon only referred to counterfeit products. (See Exh. 1)

89. Amazzia did not rely on Amazon Guidelines when it reported Solu-Med to Amazon in November, 2018, but rather a "knee-jerk" reaction when it discovered Solu-Med was not an authorized distributor. (ECF No. 113-6, Ex. 2).

90. When Amazzia identified Solu-Med selling Youngblood products, a counterfeit report was made to Amazon. (Plaintiffs Exh. 1)

91. Contrary to the statement that the request contained in the Youngblood complaints was that it only wanted the listed product removed, the report requested immediate action and removal of Solu-Med as a seller. (ECF No. 113-3 at 88:17-20) The report (complaint) did not list ASINS. (Plaintiffs Exh. 1)

92. Amazzia, by its definition, conveyed to Amazon a counterfeit claim solely because Solu-Med was not an authorized seller, whose goods did not include the warranty, were not subject to Youngblood's quality controls, and this equated to selling counterfeit products per Amazon. (ECF No. 113-3 at 90:3-21; 127:18-25, 128:1-2). Youngblood also created its own counterfeit definition to justify its actions. (ECF No. 113-1 at p. 32:17-35, 33:1-17). Amazzia also testified that "a counterfeit item by us is defined as having a material difference, and one that creates consumer confusion." (ECF No. 113-3 at 128:21-23).

93. Youngblood does not use the words "manufacturer's warranty" on any product packaging or advertising. (Youngblood's Answer to Second Set of Interrogatories, No. 4, attached as Exhibit 4; ECF No. 113-1 at p. 87:1-7). Further, Youngblood has no quality control measures in place with its retailers. (See Exhibit 3, Youngblood's Distribution Agreement with Amazzia). According to Youngblood's website, Youngblood does not "accept orders that were purchased in Youngblood Mineral Cosmetics approved specialty

stores, secondhand shops or other retailers." www.ybskin.com/pages/returns (attached as Exhibit 5).

94. Amazzia agreed to file a retraction based upon a cost/benefit analysis rather than continue as a legal matter. (ECF No. 113-3 at 96:12-20; ECF No. 113 at 98:17-25).

95. Upon becoming a contracted distributor of Youngblood products, Amazzia sold Youngblood products to two authorized resellers also owned by William Fikhman and his two brothers. The business of the resellers was selling products on Amazon. (ECF No. 113-3 at 115:2-25; 116:1-12)

96. Amazzia's determination that the Youngblood products sold by Life and Health Source were counterfeit was based upon its own interpretation of what constitutes a counterfeit product. (ECF No. 113-3 at 90:2-23, 129:14-16; 130:4-25; 131:1-12)

97. At the time Amazzia became a Youngblood distributor, Amazon was selling Youngblood products on its platform. Youngblood also viewed them as an unauthorized reseller selling counterfeit products and notified Amazon (the notification was never produced). (ECF No. 113-3 at 139:14-25, 140:1-25, 141:1-7; 143: 17-25; 144:1-25, 145:1-17).

98. Amazzia claims it observed the Youngblood products being sold by Life and Health Source not to be new because they were not an authorized distributor and they did not have to visually inspect the products. (ECF No. 113-3 at 148:22-25; 149:1-15)

99. Amazzia's intent to get rid of unauthorized sellers of Youngblood products was successful. (ECF No. 113-3 at 149:22-25; 150:1-17)

100. Fikhman's deposition testimony as to absence of quality control for Youngblood products sold by unauthorized sellers must be rejected by the Court as incompetent guesswork, speculation, conjecture and unsupportable by the record. (ECF No. 113-3 at 152:18-25, 153:1-25; 154:1-25; 155:1-25; 156:1-25; 157:1-25; 158:1-25; 160:6-17).

Respectfully submitted,

*/s/ Kelsey K. Black*
Kelsey K. Black, Fla. Bar. No. 078925
BLACK LAW P.A.
1401 E. Broward Blvd., Ste. 204
Fort Lauderdale, FL 33301
Telephone: (954).320-6220
Facsimile: (954) 320-6005
Email: kelsey@kkbpa.com

    and

    Stanley R. Goodman, Esq. (admitted *pro hac vice*)
    Goodman & Saperstein
    666 Old Country Road, Suite 200
    Garden City, NY  11530
    Telephone:  (516) 227-2100
    Facsimile:   (516) 227-2108
    Email: gsesq600@aol.com