UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO. 19-60487-CIV-RKA


ARGO HOLDINGS, INC., ET AL., .
                            .
            Plaintiffs,     . Fort Lauderdale, Florida
                            . September 20, 2019
            v.              . 3:09 p.m.
                            .
YOUNGBLOOD SKIN CARE        .
PRODUCTS, LLC,              .
                            .
            Defendant.      .
. . . . . . . . . . . . . . . .


- - - - -

Transcript of Motion Hearing had

before the Honorable Roy K. Altman,

United States District Judge.

- - - - -


Proceedings recorded by mechanical stenography, transcript
produced by computer.

FRANCINE C. SALOPEK, OFFICIAL COURT REPORTER
(954)769-5686

**APPEARANCES:**

```
For the Plaintiffs:    Stanley Goodman, Esq.
                       Goodman & Saperstein
                       666 Old Country Road
                       Suite 200
                       Garden City, New York  11530
                                 and
                       Kelsey K. Black, Esq.
                       1401 East Broward Boulevard
                       Suite 204
                       Fort Lauderdale,, Florida  33301


For the Defendant:     S. Jonathan Vine, Esq.
                       Cole Scott & Kissane
                       222 Lakeview Avenue
                       Suite 120
                       West Palm Beach, Florida  33401


Court Reporter:        Francine C. Salopek, RMR, CRR
                       Official Court Reporter
                       United States District Court
                       299 E. Broward Blvd., Room 207B
                       Fort Lauderdale, Florida 33301
                       (954)769-5686/mjsfcs@aol.com

                       -  -  -  -  -
```

```
 1          FRIDAY, SEPTEMBER 20, 2019, 3:09 P.M.

 2          (The Judge entered the courtroom)

 3          THE COURT:  Good afternoon.  Please be seated.

 4          ROOM CLERK:  Calling Case 19-60487-Civil, Argo

 5   Holdings, Inc., et al. vs. Youngblood Skin Care Products, LLC.

 6          Counsel, please state your appearances for the record.

 7          MS. BLACK:  Kelsey Black and Stanley Goodman on behalf

 8   of the plaintiff.

 9          MR. GOODMAN:  Stanley Goodman.  Good afternoon, your

10   Honor.

11          THE COURT:  Good afternoon to the both of you.

12          MR. VINE:  Good afternoon, your Honor.  Jonathan Vine,

13   with the law firm of Cole, Scott & Kissane, on behalf of the

14   defendants.

15          THE COURT:  Good afternoon to you, sir.

16          We're here on -- well, there are three separate

17   motions.  There's the plaintiffs' motion to strike the

18   defendant's notice of providing supplemental authority.  We'll

19   get to that at the end.

20          There's also a joint motion for extension of all

21   deadlines.  We'll address that after the motion to dismiss.

22          The main reason we're here is because of the

23   defendant's motion for -- the defendant's motion to dismiss.

24          Why don't you come up to the lectern?

25          MR. VINE:  Okay.  Thank you, your Honor.
```

```
 1              And if it's helpful in any way, for purposes of the
 2   motion to dismiss, I don't need to rely on that supplemental
 3   authority.  I think we're on strong footing relating to the
 4   motion to strike.  So, we could withdraw that notice of
 5   supplement, if it makes it easier of the situation.  We feel
 6   comfortable that --
 7              THE COURT:  Okay.
 8              MR. VINE:  -- relying on the information we have.
 9   But, in other words --
10              THE COURT:  So, let's start with the beginning,
11   Noerr-Pennington.
12              MR. VINE:  Sure.
13              THE COURT:  You know, the doctrine began as a sensible
14   antitrust policy.  It's been wildly extended, and I don't
15   believe it covers this case at all.  But -- and I'll tell you
16   some of my thoughts on that.
17              I don't think I have to get to it in the end, because
18   they've pled that this was a baseless accusation.  They haven't
19   used the word "baseless," as you point out, but they claim that
20   it was false.  And "false" and "baseless" are, in this context,
21   sufficiently synonymous that I don't think it should be
22   dismissed on those grounds.
23              With respect to the constitutional defenses
24   perspective, which is to say, the right to petition the
25   government for a redress of grievances, I just think the Ninth
```

1    Circuit has it wrong and I'm entitled to make that

2    determination.  And you can go and take that up to the Eleventh

3    Circuit and see if they disagree.

4        But it seems to me that it's an attenuated claim in

5    the first place to suggest that even were there a demand on

6    behalf of the defendant to a third party in which a lawsuit was

7    threatened, say that third party was Amazon, that that would

8    constitute some form of petition of someone's grievances for

9    purposes of the First Amendment.  Which, by the way, the First

10   Amendment only prohibits congressional action abridging that

11   petition.  I suppose what you really mean is the Fourteenth

12   Amendment's incorporation of the First Amendment as against the

13   states under the due process clause.

14       That argument wasn't made, but even if it had been

15   made, I still think that putting aside that ex ante problem,

16   which is, who's doing the abridging, the problem is, on the

17   back end, that there really is no redress of grievances that's

18   being prohibited with respect to a person's right to sue

19   another person for tortious interference or defamation, as the

20   case may be, when someone has, in their view, sent a completely

21   false letter in order to prevent what they view as unwanted

22   competition.

23       Now, I know that's not your view of what happened, but

24   we're just at the 12(b)(6) phase.  So, I think this is going to

25   be something you can reraise at summary judgment, and I'm going

```
 1    to allow you to reraise it at summary judgment, because I'm
 2    going to find in the alternative, that even if I'm wrong about
 3    Noerr-Pennington, broadly speaking, that their allegations with
 4    respect to whether it was a sham or not are sufficiently pled
 5    in order to get around the 12(b)(6).
 6            MR. VINE:  Can I address that sham part, though?
 7            THE COURT:  Sure.
 8            MR. VINE:  I mean I would like to address more than
 9    that, and I certainly don't want to be disrespectful in any
10    way.
11            THE COURT:  You don't have to worry about that.
12            MR. VINE:  Because there is an Eleventh Circuit case
13    called Atico -- or, I mean it's actually in the Southern
14    District, Judge Cohn, and we cited it as well.  Judge Cohn
15    actually recognized that it goes beyond, obviously, what your
16    Honor believes, and that certainly would be more than, I
17    believe, persuasive --
18            THE COURT:  But even in that case, we're talking about
19    a different situation than here -- and that was my original
20    point, which is, even putting aside my view that in a situation
21    where a defendant, a putative defendant, like Youngblood here,
22    threatens to sue the third party -- in this case, Amazon --
23    whether that question or that notice of suit falls within the
24    First Amendment's petitions clause is, of course, a question
25    that's not applicable here, and which was the question in
```

1    *Atico*, we have here an entirely different situation, where not

2    only is the letter being sent to a third party, but the letter

3    that was sent to a third party not only did not threaten to sue

4    the third party, but was more in the way of information and

5    asking for them to stop somebody else from doing something, but

6    that third party wasn't sued, and let's be real, because of

7    your business interests will never be sued in this case.  So,

8    my finding that this suit can go forward absolutely has

9    absolutely nothing to do with your ability to petition that

10   third party in order to redress your grievances.

11           So, for those reasons, I think it doesn't apply here

12   either.  And it's not -- and for that reason, I think

13   Judge Cohn's decision in *Atico* is just inapposite here.

14           MR. VINE:  If I may make three points, and I

15   appreciate that.

16           THE COURT:  Sure.

17           MR. VINE:  Okay.  So, first, as it relates to

18   Judge Cohn's opinion, it wasn't just a threatening of a

19   lawsuit.  He says so long as you assert rights -- and I can

20   read from it specifically.  It says:  "The Court finds" --

21           THE COURT:  I've read all of your cases, so you don't

22   have to --

23           MR. VINE:  I appreciate that.

24           So, Judge Cohn not only said it about a threatening,

25   it was -- it's one or the other, meaning, it's also assertion

1    of rights.  There's no dispute, based upon the allegations in

2    the complaint, there was an assertion of my client's rights

3    that they are selling inauthentic --

4                THE COURT:  Correct.  But unlike -- you got to read

5    *Atico* more carefully.  The assertion of rights in *Atico* was as

6    against the third party.  Your letter asserts no rights against

7    Amazon, and we know why.  Because you don't want to get Amazon

8    angry with you, because they're the big gorilla in the room.

9    So, they love Amazon and want to do business with Amazon, you

10   love Amazon, we all love Amazon.  So, you're not threatening

11   Amazon, you're not going to sue Amazon, you're asserting no

12   rights against Amazon, and in that respect*, Atico* is inapposite

13   here.

14               MR. VINE:  Right.  And then the other case -- this is

15   before we get to the sham exception issue, that I do want to

16   address with your Honor why I still believe the complaint is

17   deficient.  In the *Hard2Find* case, I understand you don't agree

18   with the Ninth Circuit, but there is a specific situation that

19   is exactly what we have here.  And that's called the *Hard2Find*

20   case, and we cited that for your Honor.  It's 2014 --

21               THE COURT:  You're talking about the Ninth Circuit

22   case.

23               MR. VINE:  Well, it was actually out of --

24               THE COURT:  Well, there's the district court case --

25               MR. VINE:  -- the Western District --

```
1          THE COURT:  It was the district court case, and then
2  it was affirmed by the Ninth Circuit.
3          MR. VINE:  Correct, your Honor.
4          THE COURT:  Yeah.  I've read that case as well.
5          MR. VINE:  The Hard2Find case involved Amazon and
6  Apple, and it had the almost identical allegations.
7          THE COURT:  Was Amazon sued in that case?
8          MR. VINE:  So, Amazon ended up being sued in this --
9  whatever we call this version of litigation, but the original
10 situation was -- and I have the actual case here, and I have
11 the complaint -- what happened -- is the same thing happened
12 here.  Apple, like Youngblood did, filed a complaint with
13 Amazon and said that these items are counterfeit.  And when I
14 said -- the same type thing.
15         In response, they got an automated response, went to
16 the third party, and in that case Hard2Find -- likewise the
17 same thing went to Argo -- that automated response that they
18 got from Amazon, and said, We're gonna shut you down, we're
19 gonna -- you know, these are counterfeit items, same set of
20 facts, same allegations.  And I can go through --
21         THE COURT:  I'm sorry.  Amazon was a defendant in
22 Hard2Find.
23         MR. VINE:  Amazon was a defendant in the subsequent
24 action, in the action that when we talk about a complaint was
25 filed.
```

1          THE COURT:  I'm sorry.

2          MR. VINE:  Okay.

3          THE COURT:  A defendant in the only sense that an

4    entity can be a defendant, a defendant in a lawsuit.

