UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 0:19-cv-60487-RKA/P

SOLU-MED, INC.,

    Plaintiff,

v.

YOUNGBLOOD SKIN CARE
PRODUCTS LLC,

    Defendant.

_____/

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION FOR FINAL SUMMARY JUDGMENT**

Defendant, Youngblood Skin Care Products LLC ("Youngblood"), hereby files its Reply Memorandum ("Reply") in support of its Motion for Final Summary Judgment ("Motion") [ECF No. 108], and in response to Plaintiff's Response in Opposition to Youngblood's Motion ("Response"), and states as follows:

**I.  Failure to Cite to Evidence in Support of Positions Asserted in Response and Responsive Statement of Undisputed Material Facts**

Plaintiff's Response and its Response to Youngblood's Statement of Undisputed Material Facts ("Responsive Statement") (ECF No. 128) fail to comply with Southern District Local Rule 56.1. Indeed, the Responsive Statement fails to cite to any counter evidence to support Plaintiff's positions set forth in its Response. *See* Responsive Statement [ECF No. 128], ¶¶ 2, 3, 5, 7-11, 14, 16-18, 22-28[1], 32-39, 41, 44-45, 47, 48-50, 52, 54-56.

However, Local Rule 56.1(a)(2) requires that "[a]n opponent's Statement of Material Facts shall clearly challenge any purportedly material fact asserted by the movant that the opponent contends is genuinely in dispute." S.D. Fla. L.R. 56.1(a)(2). Similarly, Local Rule 56.1(b)(2)(C), states "[i]f an opponent's Statement of Material Facts disputes a fact in the movant's Statement of Material Facts, then the evidentiary citations supporting the opponent's position must be limited to evidence specific to that particular dispute." S.D. Fla. L.R. 56.1(b) (emphasis added). An opponent's failure to do so results in "[a]ll material facts in any party's Statement of Material Facts may be deemed **admitted** unless controverted by the other party's Statement of Material Facts . .

---

[1] Plaintiff's dispute with Paragraphs 22-28 of Youngblood's Statement of Undisputed Material Facts is puzzling. Plaintiff produced documents concerning prior complaints asserted against Plaintiff that are the subject of Paragraphs 22-28 during discovery; Amazon's declaration simply authenticated Amazon's business records. *See* [D.E. 113-6], pgs. 33-35; 37-39; 41-43; 45-47; 49-51; 53-55; 57-60; 63-65; 67-69; 71-73; 75-77; 79-81.

. .." S.D. Fla. L.R. 56.1(c) (emphasis added). To be sure, the nonmovant is obligated to "specifically bring the factual dispute to the court's attention by rebutting the movant's factual statements on a paragraph by paragraph basis and with specific citations to the record." *Joseph v. Napolitano*, 839 F. Supp. 2d 1324, 1329 (S.D. Fla. 2012).

Here, Youngblood submitted its Statement of Material Facts, with separately numbered paragraphs that contain record citations and attached record evidence, in compliance with Local Rule 56.1. *See* [ECF No. 113]. While Plaintiff submitted an additional statement of facts (ECF 128, ¶¶ 64-100), Plaintiff failed to rebut many of Youngblood's Statement of Material Facts, including providing zero citations to evidence. *See* Responsive Statement [ECF No. 128], ¶¶ 2, 3, 5, 7-11, 14, 16-18, 22-28[2], 32-39, 41, 44-45, 47, 50, 52, 54-56. Instead, Plaintiff merely asserted it "disputes" Youngblood's facts set forth in its Statement of Material Facts.

However, a dispute regarding a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Merely presenting unsupported allegations will not overcome a properly supported motion for summary judgment. *U.S. v. Kermali*, 60 F.Supp.3d 1280, 1282 (2014)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986)). Accordingly, Youngblood's Statement of Material Facts, which includes specific citations to record evidence should be deemed admitted. *See Rives v. Lahood*, 605 Fed. Appx. 815, 818 (11th Cir. 2015) ("The magistrate judge did not abuse her discretion in deeming LaHood's statement of undisputed material facts admitted because Rives did not respond to the statement as required by Local Rule 56.1."); *Deegan v. Aquino*, CASE NO. 16-22820-CIV-LENARD, 2018 WL 10399979, *4-5 (S.D. Fla. Feb. 23, 2018) ("Because Plaintiff failed to submit a statement of material facts in opposition to Defendants' Motion for Summary Judgment, as required by Local Rule 56.1, the Court deems Defendants' facts admitted to the extent that they are supported by record evidence.")

