UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:19-cv-60487-RKA/PMH

SOLU-MED, INC.,

 Plaintiffs,

vs.

YOUNGBLOOD SKIN CARE
PRODUCTS LLC,

         Defendant.

_____/

**PLAINTIFF SOLU-MED, INC.'S REPLY IN FUTHER
SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Solu-Med, Inc. pursuant to the applicable Federal Rules of Civil Procedure and S.D. Fla. Local Rule 56.1, respectfully submits this *Reply* further support of its *Motion for Partial Summary Judgment* dismissing all of Defendant Youngblood Skin Care Products ("Defendant" or "YB") Affirmative Defenses, except its Second Affirmative Defense contained in its Amended Answer [DE 79-1], and in support thereof says:

I.      **Introduction**

Before responding to Defendant's arguments in its opposition papers, Plaintiff notes that Defendant's Statement of Additional Material Facts is nothing more than a regurgitation of its *Rule 56.1 Statement of Material Facts* submitted with its *Motion for Summary Judgment*. Our Response shows that *Defendant's Statement of Additional Facts* is laden with misrepresentations, falsehoods, mischaracterizations, misleading quotes and absurd denials. As such they do not supply evidentiary support for the Affirmative Defenses sought to be dismissed.  As to *Defendant's Responses to Plaintiff's Statement of Undisputed Material Fact*, they contain a denial of established facts on the record and are similarly misleading.

Because of the Court's ruling on April 2, 2020 striking Defendant's amended answer and affirmative defense (ECF No. 140), Plaintiff's arguments relating to the dismissal of Defendant's Amended Affirmative Defenses 11-15 are moot.  The remaining affirmative defenses at issue were plead in Defendant's original answer, and Plaintiff will address them here.

## II.   Reply

### A.   Amended Affirmative Defenses No. 3, 4, and 10 Must Be Dismissed:

The Third, Fourth, and Tenth Affirmative Defenses in Defendant's Amended Answer are Affirmative Defenses Nos. 6, 7 and 19 in its Answer (ECF No. 69). Defendant relies entirely on *Otter Prods., LLC v. Wang*, 2019 WL 1403022, *2 (D. Colo. Mar. 28, 2019) when responding to Plaintiff's argument relating to these defenses.  *Otto* involved a default judgment under the Lanham Act.  For the Third Affirmative Defense, citing *Otto*, Defendant maintains that Plaintiff's Youngblood ("YB") products were not genuine, because Plaintiff was not authorized to sell YB products.  However, *Otto* held that Wang's goods were not genuine due to a material difference and failure to abide by *Otto*'s quality control requirements. In so ruling, surely the *Otto* Court was aware of the well-established case law that unauthorized sales of the actual trademark article, without more does not violate the Lanham Act. Plaintiff has cited a case from this jurisdiction - *Wellnext LLC v. OVM LLC*, 2018 WL 7048129 *at *3,* citing *Allison v. Vintage Sport Plaques*, 136 F.3d 1443, 1447-48 (11th Cir. 1998) – that holds the first sale doctrine protects resellers like Plaintiff from being able to sell Defendant's product.  Defendant's response is that since these are Lanham Act cases, they are inapplicable. But so is *Otto*, upon which three affirmative defenses of justification are based. So if Plaintiff's Lanham Act authority is inapplicable, so is Defendant's, and therefore these three affirmative defenses have to be dismissed.

Further, Defendant attempts to confuse "non-genuine based upon material differences and quality control concerns" with "counterfeit." Defendant's numerous complaints to Amazon were that Plaintiff was selling counterfeit YB products**, not non-genuine or inauthentic**, but counterfeit. These affirmative defenses fail if "genuine" and "inauthentic" under the Lanham Act does not render the article counterfeit.  Defendant has cited not one case where a court has held that an infringing gray market good that was manufactured by the trademark holder is considered counterfeit under the Lanham Act.   Instead, Courts have repeatedly held within the context of the Lanham Act, that gray goods, even if infringing, are not counterfeit goods. *See Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1306 (5th Cir. 1997); *Novartis Animal Health US, Inc. v. Abbeyvet Export Ltd.*, 409 F.Supp.2d 264, 266 (SDNY 2005); *Mitchell Group USA LLC v. Udeh*, 2017 WL 9487193 at *5 (EDNY 2017). They use the actual marks and the marks are lawfully affixed to them. *Accord: Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 952

F.2d 44, 48-50 (3d Cir. 1991); *Abbott Labs v. Adelphia Supply USA*, 2015 WL 10906060 at \*11 (E.D.N.Y. 2015); *Abbott Labs v. Adelphia Supply USA*, 2019 WL 569148 at \*22 (E.D.N.Y. 2019).

