UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:19-cv-60487

SOLU-MED, INC.,

      Plaintiff,

vs.

YOUNGBLOOD SKIN CARE
PRODUCTS LLC,

      Defendant.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S SECOND MOTION FOR LEAVE TO FILE**
**SECOND ANSWER AND AMENDED AFFIRMATIVE DEFENSES**

Plaintiff Solu-Med, Inc., files this response in opposition to "Defendant's Second Motion for Leave to File Second Answer and Amended Affirmative Defenses" (ECF No. 145) that was filed by Defendant Youngblood Skin Care Products LLC ("Youngblood" or "Defendant"). In opposition, Plaintiff says:

**I**

*Youngblood's Motion Violates Court's*
*April 2nd Order and Must Be Denied Outright*

This Court's paperless order that was entered on April 2, 2020, struck Youngblood's Amended Answer and Affirmative Defenses and specifically instructed Youngblood that it may file "a new Motion for Leave to File Amended Answer and Affirmative Defenses."  But for reasons unknown, Defendant Youngblood used that limited directive as an opportunity to bootstrap yet another revamped version of its affirmative defenses – and to load them up with matters that were unfairly and belatedly sprung on Plaintiff (as explained in Section II below).  This latest version of its pleading does not merely "clarify" its affirmative defenses, as Youngblood attempts to portray it.  The affirmative defenses contained in Youngblood's "Second Answer and Amended Affirmative Defenses" bears little resemblance to those

1

contained in its prior "Amended Answer and Affirmative Defenses."  A simple side-by-side view of the two filings makes this readily apparent.  (*Compare* ECF 145-1 *with* 79-1.)

Youngblood's latest effort is an unfair and unauthorized attempt to inject matters into this case that Youngblood could have raised and litigated *much earlier* in the discovery phase -- *which began nearly a year ago*.   At this juncture, Youngblood is proposing yet another substantially-revised pleading after all dispositive motions have been filed, discovery has ended, and the case is heading to trial.  Such untimely efforts are typically denied in this district.  *See, e.g., Aligned Bayshore Holdings, LLC v. Westchester Surplus Lines Ins. Co.*, No. 18-21692-CV, 2019 WL 2341577, at *2–3 (S.D. Fla. June 3, 2019) (denying motion to amend because "granting the Motion now might require the possible re-opening of discovery, a re-filing of the summary judgment motions, and a continuance of the trial").  In any event, nothing in the Court's April 2nd order gave Youngblood free rein to virtually reconfigure its entire defense at this late date.  On its face, this Court's order simply gave Youngblood the opportunity to file a new motion -- *not* a new pleading.  Its motion should be denied outright.

**II**

### *Youngblood Fails to Establish "Good Cause" under Rule 16(b)(4) Because Its Delay Was Due to its Own Failed Strategy and Because the Belated Amendment Substantially Prejudices Plaintiff*

As Youngblood acknowledges on page 4 of its motion, deadlines under a Scheduling Order may only be modified for "good cause."  This standard has been characterized by the courts in this district as being quite "stringent," and thus, efforts to show "good cause" are heavily scrutinized and often fail even where arguably compelling circumstances exist.  *See, e.g., Kipu Sys., LLC v. Zencharts, LLC*, 17-24733-CIV, 2019 WL 2288328, at *2 (S.D. Fla. May 29, 2019); *A.T.O. Golden Constr. Corp. v. Allied World Ins. Co.*, No. 17-24223-CIV, 2018 WL 6462869, at *3 (S.D. Fla. Oct. 29, 2018) ("motion to amend was filed approximately six months after the deadline in the scheduling order for amended pleadings. A motion that is untimely pursuant to a duly entered scheduling order may be denied on that ground alone"); *Flores v. 2K Clevelander, LLC*, No. 1:16-CV-24083-UU, 2017 WL 5054565, at *3 (S.D. Fla. May 4, 2017) ("no diligence, no good cause, no leave to amend").  To that end, the moving

party's diligence in seeking an amendment is the pivotal inquiry.[1]   *See Kipu*, 2019 WL 2288328, at \*2; *TIC Park Ctr., 9 LLC v. Cabot*, No. 16-24569-CIV, 2018 WL 4828435, at \*4 (S.D. Fla. Aug. 28, 2018).   Youngblood cannot satisfy such an elevated standard where it had every opportunity to include its "new" defenses in its initial answer – or at least to have sought an amendment much earlier.