5          MR. VINE:  So, the original complaint -- when I say

6    "complaint," I mean the complaint that somebody was filing was

7    selling counterfeit items --

8          THE COURT:  I understand.  But Amazon -- it's a

9    totally different scenario.  *Hard2Find* is wrong, in my view, on

10   the First Amendment, clearly wrong.

11         But putting that aside, it's different in a way that's

12   patently salient here, as the plaintiff has pointed out.  In

13   Amazon -- in *Hard2Find*, Amazon was a defendant in the lawsuit.

14   They -- Apple is such a big fish, unlike Youngblood, that

15   Apple's not afraid of Amazon.  And so, Apple said, I'm suing

16   you, too.

17         MR. VINE:  That's not what happened.

18         THE COURT:  Sorry, not Apple.  Hard2Find sued both

19   Apple and Amazon.  Correct?

20         MR. VINE:  That is correct.

21         THE COURT:  Yeah.  So, in this case, the plaintiffs

22   haven't sued Amazon, because they're even more afraid of Amazon

23   than you are.  And so, they've sued only you.  So, it's a

24   totally different scenario than *Hard2Find* in that respect.

25         MR. VINE:  Understood.  I'm gonna move on.  The way

1      the Court reasoned was the *Noerr-Pennington* doctrine only

2      applied to Apple's arguments, not to Amazon.  And in that

3      case -- against Hard2Find.  That was what specifically the

4      Court made a finding that the doctrine applied, because it was

5      petitioning their activity in the same specific facts, the

6      same --

7            THE COURT:  Who were they petitioning?

8            MR. VINE:  They petitioned Amazon.

9            THE COURT:  Which is a private company.

10           MR. VINE:  Which is exactly what we did.

11           THE COURT:  But how --

12           MR. VINE:  I understand you don't agree to the

13      extension, but that's what the Ninth Circuit agreed.

14           THE COURT:  Tell me as a matter of logic, with respect

15      to the -- what the First Amendment actually says, how the

16      petitioning of a private party can have any implication for a

17      person's constitutional rights of an abridgment with respect to

18      a redress of grievances of their government.

19           MR. VINE:  So, it's the only avenue that any customers

20      of Amazon have to prevent it.  So, that's number one.

21           Number two --

22           THE COURT:  Excuse me.  Let's get to number one.

23           It's the only avenue that they have.  That may be

24      true, it may not be true, it may be sad, but that doesn't mean

25      that it comes within the ambit of what the First Amendment

1   actually says, which is that the government will not abridge

2   your right to petition your government for your grievances.

3   But Amazon's not the government.

4         MR. VINE:  So, the Eleventh Circuit, as well as many

5   circuits have recognized in -- recognized the application of

6   this doctrine in private business situations.

7         THE COURT:  Involving antitrust regulations.

8         MR. VINE:  It's been extended to claims and tortious

9   interference, it's been extended --

10        THE COURT:  Show me an Eleventh Circuit case --

11   because I don't think you have one -- that says that --

12        MR. VINE:  I thought *Atico* specifically talked about

13   that, and we can go into *Atico*, which -- sorry -- that's a

14   Southern District case.

15        THE COURT:  Okay.  We got to be very specific here.

16        MR. VINE:  No, no, but I think it cites to 11, so I'm

17   gonna point it out, if I may.

18        So, the *McGuire Oil Company* case, which is an Eleventh

19   Circuit 1992 case --

20        THE COURT:  Which is an antitrust case.

21        MR. VINE:  Right.  Applying First Amendment

22   litigation, unfair trade practices, and it also mentioned

23   specifically that the immunity in *Atico* applied to both cases

24   involving FDUTPA and tortious interference.  Judge Cohn found

25   that.

1    THE COURT:  In the context of a monopoly, an antitrust

2  case that the government was permitting.  In other words, the

3  government was permitting a company to engage in antitrust or

4  monopolistic activities.  There's no antitrust claims here.

5  Antitrust claims were at the heart of Pennington and Noerr, so

6  it makes sense that the Eleventh Circuit would think that an

7  antitrust claim would implicate the *Noerr-Pennington* doctrine,

8  but this isn't an antitrust case.  And I don't think you -- I

9  haven't seen, and you haven't cited, a case from the Eleventh

10 Circuit that suggests that in a private dispute involving no

11 antitrust regulations that *Noerr-Pennington* applies.

12    But even if *Noerr-Pennington* applied to a private case

13 involving no antitrust violations, it still wouldn't apply in

14 any case that I've seen or that you've cited, other than

15 *Hard2Find* out of the Ninth Circuit, in the context of a

16 situation where the defendant has not threatened the third

17 party with an assertion of its own rights against that third

18 party.

19    MR. VINE:  So, we did assert our own rights, but --

20    THE COURT:  Not against Amazon, you didn't.  I read --

21 that is not correct.  The allegations in the complaint are not

22 that you threatened Amazon with litigation against Amazon.  Are

23 you suggesting that that's incorrect?

24    MR. VINE:  No, your Honor, I --

25    THE COURT:  You did not.

1          MR. VINE:  I got it.  So --

2          THE COURT:  And so, it's different that *Hard2Find* in

3     that very material respect.

4          MR. VINE:  I'm back to *Atico*, where it says, and it

5     recognizes by Judge Cohn:

6          "A form of litigation immunity akin to the

7          immunity provided by *Noerr-Pennington* doctrine applies

8          to nonantitrust cases, such as FDUTPA and tortious

9          interference claims at issue in this action."

10         THE COURT:  That's not an Eleventh Circuit case.

11         MR. VINE:  It's a Southern District, Judge Cohn.

12         THE COURT:  It's not persuasive, it's not binding,

13    there are no -- there's no circuit court of the United States

14    case, other than *Hard2Find* in the Ninth Circuit, that extends

15    it anywhere near this context.

16         And even in *Atico*, there was an assertion of

17    litigation rights by the defendant against the third party,

18    which is not present here.  So, even if *Atico* was right, which

19    I don't believe it is, even if *Atico* were right, it would still

20    be inapposite here, because it involves an ingredient that we

21    just don't have in this complaint, which is an assertion of

22    your rights against Amazon, which you did not do and which did

23    occur in *Atico*.

24         All of that aside, there's still their allegation that

25    the entire purpose of it was to kick out this other side

1  business, who's making a profit off of your own product, which

2  you don't like, and that the whole thing was false and

3  therefore a sham.  They've alleged that.

4        I understand you don't like that allegation.  I

5  understand you don't agree with it.  I understand it's your

6  position that it may ultimately prove completely untrue.  But

7  they've alleged it and they get to conduct discovery on it.

8        What more do they have to say -- do they have to use

9  the actual word "sham"?

10        MR. VINE:  I want to -- I don't want to interrupt,

11  but --

12        THE COURT:  You go ahead.

13        MR. VINE:  Whenever -- I certainly don't want to be

14  disrespectful in any way.

15        THE COURT:  You're not being disrespectful.  You

16  should just -- what is it that they've failed to allege that

17  they should allege?

18        MR. VINE:  A couple of things.

19        THE COURT:  Other than the word "baseless," because I

20  think they've said it was false and fraudulent and that's even

21  worse than baseless.  So, to the extent they had to use the

22  word "baseless," they've used "false," which is probably better

23  for them in terms of what they've alleged than what you've

24  suggested they should have alleged.

25        MR. VINE:  So, I recall them using the word "wrongful"

```
 1    and the word "false."  I don't recall the word "fraud."
 2              THE COURT:  Is the word "false," "fraudulent" -- are
 3    those different in your view?
 4              MR. VINE:  The allegation about -- there is a specific
 5    allegation that it is false.  There's also a specific
 6    allegation it's wrongful.  Something could being wrongful and
 7    not baseless.  Something could be false also and not baseless.
 8              THE COURT:  I'm sorry.  How could something be false
 9    and not baseless?
10              MR. VINE:  Somebody can make a statement -- I don't --
11    by the way, I don't think we did anything wrong.  Let me start
12    off with that.
13              THE COURT:  I know that.
14              MR. VINE:  Right.  But somebody can make a false
15    statement not intentionally, or somebody can make a false
16    statement that's not baseless.
17              THE COURT:  Do you interpret their complaint as
18    being -- as alleging that you unintentionally made a false
19    statement?  Is that what you're interpreting?
20              MR. VINE:  No.  I'm interpreting that they haven't
21    alleged --
22              THE COURT:  That's not my question.  Do you interpret
23    their complaint as suggesting that you unintentionally made
24    false statements?
25              MR. VINE:  That's not the standard.
```

```
 1            THE COURT:  No, no, no.  The standard is we view the

 2    complaint in the light most favorable to them.  So, they've

 3    said it was wrong, they've said it was false.  You're saying

 4    that the clearest way to understand what they're saying is that

 5    it's not fraudulent or baseless, because they could have meant

 6    that it was unintentionally false.  Is that what you think the

 7    clearest interpretation of their allegation in the complaint

 8    is, given what they've written?

 9            MR. VINE:  I would like to read from the case -- the

10    two cases what it's supposed to allege.

11            THE COURT:  You're not answering my question.

12            MR. VINE:  I don't believe it's clear from their

13    complaint.

14            THE COURT:  That's not what the question is.  The

15    question is whether -- let's go back.  You said they needed to

16    use the word "baseless."  They've used -- they say, We've used

17    the word "false" and "wrongful."  What else do we have to say?

18            Your response to that is, Well, by saying that it was

19    false, it could have been that it was wrongful -- I'm not sure

20    how it would have been wrongful and false if it was

21    unintentionally wrong, but we'll get to that -- but even so,

22    given that they say it was wrongful and false, and that the

23    entire purpose was to kick out competition you didn't like, is

24    the fairest reading of the complaint, reading all reasonable

25    inferences in favor of the plaintiff, as we're required to do
```

1   at this stage of the litigation, that they are alleging that

2   you unintentionally, harmlessly, and for reasons that are not

3   your fault made a statement that coincidentally ended up being

4   false?