## II.   Plaintiff Failed to Rebut Youngblood's Arguments Regarding the Tortious Interference Claim

### A.   Plaintiff lacks identifiable customers and/or relationship

Notwithstanding the foregoing, Plaintiff's Response concedes Plaintiff has no identifiable

---

[2] Plaintiff's dispute with Paragraphs 22-28 of Youngblood's Statement of Undisputed Material Facts is puzzling. Plaintiff produced documents concerning prior complaints asserted against Plaintiff that are the subject of Paragraphs 22-28 during discovery; Amazon's declaration simply authenticated Amazon's business records. *See* [D.E. 113-6], pgs. 33-35; 37-39; 41-43; 45-47; 49-51; 53-55; 57-60; 63-65; 67-69; 71-73; 75-77; 79-81.

customer relationships that Youngblood interfered with as alleged in its Complaint. *See* Complaint [ECF No. 1], ¶ 21; [ECF No. 138], ¶6-8. As such, Youngblood is entitled to summary judgment on this issue. Cognitive of the same, Plaintiff's Response asserts that its relationship with Amazon was purportedly interfered with by Youngblood, and ask this Court to conform the pleadings to the evidence in this case under Fed. R. Civ. P. 15(b). *See* Resp. [ECF No. 138], pg. 7. To be clear, while Plaintiff's multiple violations of Amazon's policies are an issue in this case, at no time did Youngblood expressly or impliedly consent to Plaintiff's relationship with Amazon being the business relationship Youngblood purportedly interfered with.

Rather, Youngblood consistently alerted Plaintiff to the problem with its pleading - *i.e.*, that Plaintiff alleged it "had and continues to have a business relationship with identifiable customers who shop in their online store on Amazon" – not Amazon. [ECF No. 1], ¶ 21; [ECF No. 18], pgs. 7-9; [ECF No. 69], ¶¶ 20-24; [ECF No. 85], ¶¶ 20-24. Significantly, the Response admits Plaintiff knew of the facts of this case before commencing this action on February 23, 2019, and also after reviewing Youngblood's Motion to Dismiss (ECF No. 18, pgs. 7-9) and attending a hearing on the motion. *See generally*, Resp [ECF. No. 138], pgs. 9-10.

Yet, Plaintiff's Response does not explain why it failed to include in its Complaint the novel allegation that Youngblood interfered with Plaintiff's business relationship with Amazon. Nor does the Response explain why Plaintiff did not seek leave to amend or move in interlineation.[3] *See generally*, Compl. [ECF No. 1]; Resp. [ECF No. 138], pg. 4-5. To be sure, a Rule 15(b) motion is not the proper vehicle in which to amend its pleadings at this late stage. *Hunters Run Property Owners Association, Inc. v. Centerline Real Estate, LLC*, 2019 WL 4694139 n11 (S.D. Fla. Aug. 22, 2019) (declining to permit a party to amend under Fed. R. Civ. P. 15(b) stating "[s]uch an amendment can occur only during or after trial, so it is denied. *Id.* Even if Centerline belatedly sought leave to amend its counterclaims to add these theories under Rule 15(a)(2), the Court would deny that request. At this late stage, the interests of justice do not militate in favor of injecting new claims and legal theories into this case.) Accordingly, Plaintiff should not be permitted to avoid its intentional conduct and should be forced to adhere to the allegations as pled in its Complaint.

---

[3] Plaintiff's Response also fails to distinguish the cases cited by Youngblood. *Ward v. Ortho Biotech Prods., L.P.*, 2007 WL 3379850, *3 fn. 10 (M.D. Fla. Nov. 14, 2007); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137 (5th Cir. 1993); *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.1990); *Astro Tel, Inc. v. Verizon Florida, LLC*, 979 F.Supp.2d 1284, 1298 (M.D. Fla. 2013);

If the Court is inclined to allow Plaintiff to proceed, which it should not, the Response fails to rebut Youngblood's argument that Plaintiff was not a customer of Amazon and that, as a result, Plaintiff had the option of selling directly to Amazon. Resp [ECF. No. 138], pg. 7. Instead of rebutting Youngblood's assertion, Plaintiff intentionally misconstrues Kellon Goodson's ("Goodson") testimony in an effort to distract the Court. *Id.* The Response fails to rebut Youngblood's position that Plaintiff is not a consumer of Amazon since it does not purchase the goods or services listed for sale on its Amazon Storefront from Amazon. [ECF No. 108], pg. 5. Similarly, Plaintiff does not dispute, nonetheless acknowledges, that Plaintiff could have sold products to Amazon through the FBA program while the store was deactivated. *See* [ECF No. 138], pg. 6; [ECF No. 138], ¶ 58. In fact, Plaintiff failed to even attach its contract with Amazon to its Complaint or Response. To be sure, by failing to do so, there is no evidence of an "actual and identifiable understanding or agreement which in all probability would have been completed if the defendant[s] had not interfered." *B& D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC*, 758 Fed Appx. 785, 791 (citing *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 815 (Fla. 1994)). Plaintiff's speculation about lost sales with other third parties, other than Amazon, is not enough.