The foregoing also dooms Defendant's Fourth Affirmative Defense. Plaintiff incorporates by reference page 14 of our Corrected Response to Defendant's Motion for summary judgment (ECF No. 138), which establishes that Plaintiff's YB products were genuine for Lanham Act purposes, since they carry Amazon's return warranty and that YB does not have quality control guidelines for retailers, and it guidelines for distributors (ECF No. 118, ¶22) do not pertain to product integrity and storage.

B.   Affirmative Defenses Nos. 5, 6 -  Truth

Defendant's affirmative defenses 5 and 6 in the amended answer are the same as affirmative defenses 8 and 11 in the original answer. Plaintiff grouped these two affirmative defenses together because if these goods were not counterfeit, these affirmative defenses must be dismissed. YB bears that burden of proof as to these defenses, and must demonstrate that its counterfeit accusation was true and paired with good motive. *See Miami Herald Publishing Co. v. Brautigam*, 127 So.2d 718, 723 (Fla. 3d DCA 1961) (holding defense of truth, plus good motive, are affirmative defenses and Defendant holds the burden of proof).  It does not meet this burden. YB admits that it made the complaint through Amazzia, who it contracted with to rid Amazon of 50% of resellers of YB product by November 7, 2018.  (ECF No. 128-3).  YB hired Amazzia to attempt to "identify the [distributor] who sold the product to the reseller" so they can "cancel that relationship." (ECF No. 113-1, p. 73; 75) Put another way, Amazzia was an enforcement arm of YB with the directive to eliminate the grey market. YB was successful in doing so.  It boasts "within the past year, [it's] probably eliminated three to four million with lost sales" by engaging in these predatory tactics.  (ECF No. 113-1, p. 73).  In YB's own words, in November 2018, YB's agenda was to "identify offering the product as new on the website, when in facts its not new and guaranteed, and we simply wanted to eliminate that market…" (*Id.*p.75).

This is not good motive.  This is attempting to improperly eliminate competition by falsely reporting goods as counterfeit.  When questioned on why use a derogatory word like counterfeit to complain about goods that in YB's mind were simply not "new and guaranteed," YB attempts to patch together various Amazon policies to justify its actions. Specifically, YB attempts to legitimize its liberal use of the phrase "counterfeit" by claiming that Amazon defines products that do not carry the manufacturer's warranty or for which the seller does not abide by the manufacturer's quality controls are "inauthentic and counterfeit" under its policies and guidelines.

3

The phrase "inauthentic and counterfeit" is repeated no less than twenty-six times in Defendant's *Response*. Interestingly, Defendant's record citation to support this statement is to Exhibits 2, 3, and 5 to Ms. Clarice Cohn's Declaration (ECF No. 118 at ¶¶ 23-27). Those rather voluminous Exhibits contain (1) Amazon's Anti-counterfeiting Policy, (2) Ensuring product authenticity and quality and (3) Condition guidelines.  However, no specific page references to these Exhibits are provided to support the statement that because a product is inauthentic (one lacking a manufacturer's warranty), it is counterfeit. The reason is that none exists.  What Defendant is trying to do is to hoodwink the Court to believe that  inauthentic and counterfeit mean the same thing.

Defendant embarks upon this repetitious course because its agent, Amazzia, was the one responsible for filing in YB's name at least thirteen false counterfeit complaints against Plaintiff between November 1 and 13, 2018. (ECF No. 138, p. 15). Plaintiff has presented the testimony of its Amazon expert (Cory Rosenbaum) who opined that YB/Amazzia crafted the wording of the counterfeit complaint in such a way as to virtually guarantee a complete shutdown of the store. It is undisputed that these false counterfeit complaints were filed without YB's knowledge, but with its consent. YB gave Amazzia *carte blanche* to do whatever was necessary to get rid of all unauthorized online sellers (ECF No. 118 at ¶65, ¶67, ¶69). YB on page 8 of its R*esponse*, relies heavily on Amazzia testimony to justify the counterfeit complaints.

Plaintiff's Counter Statement of Material Facts at ¶51 (ECF No. 118) is entirely from Fikhman's deposition. The testimony YB was relying upon with respect to Plaintiff's YB products being inauthentic and counterfeit under Amazon's guidelines is as follows:

A.  Because any seller who is unauthorized, in this case Life and Health Source was unauthorized, they could not be selling a product with the warranty and quality controls that Youngblood would have released this item into commerce with.
    And so those two things make it materially different, which means you can't list it in new condition.