In its motion, Youngblood offers several bogus reasons why its delay should be overlooked.  First, Youngblood contends on pages 5-6 of its motion that it could not possibly have complied with this Court's June 21, 2019 deadline for amended pleadings (*see* ECF 28 at 2) because its initial pleading was not yet due.  What it cannot avoid, however, is that when Youngblood filed its answer in early October, it was clearly on notice -- given the explicit June deadline in the Scheduling Order -- that *no* pleading amendments would be allowed going forward; in fact, Youngblood had already had almost five months of discovery under its belt to craft its affirmative defenses (a luxury that not many defendants have given pleadings deadlines normally expire two to three months into discovery), including Amazon policies produced by Amazon.com in response to a Youngblood subpoena *duces tecum* served on Amazon in June 2019.  Yet three months after its October 2, 2019 original answer and affirmative defenses and two days after key depositions of itself and its agent Amazzia, Youngblood sought leave to add six new defenses all based upon Amazon policies and Youngblood's self-serving deposition testimony.  And it did so without providing any credible explanation as to how it had been prevented from raising those new defenses in its original answer, which had been filed approximately five months into the discovery process. That hardly bespeaks diligence.

Next, Youngblood claims on page 9 of its *Motion for Leave* that it is simply basing its new defenses on deposition testimony in the case.  That too is unavailing.  What Youngblood fails to mention is the context in which such deposition testimony came about and how it deliberately blindsided Plaintiff in a manner that has caused irreparable prejudice to Plaintiff's case.  That testimony related to two essential concepts that have been raised for

---

[1]      As the court noted in *Flores, supra,* at \*3, even where Rule 16(b)(4) applies, the defendant bears the *additional* burden to prove that its proposed amended pleading satisfies Rule 15(a)(2), which requires that there has been no undue delay in seeking the amendment and that granting the amendment **would not prejudice** the plaintiff.

the first time in Youngblood's latest version of its affirmative defenses – namely, (a) Amazon's policies and guidelines and (b) qualified privilege.  Each is separately discussed.

**A.      *Amazon Policies/Guidelines*.**

Amazon's Policies/Guidelines were brought into the case in substance midway through the deposition of third-party Amazzia's corporate representative on December 10th (which was seven months into discovery and one day before Youngblood sent Plaintiff its "new proposed affirmative defenses").[2]  Youngblood had noticed that deposition, but *nowhere* in the accompanying "Schedule A" that listed the topics to be covered at that deposition was there any mention of Amazon's policies or guidelines.  (*See* Youngblood's Amended Notice of Deposition of Amazzia, attached as **Exhibit 1**, at p. 3).  Moreover, at no time during the prior seven months of discovery did Youngblood (or anyone else including Amazon) produce some of the policy documents used at Amazzia's deposition. (*See* Declaration of Stanley Goodman, attaches as **Exhibit 2,** at ¶2).