5          MR. VINE:  No.  I -- the answer is, I don't think

6   the -- my opinion is, I don't believe the complaint is clear in

7   any respect as it relates to that issue.  And more importantly,

8   what the case law says, they do not meet.

9          And I would like to read from the case, what it

10  specifically says under the *Rock River* case.  It must be,

11  quote, "objectively baseless" -- I understand we don't want to

12  use the word "baseless" -- "in a *(sic)* sense" -- and this is

13  what they need -- "that no reasonable litigant could

14  realistically expect success on the merits and an attempt to

15  interfere with the business relationship of that competition."

16  That's number one.

17         And even if they got past that under the false and

18  wrongful language that we're addressing, they need to argue the

19  second point, which there is nowhere in.  The second point

20  is -- and this is in the *Orange Lake* case that they cite -- so,

21  even if it was, quote/unquote, baseless, "plaintiff must

22  show" --

23         THE COURT:  Or false, wrongful and false.  Let's call

24  it what they call it.

25         MR. VINE:  Okay.  Even if it was false and wrongful,

19

```
1    "plaintiff must show that the petitioning party," meaning us,
2    "had the subjective intent to inhibit competition rather than
3    seek redress."  There is nowhere in there does it say that.  It
4    does not say that.  That's how you get the sham exception.
5           I've reviewed the complaint.  You can maybe try to
6    extrapolate from something, but I have not reviewed anything.
7           More important, they haven't even alleged that we were
8    competitors.  There's nowhere in the complaint that they've
9    alleged that we're competitors.
10          THE COURT:  You sell the same product.
11          MR. VINE:  No.  We make the product.
12          THE COURT:  But you sell it.
13          MR. VINE:  No.  We make the product.  They --
14          THE COURT:  You're talking to me as if I haven't read
15   every single -- I don't know what has led you to believe that
16   I'm the kind of judge that just came to this hearing without
17   reading -- spending many hours reading all of your cases, all
18   of your papers, and everything in the complaint.
19          I should address both parties.  I know this is the
20   first time you're appearing here in front of me.  For the next
21   time that any of you appear in front of me, please know I read
22   everything.  I'm here very late.  I work every weekend.  I'm
23   here at six in the morning every single day so that I can come
24   to this hearing having read everything.  I have read
25   everything.
```

FRANCINE C. SALOPEK, OFFICIAL COURT REPORTER
(954)769-5686

1        MR. VINE:  Okay.

2        THE COURT:  You're saying that they do not allege that

3   you are competitors.  Your response is that you manufacture the

4   product.  I know that you manufacture the product.  But you

5   also don't just manufacture it, you then sell it.  They also

6   then sell that product.  Doesn't that mean you're in

7   competition against each other?

8        MR. VINE:  Well --

9        THE COURT:  We're drawing all reasonable inferences at

10  this stage of the -- let's say you're right, you're going to

11  win at summary judgment, you're going to crush them, you're

12  going to get millions of dollars in attorneys' fees, it's going

13  to be wonderful.

14       MR. VINE:  Sure.

15       THE COURT:  But the question at this stage of the

16  litigation is whether they've alleged it, and not just whether

17  they've alleged it, whether when we draw all the allegations in

18  their favor and draw all reasonable inferences on their behalf,

19  they say you both manufacture -- excuse me -- you manufacture,

20  and you both sell the same product.

21       MR. VINE:  That's correct.

22       THE COURT:  Isn't it a reasonable inference that

23  you're competitors?

24       MR. VINE:  Your Honor, yes.  And I don't want to get

25  away from what I was saying, the thrust of my argument on the

```
 1   sham issue, because I shouldn't have even raised the
 2   competition issue.
 3          On that sham issue, they have not alleged -- and I
 4   continue to believe they have not alleged -- that they show
 5   that my client had the subjective intent to inhibit competition
 6   rather than seek redress.  They have not alleged that.  And
 7   that is how you fit within the exception.
 8          So, it's not only it has to be baseless, fraud,
 9   wrongful, it's end.  And that's actually in the case that they
10   cited, which was the Orange Lake case.
11          And then, of course, there's a number of other reasons
12   why I believe the complaint should be dismissed, because you
13   have pleading deficiencies as well.
14          THE COURT:  So, they allege in Count 1 that -- and
15   this is in paragraph 23 -- they allege that defendant
16   intentionally -- I guess that eliminates the whole -- you know
17   what, if I had just raised that before, we wouldn't have even
18   had to engage in that discussion, because they do say it was
19   intentional.  So -- they do say it was fraudulent, in other
20   words.  So, I stand by what I said before.  "The defendant
21   intentionally and without justification" -- meaning baseless, I
22   think, sham -- "interfered with the business relationship by
23   falsely accusing plaintiffs of selling counterfeit merchandise
24   in their online store and by causing Amazon to shut down their
25   store."
```

1      And then in Count 2, they claim that these practices

2  that you engaged in were unfair, and they were deceptive.  In

3  paragraph 28, they say they were deceptive and unfair because

4  you falsely reported to Amazon that they were selling

5  counterfeit merchandise.

6      And in Count 3 --

7      MR. VINE:  You know, I look at those as resuscitation

8  of the case law and the elements and mere statements.  They are

9  not factual at all.  But I understand the Court's position.  I

10 don't want to --

11     THE COURT:  Okay.  I don't want to spend more time on

12 this.

13     MR. VINE:  That's right.

14     THE COURT:  Let's go to the other counts.

15     With respect to wrongful interference -- excuse me --

16 tortious interference with a business relationship, you raise

17 several arguments.

18     The first argument is that the relationship was a past

19 relationship, and that there was no evidence of any ongoing

20 relationship.  I guess my question is:  They were on Amazon,

21 that relationship was one that they're claiming you interfered

22 with as well.  You're on Amazon.  They're on Amazon.  As a

23 result, they allege, as a result of what you sent over to

24 Amazon, that relationship was cut off, and that relationship

25 was the sine qua non of their business.

```
 1          Why isn't that enough to prove an ongoing relationship
 2    that was cut off by your allegedly wrongful interference?
 3          MR. VINE:  So if the relationship that they're talking
 4    about is Amazon, I think that would be sufficiently identified.
 5          THE COURT:  That's what they say in their response.
 6          MR. VINE:  But in -- the way I read the complaint --
 7    but your Honor -- obviously, everybody interprets things
 8    differently -- in paragraph 21, it says:  "Plaintiffs had and
 9    continue to have a business relationship with identifiable
10    customers who shop in their online store at Amazon."  So, the
11    way I read this complaint -- and I have argued a number of
12    these tortious interference cases -- that would be something in
13    other cases I've had that would not have passed muster, because
14    that's not identifiable as customers and that wouldn't be
15    sufficiently identified.
16          THE COURT:  Well, but it's certainly alleged in the
17    complaint that they have an ongoing business relationship with
18    Amazon, is it not?
19          MR. VINE:  They certainly allege that they were an
20    online store on Amazon, and that they were shut down.
21          THE COURT:  And that they were making money off of
22    that relationship.
23          MR. VINE:  Right.
24          THE COURT:  They're alleging.
25          MR. VINE:  Whether they were actually making money is
```

1    a whole separate issue.

2              THE COURT:  Who knows.

3              MR. VINE:  Yeah.  I mean there's a whole lot of what I

4    would call misstatements in here, but that's a separate day.

5              But more importantly, though, paragraph 21, if your

6    Honor is fine with leaving it in as it relates to Amazon, sure,

7    I get that.  But as it relates to the customers --

8              THE COURT:  Do you want them to change it so it says:

9    Plaintiffs had and continue to have a business relationship

10   with identifiable customers who shop in their online store on

11   Amazon and a business relationship with Amazon?

12             MR. VINE:  No, no, I want actually them to -- it to be

13   dismissed as it relates to any, quote, unidentifiable

14   customers.  They have to identify them.

15             THE COURT:  I don't think they do have to identify

16   them.  They just have to show that they're a going concern

17   selling to businesses, which is what they alleged, and that as

18   a result of the interference, those customers went dry, which

19   they allege.  I don't think they have to point to an individual

20   customer that they were doing business with and that stopped

21   doing business with them.  That would be true if there was a

22   past customer, which is what all of your cases stand for.

23             Your cases stand for the proposition that if I was

24   doing business with one past customer -- say I had sold, you

25   know, a whole crate of apples to somebody two years ago, and

25

1    then, you know, a third party came in and said some nasty

2    things about me to the apple buyer, and I say, Hey, you

3    tortiously interfered with my business relationship with the

4    apple buyer, I think it's fair for you to say, Hey, that's a

5    past relationship, it was a year or two ago, there's nothing

6    ongoing about it, I don't know that there's enough there to

7    show that I wrongfully interfered.

8         On the other hand, they're alleging -- again, I have

9    no idea if they've sold ever a single Youngblood product, but

10   they're alleging that they're online, and that on a constant

11   basis, they're selling these products to people in the

12   marketplace, and that that's not a past thing, that these

13   customers are ongoing, that they're present, and that it

14   stopped only when the Amazon letter -- excuse me -- the

15   Youngblood letter came into Amazon.  That's what they've

16   alleged.

17        So, I'm going to deny the motion with respect to that

18   aspect of the claim.

19        MR. VINE:  May I just cite to the *Bortell*

20   case vs. *White Mountains Insurance*, and that is a -- obviously,

21   it's a Fourth District Court of Appeals, DCA, because this is a

22   Florida state law claim.  As it relates to that, I'm just gonna

23   read from it what that case says.