### B.  Plaintiff's Response Fails to Rebut that Youngblood's Action was Justified[4]

#### i.  *Plaintiff admits it violated Amazon's guidelines*

In response to Youngblood's position that Plaintiff violated Amazon's guidelines, Plaintiff merely asserts that: (1) "inauthentic" is not synonymous with "counterfeit," and Amazon only considers a product "counterfeit" if that product or packaging has an unlawful reproduction of a trademark (*See* Resp. [ECF No. 138], pg. 9); (2) Youngblood's Warranty with resellers is not listed on Youngblood's website nor included in its labeling, so there is a material issue of fact with respect to whether Plaintiff's Youngblood products would be considered "New" under Amazon's guidelines" (*Id.* at pg. 11); and (3) products sold on Amazon's Fulfillment by Amazon ("FBA") program could be returned." (*Id.* at pgs. 11-12).

Nevertheless, Plaintiff has failed to raise an issue of material fact with respect to whether

---

[4] On April 2, 2020, this Court entered an Order (ECF No. 140) striking Youngblood's Amended Answer and Affirmative Defenses (ECF No. 85) Notwithstanding, Youngblood's justification defenses were included in Youngblood's original Answer and Affirmative Defense (ECF No. 69). Should this Court feel it is necessary, Youngblood respectfully request this Court to wait to rule on Youngblood's Motion for Final Summary Judgment (ECF No. 108) until it makes a ruling on Youngblood's forthcoming Motion for Leave to Amend its Answer and Affirmative Defenses as permitted by its Order (ECF No. 140).

Plaintiff was violating Amazon's policies. Instead, Plaintiff concedes Youngblood's following arguments:

- Amazon's Anti-Counterfeiting Policy prohibits the sale of inauthentic and counterfeit items (Resp [ECF No. 138], pgs. 9-12) [ECF No. 128], ¶ 8;
- Amazon's Cosmetics and Skin Care Policy requires cosmetics to be sold as "new" in the original manufacturer's packaging (Resp [ECF No. 138], pgs. 9-12; [ECF No. 128], ¶ 9);
- Amazon's Condition Guidelines requires products offered for sale on Amazon be "new." (Resp [ECF No. 138], pgs. 9-12; [ECF No. 128], ¶ 10);
- Amazon's Condition Guidelines define a "new" product as "[a] brand-new, unused, unopened item in its original packaging . . . [with the] Original manufacturer's warranty, if any, still applies . . . ." (Resp [ECF No. 138], pgs. 9-12); [ECF No. 128], ¶ 10;
- Under Amazon's Condition Guidelines, it is a violation to sell a product on Amazon as "new" without the original manufacturer's warranty. (Resp [ECF No. 138], pgs. 9-12) [ECF No. 128], ¶ 10;
- Amazon's Product Authenticity guidelines provide it is a violation of its policy to list a materially different product than the product sold - *i.e.*, listing a product in "new" condition when it is not. (*Id.*; [ECF No. 128], ¶ 11);
- Plaintiff was aware of and bound to follow Amazon's guidelines. ([ECF No. 128], ¶ 12);
- Plaintiff was selling purported Youngblood products as "new" on its Amazon Storefront (Resp [ECF No. 138], pgs. 9-12);[ECF No. 128], ¶ 14).
- Plaintiff was not authorized to sell Youngblood products ([ECF No. 138], pgs. 9-12); [ECF No. 128], ¶ 13);
- Plaintiff did not ask Youngblood for permission to sell Youngblood products (Resp. [ECF No. 138], pgs. 9-12; [ECF No. 128], ¶ 13);
- Plaintiff does not offer any warranty or even allow returns of any of its cosmetics sold on its Amazon Storefront, including Youngblood products ([ECF No. 138], pgs. 9-12; [ECF No. 128], ¶ 16); and
- Plaintiff violated Amazon's Authenticity Guidelines by listing the purported Youngblood products on its Amazon Storefront as "new" when those products did not come with a Warranty ([ECF No. 138], pgs. 9-12; [ECF No. 128], ¶¶ 7-11).

   a. **Plaintiff's assertion that Amazon's Declaration states Amazon only considers a product "counterfeit" if that product or packaging has an unlawful reproduction of a trademark is a misrepresentation**

Further, Plaintiff relies on the language of the Amazon Declaration ("Declaration") to support its argument that "Amazon only considers a product to be 'counterfeit' if that product or packaging has an unlawful reproduction of a trademark." Notably, this language is inadmissible hearsay, as the parties did not agree the Declaration would be otherwise admissible.[5] Moreover,

---

[5] Amazon also submitted records affidavits, which the parties have agreed are admissible. *See* [ECF No. 113-6], [ECF No. 113-14].

Plaintiff's reliance on a single paragraph of the Declaration disingenuously takes the Declaration out of context, and, in doing so, intentionally misrepresents to the Court several of Amazon's policies. To be clear, Plaintiff submitted no counterevidence (nor is there any in the record) that establishes that Amazon will only deem a product counterfeit if the product or packaging has an unlawful reproduction of a registered trademark.