    So if it were listed as new, we automatically deem it to be counterfeit because it's lacking the warranty and the quality controls that would be a material part of the sale. (D.E. 113-3 at 101:5-16).

YB inadvertently omitted 101: 17-19 which refer to Amazon's guidelines:

Q.      And this—Was this all based upon Amazon's guidelines?
A.      Correct.  All of that is on Amazon guidelines.

Amazzia also testified "[a] counterfeit item by us is defined as having a material difference, and one that creates consumer confusion." (*Id.* at 128:21-23). But Amazon, through its paralegal Clarice Cohn ("Cohn"), submitted a Declaration in response to a Rule 45 Subpoena that Defendant served upon Amazon. (ECF No. 104-10). In ¶12 of her Declaration, Ms. Cohn states that Amazon considers a product is counterfeit if the product or packaging has an unlawful reproduction of a registered trademark.   *Id.* In addition, included in Exhibit "B" to Cohn's Declaration was Amazon's Condition Guidelines. (ECF No. 104-10, Ex. B). On page 2 of the Condition Guidelines, it states: "Unacceptable and prohibited items:"

> • Item was not created by the original manufacturer or copyright holder. This includes copies, counterfeits, replicas, and imitations." (*Id.*)

The foregoing is conclusive that counterfeit to Amazon means either an item not created by the original manufacturer and/or an item bearing an unlawful reproduction of a registered trademark.

YB argues that Cohn's statement is hearsay and not admissible. Cohn's Declaration was made in response to YB's subpoena.  In ¶12, Cohn described how one would fill out Amazon's online complaint form for trademark violations and quoted what constituted a counterfeit product under trademark infringement dropdown box.  In this regard, during his testimony, Fikhman described how Amazzia filled out this complaint form for trademark violations as follows:

> When you click "trademark" infringement", it leads you to another page which is, you know, This seller is infringing on my trademark, or, This seller is selling counterfeit products. And so we picked "counterfeit products" because we believe it's—It is created as—it becomes a counterfeit product when a seller is selling a product without a warranty, because that warranty is a material part of the sale, and given Amazon policies around quality controls and authenticity and Condition Guidelines for new.  All of that together means the product is counterfeit. There's no other option if it—if it doesn't include the warranty." (ECF No. 113-3, p. 80:15-81:4).

Both Fikhman and Cohn were addressing Amazon's online complaint form. Fikhman claimed he chose the counterfeit option based upon Amazon's alleged guidelines that a product is counterfeit if it does not carry the manufacturer's warranty and quality controls. One of the exceptions to the hearsay rule is when the opponent has opened the door on direct examination of his witness on a particular topic. *See United States v. Cooper,* 926 F.3d 718, 730 (11ᵗʰ Cir. 2019). Here, YB opened the door by offering Amazzia's direct testimony as evidentiary support for the contentions on page 8 of its *Response* that Plaintiff's YB products were inauthentic and thus counterfeit under Amazon's guidelines.

Thus Cohn's statement under the penalty of perjury that Amazon considers a product counterfeit when the product or packaging has an unlawful reproduction of a registered trademark is admissible as rebuttal evidence under this exception to refute Amazzia's direct testimony relating to Amazon's guidelines.[1] In addition, Cohn's declaration further provides that YB's concerns relating to Plaintiff's sale of its products should have been a "condition violation," which is a separate dropdown for listing the product incorrectly. ECF No. 104-10, ¶¶9-13. Further, the aforesaid Amazon Condition guidelines *supra* state that counterfeits are items not created by the original manufacturer also refute YB's contention that Amazon considers items without a warranty as counterfeits. Being inauthentic for lack of a manufacturer's warranty does not render the item counterfeit under Amazon's guidelines. Thus, YB quoting extensively from Amazon's publications and lambasting Plaintiff concerning its alleged failures to abide by Amazon's guidelines cannot disguise the fact that Amazzia had nothing to go on when it filed the counterfeit complaints against Plaintiff, other than it was an unauthorized seller. The "good motive" requirement of the truth defense is completely lacking.

Whatever conclusory, unsupported salutary reasons YB has put forward to justify the removal of Plaintiff as an unauthorized seller from Amazon cannot excuse the false criminal accusations that Plaintiff was trafficking counterfeit goods, as the means to that end. Having no proof either then or now that Plaintiff's YB products were counterfeit under either Amazon's guidelines, the Lanham Act or federal case law, Plaintiff's affirmative defense of truth must be dismissed.