As such, Plaintiff was given no advance notice that the "Amazon's policies and guidelines" would be a topic at the deposition, much less a topic that would be transformed into the core affirmative defense of its adversary.  Plaintiff was completely blindsided when, during the deposition, Youngblood's counsel pulled out these policies and guidelines, marked them as exhibits, and started questioning its witness extensively about them.  (Exh. 2 at ¶ 1-4.)  That ambush unfairly deprived Plaintiff's counsel of any meaningful opportunity to prepare and conduct a thorough cross-examination on those document topics.  (*Id.* at ¶ 5.) And the problem now is that Youngblood has had months to finetune this defense to the fit the facts of this case. In addition, the deponent in cahoots with Youngblood, Amazzia, is a third party, and its corporate representative lives in California. As such, even if additional discovery is granted by the Court to alleviate prejudice on Plaintiff (which Plaintiff maintains cannot be alleviated at this late juncture), it can readily be anticipated that Amazzia would seek a protective order from a California court, with little redress available in this District. To compound the prejudice, Youngblood intends to play Amazzia's video of this deposition

---

[2]      Amazzia is the third-party company that actually filed the counterfeit complaint against Plaintiff on Youngblood's behalf. Youngblood noticed this deposition, which Plaintiff always believed was curious.  It is now understood that this was tactical – *i.e.*, Youngblood wanted to control Amazzia's narrative. (*See* ECF No. 113-3, p. 42-106.)

at trial as part of its defense in this case. There is simply no good-faith basis for Youngblood to have put Plaintiff in this untenable position. Any delay in raising Amazon's policies/guidelines as a defense is a product of Youngblood's own underhanded litigation tactics. To be clear, it chose not to include that topic in its notice of deposition, depriving counsel of any meaningful opportunity to prepare for a cross-examination on this topic. Youngblood chose to foist this on Plaintiff mid-deposition. And it deliberately chose not to interpose any affirmative defense based on those policies/guidelines until December 11th – which was a day after Amazzia's corporate representative deposition and two days after Defendant's corporate representative deposition.

Indeed, Youngblood's *own* chronology of events on page 3 of its motion confirms this point. Specifically, ¶12 acknowledges that the very first time Youngblood actually provided a draft of its proposed amended affirmative defenses to Plaintiff was on **December 11th**, a day after Amazzia and two days after Youngblood's' corporate representative depositions took place in California. To excuse that delay, however, Youngblood disingenuously argues on page 6 that it spent months making "diligent, good faith, reasonable efforts to resolve Plaintiff's issue with its proper Amended Affirmative Defenses." But prior to December 11th, Youngblood never once provided Plaintiff with a draft of its proposed amendments nor informed Plaintiff that it would be adding new defenses based on Amazon guidelines/policies and qualified privilege. (*See also* **Exhibit 2** at ¶ 4-6). It was not until Youngblood sent the actual draft of its proposed amended affirmative defenses to Plaintiff on December 11th that Plaintiff first learned about that. Indeed, the email exchange that Youngblood cites on page 6 is consistent with that point as well. (*See* ECF No. 78-2 through 78-6). Not only has Defendant failed to show "good cause," but the late delivery of its draft affirmative defenses was tactical, in bad faith, and certainly prejudicial to Plaintiff.

**B.**    *Qualified Privilege*

With regard to qualified privilege, Florida recognizes qualified privilege as an affirmative defense to defamation and trade libel. A party asserting the defense must establish that the statement was (1) made in good faith and (2) made with an interest to be upheld. *Lefrock, M.D. v. Walgreens Co.*, 77 F. Supp. 3d 1199, 1201 (M.D. Fla. 2015); *Alphamed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc.*, 391 F. Supp. 2d 1148, 1166 (S.D. Fla. 2005); *Axelrod v. Califano* , 357 So.2d 1048, 1051 (Fla. 1st DCA 1978)