24        "This cause of action requires a business

25        relationship evidenced by an actual and identifiable

1    understanding or agreement with *(sic)* all probability

2    would have been completed if the defendant had not

3    interfered.  "In *Ethan Allen*" -- and that's from the

4    Florida Supreme Court case -- "a furniture

5    distributor, Georgetown, sued its manufacturer, Ethan

6    Allen, claiming tortious interference with its

7    customers past, present, and future.  Georgetown

8    contended" -- and then it goes on and on to talk

9    about it.

10         And then the Court found that they needed to identify

11   the specific customers.  That is just the case law that I

12   understood it to be.  I understand the Court's ruling.  But I

13   have had other tortious interference cases, whether they be

14   contracts, they have to attach the contract, or it's identify

15   the contract, or in this case, a business relationship.  And

16   I've had those cases.  And the Courts have even said in those

17   cases, you know, you don't have to identify necessarily

18   specifically if you know all current customers or past

19   customers.  They have identified no one.  It is completely, in

20   my opinion, vague and overbroad and not sufficient.

21         THE COURT:  The next claim is that they've failed to

22   identify or allege that the interference was justified.  That

23   is a clear factual question, and they've alleged that it was

24   both intentionally wrongful and false.  If it's intentionally

25   wrongful and false, it cannot be justified.  It's a fact

27

```
1   question.  The Courts in Florida have said that repeatedly.

2   And so, I'm going to deny the motion with respect to that

3   aspect of the claim.

4        You also separately challenge the FDUTPA count.  You

5   allege that they don't plead sufficiently that the conduct was

6   unfair or deceptive.  To the contrary, they plead that it was

7   both unfair and deceptive.  To the extent that they haven't

8   proven it, I totally agree with you, but all --

9        MR. VINE:  They just simply just state that.  I mean

10  if that's sufficient --

11       THE COURT:  What do they have to do to say more than

12  that?  Why do we assume that they have to come in here with

13  mounds of evidence at the lawsuit phase and prove it?  They've

14  told you that you said things that were false, that they were

15  knowingly false, that they were wrongful, that they hurt their

16  business.  What other than, You said something knowingly false

17  about me, and that my business was hurt as it relates to -- as

18  a direct result of that knowingly false thing that you said,

19  if -- assuming that were true.  Let's put it in this paradigm.

20       Let's assume that they say you knowingly sent a false

21  letter about me to Amazon, the lifeblood of my business, and as

22  a direct result of that letter, Amazon shut me down, and I made

23  no money as a result, or I lost money as a result.  Does that

24  seem unfair, if that were true?  It's, I think, consistent with

25  my definition of unfair.
```

```
 1              Would it be deceptive?  I think that goes to your next
 2    point, which I was about to get to, which is the question of
 3    whether it's deceptive from the perspective of the maker.
 4    Certainly they've said it was deceptive in that they've said it
 5    was intentionally false and wrongful.
 6              So then your point is, Well, but it has to be
 7    deceptive also from the perspective of the listener, which is
 8    true under the law.  The question is whether they've alleged
 9    that a reasonable person would have been deceived,
10    sufficient -- facts sufficient to show that a reasonable person
11    would have been deceived by the letter.
12              And they've shown that the largest company, perhaps
13    the most sophisticated company in the history of our planet was
14    deceived by the letter.  Is that a reasonable person?  I submit
15    to you it's a far higher standard than the reasonable person
16    standard.  The reasonable person standard is a low bar.  Amazon
17    is as sophisticated as they get, and they're alleging that they
18    were deceived.
19              So, I will deny the motion with respect to the FDUTPA
20    count.
21              With respect to defamation, first you say that the
22    plaintiffs have failed to plead facts that would meet the
23    publication requirement under defamation.
24              Let me ask the plaintiff with respect to that, how
25    come the letters were not attached to the complaint?
```

29

```
1          MS. BLACK:  We only had notices from Amazon that
2    regurgitated that they got a complaint that it was counterfeit.
3          THE COURT:  I see.  You're not in possession of the
4    letters.
5          MS. BLACK:  That's correct.
6          THE COURT:  Understood.  Okay.
7          So, they have alleged that Amazon sent letters on
8    particular dates.  They actually list the dates in the
9    complaint.  I just dealt with a defamation motion to dismiss in
10   another case where there were no dates; there were just date
11   ranges.  And I'm sure you know the law is clear that so long as
12   the date ranges are sufficiently narrow, that is sufficient.
13   But they've done far more than that.  They've given specific
14   dates of when those allegedly defamatory statements were
15   published.  They've alleged, based on the fact that Amazon then
16   contacted them, that those defamatory statements were published
17   to a third party, Amazon, which, of course, is an element of
18   the charge.
19          And so, the only remaining argument I think that you
20   have is that they haven't sufficiently alleged who the specific
21   individual at Amazon is who made that claim.  How would they
22   know that?
23          MR. VINE:  Youngblood, I assume you mean, but, yes.
24          THE COURT:  Excuse me.  Who at Youngblood?  How would
25   they know that without seeing the letters or getting into
```

1  discovery?  It's a little bit of a catch-22.  And the law can

2  sometimes be draconian and unfair, but I refuse to believe that

3  it's that draconian and unfair in that it would say that

4  they've alleged every other aspect of defamation, they've even

5  alleged who it came from, Youngblood, but they haven't

6  identified the exact individual at Youngblood who clicked

7  "send" on the email precisely because they haven't been allowed

8  discovery, and that that should be the fact that prohibits them

9  from taking discovery.  That would be the definition of a

10  catch-22.  So, I'll deny the motion with respect to that

11  aspect.

12         You say that the plaintiffs have failed to plead facts

13  that Youngblood's alleged statement to Amazon was false.  I

14  disagree.

15         MR. VINE:  Yeah, yeah, as it relates to the

16  defamation, I think the only, what I would say, real argument

17  that we would rely on is really what we call about the single

18  publication rule.

19         THE COURT:  I wanted to -- that is -- now we've gotten

20  to what I think is the most interesting part of the case.

21  Before we get to that, though, let me just -- I think that's

22  your only argument with respect to trade liable, other than --

23         MR. VINE:  That's the only one we're gonna rely on at

24  this point.

25         THE COURT:  Understood.  Okay.  Fair enough.

1          MR. VINE:  I got the picture already.

2          THE COURT:  Okay.  So, I'll deny the trade liable

3    motion as it applies to the elements.

4          The single action rule, you know, at first, I didn't

5    understand it.  It seems to me that the single action rule

6    applies for the reason that you've stated, which is that if the

7    defendant has a justifiable First Amendment defense, that's A,

8    then it would be unfair for a plaintiff to circumvent the

9    requirements of that constitutional defense by bringing a claim

10   that doesn't implicate those defenses, say a tortious

11   interference claim.  That would be unfair.

12         Similarly, because the First Amendment is implicated

13   by defamatory statements, the law, *New York Times vs. Sullivan*

14   and other cases have said -- the law has said that there are

15   heightened elements that are required for purposes of alleging

16   defamation.  And, again, it would be unfair for a plaintiff to

17   circumvent the requirements of those higher elements, which

18   were built in to protect the constitutional rights of

19   defendants, by simply going and alleging a cause of action that

20   does not implicate those elements.

21         But here's the response that they make, which I think

22   is persuasive, and I want to hear about it from you.

23         The response they make is that all of that is true.

24   Of course, that's true.  The problem is all of that, as a

25   matter of logic, only comes into play if the defamation suit

32

1    itself fails.  In other words, if the cause of action for

2    defamation fails, then we as a legal society assume it failed

3    either because there was a legitimate constitutional defense,

4    A, or because the plaintiff failed to meet the heightened

5    elements of the defamatory claim, which implicates those higher

6    standards that we require because of the First Amendment

7    freedom.

8         And if that's true, then, of course, all other claims

9    that arise out of the defamation claim should be dismissed.

10   Because, again, it would be unfair to allow them to proceed if

11   you haven't met the elements with respect to the constitutional

12   defenses.

13        However, until that defamation claim has been deemed

14   to fail for one of those two reasons, defenses or failure to

15   meet the heightened elements under the Constitution, then why

16   can't the tortious interference claim or the trade liable

17   claim, as the case may be, proceed?

18        MR. VINE:  I'm gonna -- so, I recall that we had a

19   case that was cited --

20        THE COURT:  So, they cited -- I'll tell you the way it

21   goes.  They've cited three cases in their response that are

22   directly on point.  One case is *Callaway Land and Cattle*,

23   C-A-L-L-A-W-A-Y*, Land and Cattle Company vs. Banyon Lakes*,

24   B-A-N-Y-O-N, and that's 831 So.2d 204, from the Fourth District

25   Court of Appeal.  And in that case, the Fourth District made

33

1   clear that the, quote:

2        "Single publication/single action rule does not

3     permit multiple actions when they arise from the same

4     publication upon which a failed defamation claim is

5     based.  The rule is designed to prevent plaintiffs

6     from circumventing a valid defense to defamation by

7     recasting essentially the same facts into several

8     causes of action, all meant to compensate for the

9     same harm.  Thus, if the defamation count fails, the

10    other counts based on the same publication must fail

11    as well, because the same privileges and defenses

12    necessarily apply."

13       MR. VINE:  So, we're in agreement.  I agree with that.

14       THE COURT:  Okay.  And this is a long-winded way of me

15   asking you a question, which is:  Do you agree that if I

16   dismiss the defamation claims, I must also dismiss the

17   wrongful -- the tortious interference and trade liable claims?

18   But at least at this stage, if I deny your motion as to the

19   defamation claims, then I have to -- then I can deny your

20   motion as to the other claims as well?

21       MR. VINE:  I do not.  I do not agree.

22       THE COURT:  Oh, so then we're not in agreement.

23       MR. VINE:  I agree on the first part, meaning if you

24   dismiss the defamation claim, then you have to dismiss all --

25       THE COURT:  I agree with that, and I think they agree

1  with that.  Is that correct?