Additionally, as stated above, Plaintiff's Response does not agree nor dispute the language or the effect every controlling Amazon guideline at issue in this case - *i.e.*, the Anti-Counterfeiting Policy, Cosmetics and Skin Care Policy, Condition Guidelines, or the Product Authenticity. Resp [ECF No. 138], pgs. 8-12). Therefore, Plaintiff concedes Youngblood's argument. *Summerlin Asset Mgmt. V Tr. v. Jackson*, No. 9:14-CV-81302-ROSENBERG/BRAN, 2015 WL 4065372, at *5 n.1 (S.D. Fla. July 2, 2015) ("The Court notes that Defendants did not respond to this argument in their Response, effectively conceding the point.").

As set forth in Youngblood's Motion, Plaintiff was selling purported Youngblood products that were materially different from the product sold by Youngblood – *i.e.*, without a warranty. In fact, Amazon's guidelines provide that a product is inauthentic and counterfeit "if the product is being sold as new without a warranty." [ECF No. 113], ¶¶ 8-11, 16. Accordingly, Youngblood produced evidence that Plaintiff sold products purporting to be Youngblood's products in a materially different condition than those sold by Youngblood in violation of Amazon's guidelines. Outside of its reliance on a blatant misrepresentation, Plaintiff has provided no evidence that establishes that Amazon will only deem a product counterfeit if the product or packaging has an unlawful reproduction of a registered trademark.

### b. Plaintiff concedes it was not authorized to sell Youngblood products

Plaintiff's reliance on *Wellnext LLC v. OVM LLC* for the proposition that under the "first sale" doctrine, "even though a subsequent sale is without a trademark owner's consent, the resale of a genuine good generally does not violate the Lanham Act" is misplaced. 2018 WL 704819, *3 (S.D. Fla. Feb. 16, 2018).

The *Wellnext LLC* decision is based on a Lanham Act claim, which is not the issue in this case. Therefore, *Wellnext, LLC* is simply not applicable to this case. Notwithstanding the same, even assuming the "first sale" doctrine applied, the first sale doctrine does not apply when "an alleged infringer sells trademarked goods that are materially different from those sold by the trademark owner." *Id.* (internal citation omitted). Here, it is undisputed that Plaintiff was selling

goods purporting to be Youngblood products that were materially different than those sold by the products' trademark owner, Youngblood. [ECF No. 128], ¶¶ 8-11, 16. Amazon's Product Authenticity guidelines provide it is a violation of its policy to list a materially different product than the product sold - *i.e.*, listing a product in "new" condition when it does not, in fact, come with a warranty. [ECF No. 113], ¶ 11. Consequently, Plaintiff was in direct violation of Amazon's policies because Plaintiff was selling products that were materially different from genuine Youngblood products, because it is uncontested that the products did not come with the Warranty. *Otter Products, LLC v. Wang*, 2019 WL 1403022, *1 (D. Co. Mar. 28, 2019).[6] Moreover, Plaintiff knew that it is a violation of Amazon's guidelines to list a materially different product than the products sold yet listed the inauthentic products anyway.

   c. **Plaintiff's arguments concerning Youngblood's Warranty and labeling do not create an issue of fact**

Additionally, Plaintiff's assertions that Youngblood's website states the Warranty is not extended to retailers and the Youngblood's Warranty is not conspicuous because it is not on Youngblood's labeling are red herrings. *See* Resp. [ECF No. 138] pg. 10. To be sure, Plaintiff's Response does not in any way refute Youngblood's position, and certainly does not raise an issue of material fact as to whether Plaintiff violated Amazon's guidelines.

First, each authorized reseller maintains a contract with Youngblood, which details the terms and conditions of the Warranty. *See e.g.*, [ECF No. 118-2], Section 7. Thus, it is the reseller who processes the warranty products that are bought from the reseller, whereas Youngblood processes the warranty for products sold from its website. Secondly, "modern consumers are on notice that products come with warranties and other terms and conditions of purchase. And they are free to research (or not), request (or not), and read (or not) those terms before unwrapping their purchases." *Dye v. Tamko Building Products, Inc.*, 908 F. 3d 675, 683 (11th Cir. 2018) (stating that a diligent consumer could easily have discovered and reviewed warranty terms on a website before or after purchase). Thus, the fact that Youngblood's labeling does not include the Warranty is immaterial. To be clear, in violation of Amazon's policies, Plaintiff sold unauthorized products purporting to be Youngblood products as "new," when in fact the products were not genuine Youngblood products. As detailed above, as well as in the Motion, the products sold by Plaintiff

---

[6] For the sake of brevity, Youngblood incorporates herein its analysis of the *Otter* case in its Response in Opposition to Plaintiff's Motion for Partial Summary Judgment (ECF No. 119).

were materially different from those sold by Youngblood because they did not come with the Warranty.