As for argument III(i)(b) in Defendant's *Response*, this argument has no bearing on Plaintiff's duty as an affirmative defense.  Of course, as addressed in Plaintiff's response to Defendant's motion for summary judgment (ECF No. 138, p. 18-20),  Plaintiff asserts it has met its burden that the YB's statement was false and the products examined by YB at its deposition were genuine.  YB's contention otherwise make this a genuine fact dispute for the jury; but as for its affirmative defense, at the time YB made its statement to Amazon that the goods were

---

[1] In any event, it is anticipated that YB will raise the same hearsay objection to Ms. Cohn's statement in its Reply to Plaintiff's Response to YB's Motion for summary judgment. However, Ms. Cohn's statement would also be admissible as impeachment evidence to defeat YB's Motion. *See Fireman's Fund Insurance Company v. Thien*, 8 F.3d 1307, 1312 (8th Cir. 1993) which was cited in *Macuber v. Deboer,* 193 F.3d 1316 at N. 16 (11th Cir. 1999).

counterfeit, it had no evidence that this statement was true and therefore, this affirmative defense must be dismissed.

        C.   Affirmative Defenses 7 and 8

       Affirmative Defenses 7 and 8 in the Amended Answer are the same as **Affirmative Defenses 17 and 18** in its initial answer (ECF No. 69). Defendant, by these two affirmative defenses, is attempting to shift the blame to Amazon for the shutdown of Plaintiff's store. In these defenses, YB has taken the position that it cannot be held responsible for the shutdown of Plaintiff's Amazon store since it only sought to have Amazon delist YB products. Since these are confession and avoidance defenses, it must be assumed that the drastic action that Amazon took in shutting down the store was in response to YB's 13 counterfeit complaints; otherwise if there is no connection, these defenses are superfluous. The legal authority cited on page 18 of YB's *Response* pertain to Plaintiff's burden to establish a tortious interference with business relationship claim. The inquiry here, however, is *YB's burden* to establish these two affirmative defenses. YB recognizes this burden is by quoting out of context from page nine of Plaintiff's Motion, to wit: *"On the other hand, Plaintiff argues that Youngblood "was in a unique position to extricate Plaintiff ... by simply informing Amazon that it was . . . withdrawing the complaint." Id. at pg. 8."* (YB's Opposition Response, p. 18). However the complete sentence reads: "The fact is that early on, Defendant was in a unique position to extricate Plaintiff *from the disastrous consequences of its false counterfeit* complaint, by simply informing Amazon that it was *retracting or* withdrawing this complaint." (omissions in italics). As can be seen, YB deliberately omitted the critical portion of the sentence that refers to issuing a retraction of the false counterfeit complaint, as the means to extricate Plaintiff. That omission is because Defendant sent only a vague email to Amazon stating that it resolved its complaint with Plaintiff, which was not a statement that anyone would consider to be a retraction. As YB's Exhibits 21-27 show, a retraction from the rights owner was the primary option to reactivate the store.

       It is undisputed that after that email was sent, Amazon did not restore Plaintiff's selling privileges. Instead on December 20, 2018, Amazon **permanently** deactivated the store. Plaintiff's counsel made several more attempts to get Defendant to issue a retraction, but his entreaties were ignored. Given the foregoing, YB has retreated from the absurd position it took at Jason Toth's deposition that its email to Amazon constituted a retraction. YB now argues on page 18 of its Response, that it was justified in not sending a retraction to Amazon because, "…there is no record

evidence which establishes the products sold by Plaintiff were in fact genuine and not counterfeit Youngblood products." YB further contends, without record support, that what it did send to Amazon was only after Plaintiff agreed not to sell YB products, which Plaintiff disputes in its Reply to YB's 56.1 Counter Statement filed simultaneously herewith (¶74). As indicated *supra*, this questionable statement is predicated on Plaintiff submitting prior to Defendant's December 4, 2018 several Plans of Action that Defendant **was unaware of**, stating that it will no longer sell Youngblood. There is no record agreement between the parties that would give rise to this non-existent *quid pro quo*.

In arguing that YB was justified in not sending a retraction, YB is relying on a retrospective view of the record, rather than the reality of how the events unfolded. The record is clear that it was Amazzia (YB's agent) that filed the complaints and that it was Amazzia who sent the December 4, 2018 non-retraction email to Amazon. Fikhman, Amazzia's representative, testified that all Amazzia had at the time to justify its counterfeit complaints was that Plaintiff's was an "unauthorized seller." Therefore YB's claim regarding "zero" record evidence that Plaintiff's YB products were not counterfeit to justify not sending a retraction, is based entirely on YB's *post hoc* view of the developed, concerning lack of source documentation, and not on what information it had at the time it was asked to file a retraction.