Youngblood has absolutely no excuse for its failure to include this defense in its original October 2, 2019 answer. The record shows that with respect to the good faith requirement, Youngblood was already in possession of "Amazon's Anti-Counterfeiting Policy," "Amazon Product Authenticity and Quality" and "Intellectual Property Policy for Sellers" *prior to* October 2, 2019 by reason of its *Subpoena Duces Tecum* to Amazon. These are the very documents Youngblood is relying upon to claim that the counterfeit complaints were made in good faith. Further, its *own* 30(b)(6) witness, Dr. Jason Toth, testified that he had read Amazon's anti-counterfeiting policy **online** and expounded (albeit erroneously) on what Amazon considers counterfeit, which meant that Youngblood did not require a tutorial from Amazzia or anyone else about Amazon's anti-counterfeiting policies and guidelines. (*See e.g.,* ECF No. 113-1, pages 14-15, 43-44). As to the "interest to be upheld" requirement, it is now apparent that Youngblood is merely utilizing Toth's deposition to provide a testimonial basis for it. The simple point here is prior to filing its original answer, Youngblood already had all of the supporting documents in hand *and* had an employee that was capable of addressing the defense. As such, Youngblood had every opportunity to include that defense in its original answer but failed to do so. That falls woefully short of satisfying the diligence requirement for "good cause" under Rule 16.

For, whenever the opportunity arose, Toth delivered canned speeches concerning the need to eliminate unauthorized sellers because they were allegedly diminishing the brand equity and investment, diluting the name and reputation, selling discontinued product. (*See e.g.,* ECF 113-1, pages 22-23, 43, 71-72, 75). Clearly had Solu-Med been aware that Toth was testifying in that manner to bolster a soon to be raised qualified privilege defense, his conclusory claims would have been much more thoroughly examined. This deliberate nondisclosure caused Solu-Med irreparable prejudice, and as noted earlier, Youngblood's failure to raise this defense demonstrates a lack of diligence and therefore, it cannot meet the "good cause" requirement of Rule 16.

As an additional note here, in a disingenuous attempt to excuse its behavior and make itself look honorable, Youngblood claims on page 10 of its *Motion for Leave* that to "alleviate any purported prejudice" it offered to present its corporate representative for a second deposition. It then accused Plaintiff of "never ma[king] any attempt to schedule a second deposition" to address qualified privilege and of "ma[king] a conscious and deliberate

decision not to seek any discovery on Youngblood's amended affirmative defense of qualified privilege." (ECF No. 145, p. 10-11). This attempt to discount prejudice suffered by Plaintiff and bolster Youngblood's diligence (its burden here) fails. Second, Youngblood has misrepresented the "offer" that it purportedly made. Youngblood claims in its motion that it invited Plaintiff to take the deposition of its client after Plaintiff informed Defendant that it opposed the new affirmative defenses because Defendant's corporate representative deposition (amongst other costly depositions – such as the California deposition of Amazzia) had already occurred. There is no evidence showing any such offer having been made at that time, nor does Solu-med have any record of that. The only time such an offer was ever made was *after* Plaintiff had already moved to strike Youngblood's Affirmative Defenses, when in a moment of reflection, Youngblood seemed to realize the gravity of what its late amendment did. By that time, it was **too little too late**. And third, had Plaintiff accepted such an offer, that would essentially have been a concession that Youngblood's untimely-asserted defenses are properly a part of this case and that any prejudice has been cured. Plaintiff has not and will not concede that point. As explained fully herein, the damage from Youngblood's actions has already been done, and the resulting prejudice to Plaintiff remains.

### III

### *Alternatively, The Amendment is Futile and Should Therefore Be Denied*

It is well-settled in this circuit that leave to file an amended pleading may properly be denied where an amendment would be futile. See *Heard v. Publix Supermarkets Inc*, 2020 WL 1672796, at *1 (11th Cir. Apr. 6, 2020) (affirming denial of a motion to amend); *Fernandez v. Colombo*, No. 20-CV-20572, 2020 WL 1166731, at *1 (S.D. Fla. Mar. 11, 2020) (denying motion to amend due to futility of amendment). In its Motion for Partial Summary Judgment (ECF No. 105), Plaintiff has already briefed the many reasons why Defendant's affirmative defenses, including those in its amended pleading, are legally unsustainable and should be stricken. The Court is urged to review that filing (ECF No. 105) in tandem with this response.[3]

---

[3] There is authority allowing the Court to examine evidence when determine whether to amend a pleading. See *See Lord v. Fairway Electr. Corp.,* 223 F.Supp.2d 1270, 1276-77 (M.D. Fla. 2002) (denying Plaintiff's motion to amend its complaint for lack of evidentiary basis).