2          MS. BLACK:  Yes, your Honor.

3          MR. GOODMAN:  Yes.

4          MR. VINE:  Okay.  So, the other part is, though, if

5  they're -- I don't believe they're able to proceed, though, at

6  this point in defamation, liable, tortious interference all

7  from the same publication.  That's where the disagreement is.

8  I understand your Honor's ruling and --

9          THE COURT:  Well, I haven't ruled yet.

10         MR. VINE:  I got it from the implication, from the

11 response to it.  The way I read the case law, the way I read it

12 is -- and it's maybe the inverse of what the Court has stated

13 in *Callaway* and all these other cases -- that all -- they

14 dismiss cases in -- at the motion to dismiss stage.  Now,

15 granted --

16         THE COURT:  Only when the defamation claim is also

17 dismissed.  And, in fact, if you look at -- they actually do

18 cite a couple of federal district court cases for this

19 proposition.  And I'll just tell you the citation.  Give me one

20 second.

21         MR. VINE:  Sure.

22         *(Pause)*

23         THE COURT:  This is *Synergy Billing vs. Priority*

24 *Management Group*, and it's a 2017 case from the Middle District

25 of Florida.  In that case, the Middle District said:

```
 1              "The single action rule does not bar plaintiff's

 2         properly pled claims.  The single action rule applies

 3         only to multiple actions when they arise from the

 4         same publication, but only upon which a failed

 5         defamation claim is based."

 6              Here, the plaintiffs' claim for tortious interference,

 7    and then they basically said that it doesn't arise from the

 8    same --

 9              MR. VINE:  That's what I understood.  If it arose from

10    the same thing, that you can't proceed.  If I'm wrong, I'm

11    wrong.  But I understood the --

12              THE COURT:  Let me just get to my question.  In your

13    reply, you didn't cite any cases that suggest the opposite,

14    that you could deny a motion with respect to the defamation,

15    but that even then, you must dismiss the tortious interference

16    and/or other claims, like the trade liable claim, on the

17    grounds of the single publication rule, is that correct?

18              MR. VINE:  That's correct.  The way I read that case,

19    though, is in that case, it did not arise from the same -- the

20    tortious interference claim did not arise from the defamation

21    statement.  That's the way I read that case.

22              THE COURT:  What about Baker vs. Joseph, which is a

23    Judge Ungaro decision from our district, and that was in 2013,

24    where she decided that -- which is exactly directly on point --

25    she basically said, Look, you haven't alleged enough in the
```

```
 1    defamation count, so I'm going to allow you to replead.  And
 2    then she says, Because I've granted you leave -- to the
 3    plaintiff -- because I've granted you leave to amend your
 4    defamation count, quote, "any determination on whether the
 5    single publication rule bars the other counts is premature at
 6    present."  The natural inference being that the reason that
 7    it's premature is because if the subsequent amendment
 8    sufficiently pled the defamation count, then the single
 9    publication rule wouldn't apply, right?
10              MR. VINE:  I think that's an inference that you could
11    extrapolate from that.
12              THE COURT:  And I'm assuming you think she's wrong
13    about that, but --
14              MR. VINE:  Well, I actually tried a case in front of
15    Judge Ungaro.  I would never tell Judge Ungaro she's wrong
16    about anything.
17              THE COURT:  You know what, that's the wisest thing
18    you've said today.
19              MR. VINE:  Oh, that makes me feel even better.
20              THE COURT:  So, I am going to allow you -- my point is
21    in all of this discussion, I'm going to allow you to reraise
22    all of these arguments at the summary judgment phase to the
23    extent that they haven't been proved in discovery, that's with
24    respect to all the claims, and then I'm going to allow you to
25    reraise the *Noerr-Pennington* argument at summary judgment.  And
```

```
 1   I'm especially going to allow you to reraise the single

 2   publication rule at summary judgment, because if at summary

 3   judgment I do dismiss the defamation claim, then I must dismiss

 4   all of the remaining claims that arise out of that single

 5   publication.  But for the reasons I've stated, I'm going to

 6   deny the motion to dismiss.

 7        Now, let's take up the remaining motions.  There's the

 8   joint motion -- well, first, there's the motion to -- the

 9   plaintiffs' motion to strike.  I'm going to deny that motion as

10   moot in light of my ruling.

11        And then there's the joint motion for extension of all

12   deadlines, which is the only motion here that I really didn't

13   like.  So, let's talk about that.

14        MS. BLACK:  Yes, your Honor.

15        We just -- we spoke with defense counsel, and we just

16   want a brief extension on the deadlines.  I know it affects all

17   the dates.  But our issue is, because we haven't had an answer,

18   we haven't noticed the deposition of Youngblood yet, because we

19   want to see what their affirmative defenses are.  We have a

20   good guess, but we need to see them pled before we can go ahead

21   and notice that deposition.

22        THE COURT:  What's your position?

23        MR. VINE:  We're in agreement with the extension, your

24   Honor.

25        THE COURT:  Okay.
```

```
 1              All right.  Well, then I'll grant it.  Sixty days?

 2          MS. BLACK:  Sixty days is fine, your Honor.

 3          THE COURT:  Sixty days?

 4          MR. VINE:  That's fine.

 5          THE COURT:  I'll issue an order granting the motion

 6   and extending all deadlines for 60 days.

 7              Let me say that my standing trial order makes clear,

 8   as I'm sure you both know, in I think it's Footnote 2, that you

 9   all can agree amongst yourselves to extend any

10   discovery-related deadline, like, you know, the deadline for

11   submission of expert reports or the taking of depositions,

12   amongst yourselves without even having to ask me, so long as it

13   doesn't impinge upon, you know, one of the dispositive

14   deadlines in the case.

15          MR. VINE:  I believe this one, though --

16          MS. BLACK:  We asked for --

17          THE COURT:  No, I know that you do.  I'm just saying

18   that in the future, let's say that you thought, you know,

19   there's a couple depositions that we haven't taken, and we

20   don't have enough time before the discovery cutoff, you guys

21   can agree amongst yourselves, you know, like you give me two,

22   and I'll give you two, and do it outside of the discovery

23   cutoff without coming to me, so long as it doesn't then require

24   me to move the trial date, say, or the summary judgment date,

25   or something like that.
```

1          MS. BLACK:  Certainly, your Honor.

2          THE COURT:  Sounds like we're not settling this case

3    anytime soon, though.

4          MS. BLACK:  You never know.

5          MR. VINE:  We didn't make any false or wrongful

6    statements.

7          THE COURT:  When is mediation set in this case?

8          MS. BLACK:  It's -- we're -- the mediation date we had

9    to move.  It's supposed to be, I believe, December 2nd, but I

10   think the mediator just notified us of a conflict.  So, it's

11   gonna be sometime in December.  We're reironning out that date.

12         Right?

13         THE COURT:  Okay.  All right.  Thank you all very

14   much.  Nice to see you.  Have a nice weekend.

15         MS. BLACK:  Thank you, your Honor.

16         MR. VINE:  Thank you.  You, too, your Honor.

17         *(Proceedings concluded at 3:56 p.m.)*

18                         -  -  -  -  -

19                **C E R T I F I C A T E**

20       I hereby certify that pursuant to Section 753,

21   Title 28, United States Code, the foregoing is a true and

22   correct transcript from the record of proceedings in the

23   above-entitled matter.

24
     _____/s/Francine C. Salopek _____        11-5-2019_____
25   Francine C. Salopek, RMR-CRR                     Date
     Official Court Reporter

                 FRANCINE C. SALOPEK, OFFICIAL COURT REPORTER
                              (954)769-5686

**MR. GOODMAN: [2]** 3/8 34/2
**MR. VINE: [88]**
**MS. BLACK: [11]**
**ROOM CLERK: [1]** 3/3
**THE COURT: [95]**

**/**

**/s/Francine [1]** 39/24

**1**

**11 [1]** 12/16
**11-5-2019 [1]** 39/24
**11530 [1]** 2/4
**12 [2]** 5/24 6/5
**120 [1]** 2/9
**1401 [1]** 2/5
**19-60487-CIV-RKA [1]** 1/4
**1992 [1]** 12/19

**2**

**20 [2]** 1/8 3/1
**200 [1]** 2/3
**2013 [1]** 35/23
**2014 [1]** 8/20
**2017 [1]** 34/24
**2019 [3]** 1/8 3/1 39/24
**204 [2]** 2/6 32/24
**207B [1]** 2/12
**21 [2]** 23/8 24/5
**22 [2]** 30/1 30/10
**222 [1]** 2/8
**23 [1]** 21/15
**28 [2]** 22/3 39/21
**299 [1]** 2/12
**2nd [1]** 39/9

**3**

**33301 [2]** 2/6 2/12
**33401 [1]** 2/9
**3:09 [2]** 1/9 3/1
**3:56 [1]** 39/17

**6**

**60 days [1]** 38/6
**666 [1]** 2/3

**7**

**753 [1]** 39/20
**769-5686/mjsfcs [1]** 2/13

**8**

**831 So.2d 204 [1]** 32/24

**9**

**954 [1]** 2/13

**A**

**ability [1]** 7/9
**above [1]** 39/23
**above-entitled [1]** 39/23
**abridge [1]** 12/1
**abridging [2]** 5/10 5/16
**abridgment [1]** 11/17