Finally, Plaintiff appears to be conflating Amazon's FBA program and its return policy with what qualifies as a "new" product. Amazon's FBA program and its return policy do not equate to Plaintiff selling Youngblood products with Youngblood's Warranty. Rather, Amazon's FBA program and its return policy, which a customer can return items for a refund, is separate and distinct from Youngblood's Warranty. Moreover, Plaintiff stated on its Amazon Storefront that it would not accept returns because it wanted to mislead customers and discourage returns. *See* [ECF No. 113], ¶21.

### d. **Plaintiff does not refute Youngblood's legitimate business concerns**

Plaintiff's Response does not refute or provide any counter-evidence that Youngblood had a legitimate concern that the sale of inauthentic and counterfeit products advertised as its own was diluting Youngblood's brand and the quality of its products. Indeed, it is undisputed that Youngblood hired Amazzia to assist in brand protection and to eliminate the sale of inauthentic products and counterfeit products. *See* [ECF No. 128], ¶ 5. Rather, Plaintiff argues that Youngblood's Motion contains "conclusory statements, empty rhetoric, devoid of evidentiary support." *See* Resp. [ECF No. 138], pg. 12. However, the record confirms that Youngblood's corporate representative testified to the reasons behind Youngblood's concerns that Plaintiff's sale of Youngblood's inauthentic and counterfeit products was diluting Youngblood's brand. [ECF No. 113], ¶¶ 3-5.

Additionally, Plaintiff misinterprets Youngblood's citation to *Ice Portal, Inc. v. VFM Leonardo, Inc.*, 2010 WL 2351463, at *7 (S.D. Fla. Jun. 11, 2010). Youngblood cites to *Ice Portal* for the proposition that "actions taken to safeguard or protect one's financial interest" are privileged "so long as improper means ... include[ing] physical violence, misrepresentations, intimidation, conspiratorial conduct, illegal conduct, and threats of illegal conduct ... are not employed." Plaintiff has not rebutted that Youngblood was protecting its financial interest in protecting the reputation and integrity of its brand and the products it put own. Additionally, as stated above, there is no there is no evidence of record that establishes that Amazon will only deem a product counterfeit if the product or packaging has an unlawful reproduction of a registered trademark. Accordingly, Plaintiff has not created an issue of material fact as it relates to Youngblood's legitimate business concerns.

### C. Plaintiff has not established causation

#### i. Failure to come forth with any evidence to support Youngblood caused the deactivation

Plaintiff's Response fails to put forth any evidence that Youngblood caused Amazon to deactivate Plaintiff's Amazon Storefront. To be clear, "[t]he requisite showing of causation cannot be supported by mere supposition that defendant's interference caused the cessation of the business relationship." *Realauction.com, Inc. v. Grant Street Group, Inc.*, 82 So. 3d 1056, 1059 (Fla. 4th DCA 2011). While Youngblood submitted complaints against Plaintiff's Amazon Storefront, Plaintiff failed to put forth with any counterevidence to support its position that it was Youngblood's complaints that *caused* Amazon to deactivate Plaintiff's Amazon Storefront.[7] *See* Resp. [ECF No. 138], pg. 14-15.

To be sure, there was no documentation or testimony provided by Amazon to support Youngblood caused Amazon to deactivate Plaintiff's Amazon Storefront. *See generally*, [ECF No. 113-6]; [ECF No. 113-13]. While Plaintiff speculates that the Youngblood complaints caused Amazon to deactivate its Amazon Storefront, the record simply does not support that supposition. Accordingly, Plaintiff's Response does not create an issue of material fact, and as such, Youngblood is entitled to summary judgment as a matter of law as to Plaintiff's tortious interference claim.

#### ii. Plaintiff concedes it made misrepresentations to Amazon

Additionally, Plaintiff's Response fails to respond to Youngblood's argument that Plaintiff made numerous misrepresentations and/or ignored Amazon's request for information in violation of Amazon's guidelines, which led to the deactivation of the Amazon Storefront. *See* Resp. [ECF No. 138], 16. Indeed, despite its claim that Youngblood's complaints were baseless, Plaintiff's Response concedes that Youngblood's complaints to Amazon were warranted since Plaintiff has not <u>and</u> cannot provide the source documentation for the purported Youngblood products sold by Plaintiff on its Amazon Storefront. *See* Resp. [ECF No. 138], pg. 16; [ECF No. 128], ¶ 19. Similarly, Plaintiff concedes that Amazon received seven prior complaints about Plaintiff's

---

[7] Causation also requires a plaintiff to "prove that the defendant manifested a specific intent to interfere with the business relationship." *Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc.*, 832 So. 2d 810, 814 (Fla. 2d DCA 2002). No liability will attach unless it is established "that the defendant intended to procure a breach of the contract." *Id.* Plaintiff's Response concedes this point as well since Youngblood did not even know the name of Plaintiff's company until this lawsuit and as such, could clearly have no specific intent to cause Amazon to deactivate Plaintiff's Amazon Storefront. Reply to Statement of Additional Material Facts, ¶¶ 67, 76.