Ironically, YB admitted at Toth's deposition that the YB products he examined were "YB's product." (ECF No. 113-1, p. 83-89) Further YB did not attempt to conduct any definitive scientific tests or other physical inspection of Plaintiff's Youngblood products either before having Amazzia lodge these counterfeit complaints or after this action was commenced or even after YB's deposition. Defendant instead relies on Amazzia's erroneous view of what Amazon deems counterfeit. That does not excuse Defendant's unexplained and unjustified failure to make any attempt to determine whether the goods in question were actually counterfeit. This omission permits a jury to draw the negative inference that had Defendant done so, it would have determined that the goods were genuine and this is why Defendant chose not to conduct scientific tests or a physical inspection. Despite the absence of a documentary chain regarding the origin of the goods, Defendant's aforesaid deposition admissions that the Exhibits were genuine Youngblood products and the aforesaid negative inference, satisfy Plaintiff's evidentiary burden as to authenticity and shifts the burden to YB to justify its refusal to issue a retraction. YB cannot satisfy this burden. Defendant must bear the responsibility for the prolonged shutdown of Plaintiff's Amazon store

and its Seventh and Eighth Affirmative Defenses which attempt to shift the blame to Amazon, should be dismissed.

D. Affirmative Defense No. 1 - Failure to Mitigate Damages

Affirmative Defense No. 1 in the Amended Answer is the same as **Affirmative Defense No. 3** in the initial answer (ECF No. 69). On pages 20-21 of YB's Response, it argues that Plaintiff failed to mitigate its damages. Plaintiff must make a **reasonable** effort to mitigate damages. *See S.C. Loveland, Inc. v. East West Towing, Inc.*, 608 F.2d 160, 168 (5th Cir. 1979); *Graphic Associates, Inc. v. Riviana Restaurant Corporation*, 461 So.2d 1011, 1014 (Dist. Ct. of Appeal of Fla., 4th Division 1984). YB is seeking to hold Plaintiff, not to a reasonable effort, but a higher standard with regard to its assertion that Plaintiff failed to provide Amazon with proof of authenticity to satisfy its duty to mitigate. Since Plaintiff operated in the secondary market and its and QMED's supplier was not direct with YB – YB attempts to use that as a sword to bury its own wrong-doing. But as detailed *supra*, Plaintiff made a good faith effort to get YB to issue a retraction (the primary option per Amazon's violation notices-YB Exhibits 21-27) which YB refused to do. The three Plans of Action also must be considered as far as a reasonable effort. When all of this failed Plaintiff's counsel submitted a letter appeal to Jeff Bezos, which resulted in the store's reactivation.

Also unavailing is Defendant's argument that once the store was deactivated, Plaintiff could have sold its wares through Amazon's Fulfillment By Amazon Program ("FBA"). For record support, Defendant relies on its RSOF ¶ 77 (ECF No. 118). An examination of that testimony reveals no reference to Amazon's FBA Program. On the other hand, Goodson described the FBA Program at pages 48:17-49:2 (ECF No. 113-5). Ironically, Plaintiff's Youngblood goods were actually sold through the FBA Program, so they would be able to be returned to Amazon. (ECF No. 113-5, 45:6-12, 49:18-23). The statement that Plaintiff was not prevented from selling through Amazon's FBA program after deactivation is conclusively refuted by the record. Plaintiff also refers the Court to page 6 *of Plaintiff's Motion for Partial Summary Judgment* with respect to Plaintiff's co-owner Manuel Aguero testifying that Plaintiff reduced its staff to cut expenses and tried to sell the merchandise that Amazon returned on other ecommerce platforms, and increased advertising. In sum the preponderance of the evidence establishes that Plaintiff made a reasonable effort to mitigate damages under the circumstances. YB's failure to mitigate defense should be summarily dismissed.

WHEREFORE, Plaintiff requests this Honorable Court to grant summary judgment dismissing Defendant's Affirmative Defenses to the original answer Nos. 3,  6, 7, 8, 11, 17, 18 and 19, which corresponds to 1, 3, 4, 5, 6,7.8, and 9 of its amended answer.

---

Respectfully submitted,

BLACK LAW P.A.
1401 E Broward Blvd.  Suite 204
Fort Lauderdale FL 33301
ph-954.320.6220  fx-954.320.6005

By:         s/ *Kelsey K. Black*
            Kelsey K. Black
            Florida Bar No. 078925
            kelsey@kkbpa.com

and

Stanley R. Goodman, Esq. (admitted *pro hac vice*)
Goodman & Saperstein
666 Old Country Road, Suite 200
Garden City, NY  11530
Telephone:  (516) 227-2100
Facsimile:   (516) 227-2108