Here, by way of example Youngblood's fourth affirmative defense in its *Proposed Second Amended Answer* states that the counterfeit complaints were true because, "Plaintiff did not specifically source the purported Youngblood products sold, Plaintiffs failed to follow Amazon guidelines, Plaintiff sold purported Youngblood product as 'new' without Youngblood's warranty and therefore, Plaintiff sold not genuine, inauthentic and counterfeit Youngblood products under Amazon's guidelines." (ECF No. 145-1, p. 5). But does the foregoing actually render the product counterfeit under Amazon's policies and guidelines? The answer is no. Amazon produced pursuant to Youngblood's subpoena *duces tecum* served in June 2019 its "Anti-Counterfeiting Policy." (AMZN 00046-00047, attached as Exhibit "3"). Here, Amazon defines counterfeit products by describing "illegally replicated, reproduced or manufactured" and "bootlegs and fakes." (*Id.*) Compare this with Amazon's guidelines for reporting sellers for various violations under Amazon's "Ensuring product authenticity and quality," there is a subcategory for " Materially different product condition violation, which includes improperly listing your product in "New condition when it is not…" (ECF No. 113-6, p. 10).

At best under Amazon's policies and guidelines, Youngblood only has a materially difference claim, selling new, without Youngblood's 30-day return guarantee if purchased at its website. **To be clear, this alleged violation cannot justify 13 counterfeit complaints, which under Amazon's guidelines and policies, would mean Solu-Med was selling illegally replicated, reproduced or manufactured, bootlegs, fakes or imitations of Youngblood products.** These complaints were false as Youngblood has no evidence that Solu-Med was selling illegally manufactured or fake Youngblood product. Further, nowhere in these Amazon publications does the phrase, "…not genuine, inauthentic and counterfeit" grouped together in that fashion appear. This is an artificial construct made of whole cloth, patently tailored to meet the exigencies of the case - Amazzia's false counterfeit complaints leading to the shutdown of Solu-Med's store. The stringing together of disparate words and phrases to make it appear that virtually any policy guideline violation renders a product **"inauthentic and counterfeit"** should be discarded by the court.

Given the meritless nature of the affirmative defenses at issue, it necessarily follows that it would be futile to allow Youngblood an opportunity to delay this proceeding by filing its amended pleading. Youngblood's motion for leave should therefore be denied.

## IV

### *Plaintiff Is Entitled to Recover Attorney's Fees and Costs Incurred as a Result of Youngblood's Noncompliance with Scheduling Order*

Rule 16(f) authorizes an award of "reasonable expenses – including attorney's fees" that have been "incurred because of any noncompliance" with the requirements of Rule 16. *See* Fed. R. Civ. P. 16(f)(1)(C) & (f)(2). As the Eleventh Circuit has explained, where a scheduling order has been violated, "any just orders" may be entered including an award of attorney's fees and costs, and no showing of bad faith is required. *See Yaffa v. Weidner*, 717 Fed. Appx. 878, 883 (11th Cir. 2017) (affirming award of sanctions under Rule 16(f) and noting that this Rule "requires a district court to order a party, its attorney, or both to pay the reasonable expenses incurred due to any noncompliance with Rule 16 generally"); *accord Slater v. Erin Capital Mgmt., LLC*, No. 17-61300-CIV, 2017 WL 6503980, at *1 (S.D. Fla. Dec. 11, 2017) (awarding sanctions under Rule 16, observing that the "consequences for violating Rule 16's dictates are explicit" and emphasizing the rule's use of the word "must" in connection with ordering an award of "reasonable expenses – including attorney's fees"). As the Eleventh Circuit has further explained, Rule 16(f) was "designed to punish lawyers and parties for conduct which unreasonably delays or otherwise interferes with the expeditious management of trial preparation." *Yaffa*, 717 Fed. Appx. at 883.