**absolutely [2]** 7/8 7/9
**accusation [1]** 4/18
**accusing [1]** 21/23
**action [13]**
**actions [2]** 33/3 35/3
**activities [1]** 13/4
**activity [1]** 11/5
**address [5]** 3/21 6/6 6/8 8/16 19/19
**addressing [1]** 18/18
**affects [1]** 37/16
**affirmative [1]** 37/19
**affirmed [1]** 9/2
**afraid [2]** 10/15 10/22
**afternoon [5]** 3/3 3/9 3/11 3/12 3/15
**agree [12]**
**agreement [4]** 26/1 33/13 33/22
37/23
**akin [1]** 14/6
**AL [1]** 1/7
**al. [1]** 3/5
**allegation [6]** 14/24 15/4 16/4 16/5
16/6 17/7
**allegations [6]** 6/3 8/1 9/6 9/20 13/21
20/17
**allege [11]**
**alleged [24]**
**allegedly [2]** 23/2 29/14
**alleging [8]**
**Allen [2]** 26/3 26/6
**allow [7]** 6/1 32/10 36/1 36/20 36/21
36/24 37/1
**allowed [1]** 30/7
**almost [1]** 9/6
**alternative [1]** 6/2
**Altman [1]** 1/17
**Amazon [56]**
**Amazon's [1]** 12/3
**ambit [1]** 11/25
**amend [1]** 36/3
**amendment [11]**
**Amendment's [2]** 5/12 6/24
**amongst [3]** 38/9 38/12 38/21
**and/or [1]** 35/16
**angry [1]** 8/8
**answer [2]** 18/5 37/17
**ante [1]** 5/15
**antitrust [11]**
**anytime [1]** 39/3
**aol.com [1]** 2/13
**Appeal [1]** 32/25
**Appeals [1]** 25/21
**appearances [2]** 2/1 3/6
**apple [8]**
**Apple's [2]** 10/15 11/2
**apples [1]** 24/25
**applicable [1]** 6/25
**application [1]** 12/5
**applied [4]** 11/2 11/4 12/23 13/12
**applies [5]** 13/11 14/7 31/3 31/6 35/2
**apply [4]** 7/11 13/13 33/12 36/9
**Applying [1]** 12/21
**appreciate [2]** 7/15 7/23
**ARGO [3]** 1/7 3/4 9/17
**argue [1]** 18/18

**argued [1]** 23/11
**argument [7]** 5/14 20/25 22/18 29/19
30/16 30/22 36/25
**arguments [3]** 11/2 22/17 36/22
**arise [7]** 32/9 33/3 35/3 35/7 35/19
35/20 37/4
**arose [1]** 35/9
**aspect [4]** 25/18 27/3 30/4 30/11
**assert [2]** 7/19 13/19
**asserting [1]** 8/11
**assertion [6]** 7/25 8/2 8/5 13/17
14/16 14/21
**asserts [1]** 8/6
**assume [4]** 27/12 27/20 29/23 32/2
**assuming [2]** 27/19 36/12
**Atico [14]**
**attach [1]** 26/14
**attached [1]** 28/25
**attempt [1]** 18/14
**attenuated [1]** 5/4
**attorneys' [1]** 20/12
**authority [2]** 3/18 4/3
**automated [2]** 9/15 9/17
**avenue [3]** 2/8 11/19 11/23

**B**

**B-A-N-Y-O-N [1]** 32/24
**Baker [1]** 35/22
**Baker vs. Joseph [1]** 35/22
**Banyon [1]** 32/23
**bar [2]** 28/16 35/1
**bars [1]** 36/5
**baseless [17]**
**basis [1]** 25/11
**Beach [1]** 2/9
**began [1]** 4/13
**beginning [1]** 4/10
**believe [13]**
**believes [1]** 6/16
**beyond [1]** 6/15
**Billing [1]** 34/23
**Billing vs. Priority [1]** 34/23
**binding [1]** 14/12
**Black [2]** 2/5 3/7
**Blvd [1]** 2/12
**Bortell [1]** 25/19
**Boulevard [1]** 2/5
**brief [1]** 37/16
**broadly [1]** 6/3
**Broward [2]** 2/5 2/12
**built [1]** 31/18
**business [21]**
**businesses [1]** 24/17
**buyer [2]** 25/2 25/4

**C**

**C-A-L-L-A-W-A-Y [1]** 32/23
**call [5]** 9/9 18/23 18/24 24/4 30/17
**Callaway [2]** 32/22 34/13
**called [2]** 6/13 8/19
**Calling [1]** 3/4
**carefully [1]** 8/5
**Case 19-60487-Civil [1]** 3/4
**case vs. White [1]** 25/20

**C**

**catch [2]** 30/1 30/10
**catch-22 [2]** 30/1 30/10
**Cattle [2]** 32/22 32/23
**cause [3]** 25/24 31/19 32/1
**causes [1]** 33/8
**causing [1]** 21/24
**certify [1]** 39/20
**challenge [1]** 27/4
**charge [1]** 29/18
**circuit [16]**
**circuits [1]** 12/5
**City [1]** 2/4
**CIV [1]** 1/4
**Civil [1]** 3/4
**claim [24]**
**claiming [2]** 22/21 26/6
**claims [13]**
**clause [2]** 5/13 6/24
**clear [6]** 17/12 18/6 26/23 29/11 33/1 38/7
**clearest [2]** 17/4 17/7
**clicked [1]** 30/6
**client [1]** 21/5
**client's [1]** 8/2
**Code [1]** 39/21
**Cohn [6]** 6/14 6/14 7/24 12/24 14/5 14/11
**Cohn's [2]** 7/13 7/18
**coincidentally [1]** 18/3
**Cole [2]** 2/8 3/13
**comfortable [1]** 4/6
**company [6]** 11/9 12/18 13/3 28/12 28/13 32/23
**Company vs [1]** 32/23
**compensate [1]** 33/8
**competition [7]** 5/22 17/23 18/15 19/2 20/7 21/2 21/5
**competitors [4]** 19/8 19/9 20/3 20/23
**complaint [27]**
**completed [1]** 26/2
**computer [1]** 1/25
**concern [1]** 24/16
**concluded [1]** 39/17
**conduct [2]** 15/7 27/5
**conflict [1]** 39/10
**congressional [1]** 5/10
**consistent [1]** 27/24
**constant [1]** 25/10
**constitute [1]** 5/8
**Constitution [1]** 32/15
**constitutional [6]** 4/23 11/17 31/9 31/18 32/3 32/11
**contacted [1]** 29/16
**contended [1]** 26/8
**context [4]** 4/20 13/1 13/15 14/15
**contract [2]** 26/14 26/15
**contracts [1]** 26/14

**contrary [1]** 27/6
**counsel [2]** 3/6 37/15
**count [9]**
**Count 1 [1]** 21/14
**Count 2 [1]** 22/1
**Count 3 [1]** 22/6
**counterfeit [6]** 9/13 9/19 10/7 21/23 22/5 29/2
**Country [1]** 2/3
**counts [3]** 22/14 33/10 36/5
**court [17]**
**Court's [2]** 22/9 26/12
**courtroom [1]** 3/2
**Courts [2]** 26/16 27/1
**covers [1]** 4/15
**crate [1]** 24/25
**CRR [2]** 2/10 39/25
**crush [1]** 20/11
**customer [3]** 24/20 24/22 24/24
**customers [12]**
**cut [2]** 22/24 23/2
**cutoff [2]** 38/20 38/23

**D**

**date [7]** 29/10 29/12 38/24 38/24 39/8 39/11 39/25
**dates [5]** 29/8 29/8 29/10 29/14 37/17
**DCA [1]** 25/21
**deadline [2]** 38/10 38/10
**deadlines [5]** 3/21 37/12 37/16 38/6 38/14
**dealt [1]** 29/9
**December [2]** 39/9 39/11
**December 2nd [1]** 39/9
**deceived [4]** 28/9 28/11 28/14 28/18
**deceptive [8]**
**decided [1]** 35/24
**decision [2]** 7/13 35/23
**deemed [1]** 32/13
**defamation [26]**
**defamatory [4]** 29/14 29/16 31/13 32/5
**defendant [17]**
**defendant's [3]** 3/18 3/23 3/23
**defendants [2]** 3/14 31/19
**defense [5]** 31/7 31/9 32/3 33/6 37/15
**defenses [6]** 4/23 31/10 32/12 32/14 33/11 37/19
**deficiencies [1]** 21/13
**deficient [1]** 8/17
**definition [2]** 27/25 30/9
**demand [1]** 5/5
**deny [10]**
**deposition [2]** 37/18 37/21
**depositions [2]** 38/11 38/19
**designed [1]** 33/5
**determination [2]** 5/2 36/4
**direct [2]** 27/18 27/22
**directly [2]** 32/22 35/24
**disagree [2]** 5/3 30/14
**disagreement [1]** 34/7
**discovery [8]**

**discovery-related [1]** 38/10
**discussion [2]** 21/18 36/21
**dismiss [14]**
**dismissed [5]** 4/22 21/12 24/13 32/9 34/17
**dispositive [1]** 38/13
**dispute [2]** 8/1 13/10
**disrespectful [3]** 6/9 15/14 15/15
**distributor [1]** 26/5
**district [17]**
**DIVISION [1]** 1/3
**doctrine [6]** 4/13 11/1 11/4 12/6 13/7 14/7
**dollars [1]** 20/12
**draconian [2]** 30/2 30/3
**draw [2]** 20/17 20/18
**drawing [1]** 20/9
**dry [1]** 24/18

**E**

**easier [1]** 4/5
**East [1]** 2/5
**element [1]** 29/17
**elements [8]**
**Eleventh [8]**
**eliminates [1]** 21/16
**email [1]** 30/7
**engage [2]** 13/3 21/18
**engaged [1]** 22/2
**entirely [1]** 7/1
**entitled [2]** 5/1 39/23
**entity [1]** 10/4
**especially [1]** 37/1
**Esq [3]** 2/2 2/5 2/7
**essentially [1]** 33/7
**et [2]** 1/7 3/5
**et al. vs [1]** 3/5
**Ethan [2]** 26/3 26/5
**everybody [1]** 23/7
**evidence [2]** 22/19 27/13
**evidenced [1]** 25/25
**ex [1]** 5/15
**ex ante [1]** 5/15
**exception [3]** 8/15 19/4 21/7
**excuse [5]** 11/22 20/19 22/15 25/14 29/24
**expect [1]** 18/14
**expert [1]** 38/11
**extend [1]** 38/9
**extended [3]** 4/14 12/8 12/9
**extends [1]** 14/14
**extension [5]** 3/20 11/13 37/11 37/16 37/23
**extent [1]** 15/21 27/7 36/23
**extrapolate [1]** 19/6 36/11