Storefront, including one substantially similar to Youngblood's complaint, for violating trademarks and selling inauthentic and counterfeit products prior to the deactivation on November 13, 2018 ([ECF No. 128], ¶ 50; [ECF 138], pg. 16-17.

### iii. *Plaintiff concedes there was no source documentation*

Plaintiff's Response admits that Plaintiff's lack of source documentation caused Plaintiff's Amazon Storefront to remain deactivated. *See* Resp. [ECF No. 138], pg. 16; [ECF No. 113], ¶¶ 47, 52; [ECF No. 128], ¶ 47, 52. Indeed, the Response concedes Plaintiff had (and has) no source documentation for the purported Youngblood products sold on Plaintiff's Amazon Storefront. *See id.* Nonetheless, Plaintiff asserts it can establish the authenticity of the Youngblood products through the testimony of Youngblood's corporate representative, Jason Toth, who examined purported Youngblood products during his deposition. *Id.* at 19.

Put simply, Plaintiff's position is absurd. The purpose of chain of custody evidence is to provide assurances that the item, at the time it is offered, is in substantially the same condition as it was in when it was seized or made. *United States v. Turpin*, 65 F.3d 1207, 1213 (4th Cir. 1995). Plaintiff's Response fails to provide or otherwise even suggest that any evidence exists to establish a chain of custody from Youngblood, to its purported middleman distributor, to Innopex, to Q-Med, to Plaintiff. *Id.* at 19. The invoices from Innopex to Q-Med do not establish the purported Youngblood products were genuine and authentic. Rather, all that the invoices show is that Q-Med purchased the purported products from Innopex. Similarly, the Declarations of Attorney Goodman and Manuel Aguero do not establish where Innopex acquired the purported Youngblood products. [ECF No. 129-2]; [ECF No. 129-3]. To be sure, all the invoices show is where the purported Youngblood products have been from November 29, 2019 to December 9, 2019, the date that Mr. Toth was deposed. [ECF No. 129-2]; [ECF No. 129-3].

Additionally, Plaintiff relies on Mr. Toth's testimony for its position that the purported Youngblood products were genuine. To be clear, Youngblood's representative never testified that the products were genuine Youngblood products. Rather, he merely testified they "appeared to be Youngblood product." [ECF No. 113-1], 85:15-20; 85:24-25 – 86:1. However, a product that "appears to be" a Youngblood product does not establish that the product presented to Youngblood's representative was a genuine and authentic Youngblood product.

By way of analogy, an inauthentic and counterfeit Gucci belt looks, feels, and to the untrained eye, appears to be a real Gucci belt. However, simply looking like the real thing does

not mean the inauthentic and counterfeit Gucci belt is actually an authentic and genuine Gucci belt - it is still a fake. Accordingly, Plaintiff's failure to submit any counterevidence to establish the products were authentic and genuine Youngblood products is fatal and as such, Youngblood is entitled to summary judgment in its favor.

### iv. *Purported failure to prove that Plaintiff was offering counterfeit Youngblood products*

To be clear, throughout the course of this lawsuit, Youngblood sought documentation from Plaintiff and third parties to support its claim that the products sold by Plaintiff were genuine and authentic Youngblood products. To date, Plaintiff has not produced any documents to support its assertion that the products it sold were genuine and authentic Youngblood products. Indeed, conceded by Plaintiff it does not have the source information for the Youngblood products and did no investigation, including contacting its distributor, Innopex to determine the source of the Youngblood products and to confirm the products were genuine. Instead, Plaintiff merely responded to Amazon by submitting an irrelevant invoice, which did not reflect any information regarding the source of the purported Youngblood products. [ECF No. 113-23]. To date, the record is devoid of any evidence reflecting that the products Plaintiff purported to sell as authentic Youngblood products originated from Youngblood.

## II. Plaintiff Failed to Rebut Youngblood's Argument Concerning its Failure to Put Forth Any Evidence That Youngblood Committed a Deceptive Act or Engaged in an Unfair Practice

### A. No evidence of a deceptive act or unfair trade practice

Plaintiff's Response asserts that whether an act is a depictive act or unfair practice is a question of fact. *See* [ECF No. 138], pg. 21. Plaintiff's Response to Youngblood's argument concerning its Florida Deceptive and Unfair Trade Practice ("FDUPTA") claim again misses the point and does not create an issue of material fact. Instead, it is another instance where Plaintiff is attempting to deflect and distract this Court from the real issues.