Such sanctions are appropriate under the circumstances of this case. As explained throughout this response, Youngblood's undue delay in seeking to amend its pleading – long after the pleading-amendment deadline expired – violates this Court's Scheduling Order. As a direct consequence of that violation, Plaintiff has unfairly incurred substantial unnecessary expense. Specifically, in preparing all of its summary-judgment filings over the past month, Plaintiff had to address all of the proposed defenses in Youngblood's amended pleading. To that end, Plaintiff filed its own motion seeking summary judgment on those defenses. Plus, Plaintiff had to respond to Youngblood's motion for summary judgment that was largely based on Youngblood's new defenses regarding Amazon's guidelines/policies and qualified privilege. Since Plaintiff was facing a summary-judgment deadline under the Scheduling Order, Plaintiff had no choice but to go ahead and address those defenses in its filings, despite the prejudice outlined above that resulted from Youngblood adding its defenses on the fly.

At this juncture, regardless of whether this Court ends up granting or denying Youngblood's pending motion to file its second proposed amended pleading, damage has already been done and Plaintiff is entitled to an award of attorney's fees and costs under Rule 16(f) based on Youngblood's noncompliance with the Scheduling Order.  In this regard:

➢  If this Court ultimately denies Youngblood's belated motion for leave to file its amended pleading, then almost all of the summary-judgment briefing relating to Youngblood's affirmative defenses for justification and qualified privilege therein would be rendered a complete waste of time, and Plaintiff should recover the attorney's fees and costs that it incurred in that process.

➢  If this Court ultimately grants Youngblood's motion, then Plaintiff will have the opportunity to conduct additional limited discovery pursuant to this Court's directive in its April 2 order.  If discovery moves forward, then all prior summary-judgment filings will necessarily need to be revised and resubmitted after that discovery closes, thereby rendering the prior filings moot.  If that occurs, fairness dictates that Plaintiff should recover the attorney's fees and costs that it incurred in having prepared those moot filings.  In addition, Plaintiff should recover the full cost of the next phase of discovery, which could have been avoided altogether had Defendant timely raised its proposed defenses prior to the depositions of the key witnesses. Those witnesses will now need to be re-deposed outside the jurisdiction at significant expense -- through no fault of Plaintiff.

For these reasons, Plaintiff requests that this Court determine that Plaintiff is entitled to recover its attorney's fees and costs against Youngblood as set forth herein – in an amount to be determined upon separate motion by Plaintiff.  *See, e.g.*, *Rudakas v. State Farm Mut. Auto. Ins. Co.,* 6:18-CV-974, 2020 WL 1640096, at *1 (M.D. Fla. Apr. 2, 2020) (court noted that in determining entitlement to Rule 16(f) sanctions, it "directed the parties to confer as to the amount of attorney's fees and expenses, and if they could not agree, granted Plaintiff leave to file a motion seeking those fees and expenses").

WHEREFORE Plaintiff requests that this Court deny Youngblood's Second Motion for Leave to File Second Answer and Amended Affirmative Defenses.  Plaintiff further requests that this Court rule that Plaintiff is entitled to recover its attorney's fees and costs as set forth herein -- in an amount to determined on subsequent motion.

10

Respectfully submitted,

Attorneys for Plaintiff:

BLACK LAW P.A.
1401 E Broward Blvd.  Suite 204
Fort Lauderdale FL 33301
ph-954.320.6220  fx-954.320.6005


By:        s/ *Kelsey K. Black*
           Kelsey K. Black
           Florida Bar No. 078925
           kelsey@kkbpa.com
and

Stanley R. Goodman, Esq. (admitted *pro hac vice*)
Goodman & Saperstein
666 Old Country Road, Suite 200
Garden City, NY  11530
Telephone:  (516) 227-2100
Facsimile:  (516) 227-2108
gsesq600@aol.com