**F**

**fact [4]** 26/25 29/15 30/8 34/17
**facts [6]** 9/20 11/5 28/10 28/22 30/12 33/7
**factual [2]** 22/9 26/23
**fail [2]** 32/14 33/10
**failed [3]**
**fails [3]** 32/1 32/2 33/9

## F

**failure [1]** 32/14
**fairest [1]** 17/24
**falls [1]** 6/23
**false [36]**
**falsely [2]** 21/23 22/4
**fault [1]** 18/3
**favor [2]** 17/25 20/18
**favorable [1]** 17/2
**FDUTPA [4]** 12/24 14/8 27/4 28/19
**federal [1]** 34/18
**fees [1]** 20/12
**filed [2]** 9/12 9/25
**filing [1]** 10/6
**fine [3]** 24/6 38/2 38/4
**firm [1]** 3/13
**fish [1]** 10/14
**fit [1]** 21/7
**FLORIDA [9]**
**footing [1]** 4/3
**Footnote [1]** 38/8
**Footnote 2 [1]** 38/8
**foregoing [1]** 39/21
**form [2]** 5/8 14/6
**FORT [4]** 1/3 1/8 2/6 2/12
**Fourteenth [1]** 5/11
**Fourth [3]** 25/21 32/24 32/25
**Francine [3]** 2/10 39/24 39/25
**fraud [2]** 16/1 21/8
**fraudulent [4]** 15/20 16/2 17/5 21/9
**freedom [1]** 32/7
**FRIDAY [1]** 3/1
**front [3]** 19/20 19/21 36/14
**furniture [1]** 26/4

## G

**Garden [1]** 2/4
**Georgetown [2]** 26/5 26/7
**gonna [8]**
**Goodman [4]** 2/2 2/2 3/7 3/9
**gorilla [1]** 8/8
**gotten [1]** 30/19
**government [7]** 4/25 11/18 12/1 12/2 12/3 13/2 13/3
**grant [1]** 38/1
**granted [3]** 34/15 36/2 36/3
**granting [1]** 38/5
**grievances [6]** 4/25 5/8 5/17 7/10 11/18 12/2
**grounds [2]** 4/22 35/17
**Group [1]** 34/24

## H

**hand [1]** 25/8
**Hard2Find [13]**
**harm [1]** 33/9
**harmlessly [1]** 18/2
**hear [1]** 31/22
**hearing [3]** 1/16 19/16 19/24
**heart [1]** 13/5
**heightened [3]** 31/15 32/4 32/15
**helpful [1]** 4/1
**here's [1]** 31/21
**hereby [1]** 39/20

**Hey [2]** 25/2 25/4
**higher [3]** 28/15 31/17 32/5
**history [1]** 28/13
**HOLDINGS [1]** 1/7
**Holdings, [1]** 3/5
**Holdings, Inc [1]** 3/5
**Honor [18]**
**Honor's [1]** 34/8
**Honorable [1]** 1/17
**hours [1]** 19/17
**hurt [2]** 27/15 27/17

## I

**I'll [8]**
**I'm [32]**
**I've [9]**
**idea [1]** 25/9
**identical [1]** 9/6
**identifiable [4]** 23/9 23/14 24/10 25/25
**identified [4]** 23/4 23/15 26/19 30/6
**identify [6]** 24/14 24/15 26/10 26/14 26/17 26/22
**immunity [3]** 12/23 14/6 14/7
**impinge [1]** 38/13
**implicate [3]** 13/7 31/10 31/20
**implicated [1]** 31/12
**implicates [1]** 32/5
**implication [2]** 11/16 34/10
**inapposite [3]** 7/13 8/12 14/20
**inauthentic [1]** 8/3
**INC [2]** 1/7 3/5
**incorporation [1]** 5/12
**incorrect [1]** 13/23
**individual [3]** 24/19 29/21 30/6
**inference [3]** 20/22 36/6 36/10
**inferences [3]** 17/25 20/9 20/18
**information [2]** 4/8 7/4
**ingredient [1]** 14/20
**inhibit [2]** 19/2 21/5
**Insurance [1]** 25/20
**intent [2]** 19/2 21/5
**intentional [1]** 21/19
**intentionally [6]** 16/15 21/16 21/21 26/24 26/24 28/5
**interests [1]** 7/7
**interfere [1]** 18/15
**interfered [5]** 21/22 22/21 25/3 25/7 26/3
**interference [19]**
**interpretation [1]** 17/7
**interpreting [2]** 16/19 16/20
**interprets [1]** 23/7
**interrupt [1]** 15/10
**inverse [1]** 34/12
**issue [9]**
**items [3]** 9/13 9/19 10/7

## J

**joint [3]** 3/20 37/8 37/11
**Jonathan [2]** 2/7 3/12
**Joseph [1]** 35/22
**judge [14]**
**Judge Cohn [6]** 6/14 6/14 7/24 12/24

14/5 14/11
**Judge Cohn's [2]** 7/13 7/18
**Judge Ungaro [3]** 35/23 36/15 36/15
**judgment [8]**
**justifiable [1]** 31/7
**justification [1]** 21/21
**justified [2]** 26/22 26/25

## K

**Kelsey [2]** 2/5 3/7
**kick [2]** 14/25 17/23
**Kissane [2]** 2/8 3/13
**knowingly [4]** 27/15 27/16 27/18 27/20
**knows [1]** 24/2

## L

**Lake [2]** 18/20 21/10
**Lakes [1]** 32/23
**Lakeview [1]** 2/8
**Land [2]** 32/22 32/23
**language [1]** 18/18
**largest [1]** 28/12
**late [1]** 19/22
**LAUDERDALE [4]** 1/3 1/8 2/6 2/12
**law [11]**
**lawsuit [5]** 5/6 7/19 10/4 10/13 27/13
**leave [2]** 36/2 36/3
**leaving [1]** 24/6
**lectern [1]** 3/24
**led [1]** 19/15
**legal [1]** 32/2
**legitimate [1]** 32/3
**letter [10]**
**letters [4]** 28/25 29/4 29/7 29/25
**liable [6]** 30/22 31/2 32/16 33/17 34/6 35/16
**lifeblood [1]** 27/21
**light [2]** 17/2 37/10
**list [1]** 29/8
**listener [1]** 28/7
**litigant [1]** 18/13
**litigation [7]** 9/9 12/22 13/22 14/6 14/17 18/1 20/16
**LLC [2]** 1/10 3/5
**logic [2]** 11/14 31/25
**long-winded [1]** 33/14
**lost [1]** 27/23
**love [3]** 8/9 8/10 8/10

## M

**main [1]** 3/22
**maker [1]** 28/3
**Management [1]** 34/24
**manufacture [5]** 20/3 20/4 20/5 20/19 20/19
**manufacturer [1]** 26/5
**marketplace [1]** 25/12
**material [1]** 14/3
**matter [3]** 11/14 31/25 39/23
**McGuire [1]** 12/18
**mean [9]**
**meaning [4]** 7/25 19/1 21/21 33/23
**meant [2]** 17/5 33/8

## M

**mechanical [1]** 1/24
**mediation [2]** 39/7 39/8
**mediator [1]** 39/10
**meet [4]** 18/8 28/22 32/4 32/15
**merchandise [1]** 21/23 22/5
**mere [1]** 22/8
**merits [1]** 18/14
**Middle [2]** 34/24 34/25
**millions [1]** 20/12
**misstatements [1]** 24/4
**mjsfcs [1]** 2/13
**money [4]** 23/21 23/25 27/23 27/23
**monopolistic [1]** 13/4
**monopoly [1]** 13/1
**moot [1]** 37/10
**morning [1]** 19/23
**motion [26]**
**motions [2]** 3/17 37/7
**mounds [1]** 27/13
**Mountains [1]** 25/20
**move [3]** 10/25 38/24 39/9
**multiple [2]** 33/3 35/3
**muster [1]** 23/13

## N

**narrow [1]** 29/12
**nasty [1]** 25/1
**natural [1]** 36/6
**near [1]** 14/15
**New York [1]** 31/13
**nice [2]** 39/14 39/14
**Ninth [7]** 4/25 8/18 8/21 9/2 11/13
 13/15 14/14
**Noerr [9]**
**Noerr-Pennington [8]**
**non [1]** 22/25
**nonantitrust [1]** 14/8
**notice [3]** 3/18 4/4 6/23 37/21
**noticed [1]** 37/18
**notices [1]** 29/1
**notified [1]** 39/10
**nowhere [3]** 18/19 19/3 19/8
**number [6]** 11/20 11/21 11/22 18/16
 21/11 23/11
**number one [3]** 11/20 11/22 18/16
**Number two [1]** 11/21

## O

**objectively [1]** 18/11
**Official [2]** 2/11 39/25
**Oh [2]** 33/22 36/19
**Oil [1]** 12/18
**ongoing [5]** 22/19 23/1 23/17 25/6
 25/13
**online [5]** 21/24 23/10 23/20 24/10
 25/10
**opinion [3]** 7/18 18/6 26/20
**opposite [1]** 35/13
**Orange [2]** 18/20 21/10
**order [5]** 5/21 6/5 7/10 38/5 38/7
**original [3]** 6/19 9/9 10/5
**overbroad [1]** 26/20