To be sure, before Plaintiff gets to make its case before the jury, Plaintiff must present evidence to support Youngblood either committed a deceptive act or engaged in an unfair trade practice. *Hodges v. Harrison*, 372 F. Supp. 3d 1342, 1351 (S.D. Fla. Feb. 8, 2019) (granting summary judgment where Plaintiffs failed to cite any evidence in the record to support allegations of specific deceptive acts or unfair practices).

As acknowledged by Plaintiff, there is no evidence in the record that the Youngblood

products sold by Plaintiff on its Amazon Storefront were actually authentic and not counterfeit. *See* [ECF No. 138], pg. 16; [ECF No. 128], ¶¶ 18-19, 47, 52. Plaintiff's Response does not even contest that (1) Youngblood did not authorize Plaintiff to sell its products; (2) Plaintiff sold Youngblood products on Amazon as "new" without Youngblood's Warranty in violation of Amazon's Guidelines; (3) Plaintiff neither vetted nor researched where its distributor obtained the Youngblood products from; and (4) Plaintiff did not seek permission from Youngblood to sell Youngblood products on the Amazon Store prior to listing the products. *See* [ECF No. 128], ¶¶ 13, 18-19. All that Plaintiff does is submit this is a question for the jury. *See* [ECF No. 138], pgs. 22-23. As stated above, without presenting evidence that Youngblood committed a deceptive or unfair trade practice, Plaintiff's claim fails as a matter of law.

    **B.   No evidence of causation to support FDUPTA claim**

Whereas reliance is not an element of a FDUTA claim, causation is required to establish a FDPUTA claim. *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983–84 (11th Cir. 2016); *See* Resp. [ECF No. 138], pgs. 22-23. While causation is generally a question of fact, Plaintiff has not presented any counterevidence to establish causation to make it to the jury. Simply put, the record is devoid of any evidence to support Plaintiff's conclusion that Youngblood committed a deceptive act or engaged in an unfair practice in violation of FDUPTA. *See* Section II (A), *supra*.

Moreover, Plaintiff has failed to put forth any evidence that Youngblood's complaint caused Amazon to deactivate Plaintiff's Amazon Storefront. To be sure, Plaintiff's belief that "[f]rom the documentary evidence alone, it is obvious that YB caused the shutdown" is not evidence that Youngblood caused the deactivation. *See* Resp. [ECF No. 138], pg. 24. Similarly, as acknowledged by Plaintiff (ECF No. 128, ¶ 87) and as set forth in Youngblood's Motion to Exclude the testimony of C.J. Rosenbaum ("Rosenbaum") (ECF No. 110) and its reply in support of the motion (ECF No. 139), neither Plaintiff nor Rosenbaum has any idea why Amazon deactivated the Amazon Storefront. Accordingly, for the reasons set forth herein, Youngblood is entitled to summary judgment as to Count II of Plaintiff's Complaint.

**III.   Plaintiff Failed to Submit Evidence Made a False Statement of Fact[8]**

---

[8] Plaintiff's Response fails to distinguish between the statements or conduct for its tortious interference, defamation, or trade libel claims. *See* Resp. [ECF No. 138], pg. 25. Rather, Plaintiff relies on the same conduct and alleged publications to support its claim for tortious interference, defamation, and trade libel. All counts also explicitly incorporates the factual allegations of in each claim. There is no distinction.

For brevity purposes, Youngblood will rely on previous arguments in its Motion and Reply, as set forth above, to oppose Plaintiff's Response. In sum, Plaintiff concedes that it is bound to all of Amazon's guidelines by virtue of running its Amazon Storefront on Amazon.com and that it violated Amazon's guidelines. [ECF No. 128], ¶ 12; *See* Resp [ECF No. 138], pgs. 24-25. Additionally, Plaintiff presented no counterevidence to support Youngblood made a false statement of fact to Amazon under Amazon's guidelines. *Id.* Moreover, Plaintiff concedes it does not have the source documentation. *See id.* at pg. 16; [ECF No. 113], ¶¶ 47, 52; [ECF No. 128], ¶ 47, 52. Similarly, Plaintiff has submitted no evidence that establishes that Amazon will only deem a product counterfeit if the product or packaging has an unlawful reproduction of a registered trademark. Absent evidence to support Plaintiff's conclusory claim that Youngblood's statements that Plaintiff was selling inauthentic and counterfeit Youngblood product was false, Plaintiff's defamation claim fails.