## P

**p.m [3]** 1/9 3/1 39/17
**Palm [1]** 2/9
**papers [1]** 19/18
**paradigm [1]** 27/19
**paragraph [4]** 21/15 22/3 23/8 24/5
**paragraph 21 [2]** 23/8 24/5
**paragraph 23 [1]** 21/15
**paragraph 28 [1]** 22/3
**part [4]** 6/6 30/20 33/23 34/4
**parties [1]** 19/19
**party [17]**
**passed [1]** 23/13
**patently [1]** 10/12
**Pause [1]** 34/22
**Pennington [9]**
**people [1]** 25/11
**perhaps [1]** 28/12
**permit [1]** 33/3
**permitting [2]** 13/2 13/3
**person [6]** 5/19 28/9 28/10 28/14
 28/15 28/16
**person's [2]** 5/18 11/17
**perspective [4]** 4/24 28/3 28/7
**persuasive [3]** 6/17 14/12 31/22
**petition [5]** 4/24 5/8 5/11 7/9 12/2
**petitioned [1]** 11/8
**petitioning [4]** 11/5 11/7 11/16 19/1
**petitions [1]** 6/24
**phase [3]** 5/24 27/13 36/22
**picture [1]** 31/1
**place [1]** 5/5
**plaintiff [10]**
**plaintiff's [1]** 35/1
**plaintiffs [9]**
**plaintiffs' [3]** 3/17 35/6 37/9
**planet [1]** 28/13
**play [1]** 31/25
**plead [4]** 27/5 27/6 28/22 30/12
**pleading [1]** 21/13
**pled [5]** 4/18 6/4 35/2 36/8 37/20
**point [13]**
**pointed [1]** 10/12
**points [1]** 7/14
**policy [1]** 4/14
**position [3]** 15/6 22/9 37/22
**possession [1]** 29/3
**practices [2]** 12/22 22/1
**precisely [1]** 30/7
**premature [2]** 36/5 36/7
**present [4]** 14/18 25/13 26/7 36/6
**prevent [3]** 5/21 11/20 33/5
**Priority [1]** 34/23
**private [5]** 11/9 11/16 12/6 13/10
 13/12
**privileges [1]** 33/11
**probability [1]** 26/1
**problem [3]** 5/15 5/16 31/24
**proceed [4]** 32/10 32/17 34/5 35/10
**proceedings [3]** 1/24 39/17 39/22
**process [1]** 5/13
**produced [1]** 1/25
**product [9]**
**products [2]** 1/10 25/11

**Products, [1]** 3/5
**Products, LLC [1]** 3/5
**profit [1]** 15/1
**prohibited [1]** 5/18
**prohibits [2]** 5/10 30/8
**properly [1]** 35/2
**proposition [2]** 24/23 34/19
**protect [1]** 31/18
**prove [3]** 15/6 23/1 27/13
**proved [1]** 36/23
**proven [1]** 27/8
**provided [1]** 14/7
**providing [1]** 3/18
**publication [12]**
**publication/single [1]** 33/2
**published [2]** 29/15 29/16
**purposes [3]** 4/1 5/9 31/15
**pursuant [1]** 39/20
**putative [1]** 6/21

## Q

**qua [1]** 22/25
**question [15]**
**quote [5]** 18/11 18/21 24/13 33/1
 36/4
**quote/unquote [1]** 18/21

## R

**raise [1]** 22/16
**raised [2]** 21/1 21/17
**ranges [2]** 29/11 29/12
**read [18]**
**reading [4]** 17/24 17/24 19/17 19/17
**realistically [1]** 18/14
**reasoned [1]** 11/1
**reasons [5]** 7/11 18/2 21/11 32/14
 37/5
**recall [3]** 15/25 16/1 32/18
**recasting [1]** 33/7
**recognized [3]** 6/15 12/5 12/5
**recognizes [1]** 14/5
**record [2]** 3/6 39/22
**recorded [1]** 1/24
**redress [6]** 4/25 5/17 7/10 11/18 19/3
 21/6
**refuse [1]** 30/2
**regulations [2]** 12/7 13/11
**regurgitated [1]** 29/2
**reironning [1]** 39/11
**relationship [20]**
**rely [3]** 4/2 30/17 30/23
**relying [1]** 4/8
**remaining [3]** 29/19 37/4 37/7
**replead [1]** 36/1
**reply [1]** 35/13
**Reporter [3]** 2/10 2/11 39/25
**reports [1]** 38/11
**required [2]** 17/25 31/15
**requirement [1]** 28/23
**requirements [2]** 31/9 31/17
**reraise [5]** 5/25 6/1 36/21 36/25 37/1
**response [10]**
**result [7]** 22/23 22/23 24/18 27/18
 27/22 27/23 27/23

**R**

resuscitation [1] 22/7
reviewed [2] 19/5 19/6
rights [12]
River [1] 18/10
RKA [1] 1/4
RMR [2] 2/10 39/25
RMR-CRR [1] 39/25
Road [1] 2/3
Rock [1] 18/10
room [2] 2/12 8/8
Roy [1] 1/17
rule [11]
ruled [1] 34/9
ruling [3] 26/12 34/8 37/10

**S**

sad [1] 11/24
salient [1] 10/12
Salopek [3] 2/10 39/24 39/25
Saperstein [1] 2/2
scenario [2] 10/9 10/24
Scott [2] 2/8 3/13
second [3] 18/19 18/19 34/20
Section [1] 39/20
seek [2] 19/3 21/6
selling [6] 8/3 10/7 21/23 22/4 24/17
 25/11
send [1] 30/7
sense [3] 10/3 13/6 18/12
sensible [1] 4/13
September [2] 1/8 3/1
SEPTEMBER 20 [1] 3/1
settling [1] 39/2
sham [9]
shop [2] 23/10 24/10
shown [1] 28/12
shut [4] 9/18 21/24 23/20 27/22
sic [2] 18/12 26/1
side [1] 14/25
sine [1] 22/25
sine qua non [1] 22/25
single [15]
situation [7] 4/5 6/19 6/20 7/1 8/18
 9/10 13/16
situations [1] 12/6
Sixty [3] 38/1 38/2 38/3
SKIN [2] 1/10 3/5
So.2d [1] 32/24
society [1] 32/2
someone's [1] 5/8
sometime [1] 39/11
soon [1] 39/3
sophisticated [2] 28/13 28/17
Sounds [1] 39/2
SOUTHERN [4] 1/2 6/13 12/14 14/11
specific [8]
spend [1] 22/11
spending [1] 19/17
spoke [1] 37/15
stage [5] 18/1 20/10 20/15 33/18
 34/14
stand [3] 21/20 24/22 24/23
standard [5] 16/25 17/1 28/15 28/16

28/16
standards [1] 32/6
standing [1] 38/7
Stanley [3] 2/2 3/7 3/9
state [3] 3/6 25/22 27/9
stated [3] 31/6 34/12 37/5
statement [7] 16/10 16/15 16/16
 16/19 18/3 30/13 35/21
statements [6] 16/24 22/8 29/14
 29/16 31/13 39/6
states [6] 1/1 1/18 2/11 5/13 14/13
 39/21
stenography [1] 1/24
stop [1] 7/5
stopped [2] 24/20 25/14
store [5] 21/24 21/25 23/10 23/20
 24/10
strong [1] 4/3
subjective [2] 19/2 21/5
submission [1] 38/11
submit [1] 28/14
subsequent [2] 9/23 36/7
success [1] 18/14
sue [4] 5/18 6/22 7/3 8/11
sued [8]
sufficient [5] 26/20 27/10 28/10
 28/10 29/12
sufficiently [8]
suggest [2] 5/5 35/13
suggested [1] 15/24
suggesting [2] 13/23 16/23
suggests [1] 13/10
suing [1] 10/15
suit [3] 6/23 7/8 31/25
Suite [3] 2/3 2/6 2/9
Sullivan [1] 31/13
summary [8]
supplement [1] 4/5
supplemental [2] 3/18 4/2
Supreme [1] 26/4
Synergy [1] 34/23
synonymous [1] 4/21

**T**

take [2] 5/2 37/7
taken [1] 38/19
talk [3] 9/24 26/8 37/13
talked [1] 12/12
talking [4] 6/18 8/21 19/14 23/3
tell [5] 4/15 11/14 32/20 34/19 36/15
terms [1] 15/23
Thank [4] 3/25 39/13 39/15 39/16
think [33]
thought [2] 12/12 38/18
thoughts [1] 4/16
threaten [1] 7/3
threatened [3] 5/7 13/16 13/22
threatening [3] 7/18 7/24 8/10
threatens [1] 6/22
thrust [1] 20/25
Thus [1] 33/9
time [4] 19/20 19/21 22/11 38/20
Times [1] 31/13
Times vs. Sullivan [1] 31/13

Title [1] 39/21
tortious [15]
tortiously [1] 25/3
totally [3] 10/9 10/24 27/8
trade [6] 12/22 30/22 31/2 32/16
 33/17 35/16
transcript [1] 1/16 1/24 39/22
trial [2] 38/7 38/24
true [10]
two years [1] 24/25

**U**

ultimately [1] 15/6
understand [12]
understanding [1] 26/1
understood [6] 10/25 26/12 29/6
 30/25 35/9 35/11
unfair [13]
Ungaro [3] 35/23 36/15 36/15
unidentifiable [1] 24/13
unintentionally [7] 16/18 16/23 17/6
 17/21 18/2
UNITED [5] 1/1 1/18 2/11 14/13
 39/21
unlike [2] 8/4 10/14
unquote [1] 18/21
untrue [1] 15/6
unwanted [1] 5/21
us [2] 19/1 39/10

**V**

vague [1] 26/20
valid [1] 33/6
version [1] 9/9
view [7] 5/20 5/21 5/23 6/20 10/9
 16/3 17/1
Vine [2] 2/7 3/12
violations [1] 13/13
vs. [4] 25/20 31/13 34/23 35/22

**W**

weekend [2] 19/22 39/14
West [1] 2/9
Western [1] 8/25
Whenever [1] 15/13
White [1] 25/20
who's [2] 5/16 15/1
wildly [1] 4/14
win [1] 20/11
winded [1] 33/14
wisest [1] 36/17
withdraw [1] 4/4
wonderful [1] 20/13
word [11]
words [4] 4/9 13/2 21/20 32/1
work [1] 19/22
worry [1] 6/11
worse [1] 15/21
written [1] 17/8
wrong [11]
wrongful [19]
wrongfully [1] 25/7

**Y**

York [2] 2/4 31/13

**Y**

**YOUNGBLOOD [12]**
**Youngblood's [1]** 30/13