### A.  Qualified Privilege

Plaintiff's Response presented no counterevidence to establish that Youngblood acted in bad faith, wrongdoing, fraud or misconduct by submitting its complaints to Amazon. *See* Resp. [ECF No. 138], pgs. 5-6. Similarly, the record does not support Plaintiff's position that "Amazzia filed counterfeit complaints solely on the basis that Plaintiff was not authorized reseller." *Id.* at 6. Rather, the record confirms why Amazzia determined that Solu-Med was selling counterfeit products. *See* [ECF No. 113], ¶ 32; *see also* Reply to Plaintiff's Statement of Additional Undisputed Facts, ¶ 63. To be clear, Youngblood's corporate representative's deposition testimony explaining why Youngblood was concerned regarding inauthentic and counterfeit products was diluting Youngblood's brand is evidentiary support. [ECF No. 113], ¶¶ 3-5. Similarly, as stated above, there no evidence (nor did Plaintiff come forth with any) that the products sold by Plaintiff were genuine and authentic Youngblood products. *See* [ECF No. 138], pg. 16; [ECF No. 128], ¶¶ 18-19, 47, 52. Furthermore, Plaintiff submitted no counterevidence (nor is there any in the record) that supports its position that Amazon will only deem a product counterfeit if the product or packaging has an unlawful reproduction of a registered trademark.

### IV.  Plaintiff's Damage Claims for Business Valuation is Barred

It is undisputed that Plaintiff has continued its business since its Amazon Storefront was reinstated by Amazon on January 14, 2019 and not ceased operation. [ECF No. 128], ¶60. Accordingly, Youngblood is entitled to summary judgment on Plaintiff's damages claim.

*Environmental Biotech, Inc. v. Sibbit Enterprises, Inc.*, 2008 WL 5070251, *4-5 (M.D. Fla. Nov. 24, 2008).

### V. Plaintiff's Response Failed to Rebut Youngblood's Claims under Noerr-Pennington Doctrine

Lastly, the denial of a motion to dismiss pursuant to Rule 12(b)(6) does not determine the merits of a claim and does not preclude a later motion upon the same issues for summary judgment pursuant to Rule 56. *Key West Harbor Development Corp. v. City of Key West, Fl.*, 1991 WL 496886 at 4 (S.D.Fla. 1991). Indeed, the legal standards for a motion to dismiss and summary judgment are not the same. *Id.*

Plaintiff's Response fails to create a genuine issue of material fact as to the sham expectation. For instance, the Response does not dispute that Amazon encourages right owners to report counterfeit and inauthentic products. *See* Resp [ECF No. 138], pgs. 2-4. Nor does Plaintiff dispute that Youngblood's first step to elicit the outcome Youngblood sought—*i.e.*, the cessation of Plaintiff selling inauthentic and unauthorized Youngblood products on Amazon - was to petition Amazon, as it request Youngblood do, to investigate the authenticity of the products sold by Plaintiff that were masquerading as genuine and authentic Youngblood products. *Id.*

Rather, Plaintiff merely asserts that Youngblood's petitioning conduct was a sham. *Id.* at 3. Certainly, Plaintiff cannot ignore the evidence in this case regarding Youngblood's justification in submitting the complaints to Amazon against Plaintiff for a one-line argument of counsel in Youngblood's motion to dismiss. *Rowell v. Bellsouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005). Moreover, even if the statement were true, that does not negate the undisputed evidence of what actually happened here, *i.e.*, why Amazzia determined Plaintiff was selling inauthentic and counterfeit Youngblood products. *See* [ECF No. 113], ¶ 52. Thus, there is no dispute that Youngblood's complaints to Amazon were made because Plaintiff violated Amazon's guidelines, and Youngblood was therefore justified. Further, Plaintiff has provided no evidence that establishes that Amazon will only deem a product counterfeit if the product or packaging has an unlawful reproduction of a registered trademark. Simply put, Plaintiff's Response fails to overcome Youngblood's argument that the Noerr-Pennington doctrine immunes Youngblood's petition to Amazon.

### CONCLUSION

For the reasons set forth herein and those set forth in Youngblood's Motion for Summary Judgment (ECF No. 108), Youngblood respectfully requests this Court enter an Order granting

summary judgment in favor of Youngblood and against Plaintiff, and for any further relief this Court deems just and proper.

Dated: April 3, 2020

Respectfully submitted,

COLE, SCOTT & KISSANE, P.A.
Attorneys for Defendant
222 Lakeview Ave, Suite 120
West Palm Beach, FL 33401
Telephone: (561) 383-9203
Facsimile: (561) 683-8977
E-mail: jonathan.vine@csklegal.com
E-mail: sheena.smith@csklegal.com

By:     */s/ Sheena D. Smith*
JONATHAN VINE
FBN: 10966
SHEENA D. SMITH
FBN: 118919

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of April 2020, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system.

## SERVICE LIST

**Kelsey K. Black, Esq.**
Black Law, P.A.
*Attorneys for Plaintiff*
1401 E Broward Blvd. Suite 204
Fort Lauderdale, FL 33301
Telephone: (954) 320-6220
Facsimile: (954) 320-6005
kelsey@kkbpa.com

**Stanley R. Goodman, Esq**
Goodman & Saperstein
Pro hac vice admission pending
666 Old Country Road, Suite 200
Garden City, NY 11530
Telephone: (516) 227-2100
Facsimile: (516) 227-2108
Gsesq600@aol.com